IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| KYLE SLOAN, Individually; and as Personal Representative of the Estates of Rylie Sloan and Jamie Sloan; KYLE SLOAN as Surviving Spouse of Jamie Sloan; KYLE SLOAN as Surviving Parent of Rylie Sloan; and SUSAN WEST, Individually and as the next friend and natural guardian of K.W., a minor,<br><br>Plaintiffs,<br>v.<br><br>NICHOLAS BURIST; LOCKE RELOCATIONS, LLC; MAYFLOWER TRANSIT, LLC; JOE MOHOLLAND, INC.; and XYZ COMPANIES 1-3,<br><br>Defendants. | ) | CIVIL ACTION FILE NO.:<br>2:22-cv-00076-LGW-BWC |

**DEFENDANT JOE MOHOLLAND, INC.'S MOTIONS IN LIMINE AND MEMORANDUM OF LAW IN SUPPORT**

COMES NOW Defendant Joe Moholland, Inc. ("JM"), by and through undersigned counsel, and files these Motions in Limine and Memorandum of Law in Support, and respectfully moves the Court for an order instructing all parties, their counsel, and all witnesses not to refer to, introduce, use, or elicit, directly or indirectly, at any phase of trial, including voir dire, any evidence, testimony, or argument concerning the matters set forth below. In support, JM respectfully shows the Court as follows:

## LEGAL STANDARD

A motion *in limine* rests on the Court's inherent authority to manage the course of trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The Court has broad discretion in ruling on such motions, and its rulings are subject to revision as the evidence unfolds at trial. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1104 (11th Cir. 2005); *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). In this District, evidence is excluded *in limine* when it is clearly inadmissible on all potential grounds. *Atwater v. Schwartz*, No. 2:18-CV-146, 2020 WL 7249626, at *5 (S.D. Ga. Dec. 9, 2020). Evidence is relevant only if it has a tendency to make a fact of consequence more or less probable; irrelevant evidence is inadmissible, and relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, or wasting time. Fed. R. Evid. 401, 402, 403.

## ARGUMENT AND CITATION OF AUTHORITY

### 1. Any Evidence of, or Reference to, JM's Settlement and Limited Liability Release with Plaintiffs.

JM moves to exclude any evidence of, or reference to, its limited liability release with Plaintiffs, the amount paid under it, the insurer affidavits attached to it, and any suggestion that JM has "settled" or "paid" any claim arising from the collision on Interstate 95 in Camden County, Georgia. This request applies to all parties, including co-defendant Mayflower Transit, LLC ("Mayflower").

A limited release under O.C.G.A. § 33-24-41.1 "shall not . . . [b]e admissible in evidence before the trier of fact in the trial of a tort action," although the amount paid "shall be admissible as provided by law as evidence of the offset . . . against any verdict of the trier of fact." O.C.G.A. § 33-24-41.1(d)(2). The offset is a matter for the Court after verdict, not for the jury. JM remains a party because a limited release does not discharge the insured "to the extent other insurance coverage is available." *Id.* § 33-24-41.1(b)(2), (d)(4).

Evidence of a compromise is not admissible to prove or disprove the validity or amount of a disputed claim. Fed. R. Evid. 408(a). "[W]ell established case law and the Federal Rules of Evidence prohibit the introduction of settlements or settlement negotiations into evidence to prove liability." *Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co.*, 792 F.2d 1036, 1042 (11th Cir. 1986). A primary reason for the rule is to encourage settlement, and "[a]dmission of evidence of the settlement could work to discourage plaintiffs and defendants from settling with one or more of several codefendants." *Reichenbach v. Smith*, 528 F.2d 1072, 1074 (5th Cir. 1976). The trial court has discretion to weigh that policy against any claimed need to test a witness's credibility. *Id.* at 1075.

The settlement also has no bearing on any issue the jury will decide. Under Georgia's apportionment statute, the jury apportions its award among the persons liable according to each person's percentage of fault, and those damages are neither

joint nor subject to contribution. O.C.G.A. § 51-12-33(b). Because JM remains a named party, the jury will assign any fault to JM directly, and any effect of the settlement on the judgment is for the Court after verdict. *See McReynolds v. Krebs*, 290 Ga. 850, 853, 725 S.E.2d 584, 588 (2012); *S. Oil Refinery, LLC v. Price*, 372 Ga. App. 427, 429-30 & n.4, 903 S.E.2d 693, 696 (2024). Telling the jury that JM has settled would invite exactly the harm Rule 403 guards against: jurors might treat the settlement as an admission, reduce or inflate the verdict to account for money already paid, or shift fault to the settling party. Fed. R. Evid. 403.

Nor does any bias rationale justify disclosure here. JM's release is a statutory limited release that the General Assembly has made inadmissible. It was executed and disclosed well before trial, and it contains no term tying JM's exposure to the outcome against any other defendant.

JM therefore requests an order excluding the release, the settlement amount, the insurer affidavits, and any reference to JM having settled or paid any claim. Alternatively, if the Court permits reference to the fact of settlement for a limited purpose, JM requests that the amount and terms be excluded and that the jury be given a limiting instruction, because settlement amounts may not be used to prove liability or damages. Fed. R. Evid. 105, 408; *Reichenbach*, 528 F.2d at 1075.

**2. The UniGroup Letter and Any Reference to a Potential Claim by Mayflower Against JM.**

JM moves to exclude any evidence of, or reference to, a potential claim by Mayflower or its parent, UniGroup, C.A. ("UniGroup"), for indemnity, recourse, or reimbursement from JM. JM anticipates that Plaintiffs will attempt to introduce a letter into evidence sent by Mayflower to JM shortly after the collision at issue. [Dkt. No. 309-1] ("Letter"). The relevant portion of that letter is as follows:

> It has come to our attention that Joe Moholland and/or its successors in interest ("Moholland") is utilizing the United marks and other UniGroup intellectual property in its business operations. We understand Moholland was involved in a serious crash on or about July 1, 2022, where United's intellectual property, including its DOT number, were prominent. As you are aware, your agency relationship with United and UniGroup ended effective April 28, 2022. As a courtesy, a 60 day period was extended to Moholland solely to remove signage and branding as well as return license plates on equipment. The date of your July 1 crash was beyond any agreed time period for any purpose by United or UniGroup.
>
> The purpose of this letter is to: (1) demand that Moholland immediately cease and desist using any and all UniGroup intellectual property, signage, marks, license plates or references to United operating authority and (2) **put you on notice that United and UniGroup will seek recourse from Moholland in the event any demand, claim, lawsuit, or penalty, of any kind, is made against United or UniGroup (or any subsidiary) as a result of the July 1, 2022 crash.**

[Dkt. No. 309-1] (emphasis added).

JM anticipates that Plaintiffs intend to put the Letter into evidence as proof of bias, arguing that JM is somehow shading or altering its testimony to protect itself from any subsequent action by Mayflower. Plaintiffs have already made this

argument in his Response to Mayflower's Motion for Summary Judgment on agency issues, claiming that:

> The letter put Moholland on notice that UniGroup will seek recourse from Moholland in the event it pays any monetary award in this case, and Mr. Garr's testimony was a self-serving attempt to protect his own interest in light of Moholland's indemnification obligations.

[Dkt. No. 309, p. 5].

JM requests an order from this Court excluding any reference to potential claims made by Mayflower in this Letter or anywhere else, as its prejudicial effect on JM far outweighs any probative value. Fed. R. Evid. 403. JM does not seek to exclude the portions of the Letter concerning branding, license plates, or operating authority. It seeks redaction of the paragraph in the Letter stating that UniGroup "will seek recourse" from JM.

An inquiry into the scope of JM's alleged bias as it relates to this Letter would require a trial within a trial over whether JM has exposure to a claim by Mayflower, which would unnecessarily expand the proceedings in an already complex case. Any marginal relevance would be substantially outweighed by the danger that jurors will focus on who ultimately pays rather than on fault and damages. Fed. R. Evid. 403. Further, it would uniquely prejudicial to JM, as it would force JM to choose between rebutting the bias allegation or revealing its defense strategy to any subsequent Mayflower claim. Finally, admission of the Letter would drag implications of JM's

settlement into trial, further complicating trial and distracting the jury. Any reference to a future claim by Mayflower against JM should be excluded.

**a. Whether the Letter is admissible as proof of bias is a matter of trial court discretion.**

The Supreme Court in *United States v. Abel*, 469 U.S. 45 (1984), held that impeachment for bias is permissible under the Federal Rules of Evidence, rooted in FRE 401 and 402. The Court explained that "proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness's testimony." *Id*. at 52. JM does not dispute the relevance of bias evidence in this matter but instead is concerned with the prejudice it will suffer.

"Assessing the probative value of [the bias evidence] and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403." *Id*. at 54. Accordingly, the question is not whether bias evidence is relevant, it is whether the probative value of that Letter outweighs its prejudicial effect under Rule 403, which is a matter left to the sound discretion of this Court.

**b. The Letter is uniquely harmful because it forces JM to choose between rebutting evidence of bias and prejudicing its defense in subsequent litigation.**

This Court must balance probative nature with prejudicial effect under Rule 403. The D.C. Circuit articulated the governing standard in *United States v.*

*Robinson*, 530 F.2d 1076, 1080-81 (D.C. Cir. 1976), holding that when considering the admission of extrinsic evidence of bias of a witness, the court must balance the probative value of and need for the evidence against the prejudicial impact, and the court should acknowledge and weigh both the prejudice and the probative worth of impeachment.

While the fact pattern presented here is unique, there are some analogous cases. The most directly on-point authority is *Lanham v. Whitfield*, 805 F.2d 970 (11th Cir. 1986), a Southern District case, where the Eleventh Circuit upheld the exclusion of evidence of other related litigation between co-defendants in a § 1983 action. The trial court reviewed the evidence and, though finding it probative to bias, determined that its prejudicial effect outweighed its probative value. The Eleventh Circuit upheld, citing specifically "the prospects of confusion of the issues and of misleading the jury, and . . . the substantial prejudice to other defendants and considerable prejudice to [defendant] Whitfield." *Id*. at 972. This case is significant because the excluded evidence involved litigation between co-defendants, precisely the scenario presented, and the court grounded the exclusion in both FRE 403 and FRE 404(b) balancing.

The Second Circuit reached a similar conclusion in *Outley v. City of New York*, 837 F.2d 587, 595 (2d Cir. 1988), holding that evidence of prior lawsuits offered for bias impeachment may be properly excluded where admitting the details

of those actions "invites detailed inquiries, denials, and explanations, likely to lead to multifariousness and a confusion of issues." The *Outley* court specifically considered the implications of a requisite trial within a trial, necessary to fully explore the effect of that bias evidence, holding that "In order for a jury properly to consider them, the particular details of each action, and the extent to which the bringing of each action was justified, must be before the jury." *Id*. at 595.

These same issues are present here. Plaintiffs intend to argue that JM is biased in its testimony, motivated by a self-interest to protect itself from the alleged subsequent lawsuit that Mayflower might file against it. If the Court were to allow that in, JM would be forced to rebut that allegation by addressing the substance of that alleged future claim. JM would need to present evidence of the nature and viability of any such claims made against it by Mayflower, as well as the defenses it has to any such claim.[1] The result is that the jury will need to render a verdict on a trial within a trial in order to determine whether that Letter is actually motivating JM in any way and creating bias. The jury will need to decide if Mayflower has a viable indemnity or breach of contract claim against JM and the scope of that exposure before it can determine whether the threat of that claim is driving JM to alter its

[1] JM notes that it has several good and valid defenses to any claim made by Mayflower. However, it would prefer not to give up its work product to Mayflower at this time. JM remains ready to discuss this further with the Court, outside of Mayflower's presence, if needed.

testimony. Such an inquiry may also require the intervention of the Court, as contract interpretation plays an integral role in that analysis. Such a detour far exceeds the probative value of the Letter, and it should be excluded for that reason.

Further, the argument for exclusion is strengthened by the compounding nature of the prejudice. The Letter is being offered to allegedly show that JM is shading its testimony to reduce its exposure in a future dispute with Mayflower. However, allowing that evidence to come in effectively forces JM to either (a) suffer the jury's inference of bias unrebutted or (b) rebut the bias allegation by disclosing its defense strategy to its future adversary, Mayflower, who is present in the courtroom. This creates a form of unfair prejudice that goes beyond ordinary risk of confusion. The *Outley* court's reasoning that admitting lawsuit evidence "invites detailed inquiries, denials, and explanations," which cause confusion of issues and prejudice, applies with even greater force here, since the "denials and explanations" necessary to rebut the bias allegation would themselves constitute privileged or strategically sensitive information that JM needs to defend itself in the event of a subsequent lawsuit. *Id*. at 595.

Accordingly, this Court must weigh the probative value of the Plaintiff's bias theory (that JM is tailoring its testimony to limit exposure in a future suit) against not one, but three, prejudicial factors: (1) the prejudice of forcing disclosure of JM's defense strategy to a future adversary, (2) the confusion of issues likely to result

from what would become a mini-trial on the merits of the anticipated subsequent claim, and (3) the potential for misleading the jury. The balance in this case tips firmly toward exclusion.

The probative value of the Plaintiff's threatened-lawsuit theory of bias is speculative,[2] while the prejudice of permanently compromising JM's position in a separate proceeding is concrete and irreversible. For these reasons, JM requests an order excluding the Letter from the case.

**c. Admission of the Letter would also invite disclosure of JM's settlement with the Plaintiff.**

JM incorporates by reference Section 1 above. In addition to the prejudicial factors discussed above, the Letter would also necessitate disclosure of JM's prior settlement, further complicating the trial and prejudicing the defendants. If the Plaintiffs are allowed to argue JM is biased and trying to shield Mayflower, that will only further confuse the jury unless they are allowed to understand why Plaintiffs are chasing Mayflower in the first place—because it has already settled with JM. Otherwise, the jury will be confused as to why JM, who is a party to this lawsuit and has exposure, would be actively trying to draw exposure away from a co-defendant.

---

[2] *Outley* discussed a similar issue, analyzing the balance between infinite scope of circumstances that could create bias with "remoteness" *See Outley,* 837 F.2d at 594-95.

Disclosure of the JM settlement would be prejudicial to both JM and Mayflower. Among other reasons, it would show the jury which pockets are left to pay, creating exposure for Mayflower, which would create exposure for JM in any subsequent claim. This rationale is discussed in *Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067 (5th Cir. 1986). In *Kennon*, the plaintiff had settled with three co-defendants for ten dollars each before trial, leaving only Slipstreamer as the remaining defendant. When the district court disclosed the nominal settlement amount to the jury, the Fifth Circuit reversed and remanded, holding that the disclosure violated Federal Rule of Evidence 408 and prejudiced the non-settling defendant in two specific ways. First, the nominal settlement amount suggested that the plaintiffs believed the settling defendants bore no real liability, "points the finger" at Slipstreamer as the sole responsible party. More importantly, "revelation of the amount of the settlement informed the jury that if the plaintiff was to receive any compensation for his injuries, he would have to get it from Slipstreamer." *Id*. at 1070-71. The court found this "clearly prejudicial" in a case involving a seriously injured child where the defendant's liability was sharply contested. *Id.*

Disclosure of the Letter to the jury, and allegations that JM is acting out of bias and self-preservation, is going to prejudice multiple defendants in numerous ways, drastically complicate the trial, and confuse the jury with mini-trials, questions

of indemnity, and prior settlements. For these reasons, any reference to a potential future claim by Mayflower against JM should be excluded.

**3. Any Per Diem or "Unit-of-Time" Damages Argument That Lacks Appropriate Safeguards.**

To the extent Plaintiffs intend to argue noneconomic damages on a per-minute, per-hour, per-day, or other unit-of-time basis, JM requests that the Court exercise its discretion to impose protective safeguards. In a diversity case, "the propriety of the [unit-of-time] argument is a federal question." *Showan v. Pressdee*, 922 F.3d 1211, 1220 (11th Cir. 2019) (quoting *Baron Tube Co. v. Transp. Ins. Co.*, 365 F.2d 858, 862 (5th Cir. 1966) (en banc)). Whether to allow the argument, and subject to what safeguards, is left "wholly to the discretion of the district court." *Id.* Under *Baron Tube*, a unit-of-time argument is not improper "where accompanied by a suitable cautionary instruction," and the district court may require that counsel give advance notice of the argument and that any demonstrative aids be carefully scrutinized. 365 F.2d at 864-65; *see Lowe v. Difei Transp., LLC*, No. 1:20-CV-5224-CAP, 2022 WL 17920295, at *3 (N.D. Ga. Nov. 10, 2022) (imposing these safeguards).

Any such argument must also remain tethered to the evidence. It is settled in this Circuit that counsel "may not inject into [the] argument any extrinsic or prejudicial matter that has no basis in the evidence," a rule that applies "in civil suits as well as in criminal suits and for a plaintiff's attorney as well as for a defendant's

attorney." *United States v. Morris*, 568 F.2d 396, 401 (5th Cir. 1978). *Baron Tube* applied the same principle to unit-of-time arguments, which, like all jury argument, "should be based only upon the evidence or the reasonable inferences to be drawn therefrom." 365 F.2d at 862. That principle has particular force here because, under Georgia law, which supplies the measure of Plaintiffs' damages, there is "no yardstick against which damages for pain and suffering are to be measured," *Barker v. Grier*, 932 S.E.2d 436, 439-40 (Ga. Ct. App. 2026) (quoting *AT Sys. Se., Inc. v. Carnes*, 272 Ga. App. 671, 672, 613 S.E.2d 150 (2005)), so a per-unit rate risks supplying the jury with a false measure unless the argument is grounded in the evidence of the injuries actually proved. JM therefore requests that any unit-of-time argument be rationally related to the evidence of Plaintiffs' noneconomic damages and that counsel not refer to objects or values having no rational connection to the facts proved.

Any such figure should also be presented when JM can respond to it. Rebuttal argument is "conditioned and limited by" the opposing party's closing argument, *United States v. Sarmiento*, 744 F.2d 755, 765 (11th Cir. 1984), and is confined to a "fair response" to the arguments actually made, *United States v. Reeves*, 742 F.3d 487, 505 (11th Cir. 2014) (quoting *Sarmiento*, 744 F.2d at 765). Courts apply the same principle to a civil plaintiff's rebuttal. *See Julander v. Ford Motor Co.*, 488 F.2d 839, 842 (10th Cir. 1973) ("[I]t is improper for counsel for a plaintiff to inject

new matter in his final closing argument which should be limited to a rebuttal to defense counsel's closing argument, and nothing more."). One federal court has granted a motion *in limine* on exactly this issue, precluding plaintiffs from suggesting a damages figure for the first time in rebuttal while permitting them to revisit arguments made in their initial closing. *Ehrlich v. Cent. Transp., LLC*, No. 3:13-CV-23, 2014 WL 1404645, at *3 (N.D.W. Va. Apr. 10, 2014).

JM therefore requests that, if Plaintiffs intend to make any unit-of-time argument, the Court require: (a) advance notice to the Court and counsel, outside the jury's presence, of the argument and the rate proposed; (b) review of any demonstrative aid before it is shown to the jury; (c) that any per-unit rate be rationally related to the evidence of Plaintiffs' noneconomic damages, and that no rate be tied to litigation conduct or to objects or values having no rational connection to the facts proved; (d) that any per-unit rate or damages figure be presented in Plaintiffs' initial closing argument, with no new or different figure introduced in rebuttal; and (e) an instruction, both when the argument is made and in the charge, that such an argument is merely a method of presenting contentions and is not evidence. *See Showan,* 922 F.3d at 1220; *Baron Tube*, 365 F.2d at 862, 864-65; *Sarmiento*, 744 F.2d at 765; *Julander*, 488 F.2d at 842; *Morris*, 568 F.2d at 401; *Lowe*, 2022 WL 17920295, at *3.

**4. Any Arguments Anchoring Noneconomic Damages to Benchmarks Unrelated to the Evidence.**

Whether or not Plaintiffs make a unit-of-time argument, JM moves to preclude any argument inviting the jury to value Plaintiffs' noneconomic damages by reference to a dollar figure or benchmark with no connection to the evidence of Plaintiffs' injuries. Examples include the hourly rates or fees paid to experts or counsel, the salaries or earnings of athletes, executives, or other third parties, the price of unrelated goods or property, the cost of defending this action, and verdicts in other cases.

The principles that govern unit-of-time arguments govern every damages argument: the argument "shall not ask the jurors to place themselves in the position of a party, sometimes called the 'Golden Rule' argument; the argument shall not appeal to passion or prejudice; and the argument should be based only upon the evidence or the reasonable inferences to be drawn therefrom." *Baron Tube*, 365 F.2d at 862; *see Morris*, 568 F.2d at 401. A benchmark drawn from outside the record offends those principles twice. It is not evidence of the plaintiff's injuries, and its function is to supply the jury with an emotionally charged number rather than a reasoned one.

At least one federal court of appeals has applied these principles to precisely this kind of benchmark. In *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation*, plaintiffs' counsel told the jury in rebuttal: "[I]f they

[the defendants] will pay their experts a thousand dollars an hour to come in here, when you do your math back there don't tell these plaintiffs that a day in their life is worth less than an hour's time of this fellow, or people they put on the stand." 888 F.3d 753, 787 n.71 (5th Cir. 2018). The court held that the reference "was meant simultaneously to activate the jury's passions and to anchor their minds to a salient, inflated, and irrelevant dollar figure," and that "[t]he inflammatory benchmark, bearing no rational relation to plaintiffs' injuries, easily amplified the risk of 'an excessive verdict.'" *Id.* (quoting *Westbrook v. Gen. Tire & Rubber Co.*, 754 F.2d 1233, 1240 (5th Cir. 1985)). The argument "tainted the verdict that followed," and a general instruction that counsel's statements are not evidence was inadequate to cure it. *Id.* (citing *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 377-78 (5th Cir. 1989)).

The Eleventh Circuit likewise directs district courts to "use care to the end that the argument will not inflame the jury and result in an excessive verdict." *Showan*, 922 F.3d at 1219-20 (quoting *Baron Tube*, 365 F.2d at 865). Because an extraneous benchmark, once argued, is difficult to cure by instruction, *see DePuy*, 888 F.3d at 787 n.71, the appropriate time to address it is before trial.

JM therefore requests an order precluding any party from referring, in argument or otherwise, to any dollar figure, rate, or benchmark unrelated to the evidence of Plaintiffs' noneconomic damages as a measure of those damages,

including the examples identified above, and requiring that any comparative figure counsel intends to use be disclosed to the Court and counsel outside the jury's presence before it is argued.[3]

**5. Liability Insurance, Including the Source of Any Settlement Funds.**

Evidence that a party was or was not insured against liability is inadmissible to prove that the party acted negligently or otherwise wrongfully. Fed. R. Evid. 411. Such evidence "is highly prejudicial and it can influence the entire case, no matter which side attempts to introduce it." *Denton v. Con-Way S. Express, Inc.*, 261 Ga. 41, 42-43, 402 S.E.2d 269, 270 (1991), *disapproved of on other grounds by Grissom v. Gleason*, 262 Ga. 374, 418 S.E.2d 27 (1992). JM moves to exclude any reference to any party's liability insurance, policy limits, or insurers, including the Wesco Insurance Company and AmTrust affidavits attached to the release and any suggestion that insurance funded any settlement.

---

[3] Georgia law reflects the same principle. In 2025, the Georgia General Assembly amended O.C.G.A. § 9-10-184 to require that argument of the worth or monetary value of noneconomic damages "be rationally related to the evidence of noneconomic damages and . . . not make reference to objects or values having no rational connection to the facts proved by the evidence." O.C.G.A. § 9-10-184(c)(1). JM recognizes that, in a diversity case, the propriety of damages argument is a matter of federal trial procedure and does not ask the Court to apply the statute as binding. JM notes the statute only because it confirms that the relief requested in this section is consistent with the policy of the State whose law supplies the measure of Plaintiffs' damages.

**6. Financial Condition, Size, or Wealth of Any Defendant.**

A party's financial condition, size, and wealth are irrelevant to liability and compensatory damages. "Litigants are entitled in an action for compensatory damages to a trial on the merits without regard to their financial status." *Seay v. Urb. Med. Hosp., Inc.*, 172 Ga. App. 344, 346, 323 S.E.2d 190, 192 (1984) (quoting *Usry v. Bostick*, 112 Ga. App. 76(3), 79, 143 S.E.2d 781, 783 (1965), *rev'd*, 221 Ga. 647, 146 S.E.2d 882 (1966)), *abrogated on other grounds by Williams v. Harvey*, 311 Ga. 439, 858 S.E.2d 479 (2021); *see also Collin-Williams v. Contour Eastwyck, LLC*, No. 1:20-CV-3129-CAP, 2023 WL 11909716, at *3 (N.D. Ga. May 3, 2023); Fed. R. Evid. 402, 403. JM moves to exclude any evidence or argument concerning any defendant's revenues, assets, fleet size, number of employees, or corporate affiliations, and any argument that a verdict would or would not financially affect any defendant. To the extent any punitive damages claim is tried, Georgia law provides for a bifurcated proceeding in which the amount of punitive damages is determined only after the trier of fact first finds that such damages are warranted, and JM requests that any evidence of financial condition be deferred to that phase. O.C.G.A. § 51-12-5.1(d)(1)-(2).

**7. "Send a Message," Deterrence, or Punishment Arguments During the Compensatory Phase.**

Compensatory damages serve "to place an injured party in the same position as it would have been in had there been no injury or breach of duty, that is, to

compensate for the injury actually sustained," not to punish or deter. *MCI Commc'ns Servs., Inc. v. CMES, Inc.*, 291 Ga. 461, 462, 728 S.E.2d 649, 651 (2012) (*quoting Home Ins. Co. v. North River Ins. Co.,* 192 Ga. App. 551, 558 (6), 385 S.E.2d 736 (1989)). JM moves to preclude any argument, during the compensatory phase or any phase addressing whether punitive damages are warranted, that the jury should use its verdict to "send a message" to, deter, or punish JM, any other defendant, or the moving or trucking industry. A court in this District has granted similar relief in a wrongful death action arising from a tractor-trailer collision. *Byrd v. Wal-Mart Transp., LLC*, No. 609CV014, 2009 WL 10702884, at *3 (S.D. Ga. Nov. 17, 2009); *see also Bunch v. Pac. Cycle, Inc.*, No. 4:13-CV-0036-HLM, 2015 WL 11622952, at *2 (N.D. Ga. Apr. 27, 2015) (stating that "send a message arguments and punishment arguments are improper").

**8. "Golden Rule" Arguments on Damages.**

JM moves to preclude any argument asking jurors to place themselves, or their family members, in the position of any party for purposes of awarding damages. An impermissible golden-rule argument is one in which "the jury is exhorted to place itself in a party's shoes with respect to damages." *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1071 n.3 (11th Cir. 1996) (quoting *Burrage v. Harrell*, 537 F.2d 837, 839 (5th Cir. 1976)). Georgia likewise holds such argument improper "because it asks the jurors to consider the case, not objectively as fair and impartial

jurors, but rather from the biased, subjective standpoint of a litigant." *Myrick v. Stephanos*, 220 Ga. App. 520, 522, 472 S.E.2d 431, 435 (1996).

**9. Voir Dire References to Specific Amounts or Ranges of Noneconomic Damages.**

The Court controls the examination of prospective jurors and permits only such additional inquiry as "it considers proper." Fed. R. Civ. P. 47(a). JM moves to preclude any party from referring, in the hearing of the venire, to any specific amount or range of amounts of noneconomic damages, including by asking whether a prospective juror could award a particular sum. At voir dire, no evidence has yet been presented, so any specific figure necessarily lacks a "basis in the evidence." *Morris*, 568 F.2d at 401; *see also Baron Tube*, 365 F.2d at 862. Introducing such a figure before trial would anchor prospective jurors to a number untethered to the record, the same harm addressed in Section 4, and would invite jurors to commit to an award before hearing any evidence. This request does not seek to prevent the parties from asking whether prospective jurors could fairly consider the full range of possible verdicts, including a verdict of no damages or a substantial award, if the evidence warrants.

## CONCLUSION

For the foregoing reasons, JM respectfully requests that the Court grant these Motions in Limine and enter an Order instructing all parties, their counsel, and all

witnesses to refrain from mentioning, referring to, or eliciting, directly or indirectly, any of the matters set forth above.

Respectfully submitted this 29th day of September, 2026.

**MCMICKLE, KUREY & BRANCH, LLP**

/s/ *Scott W. McMickle*
SCOTT W. MCMICKLE
Georgia Bar No. 497779
MATTHEW R. SESSIONS
Georgia Bar No. 899806
***Attorneys for Defendant Joe Moholland, Inc.***

217 Roswell Street, Suite 200
Alpharetta, Georgia 30009
Telephone: (678) 824-7800
swm@mkblawfirm.com
msessions@mkblawfirm.com

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the within and foregoing **DEFENDANT JOE MOHOLLAND, INC.'S MOTIONS IN LIMINE AND MEMORANDUM OF LAW IN SUPPORT** upon the following counsel of record via the Court's CM/ECF Filing System on this 29th day of September, 2026:

Charles J. Hodge, Esq.
Hodge Law Firm
951 East Main Street
Spartanburg, SC 29302
***Attorneys for Plaintiff***
***Kyle Sloan***

Joseph R. Padgett, Esq.
Roden Law
333 Commercial Drive
Savannah, GA 31406
***Attorneys for Plaintiff***
***Kyle Sloan***

T. Ryan Langley, Esq.
Matthew T. Foss, Esq.
Langley Law Firm
229 Magnolia Street
Spartanburg, SC 29306
***Attorneys for Plaintiff***
***Kyle Sloan***

John Hilliard Burton, Esq.
Grant Smith, Esq.
Heaven Begum, Esq.
Weinberg, Wheeler, Hudgins, Gunn & Dial
3344 Peachtree Rd., NE, Ste. 2400
Atlanta, GA 30326
***Attorney for Defendant***
***Nicholas Burist***

Joseph J. Steffen, Jr., Esq.
Brandy Scott Mai, Esq.
The Law Offices of Joseph J. Steffen, Jr.
223 W. York Street
Savannah, GA 31401
***Attorneys for Plaintiff***
***Susan West***

Todd R. Ehrenreich, Esq.
Jeffrey Robert Geldens, Esq.
Michael Fogarty, Esq.
Lewis, Brisbois, Bisgaard & Smith
2 Alhambra Plaza, Suite 1110
Coral Gables, FL 33134
***Attorneys for Defendant***
***Mayflower Transit, LLC***

Brantley C. Rowlen, Esq.
Lewis, Brisbois, Bisgaard & Smith
1375 East 9th St., Ste. 2250
Cleveland, OH 44114
***Attorney for Defendant***
***Mayflower Transit, LLC***

Stephen K. McDonald, Esq.
Lewis Brisbois Bisgaard & Smith LLP
Bank of America Plaza
600 Peachtree Street, NE, Ste. 4700
Atlanta, GA 30308
***Attorney for Defendant***
***Mayflower Transit, LLC***

Joseph H. Wieseman, Esq.
Martin A. Levinson, Esq.
Hawkins, Parnell & Young, LLP
303 Peachtree St., NE, Suite 4000
Atlanta, GA 30308
***Attorney for Defendant***
***Joe Moholland, Inc.***

C. Hansell Watt, IV, Esq.
James L. Elliott, Esq.
Elliott Blackburn, PC
3016 N. Patterson Street
Valdosta, GA 31602
***Attorney for Defendant***
***Locke Relocations, LLC***

*/s/ Scott W. McMickle*
SCOTT W. MCMICKLE
For the Firm