**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | |
|---|---|
| KYLE SLOAN, Individually, and as Personal Representative of the Estates of Rylie Sloan and Jamie Sloan, KYLE SLOAN as Surviving Spouse of Jamie Sloan, and KYLE SLOAN as Surviving Parent of Rylie Sloan;<br>Plaintiffs,<br>v.<br><br>NICHOLAS BURIST; LOCKE RELOCATIONS LLC; MAYFLOWER TRANSIT LLC; and JOE MOHOLLAND, INC.<br><br>Defendants. | CASE NO: 2:22-cv-0076-LGW-BWC |

**<u>CONSOLIDATED PRETRIAL ORDER</u>**

COME NOW, the parties, Plaintiff KYLE SLOAN, Individually, and as Personal Representative of the Estates of Rylie Sloan and Jamie Sloan, KYLE SLOAN as Surviving Spouse of Jamie Sloan, and KYLE SLOAN as Surviving Parent of Rylie Sloan ("Plaintiffs") and Defendants NICHOLAS BURIST; LOCKE RELOCATIONS LLC; MAYFLOWER TRANSIT LLC; and JOE MOHOLLAND, INC., (collectively "Defendants"), by and through their respective counsel of record, and jointly submit this their proposed Consolidated Pretrial Order as follows:

1. Counsel are to discuss and agree on every possible factual stipulation. The stipulations must be reduced to writing, signed and filed with

the consolidated proposed pretrial order as ATTACHMENT "A" hereto. **Stipulations can spare witness testimony, trial time, and expense. If a party feels the other side is in bad faith refusing to stipulate, they shall set forth "proposed stipulations" on ATTACHMENT "A." Costs of proving what, at trial, was never really disputed and what should have been stipulated, may be taxed against the offending party and attorney. Those costs may include witness fees and additional attorney preparation time costs.**

**See proposed stipulations attached as "Attachment A."**

2. As ATTACHMENT "B" to the proposed pretrial order, the parties may, but are not required to, submit questions which they desire the Court to propound to jurors concerning their legal qualifications to serve and any other questions they wish propounded for information purposes. If the parties choose to submit general voir dire questions hereunder, they may submit the questions jointly as one attachment or separately as ATTACHMENTS "B-1" and "B-2".[1]

**By Plaintiffs: Attached hereto as "Attachment B-1" are Plaintiff's proposed Jury Questions.**

**By Defendants: Attached hereto are each defendants proposed Jury Questions.**

3. State the names of all parties, firms and attorneys to be used in qualifying the jury. State the name of any insurance company involved, and whether it is a stock or mutual company. State the names of all counsel who are members of any firm involved on a contingent fee basis. At the pretrial conference, counsel may be required to disclose policy limits and details of any insurance coverage.

**Plaintiffs: KYLE SLOAN, Individually, and as Personal Representative of the Estates of Rylie Sloan and Jamie Sloan, KYLE SLOAN as Surviving Spouse of Jamie Sloan, and KYLE SLOAN as Surviving Parent of Rylie Sloan;**

**Plaintiff's Counsel: Charles J. Hodge, J. Camden Hodge with Hodge Law Firm; T. Ryan Langley, Matthew T. Foss with Langley Still & Foss;**

---

[1] The Court will require that each juror stand and give personal background information (name, address, employment, spouse's employment, etc.) and such questions need not be included. The Court will propound questions concerning legal qualifications.

**Joseph R. Padgett with Hamilton & Padgett, LLC**

**Defendant Nicholas Burist:** Grant B. Smith, Esq., Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC, 3344 Peachtree Road, N.E., Suite 2400, Atlanta, Georgia 30326, (404) 876-2700, Gbsmith@wwhgd.com and Rfisher@wwhgd.com.

**Defendant Locke Relocations:**

**James L. Elliott**
**Georgia Bar No. 244244**
**Elliott Blackburn PC**
**3016 N. Patterson St.**
**Valdosta, Georgia 31602**
**(229) 242-3333**
**jimelliott@elliottblackburn.com**

**Defendant Mayflower Transit, LLC: Todd Ehrenreich, Brantley Rowlen, Stephen Kyle McDonald, Jeffrey R. Geldens – Lewis Brisbois Bisgaard & Smith.**

**Defendant Joe Moholland Inc.:**

**Defendant Joe Moholland Inc.: Joe Moholland, Inc.; Reflection Dock, LLC; HomeServices of America, Inc.; McMickle Kurey & Branch, LLP; Scott McMickle, Matthew Sessions; Defendant was insured by Wesco Insurance, but has executed a Limited Liability Release, and Wesco has no financial stake in the outcome.**

4. Identify the basis upon which the jurisdiction of this Court is based and any questions relating to its jurisdiction.

**The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332, under diversity of citizenship. The parties agree that jurisdiction and venue are proper.**

5. List any motions or other matters in the case which remain unresolved. Any motion not so enumerated shall be deemed withdrawn by the moving party.

**For Plaintiff:**

1. **Plaintiff's Motion in Limine Regarding Excluding Evidence and Argument of the Importance of the Trucking Industry, Mayflower's Corporate Reputation, and the Purported Economic Impact of a Verdict**
2. **Plaintiff anticipates the possibility of filing an Amended Complaint, which will require a Motion to Amend the Complaint.**

**For Mayflower Defendant:**

1. **Mayflower Defendant pending Motion for Summary Judgment regarding the imposition of punitive damages.**
2. **Mayflower Defendant pending motions in limine.**

**Defendant Joe Moholland:**

1. **Motions in Limine.**

**Defendant Nicholas Burist:**

1. **Motions in Limine**

6. All discovery is to be completed pursuant to the Local Rules. The date of the conclusion of the discovery process and the expected completion of any untranscribed deposition shall be stated.

**Dr. Charles Alford trial deposition is scheduled for October 5, 2026.**

**Dr. Daniel Falcon discovery deposition is scheduled for October 7, 2026.**
**Dr. Daniel Falcon trial deposition scheduled for October 21, 2026.**

**Plaintiffs wish to bring to the Court's attention that as of the due date of this Pretrial Order, discovery has not been completed. Specifically, Plaintiffs have yet to be furnished with supplemental discovery responses, as this deadline for additional production of documents from Defendant Mayflower was set for 10/5/2026 by Judge Cheesbro – a deadline that is one day prior to the pretrial**

**conference. Therefore, Plaintiff cannot furnish a complete set of documentary evidence yet. Plaintiff has provided Defendants with all expected evidence.**

**Defendant Mayflower also highlight to the Court's attention that as of the due date of this Pre-trial Order the Defendants have yet to be furnished with several pieces of evidence and materials as of yet promised. This includes underlying facts and information relied upon by expert Liz Cain.**

**Defendant Mayflower also notes that components of the exhibit list under discussion include documents listed by Plaintiff which were not previously produced, although provided on the morning of October 1, 2026.**

7. State whether the names of the parties in the above-captioned case(s) are complete and correct and whether there is any question of misjoinder or non-joinder.

**The parties are currently listed correctly and are not misidentified or misjoined.**

8. Outline of plaintiff(s)' case.

**NOTE: PLAINTIFF(S) SHOULD PAY PARTICULAR ATTENTION TO THIS PARAGRAPH. AT THE TRIAL, IT WILL BE USED BY THE COURT IN DIRECTING THE CASE AND INSTRUCTING THE JURY.**

Plaintiff(s) shall furnish a short, succinct, factual and narrative statement of the cause of action. This statement should not be argumentative and should not recite evidence. In no event shall the statement be more than one page.

**Plaintiffs contend Burist operated the tractor-trailer negligently and that his conduct caused the July 1, 2022 collision. Plaintiffs further contend that the tractor-trailer continued to operate under indicia and authority associated with Mayflower through the date of the collision, and that legal and factual requirements necessary to end Mayflower's responsibility had not been completed before the collision. Plaintiffs contend Mayflower is responsible for**

**this collision under Georgia agency principles, respondeat superior, and applicable federal motor-carrier law and regulations.**

**Issues of fact include the facts and circumstances of the collision; causation; whether Joe Moholland, Inc. and/or Burist remained Mayflower's agent,acted with authority attributable to Mayflower, and/or whether Mayflower was the responsible motor carrier for safety; the effect and/or non-effect of termination communications and subsequent conduct; the significance of Mayflower plates, DOT authority, IFTA credentials, cab cards, lease/operating documents, and other indicia of authority; the nature and value of Kyle Sloan's injuries and damages; and wrongful-death, survival, and estate damages for Jamie Sloan and Rylie Sloan.**

**Kyle Sloan seeks damages for the physical injuries and losses he sustained, including medical expenses, pain and suffering, impairment, psychological injury, and other recoverable damages proved at trial. In his representative and statutory capacities, he also seeks the damages permitted by Georgia law arising from the deaths of Jamie Sloan and Rylie Sloan.**

9. Outline of defendant(s)' case.

**NOTE: DEFENDANT(S) SHOULD PAY PARTICULAR ATTENTION TO THIS PARAGRAPH. AT THE TRIAL, IT WILL BE USED BY THE COURT IN DIRECTING THE CASE AND INSTRUCTING THE JURY.**

Defendant(s) shall:

(a) Furnish a short, succinct, factual and narrative statement as to all defenses (general and special). This statement should not be argumentative and should not recite evidence. In no event shall the statement be more than one page.

(b) In all actions involving a counterclaim, cross-claim, or third-party action, defendant(s) should summarize the matter, using the outline required as to the main claim.

**For Defendant Mayflower:**

**On July 1, 2022 Nicholas Burist overturned a tractor trailer on Interstate 95 in Camden County, Georgia. On the date of the collision Nicholas Burist was driving for Locke Relocation, under contract with Joe Moholland, Inc.**

**There is no contract, document, or agreement that would show this was Mayflower's load. No witness will testify this was Mayflower's load. By the time of the incident, Joe Moholland had been bought by a competitor of Mayflower. Mayflower is in this case because the truck Defendant Burist was driving for Moholland, to which Locke Relocations assigned him, still had the Mayflower markings on it (and some documents and license plates) even though Moholland should have removed them long before that date. Documents thus show that by July 1, Moholland's relationship with Mayflower had been terminated—because Moholland was purchased by a competitor who operates as Tailored Move. Mayflower had no connection to this load operated by an entity owned by a competitor and no reason to allow a competitor to do business under Mayflower's name. During the investigation after the incident, no government agency concluded Mayflower was responsible for the accident, even though Moholland had left Mayflower's license plates on the truck and Moholland had not put the necessary paperwork in the truck cab to show it was under Moholland's control (the old papers were still there). Instead, Mayflower satisfied the Department of Transportation by providing that agency with the termination documents (showing Moholland was no longer associated with Mayflower) upon inquiry after the crash.**

**The police report states the carrier was Joe Moholland, Inc., and the owner of the truck was also Joe Moholland, Inc. Discovery confirmed this—Moholland's corporate representative stated this load was under Moholland's authority, during a time after it had terminated its relationship with Mayflower. Discovery has also revealed that Burist was employed—based on testimony and checks written to him—by Defendant Locke Relocations, Inc.**

**Non-Party contractor TMM, Inc., contracted with Joe Moholland, Inc., to transport the load at issue in the case. Moholland, Inc., then contracted with Locke Relocation for the tractor trailer and driver which would actually perform the move. In other words, Moholland Inc., had the work, Locke Relocation provided the workers and equipment.**

**What Locke Relocation provided was Nicholas Burist and the tractor trailer he drove. Locke Relocation paid Nicholas Burist. Locke Relocation assigned Nicholas Burist the truck he drove. Locke Relocation assigned Nicholas Burist the load he picked up. Locke Relocation met Nicholas Burist at Moholland's lot and provided him job details. Nicholas Burist selected, without any involvement from Mayflower, his passenger and helpers for the load.**

**There is no evidence that Mayflower had any connection with the shipment or the transportation that caused the underlying collision. The subject load was placed with TMM, contracted to Moholland, and handled by Locke Relocation. Mayflower received no compensation for the shipment and had no part in its inception, assignment, or execution. Mayflower has no record in it its system of this load, and the Bill of Lading for this shipment does not list Mayflower.**

**Joe Moholland, Inc was not an agent of Mayflower and was not under Mayflower authority, supervision, or control at the time of the collision. In January of 2022, Mayflower terminated their agency agreement with Moholland. The parties entered into a temporary agency agreement which ran through April of 2022 to allow Moholland to handle Mayflower shipments already ordered. However, after January 2022 no new orders or loads were placed in the Mayflower system by Moholland. Following the expiration of the temporary agency agreement, Mayflower demanded the return of its property, and markings from Joe Moholland, Inc. Moholland failed to return Mayflower's property before the subject collision. Moholland acknowledged it should have taken the markings and DOT number of Mayflower off the subject truck, and that the subject load was under Moholland's authority and not Mayflower. Mayflower informed the government agency that regulates its business (the Department of Transportation) that this load was not under its authority. That information was agreed to without objection, based on documentation that Mayflower provided to the Department of Transportation showing that Moholland was not an agent of Mayflower for this load.**

**Mayflower did not agree, ratify, or approve Moholland's use of its property, IFTA Credentials, DOT Authority, or license plates. These materials were in the subject truck because Moholland did not comply with Mayflower's demand. They were used outside Mayflower's permission, and so on July 1, 2022 the load, the truck ,and Burist, were not under Mayflower's**

**authority.**

**For Defendant Locke Relocations:**

**Prior to the date of the subject accident, Burist had been delivering loads of household goods while employed by Locke since approximately 2017. During the entirety of that time, Burist had a "clean" driving record, and Locke had no reason to believe that Burist was anything other than a safe and competent driver. On the day in question, Burist was hauling the subject load of household goods to Jacksonville, Florida for Moholland. Locke did not do anything, by act or omission, that caused or contributed to the subject accident.**

**For Defendant Joe Mohalland:**

**On July 1, 2022 Defendant Burist was operating a tractor trailer under Moholland's direction and control. Burist was operating under Moholland's DOT authority. Burist was involved in a tragic collision with the Sloan Plaintiffs, which Moholland takes full responsibility for. Defendant Mayflower had no involvement in the transportation of the load being hauled by Burist or in this collision. The investigating officer, the Georgia Department of Public Safety and the Federal Motor Carrier Safety Administration concluded that Moholland was the motor carrier involved in the subject accident.**

**For Defendant Burist:**

**This case arises from a tragic accident that happened July 1, 2022 on Interstate 95 south in Camden County. Nicholas Burist was driving a truck for Joe Mulholland Trucking at about 2:30 p.m. when he lost control of his truck and crossed the center line causing a chain reaction collision. Tragically 43 year-old Jamie Sloan and her 14 year-old daughter Rylie died after the collision and Kyle Sloan claims significant personal injuries as a result of the collision.**

**A Camden County Superior Court jury convicted Mr. Burist on eight counts of vehicular homicide and eight counts of serious injury by motor vehicle. The Judge sentenced Mr. Burist to 75 years with 45 years to serve in the state penitentiary and Mr. Burist is serving his sentence at Coffee Correctional Facility in Nichols, Georgia.**

**Mr. Nichols will not testify live at trial, but Plaintiffs took his videotaped deposition which the Jury will see. Mr. Burist plead the fifth on all questions about the accident because of his criminal prosecution. Mr. Burist expects Plaintiff present substantial evidence about Mayflower and its relationship with him, Joe Muholland Trucking and Locke Relocations, but Mr. Burist does not know the details of these relationships.**

10. In all cases in which violation of the United States Constitution or a federal or state statute or regulation is alleged, the party making such claim shall specifically state the constitutional provision and/or statute allegedly violated and the specific facts on which such alleged violation is based. The party shall detail the damage or relief sought pursuant to such claim and recite supporting authority.

**By Plaintiffs:**

**Defendant(s) violated the following state statutes and federal regulations:**

**O.C.G.A. § 40-6-393(a): Homicide by vehicle**
**O.C.G.A. § 40-6-253: Consumption of alcoholic beverage or possession of open container of alcoholic beverage in passenger area**
**O.C.G.A. § 40-6-49: Following too closely**
**O.C.G.A. § 40-6-48: Failing to maintain lane**
**O.C.G.A. § 40-1-8(b)(2)(E): Safe operations of motor carriers, commercial motor vehicles, and drivers; safe transportation of hazardous materials**
**O.C.G.A. § 40-6-390 Not keeping his vehicle under control at all times**
**O.C.G.A. § 40-6-391(a)(1-5): Driving under the influence of alcohol, drugs, or other intoxicating substances**
**O.C.G.A § 40-6-93 in failing to exercise due care;**
**O.C.G.A § 40-6-390 for driving reckless;**
**O.C.G.A § 40-6-394 for causing serious injury by a vehicle**

**49 CFR § 393.75(a)(1) Tire-ply or belt material exposed**
**49 CFR § 393.75(a)(3) Tire-flat and/or audible air leak**

**49 CFR § 393.48(a) Inoperative/defective brakes**
**49 CFR § 396.3(a)(1) Brakes out of service**
**49 CFR §§ 383.111; 383.113; and §§ 390-395 Required knowledge and skills of a driver**
**49 CFR § 385.3 Preventable Accident**
**49 CFR Section 13907(a)(Household Goods – Agents)**
**49 CFR Section 376.2(e) – Definition of Lease**

**O.C.G.A. §§ 51-12-5.1 and 40-6-241.2 Driver's actions in failing to stop and/or slow his tractor-trailer showed willful misconduct or an entire want of care, which would raise the presumption of conscious indifference to consequences**

49 **CFR §390.21 and 390.13 (Markings of CMV)**
**49 CFR §376.11 (General leasing requirements)**
**49 CFR §376.12 (Lease requirements)**
**49 CFR §391.51 (General requirements for driver qualification file)**

**49 C.F.R. § 390.5 (driver's employment status)**
**49 U.S.C. § 31132(2) (driver's employment status)**
**49 C.F.R. § 390.5; 49 U.S.C. § 31132(2); 49 C.F.R. § 376.12; Mayflower is liable for the actions of employees operating leased vehicles)**

**By Defendants: Defendant Mayflower objects to this list of statutes. The jury should not be provided a shelf of statutes when considering the case. The relevant statutes are Ga. Code. S. 51-2-1(a), 51-2-4, 51-12-5.1; and 51-12-33. These statutes address agency, employment, and punitive damages under Georgia law.**

11. In tort cases, any party bearing a burden of proof shall list each and every act of negligence or intentional tort relied upon.

(a) Under a separate heading, state all relevant statutes, rules, regulations and ordinances allegedly violated. Also, recite any supporting authority.

(b) List all items of damages claimed or non-monetary relief sought.

(c) In all cases involving alleged permanent injuries or death, furnish

a full statement as to the age, alleged life expectancy and/or probable duration of the injuries, and earnings, income tax records or other records to prove earnings.

**By Plaintiff:**

a. **Plaintiff asserts that Defendant Burist negligently operated his semi-truck so as to cause a collision with Plaintiffs' vehicle. Plaintiff further asserts that Mayflower Transit is vicariously responsible under agency principles for the negligence of Defendant Burist.**
**49 C.F.R. § 390.5**
**49 U.S.C. § 31132(2) -**
**Burgess v. Religious Tech. Ctr., Inc., 600 F. App'x 657, 660-61 (11th Cir. 2015), et al.**

**49 C.F.R. § 390.5; 49 U.S.C. § 31132(2); 49 C.F.R. § 376.12; Mayflower is liable for the actions of employees operating leased vehicles)**

**O.C.G.A. § 40-6-393(a): Homicide by vehicle**
**O.C.G.A. § 40-6-253: Consumption of alcoholic beverage or possession of open container of alcoholic beverage in passenger area**
**O.C.G.A. § 40-6-49: Following too closely**
**O.C.G.A. § 40-6-48: Failing to maintain lane**
**O.C.G.A. § 40-1-8(b)(2)(E): Safe operations of motor carriers, commercial motor vehicles, and drivers; safe transportation of hazardous materials**
**O.C.G.A. § 40-6-390 Not keeping his vehicle under control at all times**
**O.C.G.A. § 40-6-391(a)(1-5): Driving under the influence of alcohol, drugs, or other intoxicating substances**
**O.C.G.A § 40-6-93 in failing to exercise due care;**
**O.C.G.A § 40-6-390 for driving reckless;**
**O.C.G.A § 40-6-394 for causing serious injury by a vehicle**

**49 CFR § 393.75(a)(1) Tire-ply or belt material exposed**
**49 CFR § 393.75(a)(3) Tire-flat and/or audible air leak**
**49 CFR § 393.48(a) Inoperative/defective brakes**
**49 CFR § 396.3(a)(1) Brakes out of service**
**49 CFR §§ 383.111; 383.113; and §§ 390-395 Required knowledge and skills of a driver**

**49 CFR § 385.3 Preventable Accident**

**O.C.G.A. §§ 51-12-5.1 and 40-6-241.2 Driver's actions in failing to stop and/or slow his tractor-trailer showed willful misconduct or an entire want of care, which would raise the presumption of conscious indifference to consequences**

50 **CFR §390.21 (Markings of CMV)**
**50 CFR §376.11 (General leasing requirements)**
**49 CFR §376.12 (Lease requirements)**
**49 CFR §391.51 (General requirements for driver qualification file)**

**49 C.F.R. § 390.5 (driver's employment status)**
**49 U.S.C. § 31132(2) (driver's employment status)**

**b. Damages claimed by Plaintiffs (TO DATE):**

1. **Medical expenses incurred of Kyle Sloan (to date) $322,537.35**
2. **Past medical expenses of Jamie Sloan: $98,830.46.**
3. **Past medical expenses of Rylie Sloan: $53,613.51.**
4. **Future medical expenses of Kyle Sloan (to date): $ 1,205,892.00**
5. **Loss of Jamie Sloan's Earnings: total present value loss: $793,814.00**
6. **Loss of Jamie Sloan's Household Services: total present value loss: $374,971.00.**
7. **Lost Earnings of Kyle Sloan: total present value loss: $1,276,231.00.**
8. **Lost Earnings (Fringe Benefits) of Kyle Sloan: total present value loss: $177,189.00**
9. **Loss of Household Services of Kyle Sloan: $264,676.00**
10. **Permanent injury and actual damages of Kyle Sloan – damages to be ascertained by jury.**
11. **Wrongful death and survival of Jamie Sloan – Plaintiffs seek all non-economic damages available under applicable law, and all damages available under the wrongful death and survival statutes**
12. **Wrongful death and survival of Rylie Sloan – Plaintiffs seek all non-economic damages available under applicable law, and all damages available under the wrongful death and survival statutes.**
13. **Plaintiffs may seek punitive damages as to one or more of the Defendants.**

**Riley Sloan**
**Date of birth: July 11, 2007**

**Kyle Sloan**
**Date of birth: January 13, 1981**
**Alleged life expectancy: 78.3 years**

**Jamie Sloan**
**Date of Birth: May 7, 1979**

**As to probable duration of the injuries, lost earnings, and pain and suffering, please see attached (1) Life Care Plan as to Kyle Sloan; (2) Expert Report of Kim Collins, M.D.; and (3) Expert Report of Charles Alford, Ph.D.**

12. In contract cases or any other action not addressed in paragraphs 10 or 11, any party having a burden of proof shall outline the particular alleged breach of contract or the basis of any other cause of action, enumerate any applicable statute involved, and detail the damages or relief sought and recite appropriate supporting authority.

**Not applicable.**

13. If there is any dispute as to agency, state the contentions of the parties with respect to agency.

**For Plaintiff: Mayflower is responsible for Burist's negligence under Georgia agency principles, respondeat superior, and applicable federal motor-carrier law and regulations. In order for Moholland and/or Burist to lawfully operate the truck at the time of the accident, they needed the following: 1.) A valid cab card which identified Mayflower as the motor carrier responsible for safety, 2.) Missouri license plate assigned to Mayflower transit, 3.) 2022 IFTA fuel tax sticker assigned to Mayflower transit, 4.) Motor Carrier DOT number which identified Mayflower as the entity associated with the truck; 5.) Valid equipment lease; 6.) Valid agency agreement.**

**The equipment lease granted Mayflower exclusive possession and control of the truck which Burist was driving at the time of the incident giving rise to Plaintiff's Complaint.**

**Furthermore, Mayflower expressly granted authority to continue to use the license plate, cab card, and IFTA sticker through the date of loss.**

**For Defendant Mayflower: There is a dispute regarding agency. There is no basis for attribution under any agency or vicarious liability theory. Mayflower had no role or participation in the incident that gives rise to Plaintiffs' claims here. The Mayflower logo and DOT number improperly remained on the subject truck, a truck which by Mulholland's admission was under the sole authority of Mulholland, Inc. and driven by Defendant Burist (who was employed by Defendant Locke Relocations. The same applies to the IFTA stickers and materials in the cab of the truck (which were under Moholland and Locke's control). There is no evidence of ratification, approval, direction, or control; there can be no attribution to Mayflower. Mayflower was not on the bill of lading, Mayflower was not involved in the transportation in any way, Mayflower did not get paid, Mayflower did not profit, and Mayflower's system does not reflect this load.**

**For Defendant Joe Mohalland: Burist was an agent of Defendant Moholland and operating under Moholland's active and valid DOT authority. Defendant Mayflower had no involvement in this collision. Defendant Mayflower had no control over the time, manner, or method of Defendant Burist's actions on the date of the collision. Defendant Mayflower did not dispatch the load at issue. Defendant Mayflower did not pay Moholland for the load at issue. Defendant Mayflower was not found to be the responsible motor carrier for this load by the Department of Transportation or the Federal Motor Carrier Safety Administration.**

14. State who has the burden of proof (including any affirmative defenses or special issues) and who has the opening and closing arguments to the jury.

**<u>For the Plaintiffs:</u>**

**The Plaintiff has the burden of proof on liability and claimed injuries and damages.**

**The Defendants have the burden of proof regarding all affirmative defenses they have raised.**

**<u>For Defendant Mayflower</u>:**

**Mayflower states that identity of the defendant (agency, or scope of employment) responsible is an element of the claim of negligence, as to all elements (duty, breach, causation, and damages) and Plaintiffs bear the burden of proof to show that this load was under Mayflower's authority at the time of the incident. The affirmative defense—either that this was outside the scope of employment, or that Moholland, Burist, and Locke acted without Mayflower's involvement or authority—only applies once Plaintiffs can show there was agency on that date.**

**Opening and Closing arguments for Mayflower will be handled by Todd Ehrenreich.**

**<u>For Defendant Joe Moholland</u>:**

**Moholland has the burden of proof as to its affirmative defense of Release and reserves the right to do so at trial if necessary. Based on the absence of evidence of other applicable insurance covering Moholland and the terms and conditions of the Limited Liability Release, Moholland contends that it is entitled to judgement in its favor as a matter of law and intends to seek directed verdict upon the conclusion of Plaintiffs' case, unless permitted by the Court to seek directed verdict earlier in the proceedings. See *FERGUSON et al. v. SPRAGGINS,* 371 Ga. App. 727 (2024); 902 S.E.2d 708; 2024 Ga. App. LEXIS 210.**

15. Under this paragraph, both plaintiff(s) and defendant(s) should separately list the witnesses whom each will have present at the trial and those whom each may have present at the trial. Witnesses intended to be used solely for impeachment shall be listed; however, if a party has a genuine reason for not listing and disclosing an impeachment witness, such party may address the Court ex parte and seek a ruling as to whether disclosure may be properly withheld. A representation that a party will have a witness present may be relied on by the opposing party unless notice to the contrary is given in sufficient time prior to trial to allow the opposing party to subpoena the witness or obtain his testimony. If a witness is not listed when the proposed pretrial order is filed, the Court will not allow the addition of a witness by any party, EXCEPT for providential or other good cause shown to the Court by application for amendment to this Order.

**<u>Plaintiff Will Call</u>:**

1. **Kyle Sloan**
2. **Jordan Sloan Stone**
3. **Will Stone**
4. **Wanda Howard**
5. **John Sloan**
6. **Mariette Goble**
7. **Tony Roberts**
8. **Seargent Shane T. Copeland**
9. **Steve Breland (Vector Group, LLC)**
10. **Brian Trotter (Vector Group, LLC)**
11. **Rick Shell (Vector Group, LLC)**
12. **Craigan Blankenship**
13. **Anthony McCalister**
14. **Dr. Andrew Bachinskas – via trial deposition**
15. **Dr. Daniel Falcon – via trial deposition**
16. **Elizabeth Cain – via trial deposition**
17. **Dr. Todd Morton – via trial deposition**
18. **Dr. Charles Alford – via trial deposition**
19. **Rebecca Bailey, RN, CNLCP, CLCP, LCP-C**
20. **Ashley McAlister Oglesby Sloan**
21. **Jim Howard**
22. **Brooks Regumer**
23. **Dr. Kim A. Collins**
24. **Cynthia Grimley – via trial deposition**

**Regarding Plaintiff's Expert, Brooks Regumer: Mr. Regumer recently had surgery, and is awaiting medical clearance from his doctor to travel. Plaintiff will continue to keep the Court and the parties updated, as Mr. Regumer may require his testimony to be provided remotely.**

**<u>Plaintiff May Call</u>:**

1. **Nicholas Burist**
2. **Jason Jones**
3. **Michael Kratzer**
4. **Rob Garr**
5. **Christopher Wynn**
6. **Angela Locke**
7. **Dr. Peter Gillespie**

8. **Jack Donovan / Trans Advantage representative**
9. **Robert McCabe / UniGroup representative**
10. **Mayflower Transit LLC Rule 30(b)(6) representative(s)**
11. **Joe Moholland, Inc. Rule 30(b)(6) representative(s)**
12. **Locke Relocations LLC Rule 30(b)(6) representative(s)**
13. **Rachel Huddleston**
14. **Rob Lee (Vector Group, LLC)**
15. **Custodians of records, if necessary**
16. **Any witness listed by another party**
17. **Dr. Fahd Qauddas**
18. **Dr. Matthew Baird**
19. **Erin Schultz**
20. **Michael Ruff**
21. **Elizabeth Fisher**
22. **Rebuttal/impeachment witnesses**

**Mayflower Defendants Will Call:**

1. **Nicholas Burist**
2. **Angela Locke – 30(b)(6) of Locke Relocations**
3. **Rob Garr – 30(b)(6) of Joe Moholland, Inc.,**
4. **Jason Jones – 30(b)(6) of Mayflower**
5. **Michael Kratzer – 30(b)(6) of Mayflower**
6. **One or More Corporate Representatives to testify regarding the substances of Mayflower's Defense.**
7. **Christopher Wynn**
8. **Misty Coffman – Life Care Planner**
9. **Adam Petry**
10. **Nikki Crum**
11. **Phillip Smith – Analysis, Inc.**

**Mayflower Defendants May Call:**

1. **Any witness listed by another party.**
2. **Jack Donovoan – 30(b)(6) of TransAdvantage**
3. **Robert McCabe – 30(b)(6) of UniGroup**
4. **Erin Shultz**

5. **Michael Ruff**
6. **Elizabeth Fisher**
7. **Michael Peters**
8. **Darniece Martin**
9. **Kathy Steis**
10. **Sue DeMien**

**<u>Locke Relocations Will Call:</u>**

**None.**

**<u>Locke Relocations May Call:</u>**

1. **Angela Locke**
2. **Kelvin Locke**

**<u>Defendant Nicholas Burist will call</u>:**

**1. Nicholas Burist by video deposition because he is currently incarcerated in the Coffee Correctional Facility in Nichols, Georgia.**

**<u>Defendant Burist may call</u>:**

**1. Any witness listed by a party to the Pretrial Order.**

**<u>Joe Mohalland Will Call</u>:**

**Defendant Joe Moholland: Rob Garr**

**<u>Joe Mohalland May Call</u>:**

**Defendant Joe Moholland:**

1. **Mike Peters**
2. **Officer. J. Conaway, Badge #0098**
3. **Custodians of records, if necessary**
4. **Any witness listed by another party**
5. **Rebuttal/impeachment witnesses**

**NOTE: COUNSEL MUST SUBMIT TO THE COURTROOM DEPUTY CLERK THREE COPIES OF THE TYPED WITNESS LIST AT THE PRETRIAL CONFERENCE.**

16. All documents and physical evidence that may be tendered at the trial shall be exhibited to and initialed by opposing parties prior to the pretrial conference. All evidence shall be marked by the parties prior to the pretrial conference, and the parties are encouraged to submit a joint exhibit list on a form supplied by the Clerk. If separate exhibit lists are submitted, they shall be submitted on the forms supplied. Duplications of exhibits should be avoided to the extent practicable. Exhibit lists should be submitted to the Court at the pretrial conference. The material therein shall be identified as follows:

(a) A list of documents and physical evidence submitted as joint exhibits.

(b) Where separate lists are being submitted, a list of documents and physical evidence to be introduced by the plaintiff(s). Copies of such exhibits shall be provided to counsel for each other party.

Objections and reasons therefor shall be stated in writing and be filed five (5) days prior to the time of the pretrial conference. Items not objected to will be admitted when tendered at trial.

(c) Where separate lists are being submitted, a list of documents and physical evidence to be introduced by the defendant(s). Copies of such exhibits shall be provided to counsel for each other party.

Objections and reasons therefor shall be stated in writing and be filed five (5) days prior to the time of the pretrial conference. Items not objected to will be admitted when tendered at trial.

(d) Any document or other physical evidence listed by any party and not objected to, or to which objections have been overruled, may be received in evidence on offer by any other party, in the event the listing party does not actually offer it into evidence.

(e) The foregoing shall not be deemed or construed to expand or limit the rules relating to the admissibility of evidence generally.

**Plaintiff wishes to bring to the Court's attention that as of the due date of this Pretrial Order, discovery has not been completed. Specifically, Plaintiff has yet to be furnished with supplemental discovery responses, as this deadline for additional production of documents from Defendant Mayflower was set for 10/5/2026 by Judge Cheesbro – a deadline that is one day prior to the pretrial conference. Therefore, Plaintiff cannot furnish a complete set of documentary evidence yet. Plaintiff has provided Defendants with all expected evidence.**

**See attached Joint Evidence List, "Attachment D"**

**Plaintiff hereby incorporates all arguments *in limine.***

**Defendant Mayflowers Exhibit List:**

**Defendant Mayflower wishes to bring to the Courts attention the timing and availability of the Plaintiff's exhibit list. In this matter the Plaintiffs provided approximately 160 documents, videos, audio records, and other materials to be their proposed trial exhibit at Midnight on Thursday. This late production made it functionally impossible for the parties to review and prepare written objections in a timely manner as requested by this order.**

17. List all witnesses whose testimony by deposition will or may be offered by each party and the specific deposition pages and lines to be offered. All objections by opposing parties to any portions of the deposition(s) shall be set forth with specific reference to the portion of the testimony objected to and the basis therefor.

(a) Prior to trial, counsel shall confer to eliminate all extraneous, redundant, and unnecessary matter, lapses, and colloquy between counsel in the deposition excerpts. Counsel shall also attempt to resolve all objections to deposition testimony to be offered.

(b) The parties shall, if practicable, conform deposition exhibit numbers in trial questions and testimony to the numbers of trial exhibits.

**Plaintiff's witnesses whose testimony may be offered by deposition, including deposition exhibits:**

**Nicholas Burist**
**Jason Jones**
**Michael Kratzer**
**Rob Garr – Designations:**

- 37:6 – 40:17
- 43:24-25 - 44:2
- 48: 20-23
- 55: 11 – 57:15
- 60:11- 63:4
- 91:20-24
- 92:15-21
- 98:11-15
- 103:9 -13
- 104:14 – 105:9
- 106:12 – 107:25
- 110:17 -23
- 117:5-25
- 124:6 – 126:25
- 128:1-9
- 129:7 – 130:18
- 138:1-25
- 139:17-25
- 140:3- 141:21
- 145:8 – 146:1
- 148:14 – 149:6
- 154:9 – 155:10
- 161:5 – 162:17
- 163:11 – 167:20
- 175: 21 – 179:3
- 181: 13 – 184:3

**Christopher Wynn – Designations:**

- 7:6 – 8: 17
- 13:19 – 17:21
- 20:3 – 21: 13

- 21:23 – 22:17
- 27:14-19
- 29: 2 – 32:4
- 36:3-14
- 42:25, 43:1-2, 44:2-16
- 47:3 – 56:18
- 61:2 – 64:12
- 65:4 – 66:16
- 67:7 – 73:17
- 79:18 – 81:18
- 82:11 – 85:14
- 95:14 – 96:15
- 102:23 – 104:6
- 109:24 – 110:14
- 115:17 – 116: 8
- 118:20 – 120:4
- 128:20 – 129:22
- 131:8 – 133:3
- 147:3 – 150: 9
- 159:3 – 160:24
- 162:19 – 163:7
- 165:7 – 171:21
- 176:14 – 178:25
- 182:15-23
- 184:2-186:17
- 189:1 – 190:7
- 192:4-193:2
- 195:16 – 198:18

**Rachel Huddleston**

**Angela Locke - Designations**

- 7:9-11
- 10:10 – 11:13

- 14:3-21
- 15:2 – 21:2
- 21:19 – 24:16
- 33:2 – 36:15
- 41:14 -16
- 43:25 – 44:7
- 50:11 – 51:19
- 58:3-9
- 59:9 -21
- 62:11 – 64:20
- 67:1 – 18
- 68:14 - 69:9
- 72:8-14
- 74:5 – 79:8
- 81:1 – 82:15
- 88:21 – 89:19
- 93:18 – 94:4
- 94:16 – 95:6
- 99:14 – 100:21
- 105:10 – 106:4
- 110:6 – 111:3
- 111:21 – 112:14

**Jack Donovan / Trans Advantage – Designations:**

- 7:19 – 8:6
- 20: 2 – 22:3
- 22:21-23
- 38:3-7
- 38:19 – 39:4
- 51:4-17

- 62:1 – 63:16
- 63:24 – 65:24
- 67:15 – 68:9
- 72:5 – 74:11
- 76:4-77:25
- 81:1-19
- 84:20 – 86:10
- 92:1-12
- 97:3-22
- 99:13- 100:8

**Robert McCabe / UniGroup**
**Dr. Andrew Bachinskas – full trial deposition to be offered.**
**Dr. Daniel Falcon – full trial deposition to be offered.**
**Elizabeth Cain – full trial deposition to be offered.**
**Dr. Todd Morton – full trial deposition to be offered.**
**Dr. Charles Alford – full trial deposition to be offered.**
**Cynthia Grimley – full trial deposition to be offered.**

**Defendants' witnesses to testify via deposition:**

**Mayflower Witnesses Whose Testimony May be Offered in whole or in part via deposition:**

**Nicholas Burist**
37:9-15
38:11-17
65:1-9
76:20-21
89:1-8
91:9-23
92:6-19
95:18-23
96:7-14
109: 18-25

112:24-113:5
117: 1-5
126:22-127:4
171:20-173:7
172:4-9
173:2-6
176:22-25.
201:11-21.
202:24-203:9.
203:23-204:14.
204:22-205:9
205:14-23.
205:7-13
242:11-25
256:25-257:12.
275:1-289: 25.
292:6-9.
301:5-301:16
301:19-25

Pg. 12-23
Pg. 38
Pg. 60
Pg. 51
Pg. 52
Pg. 57-58
Pg. 65
Pg. 80
Pg. 81
Pg. 86
Pg. 90-91
Pg. 94
Pg. 108
Pg. 147
Pg. 155-156
Pg. 197
Pg. 227
Pg. 228, 229
Pg. 230
Pg. 233

Pg. 258
Pg. 279
Pg. 281
Pg. 283
Pg. 284
Pg. 288
Pg. 289
Pg. 301-02

**Jason Jones**
Pg. 29
Pg. 33-34
Pg. 37.
Pg. 47.
Pg. 59.
Pg. 54.
Pg. 73-74
Pg. 77-78
Pg. 84
Pg. 124
Pg. 156-158,
Pg. 159-160

**Michael Kratzer**
Pg. 88
Pg. 16-17
Pg. 21
Pg. 23
Pg. 58
Pg. 70
Pg. 71
Pg. 73
Pg. 74-75
Pg. 114
Pg. 40
Pg. 121-124
Pg. 124-125
**Pg. 136**

**Rob Garr:**
Pg. 10
Pg. 13
Pg. 15
Pg. 22-24
Pg. 25-26
Pg. 28-29
Pg. 31-32
Pg. 33-34
Pg. 35
Pg. 36
Pg. 38
Pg. 54
Pg. 56
Pg. 58
Pg. 59-60
Pg. 66
Pg. 67
Pg. 72
Pg. 73, 78
Pg. 83
Pg. 84
Pg. 92-93
Pg. 96
Pg. 98
Pg. 99-100
Pg. 107-108
Pg. 110.
Pg. 114-115
Pg. 121
Pg. 123
Pg. 127
Pg. 136
Pg. 195-196
Pg. 199
Pg. 201

Pg. 189:1-201:12

**Dr. Bachinskas: 113:18-121:20, as well as full trial deposition and cross examination.**

**Dr. Falcon: Defendants anticipate offering his full trial deposition and cross examination. However, Dr. Falcon's deposition has not yet occurred. Should it be necessary, Defendant will submit necessary designations.**

**Elizabeth Cain:**
Pg. 76-79: 1-16
Pg 124:6 – 144:16
Pg. 144:19-153:17
**As well as the full trial deposition and cross examination.**

**Dr. Todd Morton: Entire trial cross examination.**

**Dr. Charles Alford: Entire trial cross examination. However, Dr. Alford's deposition has not yet occurred. Should it be necessary, Defendant will submit necessary designations.**

**Dr. Cynthia Grimley: Entire trial cross examination.**

**Jack Donovan**
Pg. 32
Pg. 39
Pg. 42
Pg. 36
Pg. 52
Pg. 53
Pg. 72
Pg. 81
Pg. 92
Pg. 93

**Chris Wynn**
Pg. 9
Pg. 97
Pg. 127
Pg. 130

Pg. 142
Pg. 147

**Angela Locke**
Pg. 11
Pg. 14
Pg. 18
Pg. 19
Pg. 20-21
Pg. 31-32
Pg. 33-34
Pg. 35
Pg. 36
Pg. 37
Pg. 39
Pg. 40
Pg. 42
Pg. 43.
Pg.44
Pg. 47
Pg. 49
Pg. 55
Pg. 58
Pg. 59
Pg. 83-84
Pg. 85-86
Pg. 89
Pg. 93
Pg. 94-95
Pg. 97
Pg. 104
Pg. 121-122
Pg. 123-24
Pg. 125

**Robert McCabe**

**Joe Moholland:**

**Dr. Andrew Bachinskas – Moholland's Full Cross Exam.**
**Dr. Daniel Falcon – Moholland's Full Cross Exam.**
**Elizabeth Cain – Moholland's Full Cross Exam.**
**Dr. Todd Morton – Moholland's Full Cross Exam.**
**Dr. Charles Alford – Moholland's Full Cross Exam.**
**Cynthia Grimley – Moholland's Full Cross Exam.**

18. Each party shall separately provide a memorandum of authorities as to any questions of law likely to arise at the trial, including the merits of plaintiff(s)' claim, defenses asserted, matters of evidence, etc.

**Plaintiff incorporates herein prior briefings as set forth in Response in Opposition to Motion for Summary Judgment (Dkt. 309, 373), Response in Opposition to Motion to Dismiss for Lack of Jurisdiction (Dkt. 29), Motions in Limine. Plaintiff reserves the right to file additional trial briefs, motions in limine, and memorandum of authorities as warranted and/or Ordered by this Court.**

**Mayflower also incorporates its arguments regarding summary judgment and its motions in limine, since Plaintiffs raise them here.**

19. Plaintiff(s)' counsel estimates **8-10 full days**, exclusive of jury selection to present plaintiff(s)' case; defendant(s)' counsel estimates **3 (days)** (hours) to present the defense.

**Defendant Mohalland: 1 day**

20. Plaintiff(s) __**has**__ offered to settle.
Defendant(s) has offered to settle.

It appears at this time that there is
___ A good possibility of settlement.
_X_ Some possibility of settlement.
___ No possibility of settlement.

The parties __**do**__ ~~do not~~ wish to confer with the Court regarding settlement.

21. State any other matters which should be covered by pretrial order, including rulings desired of the Court prior to trial.

**Plaintiff seeks review of the Magistrate Judge's Order on Discovery, specifically regarding the production of emails and documents related to Mayflower Transit and Joe Moholland.**

**Furthermore, Plaintiffs, Defendant Moholland, and Defendant Locke have been in communications regarding their potential dismissal(s). Plaintiffs wish to bring this to the Court's attention, as Plaintiffs anticipate the possibility of filing an Amended Complaint.**

**Mayflower objects to any consideration or review of the Magistrate's handling of discovery at this stage. Mayflower has diligently addressed Plaintiffs' demands for production of tens of thousands of pages of documents have been diligently and properly met throughout the case. These demands arise from the expansive and irrelevant "ongoing relationship" theory Plaintiffs posit, which has nothing to do with this specific load (for which there is no evidence Mayflower is involved.) Mayflower has not been presented with any motion to amend and will respond once such motion is made.**

For Defendant Locke: Based on the absence of evidence of other applicable insurance covering Locke and the terms and conditions of the Limited Liability Release (copy attached for the Court), Locke contends that it is entitled to judgement in its favor as a matter of law and intends to seek directed verdict upon the conclusion of Plaintiffs' case, unless permitted by the Court to seek directed verdict earlier in the proceedings. See *FERGUSON et al. v. SPRAGGINS,* 371 Ga. App. 727 (2024); 902 S.E.2d 708; 2024 Ga. App. LEXIS 210.

22. State whether or not the issues of liability and damages should be tried separately (bifurcated) and give any other suggestion toward shortening the trial. Where bifurcation is opposed by any party, such party shall state the reasons for such opposition.

**The Court has denied Defendant Mayflower's Motion for Bifurcation (Dkt. 401).**

23. In cases where either party requests bifurcation of issues or a special

verdict, submit a copy of the proposed verdict as PLAINTIFF'S ATTACHMENT "C" and/or DEFENDANT'S ATTACHMENT "C" hereto. Lead counsel are to discuss and agree on such special verdict where possible. Where agreement is not reached, state the basis for any objections to the special verdict request.

**See attached Plaintiff's proposed special verdict form as "Plaintiff's Attachment C"**

**Mayflower objects to the special verdict form. Mayflower requests a verdict form that properly apportions liability among those responsible. Item 2 is objected to, because Mayflower does not stand alone on the verdict form. The "responsible motor carrier" inquiry is not properly listed and leaves out special questions regarding whether Locke, Burist, or Moholland were acting on their own authority without Mayflower.**

**Accordingly, additional elements are required on the proposed verdict form.**

**Mayflower submits its own proposed verdict form.**

**Plaintiff objects to Defendant Mayflower's proposed verdict form as will be set forth in further submission to this Court as requested or required.**

**From Joe Moholland: Moholland has admitted or hereby admits that Burist was its employee at the time of the accident and that Burist was the sole cause of this tragic accident. Moholland admits legal responsibility for Burist's negligence and does not dispute that the accident proximately caused the death of the decedents at issue and significant injuries to Mr. Sloan. Moholland is currently unclear what legal claims are being made by Plaintiffs against Moholland that are not covered by the foregoing.**

24. In non-jury cases, the parties shall each file their proposed findings of fact, summary of depositions, and conclusions of law not later than one week prior to the assigned trial date.

**Not applicable.**

25. The final proposed pretrial order shall be signed by counsel for each party and shall contain a final paragraph, as follows:

**IT IS HEREBY ORDERED that the foregoing constitutes a PRETRIAL ORDER in the above case(s), that it supersedes the pleadings which are hereby amended to conform hereto and that this PRETRIAL ORDER shall not be amended except by ORDER OF THE COURT.**

SO ORDERED this ____ day of ___________, 2026.

______________________________________
HONORABLE LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

PREPARED BY:

COUNSEL OF RECORD