**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | |
|---|---|
| KYLE SLOAN, Individually, and as Personal Representative of the Estates of Rylie Sloan and Jamie Sloan, KYLE SLOAN as Surviving Spouse of Jamie Sloan, and KYLE SLOAN as Surviving Parent of Rylie Sloan<br><br>Plaintiffs,<br><br>v.<br><br>NICHOLAS BURIST; LOCKE RELOCATIONS LLC;] MAYFLOWER TRANSIT LLC; and JOE MOHOLLAND, INC.,<br><br>Defendants. | CASE NO. 2:22-cv-00076-LGW-BWC<br><br>**ATTACHMENT B-1 TO CONSOLIDATED PRETRIAL ORDER** |

**PLAINTIFFS' PROPOSED VOIR DIRE QUESTIONS**

Pursuant to the Consolidated Pretrial Order, Plaintiffs respectfully submit the following proposed questions for the Court to propound to the jury panel. Because the Court will obtain each prospective juror's personal background information and will address legal qualifications to serve, those subjects are omitted.

1. This case arises from a collision involving a tractor-trailer on Interstate 95 in Camden County, Georgia, at approximately 2:30 p.m. on July 1, 2022. Have any of you read, seen, or heard anything about this collision, this lawsuit, any criminal case involving Nicholas Burist, or any of the persons or companies involved, whether through newspapers, television, radio, social media, online discussion, or word of mouth? If so, have you formed any opinion about the case?

2. Were you, a family member, or a close friend traveling on Interstate 95 in Camden County on July 1, 2022, delayed by the closure of the interstate that day, present at or near the scene, or told about the collision by someone who was there?

3. Have you or a close family member worked or volunteered for the Camden County Sheriff's Office, the Georgia State Patrol, the Georgia Department of Public Safety, any fire-rescue or emergency medical service, the Camden County Jail, or any hospital or

trauma center in southeast Georgia or northeast Florida? If so, did you have any involvement with, or hear any discussion of, this collision?

4. The Court will read the names of the parties, attorneys, law firms, companies, and potential witnesses. Do you know, or have you had any business, social, professional, or family relationship with, any of them?

5. Other people were also injured or killed in this same collision. Do you know any other person who was involved in the collision, or any member of their families?

6. Kyle Sloan and his family lived in South Carolina. Mayflower Transit LLC is a Missouri company, Nicholas Burist is a resident of Virginia, and several of the lawyers in this case practice outside Georgia. Would the fact that a party or lawyer is from outside Georgia cause any of you to favor or disfavor that party? Does anyone believe that people who live in another state should not bring a lawsuit in a Georgia court?

7. This trial is expected to last approximately 8 – 10 days. Is there anything about the anticipated length of this trial, your employment, health, family responsibilities, or other circumstances that would prevent you from giving this case your full attention?

8. Do any of you have any difficulty with hearing, eyesight, reading, or sitting for extended periods, or take any medication, that could make it hard to follow testimony or review photographs, documents, and video?

9. Can each of you decide this case solely from the evidence admitted in court and the law as the Court instructs you, even if that law differs from what you previously believed the law to be or what you think the law should be?

10. Would any of you have difficulty waiting until all the evidence has been presented, the Court has instructed you on the law, and counsel have completed closing arguments before forming a final opinion?

11. Do any of you hold religious, moral, or philosophical beliefs that would make it difficult for you to sit in judgment of another person or a company, or to return a verdict for or against any party?

12. Have any of you previously served on a jury or grand jury, in state or federal court? Without telling us the result, please state whether it was a civil or criminal case, whether the jury reached a verdict, and whether you served as foreperson. Is there anything about that experience that would affect your ability to serve fairly here?

13. Some witnesses in this case will testify through recorded depositions rather than in person. Would any of you give that testimony more or less weight simply because the witness did not appear live in the courtroom, and instead appeared through a television screen?

14. Have you, a family member, or a close friend ever been involved in a serious motor-vehicle collision that resulted in significant injury or death?

15. Have you, a family member, or a close friend ever been involved in a collision with a tractor-trailer or other commercial motor vehicle?

16. Do any of you hold strong feelings about tractor-trailers on the interstate, for example, that they are generally unsafe, or that truck drivers are often unfairly blamed for collisions, that would make it difficult for you to evaluate the evidence in this case with an open mind?

17. Have you or a close family member ever been a professional truck driver, owner-operator, dispatcher, motor-carrier employee, freight broker, logistics employee, safety director, fleet manager, or truck mechanic, or leased equipment to a motor carrier, or worked in the moving or transportation industry?

18. Have you ever held a commercial driver's license, or been responsible for driver qualification files, hours-of-service compliance, drug and alcohol testing programs, roadside inspections, commercial vehicle maintenance or inspection, IRP or IFTA credentials, cab cards, license plate registration for commercial vehicles, or DOT compliance? Have you worked for, or had significant dealings with, the Federal Motor Carrier Safety Administration, a state department of transportation, the Georgia Department of Public Safety Motor Carrier Compliance Division, or a commercial-driver licensing agency?

19. Have you or someone close to you ever been cited, disciplined, terminated, sued, or prosecuted because of conduct involving a commercial motor vehicle?

20. Would any of the experiences we have just discussed make it difficult for you to evaluate the evidence in this case without favoring either a trucking or moving company, a commercial driver, or an injured person?

21. Have you or any close family member ever worked for, driven for, contracted with, purchased services from, or had a significant dispute with Mayflower Transit, UniGroup, United Van Lines, Trans Advantage, Joe Moholland, Inc., Locke Relocations, Total Military Management, or any other company affiliated with them?

22. Have you or any close family member ever worked for a household-goods carrier, interstate moving company, moving agent, military-move contractor, or any company involved in transporting military or government household goods?

23. Have you or a close family member moved using an interstate moving company, including a military or government move such as a permanent change of station? Was that experience especially good or especially bad in a way that could affect how you view the moving companies in this case?

24. Have you or a close family member owned or operated a business as a franchisee, dealer, licensed agent, or independent contractor that did business under another company's name, brand, license, or operating authority? Would that experience affect how you view the relationships among the companies and the driver in this case?

25. Do you or any close family member own stock in, or have any other financial interest in, a trucking, moving, logistics, or insurance company?

26. This case includes a dispute over whether the driver and one or more transportation companies were acting as agents of, or with authority from, Mayflower Transit at the time of the collision. Would any of you have difficulty applying the Court's instructions concerning agency and responsibility, even if the legal relationship is different from an ordinary employer-employee relationship?

27. Would any of you automatically conclude that a company cannot be legally responsible for the conduct of a driver unless that company directly issued the driver a paycheck?

28. Conversely, would any of you automatically hold a company responsible merely because its name, markings, license plate, or DOT number appeared on a vehicle, without first considering all of the evidence and the Court's instructions?

29. The evidence may include written agreements that the companies say ended before the collision, as well as evidence of what the companies said and did afterward. Does anyone believe that a written contract alone always settles who is responsible, regardless of other evidence of what the companies said and did? Does anyone believe the opposite, that written contracts do not matter? Can you consider all of that evidence under the Court's instructions?

30. The evidence may involve license plates, cab cards, fuel-tax (IFTA) stickers, DOT numbers, and operating authority. Does anyone already hold a firm view, one way or the other, about whether items like these are important or are merely paperwork, such that you could not decide their significance based on the evidence and the Court's instructions?

31. Does anyone believe that a company should never be responsible for work done by independent companies or contractors it deals with, or, on the other hand, that a company should always be responsible for anyone whose work is connected to its business, regardless of the Court's instructions?

32. If the Court instructs you that a corporation may act only through human beings and may in some circumstances be legally responsible for acts performed through agents, can you apply that instruction without adding requirements of your own?

33. Do any of you have such favorable or unfavorable views of large corporations, trucking companies, moving companies, or national businesses that those views could affect your consideration of the evidence?

34. Does anyone believe that a company's size, reputation, history, or importance to the economy should make a difference in deciding whether it is legally responsible or what damages are owed? Does anyone believe that verdicts against trucking or moving companies raise prices, increase insurance costs, or cost jobs, in a way that could affect your decision in this case?

35. The evidence may involve federal motor-carrier safety requirements, including driver qualification, vehicle inspection and maintenance, vehicle identification, operating authority, and safety records. Would any of you be unwilling to apply federal safety regulations as the Court explains them?

36. Do any of you believe that government safety regulations are generally unnecessary or should not be considered in deciding civil responsibility, even if the Court instructs you that particular regulations are relevant?

37. Do any of you believe that violation of a safety rule or regulation should automatically result in liability without considering the legal instructions the Court gives you?

38. There may be evidence about the condition of the tractor and trailer, including tires and brakes. Do any of you hold fixed beliefs about who is responsible for inspecting and maintaining a commercial truck that you could not set aside in favor of the evidence and the Court's instructions?

39. The evidence may include allegations and evidence concerning alcohol or drugs and the operation of a commercial motor vehicle. Do any of you have personal or family experiences involving alcohol abuse, drug abuse, addiction, impaired driving, DUI, or a collision involving an impaired driver that could affect your ability to be impartial?

40. Do any of you have such strong feelings about alcohol or drug use that the mere introduction of that evidence would cause you to decide the case before considering all of the evidence and the Court's instructions?

41. There may be evidence concerning criminal proceedings arising from the collision. Would the existence of a criminal charge or conviction cause any of you automatically to decide the civil responsibility of a different party without separately considering the evidence and the law applicable to that party?

42. A party may not be present in the courtroom during some or all of the trial. Would any of you hold a party's presence or absence for or against that party or any other party, rather than following the Court's instructions?

43. Have you or a close family member ever been a plaintiff or defendant in a lawsuit, or made or had made against you a claim for personal injury, wrongful death, or substantial money damages, whether or not a lawsuit was filed?

44. Have you ever worked for an insurance company, claims department, third-party administrator, risk-management department, defense firm, plaintiff's law firm, or company that regularly handles personal-injury or wrongful-death claims?

45. Do any of you have strong feelings, favorable or unfavorable, about people who bring civil lawsuits seeking money damages, or about lawyers who represent plaintiffs or defendants in those lawsuits?

46. Have you read, seen, or heard advertising, articles, or campaigns about "lawsuit abuse," "tort reform," "nuclear verdicts," or trucking lawsuits, or have you belonged to or supported any organization concerned with those issues or with highway and truck safety? If so, has anything you have read or heard led you to form views that would affect how you decide this case?

47. If the Court instructs you that money damages are the remedy provided by law for certain proven losses, would any of you have a moral, religious, philosophical, or personal objection to awarding money damages in an amount supported by the evidence?

48. Would any of you impose your own personal limit on a damages award, high or low, regardless of the evidence and the Court's instructions? If the evidence warranted a damages award of $100 million, could you follow the law and issue such an award?

49. Would any of you require a plaintiff to prove damages with mathematical precision even if the Court instructs you that the law permits certain damages to be determined from the evidence using your reasoned judgment?

50. The plaintiffs seek damages for losses that do not come with a bill or receipt, such as physical and mental pain and suffering, emotional distress, permanent impairment, and loss of enjoyment of life. Does anyone believe those kinds of losses should not be compensated with money, or are too difficult to measure to be compensated at all, even if the Court instructs that they may be?

59. The Court may instruct you on how Georgia law measures damages for a wrongful death, which may include the full value of the life of the person who died. Would any of you be unable or unwilling to place a monetary value on a human life if the Court instructs you that the law requires it?

60. One of the persons who died was a fourteen-year-old child who had not yet entered the workforce. Would any of you have difficulty following the Court's instructions about how to value the life of a child who had no earnings history?

61. Some claimed damages relate to the future, such as future medical care and lost future earnings, and may be presented through life-care planners, physicians, and economists. Does anyone believe future damages are too speculative ever to be awarded, even if the Court instructs that they may be?

62. The Court may instruct you on punitive damages, which Georgia law permits only when a heightened standard of proof is met. Would any of you be unwilling to consider punitive damages if the Court instructs that they are permitted and the evidence meets that standard? Conversely, would any of you award them without requiring that standard to be met?

63. Can each of you follow the Court's instructions not to consider or speculate about insurance, attorney's fees, taxes, payments from other sources, or any other matter the Court tells you not to consider?

64. This case involves the deaths of a wife and a child and serious injuries to a surviving husband and father. Have you experienced the death of a spouse, child, parent, sibling, or other close family member under circumstances that could make it difficult for you to evaluate this case impartially?

65. Have you ever witnessed the serious injury or death of a family member or loved one, or been present at the scene of a fatal accident?

66. Would the fact that a child died make it difficult for any of you to consider the liability of each defendant separately and require proof against each defendant under the Court's instructions?

67. The Court will instruct you not to decide the case based on sympathy or prejudice for or against any party. Can each of you follow that instruction while also fairly considering any damages that the evidence proves and the law allows?

68. The evidence may include photographs of the collision scene and testimony about injuries and death, including what the persons who died may have experienced before death. Would any of you be unable to look at or listen to that evidence and evaluate it fairly?

69. Would any of you have difficulty listening to evidence about grief, trauma, psychological injury, or changes in family relationships and considering that evidence without either automatically accepting it or automatically discounting it?

70. Do any of you believe that emotional or psychological injuries are not real injuries unless they can be seen on an X-ray, MRI, or other physical test, or that a person should be expected to "get over" grief or trauma within a set period of time?

71. Do any of you have strong views about counseling, therapy, or psychiatric medication, for example, that seeking mental-health treatment is a sign of weakness or is done to support a lawsuit, that would affect how you view that evidence?

72. Do any of you have beliefs about grief, remarriage, recovery after loss, or how a person "should" behave after a family tragedy that could prevent you from evaluating the particular evidence about Kyle Sloan fairly?

73. Have you or someone close to you had cervical-spine (neck) surgery, significant hand surgery, chronic pain treatment, psychological counseling, or treatment for post-traumatic symptoms in a way that could affect how you view the medical evidence here?

74. Have you or a close family member worked in health care, including as a physician, nurse, therapist, psychologist, or in medical billing, coding, or records? Does anyone hold strong views that medical bills are generally inflated or should be discounted?

75. Do any of you have strong positive or negative views about doctors, psychologists, nurse practitioners, life-care planners, economists, accident reconstructionists, or paid expert witnesses that would cause you to accept or reject an opinion based on the witness's occupation, credentials, or compensation rather than the evidence supporting the opinion?

76. Can you evaluate competing expert opinions by considering the witnesses' qualifications, assumptions, methods, facts relied upon, and the other evidence in the case?

77. Do any of you have training in engineering, accident reconstruction, trucking, medicine, economics, or another specialized field that might lead you to rely on your own expertise rather than the evidence presented in court?

78. Have you or a close family member worked as a police officer, state trooper, sheriff's deputy, crash investigator, prosecutor, corrections officer, or in another law-enforcement position?

79. Would you tend to give a law-enforcement witness more weight merely because of the witness's position, or less weight merely because of the witness's position?

80. Some witnesses will be current or former employees or representatives of the companies involved. Would any of you automatically believe or disbelieve a witness because the witness works for, or is testifying on behalf of, a company?

81. Can you evaluate eyewitness testimony using the same common-sense considerations you would use with any other witness, including opportunity to observe, memory, consistency, and the other evidence?

82. Would any experience you have in the trucking, logistics, moving, military transportation, insurance, law-enforcement, medical, or legal fields cause you to give greater or lesser weight to a witness before hearing that witness's testimony?

83. The plaintiffs have the burden of proving their claims by the standard the Court will explain, which is different from the standard in a criminal case. Would any of you require proof beyond a reasonable doubt because the collision also involved criminal proceedings?

84. Would any of you require the defendants to prove that they are not responsible rather than holding the plaintiffs to the burden the Court assigns?

85. There are multiple defendants and multiple legal theories. Can each of you consider the evidence and the Court's instructions separately as to each defendant, and, if you conclude the evidence establishes responsibility as to one defendant but not another, return a verdict that reflects those separate conclusions?

86. You may hear evidence about persons or companies that are not parties in this trial. Can you follow the Court's instructions about how, if at all, to consider their conduct, without speculating about why any person or company is or is not a party?

87. Can you follow the Court's instruction not to conduct internet searches, use social media to investigate the case, consult artificial-intelligence tools about the case, visit the accident scene, or discuss the evidence with anyone outside the jury until the case is over?

88. If you encounter information about the case outside the courtroom, can you refrain from considering or sharing it and promptly advise the Court as instructed?

89. Do any of you regularly post, comment, or participate in online groups about legal cases, jury verdicts, trucking, the moving industry, or traffic safety?

90. Is there any subject we have discussed that you would prefer to address privately rather than in open court?

91. Is there anything in your background, experiences, beliefs, or relationships that has not been covered but that might affect your ability to serve as a fair and impartial juror in this case?

93. Can each of you commit to giving the plaintiffs and each defendant a fair trial, applying the same burden of proof and the same rules of evidence and law to all parties?

Respectfully submitted this ____ day of ______________, 2026.

s/ Charles J. Hodge
Charles J. Hodge
Admitted Pro Hac Vice
J. Camden Hodge
Admitted Pro Hac Vice
HODGE LAW FIRM
P.O. Box 2765
Spartanburg, SC 29306
Tel: (864) 585-3873
Fax: (864) 585-6485
CHodge@hodgelawfirm.com

Joseph R. Padgett
GA Bar No. 872672
HAMILTON & PADGETT, LLC
13 St. Andrews Ct.
Brunswick, Georgia 31520
Tel: (912) 200-2727
joseph@hamiltonpadgettlaw.com

T. Ryan Langley
Georgia State Bar No. 692386
Matthew T. Foss
Admitted Pro Hac Vice
LANGLEY LAW FIRM
229 Magnolia Street
Spartanburg, SC 29306
Tel: (864) 774-4662
Ryan@thelangleylawfirm.com
Matt@thelangleylawfirm.com

Attorneys for Plaintiffs