**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | |
|---|---|
| KYLE SLOAN, et. al.<br><br>Plaintiffs,<br><br>v.<br><br>MAYFLOWER TRANSIT LLC; et. al.<br><br>Defendants. | CASE NO: 2:22-cv-0076-LGW-BWC |

**DEFENDANT MAYFLOWER TRANSIT, LLC'S**
**<u>WRITTEN OBJECTIONS TO THE PLAINTIFF'S PROPOSED EXHIBITS</u>**

On Thursday October 1, counsel for the Plaintiff provided the Defendants with a copy of their exhibit list, as well as share link for electronic access to the materials. After careful review of the materials provided by the Plaintiffs Defendant Mayflower provides the following objections to the proposed exhibits.

## I. Defendant Mayflower Objects to the admission of the Email Correspondences Proposed at Exhibit 8, 13, 17, 20, 25-27, 31, 37, 45, 49, 122, 128, 129, 134, 151, and 156.

Defendant Mayflower objects to these emails as hearsay under Rule 801 et. seq., of the Federal rules of Evidence. These emails are, quite simply, out of court statements being offered for the truth of the matter asserted in the statements. The Plaintiff attempts to offer these emails to prove Mayflower's actions, conduct, or capacity regarding the Missouri license plates in use by the Co-Defendants. However, the emails proffered, are uniformly hearsay. Exhibit 8, 13, 20, 25, 26, 27, 31, 37, 122, 128, 129, 134, 151, and 156 all contain out of court statements made by Mayflower employees regarding the location of and return of the license plates at issue in this litigation.

The Plaintiff plans to offer them for the truth of the material asserted in the emails. That is hearsay, plain and simple, and it is excluded under the Federal Rules of Evidence. The Plaintiff cannot point to an exception in the Rule that would allow him to put this evidence before the jury.

These emails are not party admissions. The vast majority of the authors involved, specifically Nikki Crum, and Adam Petry, are not officers of Mayflower and are not in a position to speak on behalf of the Corporation. They are simply employees engaged their day to day role. Additionally, The email is not written by anyone with authority to change, make, or agree to anything in terms of contracts. It also is not a ratified communication. There's no evidence Mayflower ever agreed to whatever "extension" they claim this purports to memorialize. Lastly, to the extent the claim is that it recites an admission or ratified statement of Mayflower, the recitation is hearsay because the original declarant's statement is the operative exception, and it isn't present in that email. That's classic double hearsay, where someone repeats a statement without an independent exception for that repetition.

If offered for the fact that it was said at all, such as the effect on the listener, there is likewise no basis for admissibility. That only applies if you accept the truth of the matter asserted. Here the Plaintiff is attempting to argue that these emails betray an extension for Moholland to operate with these license plates or operate on Mayflower authority. They hardly make any such claims. As to emails to Mayflower, there can be no such admission because a counter-party's statement is unilateral—it doesn't "offer" or "accept" anything. Also, there's no predicate to that, for the same reasons as above—the person on Mayflower's end isn't a party who can "accept" or "offer" anything. The "statement was made" attempt to avoid hearsay fails because the emails are offered for their truth—there was an extension, and the "Legal significance" (that there was an exception) likewise fails because there is no predicate or legal basis for same.

The emails are irrelevant: the contract is unambiguous. Extrinsic evidence of a contract's terms is improper under the parol evidence rule. Plaintiff has no evidence that creates ambiguity, and instead, all the evidence is that the agreement for loads after termination did not include this load. Whether this is a "military load" or "military business" is irrelevant because the specific load was not covered under any agreement. These emails are not evidence of any "extension" of the agreement's terms. All the extrinsic testimony is consistent with this—Locke, Moholland, and Mayflower all testified this load was not covered in any post-termination agreement. The base plates are not relevant, because the evidence is that they were to be returned and the notion there was "permission" or "indulgence" to use them is lacking in anything but a unilateral statement in one email which is from Moholland.

Defendant Mayflower further objects to the admission of these emails as irrelevant under Rule 401 et. seq. It is simply undisputed by all parties what the clear language of the Contract stated between Mayflower and Moholland. It is further undisputed that Moholland knew it was under an obligation to return the Mayflower markings in his possession. The simple fact that these plates remained in possession of Defendant Moholland, as evidenced in these emails, is not evidence of an extension to the temporary agency agreement. The inclusion of this information only misleds the jury, mischaracterizes the issues, and create a false impression regarding the scope of the communications between Mayflower and Moholland regarding license plates. These emails are irrelevant.

**II. Defendant Objects to the Admission of the Plaintiff's Expert Reports into Evidence.**

The Plaintiff has identified the full written expert reports of their retained experts as exhibits for trial. These reports are identified at Exhibit 19, 52, 56, 57, 58, and 60. These reports are clearly inadmissible as evidence before the jury. They are hearsay. Even if the opinions contained therein are admissible as expert testimony, the whole, unabridged reports are not admissible. Many of the reports themselves contain portions of hearsay, speculation, or simply cumulative recitations of Mr. Sloan's medical treatment. These reports in the form currently offered by the Plaintiff are not admissible.

**III. Defendant Objects to the Admission of the Plaintiff's Video Interviews of Plaintiff Kyle Sloan, Jordan Sloan and Will Stone.**

As a threshold matter, these interviews are plain and simple hearsay. They are recorded interviews of witnesses and parties being offered for the truth of the matter asserted in interviews.

Additionally, these interviews were not previously produced in discovery. The very first request for production served by Defendant Mayflower in this case, explicitly requested:

> *"All written or recorded statements obtained by you and/or in your possession concerning any fact or issue in this case."* Exhibit 1.

The Plaintiff did not identify these videos as being responsive. Their only indication of these videos came in their privilege log, produced in February 2024. The privilege log stated simply:

> *"July 7 2022 VIDEO Interview with Plaintiff's Counsel; Kyle Sloan; and Jordan and William Stone (Daughter and son-in-law of Kyle Sloan)."* Exhibit 2.

Based on that privilege log there is nothing that would indicate to the Defendants that these videos would potentially be shown to the jury. They simply appeared to be a new client interview between attorney and client.

Further, and more impactfully, on August 27, 2026 the Plaintiff responded to Mayflower's damages discovery. This discovery specifically requested the Plaintiff to:

> *"Produce any documents, photos, demonstrative aids, or videos you anticipate showing to the jury which outline or identify Mr. Sloan's damages, this request includes any produced materials such as a 'day in the life video' or other responsive materials."* Exhibit 3.

The Plaintiff only referred to "the documents and videos which have been previously produced." The Plaintiff had a clear opportunity to update the status of their discovery and allow Mayflower to assess and evaluate the scope of the materials that would be put before the jury and the Plaintiff failed to do so. It would have also changed the Defendants understanding of the Plaintiff's prior privilege log.

If the Plaintiff anticipates putting the videos before the jury then they are inherently not privileged which would invalidate their prior log. However, if that is true, the Plaintiff was under an obligation to identify the videos in response to the August 27, 2026 requests for production. The videos in question are inadmissible hearsay that the Plaintiff has not previously provided in discovery. Their prior privilege log did not identify this material as trial preparation material. Further, in response to the request for production which asked for materials prepared for the jury, the Plaintiff failed to identify them. The videos should not be admitted into evidence for the jury's consideration, nor shown to the jury as demonstrative aids.

**IV. Defendant Objects to the Admission of Plaintiff's Photographs Identified at Exhibit 59.**

The Plaintiff has identified twelve photographs of his family and the decedents at Exhibit 59. These photographs were never produced in discovery. Many of them are dated from, what appears to be, an email from July 15, 2026. However, they were not previously produced to the Defendants. The Defendants deposed Kyle Sloan on September 14. These photographs were not produced to Defendants ahead of that deposition, or immediately after. Further, these photographs were never identified in production, privilege, logs, in response to either round of discovery.

Additionally, these photographs are irrelevant to the jury's deliberation of the facts in dispute. It is undisputed that Jamie and Rylie Sloan perished from the collision at issue in this case. It is undisputed that Jamie Sloan was Kyle's wife and Rylie, his daughter. The facts in dispute in this trial is the agency relationship between Defendant Mayflower and driver Nicholas Burist. These photographs are therefore only being offered to prejudice the jury and enflame their emotional response to the tragic death of two young women. With these photographs the Plaintiff, it is feared, may use the sympathies and passions of the jury to point the finger at an otherwise uninvolved Defendant. Without some greater showing of negligence, Defendant Mayflower Objects to the admission of these photographs or their presentation to the jury as demonstrative aids.

**V. Defendant Objects to the Admission of Photographs and Affidavit from Night Hawk Investigations**

The Plaintiff has identified the affidavit, photos, and videos, captured by their private Investigator, Joshua Embrey of Nighthawk Investigative Service. (Exhibits 28, 30, and 93).

As a threshold matter, the affidavit, photos, and videos, of Mr. Embry are inadmissible hearsay. They being offered explicitly and solely for the truth of the contents contained in those materials. There is no reasonable exception that the Plaintiff's can point to explain why these photographs, videos, or the affidavit, given by a retained investigator are not inadmissible hearsay.

Further, these materials are wholly and completely irrelevant. The affidavit, and the materials produced along side of it, simply capture the Tailored Move/Moholland lot today. The photographs depict Mayflower logos on trucks in the parking lot of Tailored Move, formerly Moholland Transit. The photographs are dated for March 9, 2023. The location of, or existence of, Mayflower Tractors, Trailers, or Signage, at the Tailored Move facility, eight months after the subject collision, do not make any fact in dispute in this case more or less likely to be true. Further, there is almost no evidence provided on the record regarding why or how the trucks in the March 9, 2023 photographs arrived at or were placed at the Tailored Move/Moholland Facility. Entering those photographs on the record along with the affidavit of Mr. Embrey, only misleds the jury. It implies that since trucks were there in March of 2023, there must have been an agency relationship between Moholland, Burist, and Mayflower on July 1, 2022. That is highly prejudicial, irrelevant, and inadmissible.

**VI. Defendant Mayflower Objects to the Admission of Whole, Unabridged Deposition Transcripts.**

The Plaintiff has identify for exhibit several whole deposition transcripts. This would include Exhibit 38, 39, 40, 41, 42, 43, 44, and 77. Deposition testimony is wide ranging and permissive. Deponents are allowed to provide testimony on the record in deposition that they would not be allowed to offer under oath in a live trial. To catalog each objectionable and inadmissible statement in the thousands of pages of deposition transcripts outlined above would

be far too cumulative for this exercise. Defendant Mayflower there objects to their admission as a whole without further showing by the Defendants regarding need or specificity of testimony.

**VII. Defendant Mayflower Objects to the Admission of 911 Audio from the Crash Site.**

The Plaintiff has identified for admission the audio of several 911 phone calls from the crash site for admission before the jury. These phone calls are inadmissible hearsay. They are additionally irrelevant to the only factual disputes in the case, which is the alleged agency relationship between the Co-Defendants.

**VIII. Defendant Mayflower Objects to the Admission of the PowerPoint Presentation with Exhibits**

The Plaintiff has identified for admission their PowerPoint Presentation at Exhibit 154. Again, the Defendants specifically asked for any materials that would be utilized as a demonstrative aid before the jury. The Plaintiff nonchalantly referred to the entire record produced in discovery. In this lawsuit there have been literally tens of thousands of documents produced between the parties. The Plaintiff could have easily identified this power point as responsive to that Request. The Plaintiff utilized it at their Summary Judgment hearing so there is no dispute that it existed when they responded to Defendant's discovery. Yet, they failed to identify it or disclose it. This failure to identify or disclose a prepared demonstrative aid prohibits the Plaintiff from relying on the material now.

**IX. Defendant Mayflower Objects to the Admission of the Nicholas Burist Criminal Trial Transcript as a whole and unabridged document.**

In Exhibit 157 the Plaintiff identified as an exhibit the entire criminal transcript from

Nicholas Burist's criminal trial. This document contains multitudinous statements, opinions, and findings of fact that are irrelevant to this case and otherwise inadmissible. Without a showing of relevancy or specificity as to individual statements, Mayflower must object to the admission of this transcript as a whole.

Respectfully submitted this 5th day of October, 2026

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

*/s/ Stephen Kyle McDonald*
BRANTLEY ROWLEN
Georgia Bar No. 153031
STEPHEN KYLE MCDONALD
Georgia Bar No. 661387
Todd R. Ehrenreich
*Admitted Pro Hac Vice*
Jeffrey Geldens
*Admitted Pro Hac Vice*

*Counsel for Mayflower Transit, LLC*

600 Peachtree Street N.E.
Suite 4700
Atlanta, Georgia 30308
404-348-8585 Telephone
404-467-8845 Facsimile
Brantley.Rowlen@lewisbrisbois.com
Stephen.McDonald@lewisbrisbois.com

24 Drayton St., Suite 300
Savannah, GA 31401
Tel. (912) 525-4960

Todd.Ehrenreich@lewisbrisbois.com
Jeffrey.Geldens@lewisbrisbois.com

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing ***OBJECTION TO PLAINTIFF'S PROPOSED EXHIBIT LIST*** with the Clerk of Court using the CM/ECF System for filing. Which will automatically send e-mail notification of such filing to all counsel of record.

This 5th day of October, 2026.

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

*/s/ Stephen Kyle McDonald*
BRANTLEY ROWLEN
Georgia Bar No. 153031
STEPHEN KYLE MCDONALD
Georgia Bar No. 661387
Todd R. Ehrenreich
*Admitted Pro Hac Vice*
Jeffrey Geldens
*Admitted Pro Hac Vice*

*Counsel for Mayflower Transit, LLC*

600 Peachtree Street N.E.
Suite 4700
Atlanta, Georgia 30308
404-348-8585 Telephone
404-467-8845 Facsimile
Brantley.Rowlen@lewisbrisbois.com
Stephen.McDonald@lewisbrisbois.com

24 Drayton St., Suite 300
Savannah, GA 31401
Tel. (912) 525-4960

Todd.Ehrenreich@lewisbrisbois.com
Jeffrey.Geldens@lewisbrisbois.com