**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | |
|---|---|
| KYLE SLOAN, Individually, and as Personal Representative of the Estates of Rylie Sloan and Jamie Sloan; KYLE SLOAN as Surviving Spouse of Jamie Sloan; and KYLE SLOAN as Surviving Parent of Rylie Sloan,<br><br>Plaintiffs,<br><br>v.<br><br>NICHOLAS BURIST; LOCKE RELOCATIONS LLC; MAYFLOWER TRANSIT LLC; and JOE MOHOLLAND, INC.,<br><br>Defendants. | CIVIL ACTION NO. 2:22-cv-76-LGW-BWC |

**PLAINTIFFS' PROPOSED REQUESTS TO CHARGE**

Plaintiff Kyle Sloan, individually; as Personal Representative of the Estates of Rylie Sloan and Jamie Sloan; as Surviving Spouse of Jamie Sloan; and as Surviving Parent of Rylie Sloan, respectfully requests the Court charge the jury as follows:

**PRELIMINARY INSTRUCTIONS**

**1.1 General Preliminary Instruction**

**TRIAL INSTRUCTIONS**

**2.2 Use of Depositions**

**BASIC INSTRUCTIONS**

**3.1 Introduction**

**3.2 The Duty to Follow Instructions - No Corporate Party Involved**

**3.3 Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court**

**3.4 Credibility of Witnesses**

**3.5.1 Impeachment of Witnesses because of Inconsistent Statements**

**3.6.1 Expert Witness-Adopted-2025-06-17**

**3.7.1 Responsibility for Proof - Plaintiff's Claim[s], Cross Claims, Counterclaims - Preponderance of the Evidence**

**3.7.2 Responsibility for Proof - Affirmative Defense Preponderance of the Evidence**

**3.8.1 Duty to Deliberate when only the Plaintiff Claims Damages**

**3.9 Election of Foreperson Explanation of Verdict Form[s]**

**INSURANCE NOT TO BE CONSIDERED**

Plaintiff's Request to Charge No. 1.

**THE PARTIES AND THEIR CONTENTIONS**

Plaintiff's Request to Charge No. 2.

**GEORGIA LAW, NEGLIGENCE, RULES OF THE ROAD, ETC.**

Plaintiff's Requests to Charge Nos. 3-8

**FEDERAL MOTOR CARRIER SAFETY REGULATIONS**

Plaintiff's Requests to Charge Nos. 9-15, 21

**GEORGIA LAW, CAUSATION, LIABILITY, VICARIOUS LIABILITY, AGENCY, AND APPORTIONMENT**

Plaintiff's Requests to Charge Nos. 16-20, 22-26

**DAMAGES**

Plaintiff's Requests to Charge Nos. 27-35

**1.1**
**General Preliminary Instruction**

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if [he/she] thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer

the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

<u>Credibility of witnesses</u>:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

· the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

· the witness's memory;

· the witness's manner while testifying;

· any interest the witness has in the outcome of the case;

· any bias or prejudice the witness may have;

· any other evidence that contradicts the witness's testimony;

· the reasonableness of the witness's testimony in light of all the evidence; and

· any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

Description of the case:

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiff, Kyle Sloan, claims the Defendants, Nicholas Burist, Mayflower Transit, LLC, Joe Moholland, Inc., and Locke Relocations, LLC, negligently operated a tractor-trailer causing the July 1, 2022 collision causing serious injury to Kyle Sloan and the deaths of his wife and daughter. Plaintiff further contends that the tractor-trailer continued to operate under authority associated with Mayflower through the date of the collision, and that legal and factual requirements necessary to end Mayflower's relationship with Moholland and Locke and thereby responsibility as a motor carrier under the FMCSA had not been fulfilled before the collision. Plaintiff contends Mayflower is responsible under Georgia agency principles, vicarious liability, and applicable federal motor-carrier law and regulations. Nicholas Burist, Mayflower Transit, LLC, Joe Moholland, Inc., and Locke Relocations, LLC deny those claims.

Burden of proof:

Kyle Sloan has the burden of proving his case by what the law calls a "preponderance of the evidence." That means Kyle Sloan must prove that, in light

of all the evidence, what he claims is more likely true than not. So, if you could put the evidence favoring Kyle Sloan and the evidence favoring Nicholas Burist, Mayflower Transit, LLC, Joe Moholland, Inc., and Locke Relocations, LLC on opposite sides of balancing scales, Kyle Sloan needs to make the scales tip to his side. If Kyle Sloan fails to meet this burden, you must find in favor of Nicholas Burist, Mayflower Transit, LLC, Joe Moholland, Inc., and Locke Relocations, LLC.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

On certain issues, called "affirmative defenses," Nicholas Burist, Mayflower Transit, LLC, Joe Moholland, Inc., and Locke Relocations, LLC has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts Nicholas Burist, Mayflower Transit, LLC, Joe Moholland, Inc., and Locke Relocations, LLC must prove for any affirmative defense. After considering all the evidence, if you decide that Nicholas Burist, Mayflower Transit, LLC, Joe Moholland, Inc., and Locke Relocations, LLC has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, phone calls, encrypted-communication applications, the Internet — including social-networking websites and apps, or any other similar technology, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Taking notes:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Kyle Sloan will present [his/her/its] witnesses and ask them questions. After Kyle Sloan questions the witness, Nicholas Burist, Mayflower Transit, LLC, Joe Moholland, Inc., and Locke Relocations, LLC may ask the witness questions – this is called "cross-examining" the witness. Then Nicholas Burist, Mayflower Transit, LLC, Joe Moholland, Inc., and Locke Relocations, LLC will present [his/her/its] witnesses, and Kyle Sloan may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

You'll then go to the jury room to deliberate.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

**2.2 Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

Some deposition testimony has been presented to you by a video and/or by reading the transcript. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

**3.1 Introduction**

COURT'S INSTRUCTIONS TO THE JURY

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished, you will go to the jury room and begin your discussions, sometimes called deliberations.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

**3.2 The Duty to Follow Instructions – No Corporate Party Involved**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

## 3.3 Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

**3.4 Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?
2. Did the witness have any particular reason not to tell the truth?
3. Did the witness have a personal interest in the outcome of the case?
4. Did the witness seem to have a good memory?
5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?
6. Did the witness appear to understand the questions clearly and answer them directly?
7. Did the witness's testimony differ from other testimony or other evidence?

**<u>ANNOTATIONS AND COMMENTS</u>**

No annotations associated with this instruction.

**3.5.1 Impeachment of Witnesses Because of Inconsistent Statements**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

**3.6.1 Expert Witness**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

**3.7.1 Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence**

In this case it is the responsibility of the Plaintiff to prove every essential part of his claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the Plaintiff's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the Plaintiff.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the Plaintiff claims by a preponderance of the evidence, you should find for the Defendants as to that claim.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

**3.7.2 Responsibility for Proof – Affirmative Defense Preponderance of the Evidence**

In this case, Defendant, asserts affirmative defenses. Even if the Plaintiff proves his claims by a preponderance of the evidence, the Defendant, can prevail in this case if it proves an affirmative defense by a preponderance of the evidence.

I caution you that for the Defendant's affirmative defenses, the only way it can prevail on that specific defense is if it proves that defense by a preponderance of the evidence.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

**3.8.1 Duty to Deliberate**

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

**3.9 Election of Foreperson Explanation of Verdict Form[s]**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

**PLAINTIFF'S REQUEST TO CHARGE NO. 1 - INSURANCE NOT TO BE CONSIDERED**

Whether any party has insurance is not a proper matter for your consideration in reaching your verdict. Whether there is any insurance coverage, or how much, is not a question before you. Your role is to decide whether the Plaintiff has proved his claims against each Defendant and, if so, what amount of money will fairly and fully compensate for the injuries and losses proved. In reaching these decisions, you must not consider or speculate about the existence or amount of any insurance coverage[1].

GIVEN: ________ REFUSED: ________ MODIFIED: ________

[1] Fed. R. Evid. 411.

## PLAINTIFFS' REQUEST TO CHARGE NO. 2 - THE PARTIES AND THEIR CONTENTIONS

This case arises out of a collision on Interstate 95 in Camden County, Georgia, on July 1, 2022, between a tractor-trailer driven by Defendant Nicholas Burist and a vehicle driven by Plaintiff Kyle Sloan, in which his wife, Jamie Sloan, and their daughter, Rylie Sloan, were passengers. Jamie Sloan and Rylie Sloan died after the collision, and Kyle Sloan was injured.

Kyle Sloan brings this lawsuit in five separate legal capacities: (1) individually, for his own injuries and losses; (2) as the surviving spouse of Jamie Sloan, for her wrongful death; (3) as the surviving parent of Rylie Sloan, for her wrongful death; (4) as the personal representative of the Estate of Jamie Sloan; and (5) as the personal representative of the Estate of Rylie Sloan. When I refer to "the Plaintiff," I mean Kyle Sloan in each of these capacities unless I say otherwise.

The Defendants are Nicholas Burist, the driver of the tractor-trailer; Locke Relocations LLC ("Locke"); Joe Moholland, Inc. ("Moholland"); and Mayflower Transit LLC ("Mayflower").

The Plaintiff contends that Mr. Burist operated the tractor-trailer negligently, including by driving while under the influence of alcohol and by crossing the center line into the Sloan vehicle, and that his negligence caused the collision. The Plaintiff further contends that Locke, Moholland, and Mayflower are each legally responsible for Mr. Burist's negligence under one or more of the legal theories I will explain to

you, and that each of them was also negligent in its own right. The Plaintiff contends that the tractor-trailer continued to operate under the name, U.S. Department of Transportation number, license plate, cab card, fuel-tax credentials, and other indicia of authority of Mayflower through the date of the collision.

These are the contentions of the parties. They are not evidence, and you must decide the facts from the evidence presented at trial.[2]

GIVEN: ________ REFUSED: ________ MODIFIED: ________

[2] Consolidated Pretrial Order ¶¶ 8, 9, 13; Order Denying Mayflower's Motion for Summary Judgment, Dkt. No. 354, at 3–13 (Aug. 27, 2025).

## PLAINTIFFS' REQUEST TO CHARGE NO. 3 - NEGLIGENCE — ORDINARY CARE

The Plaintiff's claims are based on negligence. To recover on a claim of negligence, the Plaintiff must prove by a preponderance of the evidence (1) that the Defendant owed a legal duty to conform to a standard of conduct for the protection of others; (2) that the Defendant breached that duty; (3) that the breach was a proximate cause of injury; and (4) that the Plaintiff suffered loss or damage.[3]

Negligence is the failure to exercise ordinary diligence. Ordinary diligence is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances. The absence of such diligence is called ordinary negligence.[4]

Every driver of a motor vehicle on the highways of this state has a duty to exercise due care in operating the vehicle and not to engage in any actions which distract the driver from the safe operation of the vehicle.[5] The same duty of ordinary care applies to companies whose business includes hiring, qualifying, supervising, dispatching, or furnishing drivers and commercial motor vehicles for use on the public highways.

---

[3]*Bradley Ctr., Inc. v. Wessner*, 250 Ga. 199, 200, 296 S.E.2d 693 (1982); *Johnson v. Am. Nat'l Red Cross*, 276 Ga. 270, 272, 578 S.E.2d 106 (2003).
[4]O.C.G.A. § 51-1-2.
[5]O.C.G.A. § 40-6-241(b).

Negligence may consist of doing something that an ordinarily prudent person would not do under the same or similar circumstances, or of failing to do something that an ordinarily prudent person would do under the same or similar circumstances.

GIVEN: ________ REFUSED: ________ MODIFIED: ________

## PLAINTIFFS' REQUEST TO CHARGE NO. 4 - NEGLIGENCE PER SE — GENERAL

In addition to ordinary negligence, the Plaintiff contends that the Defendants violated certain Georgia statutes and federal safety regulations. When the law requires a person to perform an act for the benefit of another, or to refrain from doing an act that may injure another, the injured party may recover for the breach of that legal duty if he suffers damage as a result.[6]

If you find that a Defendant violated any of the statutes or regulations I am about to read to you, that violation is negligence as a matter of law, which is called negligence per se. In that event, you do not need to decide whether that Defendant acted as an ordinarily prudent person would have acted, because the statute or regulation itself sets the standard of care. You must still decide whether the negligence proximately caused injury or damage, which I will explain to you shortly.

Georgia law requires that commercial motor vehicles operated in this state be maintained in a safe condition and comply with the Federal Motor Carrier Safety Regulations, and federal law requires every commercial motor vehicle to be operated in accordance with the laws of the jurisdiction in which it is operated. Accordingly, the Georgia statutes and the Federal Motor Carrier Safety Regulations that I will

---

[6] O.C.G.A. §§ 51-1-6, 8.

read to you each set a standard of care that applied to the operation of the tractor-trailer involved in this case.[7]

In particular, Georgia law provides that every commercial motor vehicle and all parts thereof shall be maintained in a safe condition at all times, and that the lights, brakes, equipment, and all other parts and accessories shall meet the safety requirements of Parts 393 and 396 of the Federal Motor Carrier Safety Regulations. Georgia law further provides that a driver of a commercial motor vehicle shall not use or possess prohibited drugs or alcohol while on duty, and shall be fully competent and sufficiently rested to operate the motor vehicle under his charge.[8]

The Federal Motor Carrier Safety Regulations include Parts 390 through 396 of Title 49 of the Code of Federal Regulations, which govern, among other things, the general duties of motor carriers and drivers (Part 390), the qualifications of drivers (Part 391), the rules for driving commercial motor vehicles (Part 392), the parts and accessories necessary for safe operation (Part 393), drivers' hours of service (Part 395), and the inspection, repair, and maintenance of commercial motor vehicles (Part 396).[9]

GIVEN: ________ REFUSED: ________ MODIFIED: ________

---

[7] O.C.G.A. §§ 51-1-6, 8; 49 C.F.R. § 392.2.

[8] O.C.G.A. § 40-1-8(b)(1), (b)(2)(E), (b)(2)(F) (paraphrased).

[9] 49 C.F.R. pts. 390–396.

## PLAINTIFFS' REQUEST TO CHARGE NO. 5 - ONE ACT OF NEGLIGENCE IS SUFFICIENT

Plaintiff has alleged more than one act of negligence on the part of Defendant Mayflower Transit, LLC. Plaintiff is not required to prove every act alleged. If you find that Plaintiff has proved any one act of negligence by Defendant Mayflower Transit, LLC, and that the act was a proximate cause of the injuries and damages claimed, that is sufficient[10].

[10] Georgia SPJI § 60.060 (Torts; Negligence; One Act Sufficient)

**PLAINTIFFS' REQUEST TO CHARGE NO. 6**
**GEORGIA RULES OF THE ROAD**

The Plaintiff contends that Mr. Burist violated the following Georgia statutes. I charge you that each of these statutes was in effect on July 1, 2022.

O.C.G.A. § 40-6-40(a) provides, in pertinent part:

> Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway . . . .[11]

O.C.G.A. § 40-6-48(1) provides, in pertinent part:

> A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.[12]

O.C.G.A. § 40-6-50(a) provides that on a highway divided into two or more roadways by a dividing space, barrier, or median, a vehicle shall be driven only upon the right-hand roadway unless directed or permitted to use another roadway by official traffic-control devices or police officers.[13]

O.C.G.A. § 40-6-241(b) provides:

> A driver shall exercise due care in operating a motor vehicle on the highways of this state and shall not engage in any actions which shall distract such driver from the safe operation of such vehicle . . . .[14]

O.C.G.A. § 40-6-390(a) provides:

---

[11] O.C.G.A. § 40-6-40(a).
[12] O.C.G.A. § 40-6-48(1).
[13] O.C.G.A. § 40-6-50(a) (paraphrased).
[14] O.C.G.A. § 40-6-241(b).

> Any person who drives any vehicle in reckless disregard for the safety of persons or property commits the offense of reckless driving.[15]

O.C.G.A. § 40-6-49(a) provides:

> The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.[16]

If you find that Mr. Burist violated any of these statutes, he was negligent as a matter of law.

GIVEN: ________ REFUSED: ________ MODIFIED: ________

[15] O.C.G.A. § 40-6-390(a).

[16] O.C.G.A. § 40-6-49(a).

**PLAINTIFFS' REQUEST TO CHARGE NO. 7 - DRIVING UNDER THE INFLUENCE OF ALCOHOL; OPEN CONTAINER**

The Plaintiff contends that Mr. Burist was driving under the influence of alcohol at the time of the collision.

O.C.G.A. § 40-6-391(a) provides, in pertinent part, that a person shall not drive or be in actual physical control of any moving vehicle while:

> (1) Under the influence of alcohol to the extent that it is less safe for the person to drive; (2) Under the influence of any drug to the extent that it is less safe for the person to drive; (3) Under the intentional influence of any glue, aerosol, or other toxic vapor to the extent that it is less safe for the person to drive; (4) Under the combined influence of any two or more of the substances specified in paragraphs (1) through (3) of this subsection to the extent that it is less safe for the person to drive; [or] (5) The person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended . . . .[17]

Georgia law further provides that a person shall not drive or be in actual physical control of a commercial motor vehicle while his alcohol concentration is 0.04 or more.[18]

O.C.G.A. § 40-6-253(b) provides, in pertinent part, that a person shall not consume any alcoholic beverage, or possess any open alcoholic beverage container,

---

[17] O.C.G.A. § 40-6-391(a)(1)–(5).

[18] O.C.G.A. § 40-6-391(i) (paraphrased); *see also* 49 C.F.R. § 382.201.

in the passenger area of any motor vehicle which is on the roadway or shoulder of any public highway.[19]

If you find that Mr. Burist violated any of these statutes, he was negligent as a matter of law. You must then decide whether that negligence was a proximate cause of the Plaintiff's injuries and damages.

GIVEN: ________ REFUSED: ________ MODIFIED: ________

[19] O.C.G.A. § 40-6-253(b)(1) (paraphrased).

## PLAINTIFFS' REQUEST TO CHARGE NO. 8
## HOMICIDE BY VEHICLE; SERIOUS INJURY BY VEHICLE

The Plaintiff also contends that Mr. Burist's conduct violated the following Georgia statutes.

O.C.G.A. § 40-6-393(a) provides, in pertinent part:

> Any person who, without malice aforethought, causes the death of another person through the violation of . . . Code Sections 40-6-390 through 40-6-391 . . . commits the offense of homicide by vehicle in the first degree . . . .[20]

O.C.G.A. § 40-6-394 provides, in pertinent part:

> Any person who, without malice aforethought, causes an accident that results in bodily harm while violating Code Sections 40-6-390 through 40-6-391 commits the crime of serious injury by vehicle.[21]

Code Section 40-6-390 is the reckless-driving statute, and Code Section 40-6-391 is the statute prohibiting driving under the influence, both of which I have read to you. If you find that Mr. Burist violated either of these statutes, he was negligent as a matter of law, and you must then decide whether that negligence was a proximate cause of the deaths of Jamie Sloan and Rylie Sloan and of the injuries to Kyle Sloan.

GIVEN: ________ REFUSED: ________ MODIFIED: ________

---

[20]O.C.G.A. § 40-6-393(a).

[21]O.C.G.A. § 40-6-394.

# PLAINTIFFS' REQUEST TO CHARGE NO. 9
# FEDERAL MOTOR CARRIER SAFETY REGULATIONS — DRIVER CONDUCT

The Federal Motor Carrier Safety Regulations govern the operation of commercial motor vehicles like the tractor-trailer involved in this case. The Plaintiff contends that the following regulations were violated.

49 C.F.R. § 392.5(a) provides that no driver shall:

> (1) Use alcohol . . . or be under the influence of alcohol, within 4 hours before going on duty or operating, or having physical control of, a commercial motor vehicle; or (2) Use alcohol, be under the influence of alcohol, or have any measured alcohol concentration or detected presence of alcohol, while on duty, or operating, or in physical control of a commercial motor vehicle; or (3) Be on duty or operate a commercial motor vehicle while the driver possesses [any alcoholic beverage] . . . .[22]

49 C.F.R. § 382.201 provides:

> No driver shall report for duty or remain on duty requiring the performance of safety-sensitive functions while having an alcohol concentration of 0.04 or greater.[23]

49 C.F.R. § 392.2 provides, in pertinent part:

---

[22] 49 C.F.R. § 392.5(a).

[23] 49 C.F.R. § 382.201.

> Every commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated.[24]

49 C.F.R. § 391.11(a) provides, in pertinent part:

> A person shall not drive a commercial motor vehicle unless he/she is qualified to drive a commercial motor vehicle.[25]

The regulations also establish the knowledge and skills that every commercial driver must have. Under 49 C.F.R. § 383.111(a), all commercial motor vehicle operators must have knowledge of, among other things, the effects of alcohol and drug use upon safe commercial motor vehicle operations; the importance of understanding the effects of speed; the procedures and techniques for controlling the space around the vehicle; the basic information on hazard perception and clues for recognition of hazards; and practices that are important to staying alert and safe while driving.[26]

Under 49 C.F.R. § 383.113(c), commercial drivers must possess safe on-road driving skills, including:

(1) the "[a]bility to use proper visual search methods";

---

[24] 49 C.F.R. § 392.2.

[25] 49 C.F.R. § 391.11(a).

[26] 49 C.F.R. § 383.111(a)(1), (9), (10), (13), (20) (quoted in part).

(3) the "[a]bility to adjust speed to the configuration and condition of the roadway, weather and visibility conditions, traffic conditions, and motor vehicle, cargo and driver conditions";

(4) the "[a]bility to choose a safe gap for changing lanes, passing other vehicles, as well as for crossing or entering traffic";

(6) the "[a]bility to maintain a safe following distance depending on the condition of the road, visibility, and vehicle weight"; and

(8) the "[a]bility to observe the road and the behavior of other motor vehicles, particularly before changing speed and direction."[27]

If you find that Mr. Burist violated any of the regulations I read to you in this instruction (other than the knowledge and skills provisions of Part 383), he was negligent as a matter of law. You may consider the knowledge and skills provisions of Part 383 in determining the standard of care that a reasonably prudent commercial driver would exercise.

GIVEN: ________ REFUSED: ________ MODIFIED: ________

[27] 49 C.F.R. § 383.113(c)(1), (3), (4), (6), (8).

## PLAINTIFFS' REQUEST TO CHARGE NO. 10

## FEDERAL MOTOR CARRIER SAFETY REGULATIONS — MOTOR CARRIER DUTIES, EQUIPMENT, AND MAINTENANCE

The Federal Motor Carrier Safety Regulations also impose duties on motor carriers. Under those regulations, the term "motor carrier" includes a motor carrier's agents, officers, and representatives, as well as employees responsible for hiring, supervising, training, assigning, or dispatching drivers.[28] The Plaintiff contends that the following regulations were violated.

49 C.F.R. § 390.11 provides, in pertinent part, that whenever a duty is prescribed for a driver or a prohibition is imposed upon a driver, "it shall be the duty of the motor carrier to require observance of such duty or prohibition."[29]

49 C.F.R. § 392.5(b) provides that no motor carrier shall require or permit a driver to violate the alcohol prohibitions I have just read to you, or to be on duty or operate a commercial motor vehicle if, by the driver's general appearance or conduct or by other substantiating evidence, the driver appears to have used alcohol within the preceding four hours.[30]

---

[28] 49 C.F.R. § 390.5 (definition of "motor carrier").

[29] 49 C.F.R. § 390.11.

[30] 49 C.F.R. § 392.5(b) (paraphrased).

49 C.F.R. § 391.51(a) provides that each motor carrier shall maintain a driver qualification file for each driver it employs.[31]

49 C.F.R. § 396.3(a) provides, in pertinent part:

> Every motor carrier . . . must systematically inspect, repair, and maintain, or cause to be systematically inspected, repaired, and maintained, all motor vehicles . . . subject to its control. (1) Parts and accessories shall be in safe and proper operating condition at all times. . . .[32]

49 C.F.R. § 396.7(a) provides:

> A motor vehicle shall not be operated in such a condition as to likely cause an accident or a breakdown of the vehicle.[33]

49 C.F.R. § 393.48(a) provides, in pertinent part, that "all brakes with which a motor vehicle is equipped must at all times be capable of operating."[34]

49 C.F.R. § 393.75(a) provides, in pertinent part, that no motor vehicle shall be operated on any tire that "[h]as body ply or belt material exposed through the tread or sidewall" or that "[i]s flat or has an audible leak."[35]

---

[31] 49 C.F.R. § 391.51(a).

[32] 49 C.F.R. § 396.3(a)(1).

[33] 49 C.F.R. § 396.7(a).

[34] 49 C.F.R. § 393.48(a).

[35] 49 C.F.R. § 393.75(a)(1), (3); *see also* O.C.G.A. § 40-1-8(b) (requiring commercial motor vehicles, including brakes and equipment, to be maintained in a safe condition at all times in compliance with Parts 393 and 396).

Finally, the regulations define a "preventable accident on the part of a motor carrier" as "an accident (1) that involved a commercial motor vehicle, and (2) that could have been averted but for an act, or failure to act, by the motor carrier or the driver."[36]

If you find that any Defendant violated any of these regulations, that Defendant was negligent as a matter of law.

GIVEN: ________ REFUSED: ________ MODIFIED: ________

[36] 49 C.F.R. § 385.3.

## PLAINTIFF'S REQUEST TO CHARGE NO. 11

### *49 C.F.R. § 390.21 — Marking of Commercial Motor Vehicles; Display of the Operating Carrier's Name and USDOT Number*

Federal and Georgia law require that every self-propelled commercial motor vehicle be marked on both sides with the legal name or a single trade name of the motor carrier that is operating the vehicle, together with that carrier's identification number issued by the Federal Motor Carrier Safety Administration, preceded by the letters "USDOT." The marking must contrast sharply with the background, must be readily legible from fifty feet in daylight while the vehicle is stationary, and must be maintained so that it stays legible.

The regulation further provides that if the name of any person other than the operating carrier appears on the vehicle, the name of the operating carrier must also appear, followed by that carrier's legal name and USDOT number, and preceded by the words "operated by."

The purpose of these requirements is so that the motoring public, law enforcement, and safety regulators can identify who is actually responsible for the operation of a commercial vehicle on the public roads.

If you find that the tractor involved in this collision displayed Defendant Mayflower Transit, LLC's legal name, logo, or USDOT number while Defendant Joe Moholland Moving was the carrier actually operating it under a different

USDOT number, and that the vehicle did not display Joe Moholland Moving's own legal name and USDOT number preceded by the words "operated by," then this regulation was violated.

**Authority:** 49 C.F.R. § 390.21(a), (b)(1)–(4), (c), (d); 49 C.F.R. § 376.11(c)(1) (requiring the authorized carrier to identify leased equipment "in accordance with the FMCSA's requirements in 49 CFR part 390").

**PLAINTIFF'S REQUEST TO CHARGE NO. 12**

***49 C.F.R. § 392.9a — Operating Authority***

Federal and Georgia law also provide that a motor vehicle providing transportation that requires operating authority must not be operated without the required operating authority, or beyond the scope of the operating authority granted.

Registration and operating authority are personal to the carrier to whom they are issued. A person may provide transportation as a motor carrier only if that person is itself registered, and the Secretary of Transportation issues a distinctive registration number to each registered carrier. One motor carrier may not lend, lease, sell, or otherwise permit another motor carrier to operate under its registration or USDOT number.

If you find that Defendant Joe Moholland Moving operated the tractor-trailer in question under Defendant Mayflower Transit, LLC's registration or USDOT number rather than under its own, then this regulation was violated. And if you find that Defendant Mayflower Transit, LLC knowingly permitted that to occur, then Defendant Mayflower Transit, LLC aided and abetted that violation.

**Authority:** 49 C.F.R. § 392.9a(a)–(b); 49 U.S.C. § 13901(a), (b)(1) ("A person may provide transportation as a motor carrier . . . only if the person is registered"; the Secretary "shall issue a distinctive registration number to the person"); 49 U.S.C. § 13902(a)(1)

**PLAINTIFF'S REQUEST TO CHARGE NO. 13**

***49 C.F.R. § 390.11 — Motor Carrier's Duty to Require Observance of Driver Regulations***

Federal and Georgia law provide that whenever a duty is prescribed for a driver, or a prohibition is imposed upon a driver, by the Federal Motor Carrier Safety Regulations, it is the duty of the motor carrier to require observance of that duty or prohibition.

A motor carrier therefore may not simply leave compliance to the driver. It has an affirmative obligation to require compliance.

**Authority:** 49 C.F.R. § 390.11; Ga. Comp. R. & Regs. r. 570-38-1-.05; *see Smith v. Tommy*

**PLAINTIFF'S REQUEST TO CHARGE NO. 14**

***Federal Leasing Requirements — 49 C.F.R. §§ 376.11 and 376.12***

A motor carrier authorized by the federal government may perform authorized transportation in equipment it does not own only under specific conditions. There must be a written lease granting the use of the equipment. Receipts identifying the equipment and stating the date and time possession transferred must be exchanged. The authorized carrier must identify the equipment as being in its service in accordance with the marking requirements I have described. And unless a copy of the lease is carried on the equipment, the carrier must keep with the equipment a statement certifying that the equipment is being operated by it, specifying the name of the owner, the date and length of the lease, any commodity restrictions, and the address where the original lease is kept.

Every such lease must provide that the authorized carrier using the equipment has exclusive possession, control, and use of the equipment for the duration of the lease, and must further provide that the authorized carrier assumes complete responsibility for the operation of the equipment for the duration of the lease.

If you find that Defendant Mayflower Transit, LLC permitted its tractor, or equipment bearing its identification, to be operated by Defendant Joe

Moholland Moving without compliance with these requirements, then these regulations were violated.

**Authority:** 49 C.F.R. § 376.11(a)–(d); 49 C.F.R. § 376.12(c)(1); 49 U.S.C. § 14102(a); Ga. Comp. R. & Regs. r. 570-38-1-.05.

**PLAINTIFF'S REQUEST TO CHARGE NO. 15**

***49 C.F.R. § 390.13 — Aiding or Abetting Violations***

One of the regulations that applied to Defendant Mayflower Transit, LLC provides, in its entirety:

> "No person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter."

The word "person" in this regulation includes a corporation or other business entity. A motor carrier is therefore forbidden to aid, abet, encourage or require another motor carrier, or that carrier's employees, to violate the Federal Motor Carrier Safety Regulations.

To "aid" or "abet" means to assist, help, facilitate, or make possible. A Defendant aids or abets a violation when it knowingly provides another carrier with the means to commit the violation. A Defendant may aid or abet a violation by act or by permission; it is not necessary that the Defendant itself drive the vehicle or dispatch the load.

Plaintiff contends that Defendant Mayflower Transit, LLC violated this regulation by knowingly allowing Joe Moholland Moving — a separate motor carrier operating under a different USDOT number — to use Mayflower Transit, LLC's USDOT number, its motor carrier operating registration, its International

Fuel Tax Agreement (“IFTA”) credential, its tractor, and its company logo and markings.

If you find that Defendant Mayflower Transit, LLC knowingly allowed Joe Moholland Moving to use Mayflower Transit, LLC's USDOT number, operating registration, IFTA credential, tractor, or identifying markings, and that doing so aided, abetted, encouraged or enabled Joe Moholland Moving or its employees to violate any of the Federal Motor Carrier Safety Regulations, then Defendant Mayflower Transit, LLC violated 49 C.F.R. § 390.13, and you must find Defendant Mayflower Transit, LLC negligent.

**Authority:** 49 C.F.R. § 390.13; O.C.G.A. §§ 51-1-6, 51-1-8.

**PLAINTIFFS' REQUEST TO CHARGE NO. 16**

**PROXIMATE CAUSE**

A Defendant is liable only for injuries and damages that its negligence proximately caused. Proximate cause is that which, in a natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred. Proximate cause is a test of foreseeability: a negligent party is responsible for all of the natural and probable consequences of its negligence, unless there is a sufficient and independent intervening cause that the negligent party could not reasonably have anticipated.[37]

There may be more than one proximate cause of an injury. The negligence of a Defendant need not be the only cause, or the last or nearest cause, of the injury. It is sufficient if the negligence of a Defendant, acting together with the negligence of another person or company, proximately caused the injury.[38]

GIVEN: ________ REFUSED: ________ MODIFIED: ________

---

[37] *Zwiren v. Thompson*, 276 Ga. 498, 578 S.E.2d 862 (2003); *Atlanta Obstetrics & Gynecology Grp., P.A. v. Coleman*, 260 Ga. 569, 569–70, 398 S.E.2d 16 (1990); O.C.G.A. § 51-12-9 (damages that are "the legal and natural result of the act done, though contingent to some extent, are not too remote to be recovered").

[38] *Zwiren*, 276 Ga. 498; O.C.G.A. § 51-12-33(c) (trier of fact considers the fault of all persons who contributed to the injury).

## PLAINTIFF'S REQUEST TO CHARGE NO. 17

***Foreseeability; Intervening Acts Do Not Break the Chain of Causation Where the Consequences Were Foreseeable***

A Defendant whose own negligence sets in motion or makes possible the negligent conduct of another may still be a proximate cause of the resulting injury. If the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrongdoer, then the causal connection is not broken and the original wrongdoer remains liable.

A Defendant is not required to have foreseen the precise manner in which the injury occurred, or the exact sequence of events. It is enough that a person exercising ordinary care in that Defendant's position would have foreseen that the event, or some similar event, might reasonably result from the Defendant's conduct.

Plaintiff contends that it was foreseeable to Defendant Mayflower Transit, LLC that allowing another motor carrier to operate under Mayflower Transit, LLC's USDOT number, registration, fuel tax credential, tractor, and identification — outside the federal safety, qualification, and oversight

framework that attaches to a carrier's own authority — would result in exactly this kind of collision and this kind of harm.

**Authority:** Georgia SPJI §§ 60.200, 60.202; *Ontario Sewing Mach. Co. v. Smith*, 275 Ga. 683, 572 S.E.2d 533 (2002) (quoting *Williams v. Grier*, 196 Ga. 327, 336 (1943)); *Johnson v. Avis Rent A Car Sys., LLC*, 311 Ga. 588, 858 S.E.2d 23 (2021); *Milton Bradley Co. of Ga. v. Cooper*, 79 Ga. App. 302, 307 (1949).

## PLAINTIFFS' REQUEST TO CHARGE NO. 18
## VICARIOUS LIABILITY — OVERVIEW

The Plaintiff contends that Locke, Moholland, and Mayflower are legally responsible for the negligence of Mr. Burist even if they were not themselves negligent. This is called "vicarious liability." The Plaintiff relies on several different legal theories of vicarious liability, which I will now explain:

(1) respondeat superior, that is, the liability of an employer for the acts of its employee;

(2) actual agency, which may be created expressly, by implication, or by ratification;

(3) the responsibility of a household goods motor carrier for its agents under federal law;

(4) apparent agency; and

(5) statutory employment under the Federal Motor Carrier Safety Regulations.

These theories are alternatives. The Plaintiff need not prove all of them. If you find that the Plaintiff has proved, by a preponderance of the evidence, any one of these theories as to a particular Defendant, then that Defendant is legally responsible for the negligence of Mr. Burist that you find proximately caused injury or damage. You should consider each theory, and each Defendant, separately.[39]

---

[39] O.C.G.A. §§ 10-6-1, 51-2-2; 49 U.S.C. § 13907(a); *PN Express, Inc. v. Zegel*, 304 Ga. App. 672, 675–76, 697 S.E.2d 226 (2010); Order, Dkt. No. 354, at 16–22.

Vicarious liability is separate from any claim that a company was itself negligent, which I will explain to you separately. A company may be both vicariously liable for Mr. Burist's negligence and directly liable for its own negligence.[40]

GIVEN: ________ REFUSED: ________ MODIFIED: ________

[40] *Quynn v. Hulsey*, 310 Ga. 473, 850 S.E.2d 735 (2020).

**PLAINTIFFS' REQUEST TO CHARGE NO. 19**

***RESPONDEAT SUPERIOR* — EMPLOYER'S LIABILITY FOR EMPLOYEE**

An employer is liable for the negligence of a contractor:

(1) When the work is wrongful in itself or, if done in the ordinary manner, would result in a nuisance;

(2) If, according to the employer's previous knowledge and experience, the work to be done is in its nature dangerous to others however carefully performed;

(3) If the wrongful act is the violation of a duty imposed by express contract upon the employer;

(4) If the wrongful act is the violation of a duty imposed by statute;

(5) If the employer retains the right to direct or control the time and manner of executing the work or interferes and assumes control so as to create the relation of master and servant or so that an injury results which is traceable to his interference; or

(6) If the employer ratifies the unauthorized wrong of the independent contractor.

Even if you find that Mr. Burist was an independent contractor rather than an employee of a particular Defendant, that Defendant is nonetheless liable for his negligence if (a) the wrongful act was the violation of a duty imposed on that Defendant by statute; (b) the wrongful act was the violation of a duty imposed on that Defendant by express contract; (c) that Defendant retained the right to direct or

control the time and manner of executing the work, or interfered and assumed control; or (d) that Defendant ratified the wrong.[41]

GIVEN: ________ REFUSED: ________ MODIFIED: ________

[41] O.C.G.A. § 51-2-5(3)–(6).

**PLAINTIFFS' REQUEST TO CHARGE NO. 20**

**ACTUAL AGENCY — EXPRESS, IMPLIED, AND RATIFIED**

The Plaintiff contends that Moholland, and through Moholland, Mr. Burist, were acting as agents of Mayflower at the time of the collision, so that Mayflower is responsible for Mr. Burist's negligence. [The Plaintiff also contends that Mr. Burist was acting as the agent of Locke and of Moholland.]

The relationship of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him, or subsequently ratifies the acts of another in his behalf.[42] An agency relationship may therefore be created in three ways: (1) expressly; (2) by implication; or (3) through the principal's ratification of the agent's conduct.

Express agency arises when the principal expressly grants the agent the authority to act on its behalf. The grant need not be in a formal written contract; it may be made in writing, including by letter or e-mail, or orally.[43]

If there is no express agency, you may consider whether an agency relationship was implied by the circumstances, including the conduct of the parties,

---

[42] O.C.G.A. § 10-6-1; *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 660–61 (11th Cir. 2015); *Beckworth v. Beckworth*, 336 S.E.2d 782, 785 (Ga. 1985).

[43] *Burgess*, 600 F. App'x at 661; Order, Dkt. No. 354, at 19, 21–22 & n.11.

the course of dealing between them, and the authority, credentials, and equipment that the principal permitted the agent to use.[44]

Ratification is the principal's affirmance of an act done on its behalf. A ratification by the principal relates back to the act ratified and takes effect as if the act had been originally authorized. A ratification may be express, or it may be implied from the acts or silence of the principal. A ratification once made may not be revoked.[45]

A principal is bound by all the acts of its agent that are within the scope of the agent's authority.[46]

Generally, an agency is revocable at the will of the principal.[47] Whether an agency relationship was in fact revoked, or instead continued through July 1, 2022, is for you to decide from all the evidence, including the parties' agreements, communications, conduct, and course of dealing, and their actions after any claimed termination. The termination of a written agency agreement does not, by itself, end an agency relationship. If you find that, after any written agreement ended, Mayflower expressly or impliedly authorized Moholland to continue operating

---

[44] *Burgess*, 600 F. App'x at 661.

[45] O.C.G.A. § 10-6-52.

[46] O.C.G.A. § 10-6-51.

[47] O.C.G.A. § 10-6-33.

under Mayflower's authority, including its license plates, cab card, fuel-tax credentials, and U.S. Department of Transportation number, through the date of the collision, then you may find that an agency relationship existed on July 1, 2022.[48]

A party to the alleged relationship may testify to the existence or non-existence of an agency relationship as a fact. Such testimony is evidence for you to weigh along with all the other evidence; it is not conclusive.[49]

If you find that Moholland was Mayflower's agent, and that Mr. Burist was operating the tractor-trailer for Moholland within the scope of that agency at the time of the collision, then Mayflower is responsible for Mr. Burist's negligence.[50]

GIVEN: ________ REFUSED: ________ MODIFIED: ________

---

[48]Order, Dkt. No. 354, at 19–22 & nn.10–11 (genuine dispute whether Mayflower "expressly grant[ed] [Moholland] the authority to act on [Mayflower's] behalf" by allowing Moholland to continue using the license plate, cab card, and IFTA sticker through July 1, 2022).

[49]*Nat'l Prop. Owners Ins. Co. v. Wells*, 304 S.E.2d 458, 459–60 (Ga. Ct. App. 1983); Order, Dkt. No. 354, at 16–19.

[50]O.C.G.A. §§ 10-6-1, 51-2-2.

## PLAINTIFFS' REQUEST TO CHARGE NO. 21

## HOUSEHOLD GOODS CARRIER'S RESPONSIBILITY FOR ITS AGENTS — 49 U.S.C. § 13907(A)

Federal law provides:

> Each motor carrier providing transportation of household goods shall be responsible for all acts or omissions of any of its agents which relate to the performance of household goods transportation services (including accessorial or terminal services) and which are within the actual or apparent authority of the agent from the carrier or which are ratified by the carrier.[51]

If you find that Mayflower was a motor carrier providing transportation of household goods; that Moholland was acting as Mayflower's agent; and that the operation of the tractor-trailer on July 1, 2022, related to the performance of household goods transportation services and was within the actual or apparent authority Mayflower gave Moholland, or was ratified by Mayflower, then Mayflower is responsible for the acts and omissions of Moholland and of the driver Moholland used, Mr. Burist, in that operation.

GIVEN: ________ REFUSED: ________ MODIFIED: ________

[51] 49 U.S.C. § 13907(a).

**PLAINTIFF'S REQUEST TO CHARGE NO. 22**

***More Than One Carrier May Be Responsible***

The fact that one motor carrier is responsible for the operation of a commercial motor vehicle does not relieve another motor carrier of responsibility. A driver may have more than one carrier responsible for his operation of a commercial motor vehicle. Your finding that Defendant Joe Moholland Moving is responsible does not excuse Defendant Mayflower Transit, LLC, and your finding that Defendant Mayflower Transit, LLC is responsible does not excuse Defendant Joe Moholland Moving.

**Authority:** *Puga v. About Tyme Transp., Inc.*, 227 F. Supp. 3d 760 (S.D. Tex. 2017) (a driver may have multiple statutory employers); *see also Puga v. RCX Solutions, Inc.*, No. 17-41282 (5th Cir. 2019) (jury found carrier responsible under 49 U.S.C. § 14102(a) notwithstanding that a different carrier's logo appeared on the trailer); O.C.G.A. §§ 51-12-30, 51-12-31.

## PLAINTIFFS' REQUEST TO CHARGE NO. 23
## APPARENT AGENCY

The Plaintiff also contends that Mayflower is responsible for Mr. Burist's negligence under the doctrine of apparent agency, because the tractor-trailer displayed Mayflower's name and U.S. Department of Transportation number and carried Mayflower's license plate, cab card, and fuel-tax credentials.

Under federal safety regulations, every commercial motor vehicle must be marked with the legal name or trade name of the motor carrier operating the vehicle and with that motor carrier's U.S. Department of Transportation identification number.[52] You may consider these markings, and the other credentials displayed on or carried in the tractor-trailer, as evidence of whether Mayflower held out the tractor-trailer and its driver as operating on Mayflower's behalf.

Apparent authority must be based on the acts or conduct of the principal, Mayflower, and not merely on statements by the purported agent about its own authority.[53] To establish apparent agency, the Plaintiff must prove that (1) Mayflower held out Moholland or Mr. Burist as its agent, by its own words or conduct, or by knowingly permitting the use of its name, authority, and credentials;

[52] 49 C.F.R. § 390.21(a)–(b).

[53] *Home Materials, Inc. v. Auto-Owners Ins. Co.*, 250 Ga. 599, 601, 300 S.E.2d 139 (1983).

(2) the Plaintiff justifiably relied on that holding out; and (3) that justifiable reliance resulted in the Plaintiff's injuries.[54]

If you find that the Plaintiff has proved each of these elements, then Mayflower is responsible for Mr. Burist's negligence to the same extent as if he had been its actual agent.

GIVEN: ________ REFUSED: ________ MODIFIED: ________

[54] *Kids R Kids Int'l, Inc. v. Cope*, 330 Ga. App. 891, 894 (2015); *Frey v. PepsiCo, Inc.*, 191 Ga. App. 585, 587, 382 S.E.2d 648 (1989); *see also* 49 U.S.C. § 13907(a) (household goods carrier responsible for acts of its agents "within the actual or apparent authority of the agent from the carrier").

## PLAINTIFFS' REQUEST TO CHARGE NO. 24

## STATUTORY EMPLOYMENT UNDER THE FEDERAL MOTOR CARRIER SAFETY REGULATIONS

The Plaintiff also contends that Mayflower is responsible for Mr. Burist's negligence because, under federal law, he was Mayflower's "statutory employee."

Under the Federal Motor Carrier Safety Regulations, an "employer" includes any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it. An "employee" includes a driver of a commercial motor vehicle, including an independent contractor while in the course of operating a commercial motor vehicle.[55]

An authorized motor carrier that performs transportation in equipment it does not own must do so under a lease. A "lease" is a contract or arrangement in which the owner grants the use of equipment, with or without driver, for a specified period to an authorized carrier for use in the regulated transportation of property, in exchange for compensation.[56] The lease must provide that the carrier lessee "shall have exclusive possession, control, and use of the equipment for the duration of the

---

[55] 49 C.F.R. § 390.5; 49 U.S.C. § 31132(2), (3).

[56] 49 C.F.R. §§ 376.2 (definition of "lease"), 376.11(a).

lease," and that the carrier lessee "shall assume complete responsibility for the operation of the equipment for the duration of the lease."[57]

Under Georgia law, where equipment and its driver are covered by such a lease, the traditional rules of employment and independent contractor status do not apply. A motor carrier lessee is responsible to the public for the operation of the leased equipment for the duration of the lease, and the driver of the leased equipment is the carrier's statutory employee. The carrier is liable for the driver's negligence as a matter of law, regardless of whether the driver was otherwise an independent contractor and regardless of whether the driver was technically acting within the scope of employment.[58]

Federal regulations require the lease to specify the time and date, or the circumstances, on which the lease begins and ends, and to specify which party is responsible for removing identification devices from the equipment upon termination and when and how those devices will be returned to the carrier.[59] During the lease, the carrier must identify the equipment as being in its service, must keep

---

[57] 49 C.F.R. § 376.12(c)(1).

[58] *PN Express, Inc. v. Zegel*, 304 Ga. App. 672, 675–76, 697 S.E.2d 226 (2010); *Hot Shot Express, Inc. v. Assicurazioni Generali, S.P.A.*, 252 Ga. App. 372, 556 S.E.2d 475 (2001); *Nationwide Mut. Ins. Co. v. Holbrooks*, 187 Ga. App. 706, 371 S.E.2d 252 (1988); *Coleman v. B-H Transfer Co.*, 284 Ga. 624, 669 S.E.2d 716 (2008) (federal leasing regulations protect the public; carrier remains fully responsible to the public for operation of leased equipment); *Golden Peanut Co. v. Miller*, Nos. A21A1269, A21A1270 (Ga. Ct. App. Mar. 4, 2022) ("[A] lessee motor carrier is strictly liable under the FMCSRs for the operation of the equipment for the duration of the lease.").

[59] 49 C.F.R. § 376.12(b), (e).

with the equipment either a copy of the lease or a statement certifying that the equipment is being operated by it, and must keep documents covering each trip for which the equipment is used in its service. Receipts are required when possession of the equipment is transferred to the carrier and when it is returned.[60]

A statement or agreement that a business or agency relationship has been terminated does not, standing alone, decide whether a lease covering particular equipment, and the responsibilities that go with it, had ended. Whether a lease covering the tractor-trailer remained in effect on July 1, 2022, is a question of fact for you to decide from all the evidence, including the written lease and its terms for beginning and ending; the equipment description; possession and any return of possession; whether identification devices, license plates, cab card, and fuel-tax credentials had been removed and returned; any extension of the time to return them; trip and operating documents; the communications between the parties; and the parties' conduct. No single one of these facts is conclusive. If you find by a preponderance of the evidence that, on July 1, 2022, the tractor-trailer was being operated under a lease or arrangement to Mayflower within the meaning I have just explained, then Mr. Burist was Mayflower's statutory employee and Mayflower is liable for his negligence.[61]

---

[60] 49 C.F.R. § 376.11(b)–(d).

[61] 49 C.F.R. §§ 376.2, 376.12(b); Order, Dkt. No. 354, at 5–12, 18–22.

[If the lease contains a household-goods provision under 49 C.F.R. § 376.12(c)(3):] When an authorized carrier of household goods leases equipment for the transportation of household goods, the parties may provide in the lease that the carrier's exclusive possession, control, use, and responsibility apply only during the time the equipment is operated by or for the carrier. If you find that the lease here contained such a provision, you must also decide whether, on July 1, 2022, the tractor-trailer was being operated by or for Mayflower.[62]

GIVEN: ________ REFUSED: ________ MODIFIED: ________

[62] 49 C.F.R. § 376.12(c)(3).

## PLAINTIFFS' REQUEST TO CHARGE NO. 25
## DIRECT NEGLIGENCE OF LOCKE, MOHOLLAND, AND MAYFLOWER

Separately from vicarious liability, the Plaintiff contends that Locke, Moholland, and Mayflower were each negligent in their own right. You should consider this claim separately as to each of these Defendants.

*Negligent hiring, retention, and supervision.* An employer has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others, where it is reasonably foreseeable from the employee's tendencies or propensities that the employee could cause the type of harm the Plaintiff sustained.[63] A motor carrier is required by law to determine whether its drivers are qualified and to maintain a driver qualification file for each driver; an employer that fails to make the inquiries the law requires is charged with the knowledge those inquiries would have revealed.[64]

*Negligent entrustment.* A person who entrusts a vehicle to a driver is liable for injuries caused by the driver's negligence if the person had actual knowledge that the driver was incompetent or habitually reckless, and the driver's incompetence or recklessness was a proximate cause of the injury.[65]

---

[63] *Munroe v. Universal Health Servs., Inc.*, 277 Ga. 861, 596 S.E.2d 604 (2004); O.C.G.A. § 34-7-20.

[64] 49 C.F.R. §§ 391.11(a), 391.51(a); *W. Indus., Inc. v. Poole*, 280 Ga. App. 378, 634 S.E.2d 118 (2006).

[65] *Cherry v. Kelly Servs., Inc.*, 171 Ga. App. 235, 319 S.E.2d 463 (1984).

*Negligent maintenance.* An owner or motor carrier who permits a vehicle to be operated when it knows, or in the exercise of ordinary care should know, that the vehicle is in disrepair is liable for injuries proximately caused by the defect. I have already read to you the federal regulations requiring motor carriers to inspect, repair, and maintain the vehicles subject to their control.[66]

*Motor carrier operating authority.* A motor carrier that permits a tractor-trailer to operate on the public highways under its name, U.S. Department of Transportation number, license plates, cab card, and fuel-tax credentials owes the motoring public a duty of ordinary care, including the duties imposed on motor carriers by the Federal Motor Carrier Safety Regulations, to require that the vehicle and its driver comply with those regulations.[67]

If you find that Locke, Moholland, or Mayflower breached any of these duties, and that the breach was a proximate cause of the Plaintiff's injuries, then that Defendant is liable for its own negligence.

GIVEN: ________ REFUSED: ________ MODIFIED: ________

[66] *Cantrell v. U-Haul Co. of Ga.*, 224 Ga. App. 671, 482 S.E.2d 413 (1997); 49 C.F.R. §§ 396.3(a), 396.7(a); O.C.G.A. § 40-1-8(b).

[67] O.C.G.A. § 51-1-2; 49 C.F.R. §§ 390.5, 390.11, 390.21, 392.5(b), 396.3(a).

**PLAINTIFFS' REQUEST TO CHARGE NO. 26**
**APPORTIONMENT OF FAULT AMONG THE DEFENDANTS**

If you find that more than one Defendant was negligent and that the negligence of each proximately caused the Plaintiff's injuries, you must determine the percentage of fault of each such Defendant. The total of the percentages you assign must equal 100 percent. You will record these percentages on the verdict form. You do not reduce the amount of damages yourselves; you will find the full amount of damages, and the Court will apply the percentages you assign.[68]

In assigning percentages of fault, you consider only each Defendant's own negligence. Mr. Burist's fault is measured by his own negligent conduct. The fault of Locke, Moholland, and Mayflower is measured by their own direct negligence, if any, such as negligent hiring, retention, supervision, entrustment, or maintenance.

Vicarious liability is not fault. Do not assign a separate percentage of fault to a Defendant merely because it is vicariously liable for Mr. Burist's negligence. Instead, you will answer separate questions on the verdict form about vicarious liability. If you find that a Defendant is vicariously liable for Mr. Burist's negligence, that Defendant is responsible, along with Mr. Burist, for the percentage of fault you assign to Mr. Burist.[69]

---

[68] O.C.G.A. § 51-12-33(b); *Quynn v. Hulsey*, 310 Ga. 473, 850 S.E.2d 735 (2020).

[69] *Atlanta Women's Specialists, LLC v. Trabue*, 310 Ga. 331 (2020); O.C.G.A. § 51-2-2; *PN Express*, 304 Ga. App. at 675–76.

No party contends that Kyle Sloan was at fault in causing the collision, and you should not assign any fault to him.

GIVEN: ________ REFUSED: ________ MODIFIED: ________

**PLAINTIFFS' REQUEST TO CHARGE NO. 27**
**DAMAGES — GENERAL**

If you find for the Plaintiff on liability, you must then determine the damages. The fact that I instruct you on damages does not mean that I have any opinion about whether any Defendant is liable.

Damages are given as compensation for injury.[70] Damages fall into two categories. General damages are those which the law presumes to flow from a tortious act; they may be recovered without proof of any specific amount. Special damages are those which actually flow from a tortious act; they must be proved in order to be recovered.[71]

There are five separate claims for damages in this case, and the verdict form will ask you to determine the damages for each separately:

(1) Kyle Sloan's individual claim for his own injuries and losses;

(2) the claim for the wrongful death of Jamie Sloan;

(3) the claim for the wrongful death of Rylie Sloan;

(4) the claim of the Estate of Jamie Sloan; and

(5) the claim of the Estate of Rylie Sloan.

[70] O.C.G.A. § 51-12-4.

[71] O.C.G.A. § 51-12-2.

Each claim compensates for a different loss. You should not award damages for the same loss under more than one claim.

GIVEN: ________ REFUSED: ________ MODIFIED: ________

## PLAINTIFFS' REQUEST TO CHARGE NO. 28
## KYLE SLOAN'S INDIVIDUAL CLAIM — SPECIAL DAMAGES

On Kyle Sloan's individual claim, you may award the following special damages that the Plaintiff proves by a preponderance of the evidence were proximately caused by the negligence for which a Defendant is responsible:

*Medical expenses.* Necessary expenses resulting from an injury are a proper element of damages.[72] You may award the reasonable value of necessary medical care, treatment, and services received in the past, and the reasonable value of the medical care, treatment, and services that the evidence shows he will reasonably need in the future. The measure is the reasonable value of the services. You must not reduce any award for medical expenses because some or all of those expenses were or may be paid by insurance or any other source.[73]

*Lost earnings and loss of earning capacity.* The earnings, including fringe benefits, that he lost in the past, and the earnings and fringe benefits that the evidence shows he will reasonably lose in the future, as a result of his injuries.

---

[72] O.C.G.A. § 51-12-7.

[73] *Hoeflick v. Bradley*, 282 Ga. App. 123, 637 S.E.2d 832 (2006); *Olariu v. Marrero*, 248 Ga. App. 824, 549 S.E.2d 121 (2001). The 2025 amendment concerning evidence of amounts paid for medical expenses, O.C.G.A. § 51-12-1.1, applies only to causes of action arising on or after its effective date and does not apply to this July 1, 2022 collision. *See* Ga. S.B. 68 (2025).

*Loss of household services.* The reasonable value of the household services that he was able to perform before the collision and that the evidence shows he has been or will be unable to perform as a result of his injuries.

Future damages may be awarded only for losses that the evidence shows are reasonably certain to result from the injuries. You may not award damages based on speculation or conjecture. Any award for future economic losses, such as future medical expenses and future lost earnings, may be reduced to its present value. You may use a discount rate of 5 percent per year, or any other discount rate that you find appropriate based on the evidence.[74]

GIVEN: ________ REFUSED: ________ MODIFIED: ________

[74] O.C.G.A. § 51-12-13.

**PLAINTIFFS' REQUEST TO CHARGE NO. 29**
**KYLE SLOAN'S INDIVIDUAL CLAIM — PAIN AND SUFFERING**

Pain and suffering is a legal item of damages. On Kyle Sloan's individual claim, you may award damages for the physical pain and the mental and emotional pain and suffering that he has experienced and that the evidence shows he will experience in the future as a result of his injuries.[75]

In determining damages for pain and suffering, you may consider the nature and extent of his injuries; his physical pain; his mental anguish, anxiety, and emotional distress; any psychological injury; any impairment of bodily health and vigor; any permanent injury or disability; any disfigurement; any interference with his normal living and loss of enjoyment of life; and the duration of each of these, past and future.

There is no fixed standard or formula by which pain and suffering can be measured, and the law does not require evidence of a specific amount. The measure is the enlightened conscience of fair and impartial jurors. You should award an amount that will fairly and fully compensate him, based on the evidence.

GIVEN: ________ REFUSED: ________ MODIFIED: ________

[75] O.C.G.A. § 51-12-4; *see Langran v. Hodges*, 60 Ga. App. 567, 4 S.E.2d 489 (1939).

## PLAINTIFFS' REQUEST TO CHARGE NO. 30

## KYLE SLOAN'S EMOTIONAL DISTRESS FROM WITNESSING RYLIE SLOAN'S SUFFERING AND DEATH

Kyle Sloan contends that he suffered serious emotional distress as a result of witnessing the physical suffering and death of his daughter, Rylie Sloan.

If you find that Kyle Sloan and Rylie Sloan both sustained a physical impact and physical injury in the collision as a result of the negligence for which a Defendant is responsible, that Rylie Sloan died as a result, and that Kyle Sloan witnessed her suffering and death, then Kyle Sloan may recover for the serious emotional distress he experienced from witnessing his daughter's suffering and death. This is so whether or not that emotional distress arises out of his own physical injuries.

This element of damages is limited to the emotional distress caused by witnessing his daughter's suffering and death. It does not include the ordinary grief that accompanies the death of a family member, which is not separately recoverable.[76]

GIVEN: ________ REFUSED: ________ MODIFIED: ________

---

[76] *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 533 S.E.2d 82 (2000).

**PLAINTIFFS' REQUEST TO CHARGE NO. 31**
**LIFE EXPECTANCY AND PERMANENT INJURY**

If you find that Kyle Sloan has sustained a permanent injury, you may consider his life expectancy in determining the damages for his future losses and future pain and suffering.

You may consider mortality tables, together with all the other evidence bearing on his probable length of life, including his age, health, habits, and occupation. Mortality tables are not binding on you; they are only aids to be considered along with all the other evidence.[77] Kyle Sloan was born on January 13, 1981. Evidence has been presented that his life expectancy is 30.57 years (366 months).

GIVEN: ________ REFUSED: ________ MODIFIED: ________

[77] O.C.G.A. § 24-14-45.

**PLAINTIFFS' REQUEST TO CHARGE NO. 32**

**WRONGFUL DEATH — FULL VALUE OF THE LIFE OF THE DECEDENT**

Kyle Sloan, as the surviving spouse of Jamie Sloan, is entitled to recover for her death the full value of her life.[78] Kyle Sloan, as the surviving parent of Rylie Sloan, is entitled to recover for her death the full value of her life.[79] You will determine these amounts separately.

The "full value of the life of the decedent" means the full value of the life of the decedent, without deducting for any of the necessary or personal expenses of the decedent had she lived.[80] The full value of a life is measured from the standpoint of the decedent, that is, what she lost by losing her life, and not from the standpoint of what the survivors lost.

The full value of the life has two parts. The first part is economic: the value of the earnings, income, and services, including household services, that the decedent would reasonably have provided during her lifetime had she lived. In determining the economic part, you may consider the decedent's age, health, habits, education, work history, and earning capacity, and you must not deduct any amount

---

[78] O.C.G.A. § 51-4-2(a).

[79] O.C.G.A. §§ 19-7-1(c)(1), (c)(2)(B), 51-4-4.

[80] O.C.G.A. § 51-4-1(1).

for her personal living expenses. You may reduce the economic part to its present value.[81]

The second part is the intangible value of the life itself, which is not capable of exact proof. It includes the value of living, of the decedent's relationships with her family and friends, of the activities, experiences, and pursuits she would have enjoyed, and of everything that her life would have meant to her. There is no fixed formula for determining this value; you determine it based on the evidence and on your enlightened consciences as fair and impartial jurors.[82]

The full value of a child's life is determined in the same way. A child need not have had any earnings or work history for you to award the full value of her life. You may consider the evidence of her character, abilities, interests, relationships, and future prospects in determining both the economic and intangible value of her life.

You may not award damages for the grief or sorrow of the surviving family members as part of the full value of the life, and you may not include any amount to punish or deter the Defendants in the wrongful death awards.[83]

GIVEN: ________ REFUSED: ________ MODIFIED: ________

---

[81] O.C.G.A. §§ 51-4-1(1), 51-12-13.

[82] *Consol. Freightways Corp. of Del. v. Futrell*, 201 Ga. App. 233, 410 S.E.2d 751 (1991); *Childs v. United States*, 923 F. Supp. 1570 (S.D. Ga. 1996) (valuing intangible elements of a child's life).

[83] *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 319 S.E.2d 470 (1984); *Donson Nursing Facilities v. Dixon*, 176 Ga. App. 700, 701 (1985).

## PLAINTIFFS' REQUEST TO CHARGE NO. 33
## CLAIMS OF THE ESTATES OF JAMIE SLOAN AND RYLIE SLOAN

Kyle Sloan also brings claims as the personal representative of the Estate of Jamie Sloan and of the Estate of Rylie Sloan. These claims are separate from the wrongful death claims. You will determine the damages for each estate separately.

*Medical and funeral expenses.* When death results from negligence, the personal representative of the deceased is entitled to recover the funeral, medical, and other necessary expenses resulting from the injury and death of the deceased.[84]

*Conscious pain and suffering.* A claim for personal injury does not end with the injured person's death, but survives to her estate.[85] Each estate may therefore recover for the conscious physical pain and mental suffering that Jamie Sloan and Rylie Sloan, respectively, experienced between the time of their injuries and their deaths. This includes any fright, shock, and mental anguish experienced in anticipation of the impending collision. You may infer consciousness and suffering from circumstantial evidence, including the nature of the injuries, the medical evidence, and the length of time between the injury and death. The measure of these damages is the enlightened conscience of fair and impartial jurors.[86]

---

[84] O.C.G.A. § 51-4-5(b).

[85] O.C.G.A. § 9-2-41.

[86] *Dep't of Transp. v. Dupree*, 256 Ga. App. 668, 570 S.E.2d 1 (2002); *Walker v. Daniels*, 200 Ga. App. 150, 407 S.E.2d 70 (1991); *Pullman Co. v. Strang*, 35 Ga. App. 59, 132 S.E. 399 (1926).

GIVEN: ________ REFUSED: ________ MODIFIED: ________

**PLAINTIFFS' REQUEST TO CHARGE NO. 34**
**PUNITIVE DAMAGES — LIABILITY (FIRST PHASE)**

The Plaintiff also seeks punitive damages. Punitive damages may be awarded only on Kyle Sloan's individual claim and on the claims of the Estates of Jamie Sloan and Rylie Sloan. Punitive damages may not be awarded on the wrongful death claims.[87]

Punitive damages are not awarded as compensation. They are awarded solely to punish, penalize, or deter a defendant.[88]

Punitive damages may be awarded only if the Plaintiff proves by clear and convincing evidence that a Defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.[89] Driving a vehicle while under the influence of alcohol may show such a conscious indifference to consequences.[90]

The Plaintiff has the burden of proving his claim for punitive damages by clear and convincing evidence. This is a higher standard of proof than proof by a

---

[87] *Donson Nursing Facilities*, 176 Ga. App. at 701; *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 319 S.E.2d 470 (1984).

[88] O.C.G.A. § 51-12-5.1(a), (c).

[89] O.C.G.A. § 51-12-5.1(b).

[90] *Holt v. Grinnell*, 212 Ga. App. 520 (1994).

preponderance of the evidence. It means the evidence must persuade you that the claim is highly probable or reasonably certain.[91]

You must consider punitive damages separately as to each Defendant. You may consider each company's own conduct. [In addition, if you find that a company is vicariously liable for Mr. Burist's conduct, and you find by clear and convincing evidence that Mr. Burist's conduct warrants punitive damages, you may find that the company is also liable for punitive damages based on that conduct.][92]

If you find that punitive damages should be awarded against Mr. Burist, you must also decide whether the Plaintiff has proved that Mr. Burist acted or failed to act while under the influence of alcohol or drugs to the degree that his judgment was substantially impaired.[93]

At this stage you will only decide, on the verdict form, whether punitive damages should be awarded against each Defendant, and the question regarding impairment. You will not decide the amount of punitive damages at this time. If you find that punitive damages should be awarded, the trial will continue so that you may determine the amount.[94]

---

[91] 11th Cir. Pattern Jury Instr. (Civ.) § 1.2 (rev. Dec. 2025) (verbatim except the first sentence, which adapts the pattern's opening sentence to this claim; § 1.2 is a preliminary instruction, repeated here in the final charge).

[92] *Sightler v. Transus, Inc.*, 208 Ga. App. 173, 430 S.E.2d 81 (1993); *cf. Clarke v. Cotton*, 263 Ga. 861, 440 S.E.2d 165 (1994).

[93] O.C.G.A. § 51-12-5.1(f).

[94] O.C.G.A. § 51-12-5.1(d)(1)–(2).

GIVEN: ________ REFUSED: ________ MODIFIED: ________

Submitted this 6th day of October, 2026.

***s/ Charles J. Hodge***
Charles J. Hodge
Admitted Pro Hac Vice
J. Camden Hodge
Admitted Pro Hac Vice
HODGE LAW FIRM
P.O. Box 2765
Spartanburg, SC 29306
Tel: (864) 585-3873
Fax:(864)585-6485
CHodge@hodgelawfirm.com
**Attorneys For Plaintiff**

**T. Ryan Langley**
T. Ryan Langley
Georgia State Bar No.: 692386
Matthew T. Foss
Admitted Pro Hac Vice
LANGLEY LAW FIRM
229 Magnolia Street
Spartanburg, SC 29306
Tel: (864) 774-4662
Ryan@thelangleylawfirm.com
Matt@thelangleylawfirm.com
**Attorneys For Plaintiff**

**Joseph R. Padgett**
Joseph R. Padgett
Hamilton & Padgett, LLC
GA Bar No. 872672
13 St. Andrews Ct.
Brunswick, Georgia 31520
P: (912) 200-2727
joseph@hamiltonpadgettlaw.com
**Attorneys For Plaintiff**