# In the United States District Court for the Southern District of Georgia Brunswick Division

| | |
|---|---|
| KYLE SLOAN, Individually, and as Personal Representative of the Estates of Rylie Sloan and Jamie Sloan; KYLE SLOAN as Surviving Spouse of Jamie Sloan; and KYLE SLOAN as Surviving Parent of Rylie Sloan;<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS BURIST; MAYFLOWER TRANSIT LLC; JOE MOHOLLAND, INC.; LOCKE RELATIONS LLC; and XYZ COMPANIES 1-3,<br><br>Defendants. | 2:22-cv-76 |

## ORDER

This action is before the Court on a motion for summary judgment filed by Defendant Mayflower Transit LLC ("Mayflower"). Dkt. No. 373. The motion has been fully briefed, dkt. nos. 373, 374, 402, 403, 409, and is ripe for review. For the reasons set forth below, the motion, dkt. no. 373, is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

This case arises out of a July 1, 2022 traffic accident on I-95 in Camden County, Georgia, which resulted in multiple deaths

and several hospitalizations. Dkt. No. 354 at 3.[1] Four lawsuits, including the present action, were filed against Defendants Mayflower, Joe Moholland, Inc. ("Moholland"), Locke Relations LLC ("Locke"), and semi-truck driver Nicholas Burist ("Burist"). Id.

## I. Overview of Defendants' Relationships

Mayflower, a subsidiary of UniGroup C.A., is an interstate carrier that facilitates government or military moves across state lines. Id. Mayflower, itself, does not carry out the moves; it authorizes them. Id. at 4. The moves are conducted under Mayflower's Department of Transportation ("DOT") number, but Mayflower contracts with agents to actually perform the moves. Id. One of these agents was Moholland. Id.

Moholland also has a contractual relationship with Locke. Id. Locke provides Moholland with vehicles and drivers, and, in return, Moholland facilitates jobs and serves as a dispatcher for Locke. Id. at 4-5. One of the drivers Locke provided to Moholland was Defendant Burist. Id. at 5.

Mayflower maintained an agency agreement with Moholland from 2008 until January 19, 2022. Id. In conjunction with the agency agreement, Mayflower and Moholland also entered into a lease agreement. Id. at 5. Under the lease agreement, Moholland provided

---

[1] The Court's prior Order dated August 27, 2025 provides a thorough summary of the facts in this case. Dkt. No. 354 at 3-13. For purposes of the present motion, only a brief recitation of the facts is necessary.

Mayflower with motor vehicles, van equipment, and drivers. Id. at 5–6. The lease agreement required Moholland to return all licenses, cards, permits, and other operating documents to Mayflower within thirty days of agreement termination. Id. at 6. The terms of the lease agreement stated that the agreement automatically terminated on the date of termination of the agency agreement. Id. at 18.

In order to tie up ongoing business as the agency agreement neared its end, Mayflower and Moholland entered a temporary agency agreement that ran from January 20, 2022 until April 28, 2022. Id. at 4. In connection with the termination of this temporary agency agreement, the parties agreed that no later than sixty days after the termination date, Moholland would remove all signage and branding associated with Mayflower or UniGroup from its business, equipment, and facilities. Id. at 8. The temporary agreement terminated on April 28, 2022, so all Mayflower or UniGroup signage and branding was supposed to be removed by June 28, 2022. Id. Those changes had not been made as of the July 1, 2022 accident. Id. at 8.

Additionally, in May 2022, shortly after the temporary agency agreement ended, Moholland contacted UniGroup requesting to continue using Mayflower's license plates. Id. at 10. After a series of emails, on June 28, 2022, UniGroup informed Moholland that Moholland needed to return the plates by July 1, 2022. Id. at 11. The plates had not been returned as of the July 1, 2022

accident. Id. at 13. At the time of the accident, the semi-truck involved in the collision had Mayflower's license plates and IFTA stickers on it, as well as the cab card inside it. Id. at 13.

In an Order dated August 27, 2025, the Court determined there was a genuine issue of material fact regarding whether an agency relationship existed between Mayflower and Moholland on July 1, 2022. Id. at 22.

**II. The Accident**

On June 17, 2022, Defendant Burist was pulled into a Georgia weigh station after an equipment detection device identified issues with his truck. Dkt. No. 291-11 at 29. On June 20, 2022, Mayflower was notified of the inspection and informed that the inspection report documented vehicle maintenance violations. Dkt. No. 307-12. Despite receiving notice of the violation, Mayflower failed to take action to correct the identified maintenance issues or to prevent Defendant Burist from continuing to operate the vehicle. Dkt. No. 291-10 at 80; Dkt. No. 402 at 2.

Burist was driving the same semi-truck when the accident occurred on July 1, 2022. Dkt. No. 402 at 3. Burist was cited for driving under the influence and possession of drugs or alcohol. Dkt. No. 307-3 at 36.

Plaintiff Kyle Sloan was driving with his wife, Jamie Sloan, child, Rylie Sloan, and minor, K.W., in the car. Dkt. No. 183 ¶ 80. Jamie and Rylie Sloan sustained fatal injuries. Id. Plaintiff now

brings this action on behalf of himself, as representative of Jamie and Rylie Sloan's Estates, and as surviving spouse and parent of Jamie and Rylie, respectively.[2] Id. at 1. Plaintiff asserts numerous claims including negligence, vicarious liability, and punitive damages. See generally id.

**LEGAL STANDARD**

The Court should grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

Facts are considered "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of those material facts "is 'genuine' . . . if the evidence is such

---

[2] The second amended complaint drops the claims asserted in the first amended complaint by Susan West on behalf of K.W. See Dkt. Nos. 10, 183. Accordingly, the Clerk is **DIRECTED** to terminate Susan West as a plaintiff in this action.

that a reasonable jury could return a verdict for the nonmoving party." Id. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" for a jury to return a verdict for the nonmoving party. Id. at 252. Additionally, to survive a motion for summary judgment, the "party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings." Walker v. Darby, 911 F.2d 1573, 1576 (11th Cir. 1990). "Rather, its responses . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 1576–77.

**DISCUSSION**

Defendant Mayflower moves for summary judgment on Count Ten of the second amended complaint, Plaintiff's claim for punitive damages against Mayflower and other Defendants. Dkt. No. 373. Plaintiff opposes the motion. Dkt. No. 402.

**I. Georgia's Punitive Damages Statute**

The Tort Reform Act of 1987 made several changes to Georgia damages law, including adoption of a new punitive damages statute, O.C.G.A. § 51-12-5.1. Reid v. Morris, 845 S.E.2d 590, 594 (Ga. 2020). Subsection (a) defines punitive damages, subsection (b) "states the circumstances under which such damages are awardable," and subsection (c) provides that "[p]unitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant." Id. (quoting McClure v. Gower,

385 S.E.2d 271, 275 (Ga. 1989) (citations omitted)). Subsection (d) sets forth procedures whereby the trier of fact is to determine whether punitive damages shall be awarded and, if so, the amount of the award. O.C.G.A. § 51-12-5.1(d); see also Reid, 845 S.E.2d at 594–95. Importantly, paragraph (2) of subsection (d) provides that "[i]f it is found that punitive damages are to be awarded . . . [i]t shall then be the duty of the trier of fact to set the amount to be awarded according to subsection (e), (f), or (g) of this Code section, as applicable." O.C.G.A. § 51-12-5.1(d)(2). Subsection (e) provides for the award of punitive damages in tort cases arising from product liability. O.C.G.A. § 51-12-5.1(e); see also Reid, 845 S.E.2d at 595.

Subsection (f), as amended in 1997, provides that there shall be no limitation on the amount of punitive damages where the defendant acted or failed to act with specific intent to cause harm or while substantially impaired by intoxicants. O.C.G.A. § 51-12-5.1(f); see also Reid, 845 S.E.2d at 595. Finally, subsection (g) states that in tort cases not provided for in subsections (e) or (f), the amount of the punitive-damage award shall be limited to a maximum of $250,000. O.C.G.A. § 51-12-5.1(g); see also Reid, 845 S.E.2d at 595.

To summarize, the structure of Georgia's punitive damages statute, as relevant to this case, is as follows: if the trier of fact finds that the circumstances set forth in subsection (b) are

present, it shall set the amount to be awarded according to subsection (f), if applicable, and otherwise according to subsection (g).

## II. Application of the Statute

The inquiry here is thus two-fold. As a preliminary matter, the Court must determine whether subsection (b) permits the fact-finder to award punitive damages at all. If so, the issue becomes whether the punitive damages award is without limitation as provided in subsection (f) or whether the damages are capped at $250,000 as provided in subsection (g). These issues are addressed in turn below.

### A. Punitive Damages Under Subsection (b)

Mayflower first argues that it is entitled to judgment as a matter of law on Plaintiff's claim for punitive damages because the record does not support a finding that it acted with the requisite culpability under subsection (b) of O.C.G.A. § 51-12-5.1. Dkt. No. 373 at 13–15. Subsection (b) states: "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). "Georgia defines 'conscious indifference' as 'an intentional disregard of the rights of another, knowingly or

wilfully disregarding such rights.'" Hutcherson v. Progressive Corp., 984 F.2d 1152, 1155 (11th Cir. 1993) (citing Gilman Paper Co. v. James, 219 S.E.2d 447, 450 (Ga. 1975)).

Whether punitive damages are warranted is ordinarily a question for the trier of fact. Weller v. Blake, 726 S.E.2d 698, 703 (Ga. Ct. App. 2012) (citations omitted). A jury may award punitive damages where clear and convincing evidence creates even "an inference of the defendant's conscious indifference to the consequences of their acts." Id. (cleaned up) (quoting Tookes v. Murray, 678 S.E.2d 209, 213 (Ga. Ct. App. 2009)). Additionally, "even where the defendant did not act with conscious indifference in creating the problem that led to the damage, punitive damages may be justified if the defendant acted with such conscious indifference in failing to correct that problem." Id. (quoting Wildcat Cliffs Builders, LLC v. Hagwood, 663 S.E.2d 818, 821 (Ga. Ct. App. 2008) (citations omitted)).

Plaintiff alleges that Mayflower's conduct amounted to willful misconduct, wantonness, or conscious indifference to consequences. Dkt. No. 402 at 15, 16. Viewing the evidence in the light most favorable to Plaintiff as the non-movant, at this stage, there is some evidence from which a jury might find that Mayflower knew about the mechanical deficiencies of the semi-truck involved in the accident and did not take action to remedy the deficiencies or prevent further operation of the semi-truck. Dkt. No. 402 at 2–

3; Dkt. No. 336-1 (email from a Safety Manager at UniGroup acknowledging a "roadside inspection that wasn't good at all"). The Court previously determined there was a genuine dispute of material fact regarding whether Moholland was Mayflower's agent. Dkt. No. 354 at 22. If a jury finds Moholland was Mayflower's agent, Mayflower may have breached a duty in failing to fix or prevent operation of the semi-truck.

A reasonable jury could conclude that these facts support Mayflower's conscious indifference to consequences or willful disregard of the rights of others.

Mayflower also argues that even if the record may support that it acted with the requisite culpability under subsection (b), it cannot be liable for punitive damages because its alleged tortious conduct was not the proximate cause of the collision. Dkt. No. 373 at 14, 17-18. Under Georgia law, "the only evidence relevant to an award of punitive damages relates to the proximate cause of the collision." Battle v. Thomas, 623 F. Supp. 3d 1312, 1321 (N.D. Ga. 2022) (cleaned up) (citations omitted).

Mayflower contends that its only alleged role relates to "passive acts when terminating [its] relationship with the other Defendants." Dkt. No. 373 at 15. However, the record contains evidence from which a reasonable juror could find that pre-collision defects of the semi-truck involved in the accident were a contributing factor of the accident. Dkt. No. 336-1; Dkt. No.

307-3 at 9–10 (expert report stating that the semi-truck had an out-of-service condition at the time of the collision). Therefore, a trier of fact could find Mayflower's alleged conscious indifference to consequences resulting from continued operation of the defective truck to be a proximate cause of the accident.

The record evidence demonstrates that there is a triable issue regarding whether Mayflower's conduct warrants imposition of punitive damages under O.C.G.A. § 51-12-5.1(b). To the extent Mayflower moves for summary judgment on Plaintiff's claim for punitive damages under subsection (b), its motion is **DENIED.**

**B. Uncapped Punitive Damages Under Subsection (f)**

Mayflower next argues that even if the undisputed record creates a triable issue as to whether Plaintiff is entitled to punitive damages, it does not create a triable issue regarding whether Plaintiff may be entitled to uncapped damages under subsection (f). Dkt. No. 373 at 15–25. To review, subsection (f) states:

> In a tort case in which the cause of action does not arise from product liability, if it is found that the defendant acted, or failed to act, with the specific intent to cause harm, or that the defendant acted or failed to act while under the influence of alcohol, drugs other than lawfully prescribed drugs administered in accordance with prescription, or any intentionally consumed glue, aerosol, or other toxic vapor to that degree that his or her judgment is substantially impaired, there shall be no limitation regarding the amount which may be awarded as punitive damages against an active tort-feasor but such damages shall not be the liability of any defendant other than an active tort-

feasor.

O.C.G.A. § 51-12-5.1(f).

Mayflower argues that, as a matter of law, it cannot be subject to uncapped punitive damages under this provision because the undisputed record establishes that Mayflower (1) is not an "active tort-feasor" and (2) did not act with specific intent to cause harm. Dkt. No. 373 at 16. Plaintiff responds that Mayflower's conduct makes it an "active tort-feasor" and argues that specific intent to cause harm is not required. Dkt. No. 402 at 6–17.

The Georgia Supreme Court has interpreted subsection (f) to exempt from subsection (g)'s $250,000 cap on punitive damages awards "defendants who had the specific intent to cause harm or were sufficiently intoxicated and who were *also* 'active tort-feasors.'" Reid, 845 S.E.2d at 596. Subsection (f) also limits apportionment of uncapped punitive damages by specifying that awards under this subsection "shall not be the liability of any defendant other than an active tort-feasor." Id. Therefore,

> defendants who had the specific intent to cause harm or were sufficiently intoxicated who were *not* active tort-feasors, as well as defendants who did not have the specific intent to cause harm and were not sufficiently intoxicated, [are] no longer [] held jointly liable for an uncapped punitive damages award against an active tort-feasor who had the specific intent to cause harm or was sufficiently intoxicated, and any punitive damages award against them would be limited by the $250,000 cap in subsection (g).

Id.

Plaintiff misconstrues the structure of Georgia's punitive damages regime. Plaintiff correctly argues that specific intent to harm is not required for an award of punitive damages. Dkt. No. 402 at 16. However, imposition of *uncapped* punitive damages under subsection (f) against a particular defendant requires that defendant either have had specific intent to harm or been substantially impaired by an intoxicant enumerated in the subsection. Reid, 845 S.E.2d at 596. Without allegations supporting one of these two circumstances, an award of punitive damages against that defendant is subject to subsection (g)'s $250,000 cap.

The record is devoid of any allegations, let alone evidence, that Mayflower specifically intended to harm Plaintiff. Plaintiff alleges only that Mayflower's conduct amounted to willful misconduct, wantonness, or conscious indifference to consequences. Dkt. No. 402 at 15, 16. As discussed above, these allegations may warrant punitive damages under subsection (b), but they cannot establish specific intent to harm.

Furthermore, Defendant Burist driving under the influence cannot create punitive liability on the part of Mayflower. Subsection (f) precludes joint and several liability for uncapped punitive damages awards except for "defendants who had the specific intent to cause harm or were sufficiently intoxicated if they were also active tort-feasors." Reid, 845 S.E.2d at 596.

Plaintiff argues that Reid stands for the proposition that non-drivers in DUI tort cases cannot be categorically excluded from uncapped punitive damages. Dkt. No. 402 at 14. In Reid, the non-driver tortfeasor handed his car keys to a driver he knew was intoxicated, had no valid driver's license, and had a habit of recklessness. 845 S.E.2d at 592. The non-driver was also intoxicated. Id. The plaintiffs sought to rely on the subsection (f) provision permitting damages against substantially impaired active tortfeasors to impose uncapped punitive damages on the non-driver. Id. at 593. The trial court held that the non-driver could not be liable under subsection (f) because a non-driver in a DUI tort case cannot be an "active tortfeasor." Id. at 597. The Georgia Supreme Court reversed, ruling that there was no categorical rule that non-drivers are non-active tortfeasors in a DUI tort case. Id.

Plaintiff here overlooks the subsection (f) hook in Reid: that the non-driver defendant himself may have been intoxicated to the degree that it impaired his judgment in handing the keys to an impaired and unfit driver. 845 S.E.2d at 592. The court reasoned that "[u]nder the plain language of O.C.G.A. § 51-12-5.1(f), a tort plaintiff like Reid may seek an uncapped punitive damages award against any defendant who was intoxicated to the degree that his or her judgment was substantially impaired *as long as that defendant also was an active tort-feasor.*" Id. at 596. (emphasis

added).

Unlike the defendant in Reid, Mayflower, a corporate entity, could not have been intoxicated. Without any allegation that Mayflower itself was somehow impaired or acted with specific intent to harm, whether it was an "active tortfeasor" is immaterial for determining if it may be subject to uncapped punitive damages.

Because Plaintiff has failed to point to evidence that shows Mayflower acted with specific intent to harm or was substantially impaired by intoxicants during its alleged negligence, Mayflower cannot be liable for uncapped punitive damages under subsection (f) of O.C.G.A. § 51-12-5.1. Any punitive damages award against Mayflower is limited by the $250,000 cap in subsection (g). Accordingly, Mayflower is entitled to summary judgment on Plaintiff's claim for punitive damages to the extent he seeks uncapped punitive damages under O.C.G.A. § 51-12-5.1(f).

**CONCLUSION**

Based on the record and the parties' briefs, Defendant Mayflower's motion for summary judgment, dkt. no. 373, is **DENIED** in part and **GRANTED** in part. The undisputed record evidence, viewed in the light most favorable to Plaintiff, creates a genuine issue of material fact on Plaintiff's claim for punitive damages under O.C.G.A. § 51-12-5.1(b). Mayflower's motion for summary judgment is therefore **DENIED** on that ground. The record does not, however, create a genuine issue of material fact on Plaintiff's

claim for uncapped punitive damages under O.C.G.A. § 51-12-5.1(f). Therefore, Defendant Mayflower's motion for summary judgment is **GRANTED** on that ground.

**SO ORDERED** this 14th day of October, 2026.

_________________________________
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA