**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | | |
|---|---|---|
| KYLE SLOAN, Individually, and as Personal Representative of the Estates of Rylie Sloan and Jamie Sloan; KYLE SLOAN as Surviving Spouse of Jamie Sloan; KYLE SLOAN as Surviving Parent of Rylie Sloan; and SUSAN WEST, Individually, and as the next friend and natural guardian of K.W., a minor, | ) | |
| Plaintiffs, | ) | CASE NO. 2:22-cv-00076-LGW-BWC |
| v. | ) | |
| NICHOLAS BURIST; LOCKE RELOCATIONS LLC; MAYFLOWER TRANSIT LLC; VANLINER INSURANCE COMPANY; JOE MOHOLLAND, INC.; AND XYZ COMPANIES 1-3, | ) | |
| Defendants. | | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT MAYFLOWER TRANSIT, LLC'S WRITTEN OBJECTIONS TO PLAINTIFFS' PROPOSED EXHIBITS (Dkt. No. 429)**

Plaintiffs Kyle Sloan, individually and as Personal Representative of the Estates of Rylie Sloan and Jamie Sloan, ("Plaintiffs"), file this Memorandum in Opposition to Defendant Mayflower Transit, LLC's ("Mayflower") Written Objections to the Plaintiff's Proposed Exhibits (Dkt. No. 439) and respectfully show the Court as follows:

## ARUGMENT SUMMARY

Mayflower's objections ask the Court to keep from the jury the very evidence on which the Court denied Mayflower summary judgment. Mayflower is asking this Court to exclude a subset of documents (namely, email and other correspondence among and between Mayflower employees and co-defendants to this litigation), while at the same time seeking to use substantially similar correspondence *itself*. Mayflower further objects to documents it has been in possession of or viewed for over a year. Moreover, Mayflower now seeks to exclude documents that have already been admitted into evidence during trial depositions – depositions in which Mayflower *did not* object to the evidence it now seeks to keep out. Most tellingly, Mayflower is now objecting to evidence it *listed as their own exhibits.* (*See* Dkt No. 434).

Mayflower calls documents irrelevant hearsay when it does not believe the evidence bears in its favor, and seeks to use substantially similar documents when it inures to its own benefit. Put simply, Mayflower wants to have its cake and eat it too. All the while, Mayflower criticizes Plaintiffs method of producing documents – a method which Mayflower itself has consistently employed. Its legal position is not only erroneous; it is also incongruous with its own course of conduct and Mayflower's own desired use of evidence in this case. Accordingly, and as detailed

below, Mayflower's objections to Plaintiffs' proposed exhibits must be denied in full.

## INTRODUCTION AND PROCEDURAL BACKGROUND

In its August 27, 2025 Order Denying Summary Judgment, the Court found "[i]mportant to the resolution of Mayflower's motions . . . certain emails exchanged between Moholland and Mayflower/Unigroup shortly before the accident," and held that those emails show "a genuine dispute of material fact . . . as to whether Mayflower created an agency relationship with Moholland by extending Moholland's authority to use the materials until July 1, 2022." Dkt. No. 354 at 9, 22. Mayflower now asks the Court to rule that the jury may not see them.

The emails are admissible.[1] Those written by Mayflower's own personnel are, by definition, not hearsay when Plaintiffs offer them against Mayflower. Fed. R. Evid. 801(d)(2)(D). Mayflower's objection itself describes their authors as "Mayflower employees" writing about "the location of and return of the license plates at issue in this litigation." Dkt. No. 439 at 1. That is a description of statements by a party's employees "on a matter within the scope of that relationship." Fed. R. Evid. 801(d)(2)(D). The emails are also admissible for purposes that do not depend

[1] As a threshold matter, many of these emails and other documents have already been admitted into evidence during trial depositions. Mayflower did not object contemporaneously to the admission of those documents into evidence. It remained silent when it had the opportunity to object. Any objection they make now is untimely and waived.

on their truth: the extension and its terms are verbal acts with independent legal significance, and Moholland's statements show what Mayflower was told, and therefore knew, when it allowed its plates to remain in service through July 1, 2022. Nothing in Rule 401, Rule 403, or Georgia's parol evidence rule supports excluding the central evidence on the central disputed issue in this trial.

Mayflower's position cannot be reconciled with its own trial preparation. Of the 41 Plaintiffs' exhibits to which Mayflower now objects, 23 appear on Mayflower's own exhibit list, filed three days before its objections. *Compare* Dkt. No. 434, *with* Dkt. No. 439. Those 23 include fifteen of the seventeen emails Mayflower challenges and all eight deposition transcripts. Further, at summary judgment, Mayflower affirmatively relied on its own "emails to Moholland that requested return of Mayflower's base plates." Dkt. No. 290 at 10; *see* Dkt. No. 354 at 21 n.10. Mayflower may not use the emails that help it while excluding the emails that do not.

Mayflower's remaining objections to other evidence fares no better. Its objection to Plaintiffs' damages experts' reports comes too late: those reports were received as exhibits during the experts' trial depositions without objection from Mayflower. Fed. R. Civ. P. 32(d)(3). Its claims that the video interviews and other materials were "not previously produced" ignore that Plaintiffs provided the videos to Mayflower's counsel on January 7, 2026. **Exhibit 1.** Finally, the PowerPoint

presentation is an illustrative aid for opening and closing, governed by Federal Rule of Evidence 107, that Mayflower has already seen in open court well over a year ago – and it in many parts contains evidence that Mayflower had not previously objected to or has listed as its own exhibits. Their objections should be overruled.

**A. The Court's Summary Judgment Order**

The Court denied Mayflower's motion for summary judgment because "[t]he outcome of Mayflower's motion for summary judgment turns on whether an agency relationship existed between Mayflower and Moholland on July 1, 2022," and Plaintiffs identified sufficient evidence for a jury to find that it did. Dkt. No. 354 at 16, 22. The Court recognized that under Georgia law an agency relationship may arise "(1) expressly, (2) by implication, or (3) through the principal's ratification of the agent's conduct," and rejected Mayflower's premise "that absent an agency agreement memorialized by contract, no such relationship could exist." *Id.* at 16, 19.

The emails, which Mayflower in part relies in its own case, were central to that ruling. The Court recounted that in May 2022 Moholland's Vice President of Operations, Michael Peters, told UniGroup's Permit Coordinator, Diane Lopez, "It was agreed we could keep them and run under them until they expire in 2023, we are not returning them until then." *Id.* at 10 (quoting Dkt. No. 337-1 at 19). UniGroup Safety Manager Nicole Crum then set a June 15, 2022 return deadline, warning that otherwise Mayflower would "delete the plates from Missouri and report the plates

as stolen." *Id.* (quoting Dkt. No. 337-1 at 18). On June 28, 2022, Mr. Peters asked for an extension for twelve units, including Unit 251-0333, the unit involved in this crash. *Id.* at 10–11 (citing Dkt. No. 336-1). Ms. Crum forwarded the request to Adam Petry, Senior Manager of Safety Administration, writing: "My concern is that so much can happen and come back to us the longer we keep letting them use our plates." *Id.* at 11. That same day, Mr. Petry wrote to Moholland's president:

> Mike Peterson from your office reached out to us this morning asking for an extension to return the base plates for 12 units. After checking with legal, I am sorry to inform that we cannot grant another extension past this Friday 07/01. We will need confirmation that these will be sent back on or before Friday otherwise legal will need to be involved.

*Id.* at 11 (quoting Dkt. No. 337-1 at 16). The Court found that "contrary to the initial communications that required the plates to be returned by June 15, 2022, Mr. Petry's email states that Moholland need not return the plates until Friday, July 1, 2022 at the latest," and that Mayflower neither took legal action nor reported the plates stolen. *Id.* at 11–12. Mayflower's corporate representative testified that there was no later correspondence modifying the July 1 extension date. Dkt. No. 309 at 18 (quoting Dkt. No. 291-10 at 73). Importantly, Petry is a Senior *Manager*, and Crum is a Safety *Manager.*

The Court then held that "it is disputed whether on Friday July 1, 2022, Mayflower had 'expressly grant[ed] [Moholland] the authority to act on

[Mayflower's] behalf' by allowing Moholland to continue using the license plate, cab card, and IFTA sticker." Dkt. No. 354 at 21–22. It addressed Mayflower's reading of the same emails directly: "Mayflower argues these emails reflect that it was demanding the return of the license plates and related materials, not authorizing Moholland to continue using them. . . . A reasonable jury could very well believe that this is supported by the evidence. Yet, a reasonable jury could also conclude that the evidence supports the theory that Mayflower knew Moholland intended to use the materials to operate." *Id.* at 21 n.10. That, the Court explained, "is an argument to make to the jury." *Id.* at 22 n.11. It remains a jury question today.

**B. The Exhibit Lists and Mayflower's Objections**

Plaintiffs identified 157 trial exhibits. On October 2, 2026, Mayflower filed its own proposed exhibit list of 67 exhibits. Dkt. No. 434. Sixty-two of Mayflower's exhibits appear on Plaintiffs' list with identical Bates ranges and descriptions. On October 5, 2026, Mayflower objected to 41 of Plaintiffs' exhibits in nine categories. Dkt. No. 439. *Twenty-three of the exhibits Mayflower objects to are exhibits Mayflower itself listed*: fifteen of the emails (Plaintiffs' Exhibits 8, 13, 20, 25, 26, 27, 31, 37, 45, 49, 122, 128, 129, 134, and 156, which are Mayflower's Exhibits 8, 12, 17, 19, 20, 21, 22, 27, 35, 39, 55, 57, 58, 60, and 64) and all eight deposition transcripts (Plaintiffs' Exhibits 38–44 and 77, which are Mayflower's Exhibits 28–34 and 41). *Compare* Dkt. No. 434, *with* Dkt. No. 439.

**C. The Parties' Practice for Supplementing Discovery**

Throughout this case, the parties have supplemented their discovery responses and productions by sending a cover letter and/or email with the supplemental production attached. Mayflower followed that same practice as recently as September 15, 2025 (expert disclosure of Misty Coffman by email) Friday, October 2, 2026, when it served supplemental document production by email with cover letter.

Plaintiffs provided the recorded interviews of Kyle Sloan, Jordan Stone, and Will Stone to Mayflower's counsel both formally on January 7, 2026 and by email. Many of Plaintiffs' experts have given trial depositions, at which their reports and other evidence were received as exhibits without objection by Mayflower.

## <u>ARGUMENT AND CITATION OF AUTHORITY</u>

**I. The Email Correspondence Is Admissible (Section I of Mayflower's Objections)**

Mayflower objects to seventeen exhibits as hearsay and as irrelevant. Dkt. No. 439 at 1–3. Each argument fails.

**A. Statements by Mayflower's personnel are not hearsay when offered against Mayflower.**

A statement is not hearsay if it "is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). The Rule does not

require that the declarant be an officer, have authority to bind the company, or have authority to speak for it – though many of those emails were written by or to Managers and/or Safety Managers or other persons of authority within Mayflower. The Eleventh Circuit has held that "Rule 801(d)(2)(D) broadened the traditional view so that it is no longer necessary to show that an employee or agent declarant possesses 'speaking authority,'" and that "the position of the individual in the so-called corporate hierarchy is not in and of itself determinative." *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1565 (11th Cir. 1991). What matters is whether "the content of the declarant's statement concerned a matter within the scope of his agency." *Id.* at 1565. The Advisory Committee likewise explained that the Rule reflects "[a] substantial trend [that] favors admitting statements related to a matter within the scope of the agency or employment." Fed. R. Evid. 801 advisory committee's note to 1972 proposed rules.

Mayflower's own objection establishes every element. It describes the emails as "out of court statements made by Mayflower employees regarding the location of and return of the license plates at issue in this litigation." Dkt. No. 439 at 1. It concedes that Ms. Crum and Mr. Petry "are simply employees engaged [in] their day to day role." *Id.* at 2. Further, they are Safety Managers and Managers. Statements made by Mayflower's employees, in their day-to-day roles, about the return of Mayflower's license plates are statements "on a matter within the scope of that

relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). The record confirms it. Ms. Crum is a Safety Manager and Mr. Petry is the Senior Manager of Safety Administration, and the subject of their emails—recovering the plates registered to Mayflower to avoid "citations, tolls, or CSA . . . violations," and allowing Mohalland to use plates through July 1—is a safety-administration function. Dkt. No. 354 at 10–11. Mayflower's corporate representative characterized these very communications as Mayflower's own acts: "Mayflower took measures . . . writing emails to Moholland that requested return of Mayflower's base plates." Dkt. No. 290 at 10 (citing Kratzer Dep. at 70–71). That evidence, independent of the emails themselves, satisfies the Rule's requirement that the relationship and its scope be shown by more than the statement alone. *See* Fed. R. Evid. 801(d)(2) (final sentence).[2]

Mayflower's contrary arguments misstate the Rules of Evidence. Mayflower argues that Ms. Crum and Mr. Petry "are not officers of Mayflower and are not in a position to speak on behalf of the Corporation," and that the emails were not written by anyone "with authority to change, make, or agree to anything in terms of contracts." Dkt. No. 439 at 2. But speaking authority is the test under Rule

---

[2]The Court's Order identifies Ms. Lopez, Ms. Crum, and Mr. Petry by their positions with UniGroup, Mayflower's parent. Dkt. No. 354 at 3, 10–11. Mayflower does not dispute that they acted for Mayflower; its objection calls them "Mayflower employees," Dkt. No. 439 at 1, and its summary judgment brief treated their emails as Mayflower's own. Dkt. No. 290 at 10.

801(d)(2)(C), not Rule 801(d)(2)(D), and *Wilkinson* holds that neither speaking authority nor corporate rank is required. 920 F.2d at 1565. Whether Mr. Petry's email actually extended Moholland's authority is the merits question the Court has already sent to the jury. Dkt. No. 354 at 21–22 & n.10. It is not a precondition to admissibility. In any event, Mr. Petry, as a Safety Manger, wrote that he also acted "[a]fter checking with legal," *id.* at 11, which is evidence that his statement was also authorized. *See* Fed. R. Evid. 801(d)(2)(C).

Mayflower's "double hearsay" argument also fails. Dkt. No. 439 at 2. Where a Mayflower email relays a statement by Moholland (for example, Ms. Crum's report to Mr. Petry that Moholland wanted more time because "they say they can't get plates until their IRP and IFTA accounts are set up," Dkt. No. 354 at 11) the outer layer is Mayflower's own statement, and the inner layer is not offered for its truth. It is offered to show that Moholland made the request and that Mayflower knew of it when it responded. *See* Part I.B, *infra*. Each layer is therefore admissible. *See* Fed. R. Evid. 805.

### B. The emails are independently admissible for non-hearsay purposes

Hearsay is a statement offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). Much of the email correspondence is not offered for that purpose.

#### 1. The extension and its terms are verbal acts

The definition of hearsay excludes "the entire category of 'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights." Fed. R. Evid. 801 advisory committee's note to 1972 proposed rules (subdivision (c)). Moholland's request for an extension, Ms. Crum's June 15 deadline, and Mr. Petry's response that Mayflower would not extend "past this Friday 07/01" are the operative words that set the date through which Moholland could keep the plates. The Court has already identified their legal effect—whether they "extend[ed] Moholland's authority to use the materials until July 1, 2022"—as the disputed question for trial. Dkt. No. 354 at 22. Plaintiffs offer these words because they were said, not because what they assert is true. They are, at the least, circumstantial evidence of the agency relationship and express authority. Mayflower's own objection acknowledges the emails' "[l]egal significance," arguing only that there is "no predicate or legal basis" for the significance Plaintiffs assign. Dkt. No. 439 at 2. That is an argument about weight and about the merits, not about hearsay.

**2. Moholland's statements show what Mayflower knew**

"[A]n out-of-court statement that is offered for a purpose other than proving the truth of the matter—such as the effect a statement had on a listener—is not hearsay." *United States v. Kent*, 93 F.4th 1213, (11th Cir. 2024). Plaintiffs do not offer Mr. Peters's statements that "[i]t was agreed we could keep them and run under

them" to prove simply that any such agreement existed. They offer them to prove that Mayflower was told Moholland intended to keep operating under Mayflower's plates, and to show what Mayflower did with that knowledge. That is exactly how the Court read them: "a reasonable jury could also conclude that the evidence supports the theory that Mayflower knew Moholland intended to use the materials to operate. Indeed, emails from Michael Peters to Diane Lopez in May 2022 reflect that Moholland intended to 'keep the[] [plates] and run under them until they expire in 2023.'" Dkt. No. 354 at 21 n.10. Mayflower's knowledge is relevant to whether it authorized Moholland's use "by implication" and whether it "ratifie[d]" that use. O.C.G.A. § 10-6-1; Dkt. No. 354 at 16.

Mayflower argues that the effect-on-the-listener purpose "only applies if you accept the truth of the matter asserted." Dkt. No. 439 at 2. That is incorrect. The point of the non-truth purpose is that the statement matters whether or not it is true. Mayflower's knowledge that Moholland claimed an agreement and intended to "run under" the plates is relevant even if no such agreement was ever made.

**C. The emails are relevant, and the parol evidence rule does not apply.**

Mayflower argues the emails are irrelevant because "the contract is unambiguous" and extrinsic evidence of its terms is barred by the parol evidence rule. Dkt. No. 439 at 3. This argument misunderstands both the issue for trial and the rule.

First, Plaintiffs do not offer the emails to construe the agency agreement, the temporary agency agreement, or the lease. They offer them to prove that Mayflower, after those agreements, authorized Moholland to keep operating under its plates, cab card, and IFTA sticker through July 1, 2022. Under Georgia law, an agency relationship arises "wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." O.C.G.A. § 10-6-1. The Court has already rejected Mayflower's premise "that absent an agency agreement memorialized by contract, no such relationship could exist." Dkt. No. 354 at 19. Whether Mayflower created such a relationship "by extending Moholland's authority to use the materials until July 1, 2022" is the disputed fact. *Id.* at 22. The emails are the most direct evidence of that fact. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. The emails easily satisfy that standard.

Second, Georgia's parol evidence rule bars "[p]arol contemporaneous evidence" offered "to contradict or vary the terms of a valid written instrument." O.C.G.A. § 24-3-1; *see also* O.C.G.A. § 13-2-2(1). The emails are not contemporaneous with any written instrument. The agency agreement dates to 2008 and the temporary agency agreement to January 2022, Dkt. No. 354 at 4, while the emails date from May through July 2022. Nor are they offered to vary the terms of

any agreement. They are offered to show what the parties did after the written agreements ended.[3]

Third, Mayflower's contention that the testimony uniformly shows "this load was not covered in any post-termination agreement," and that the emails show only an intent that the plates "were to be returned," Dkt. No. 439 at 3, is an argument about how the jury should weigh the evidence. The Court has already explained that "[a] reasonable jury could very well believe" Mayflower's reading, but "could also conclude" otherwise. Dkt. No. 354 at 21 n.10. That is precisely why the jury must see the emails.

Finally, Rule 403 offers Mayflower no help. Relevant evidence may be excluded only if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. Exclusion under Rule 403 "is an 'extraordinary remedy,'" and the Rule carries a "strong presumption in favor of admissibility." *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001). Its "major function . . . is limited to excluding matter of scant or cumulative probative force." *Id.* (quotation omitted). The emails are neither. Mayflower's claim that the emails "create a false impression," Dkt. No. 439 at 3, is again a disagreement about what the emails mean. Mayflower is free to argue

---

[3]Plaintiffs, moreover, are not parties to any of the agreements between Mayflower and Moholland. *See* Dkt. No. 354 at 17 n.9.

its interpretation to the jury, and it plainly intends to: it listed fifteen of these same emails as its own trial exhibits. Dkt. No. 434.

**D. Exhibit-specific responses**

Mayflower's objection is generic; it does not identify any statement in any particular email that is inadmissible. Several points warrant emphasis. Exhibit 31 is not an email at all; it is the cab cards (MAYFLOWER 006068-6118; 008815-8817), which identify Mayflower as the motor carrier responsible for safety. The Court relied on the cab card in denying summary judgment, Dkt. No. 354 at 9, 20, and Mayflower lists the same document as its own Exhibit 22. Exhibits 17, 45, and 49 appear in the heading of Mayflower's Section I but are not addressed in its argument, which names only fourteen exhibits. Dkt. No. 439 at 1. And Mayflower does not object at all to other emails on the same subject, including Plaintiffs' Exhibit 99 (Adam Petry and Nicole Crum re Missouri base plates) and Exhibit 133 (MAYFLOWER 005044, email of June 28, 2022).

And again, as stated as naseum, the cab cards, IFTA sticker, and several emails already have been entered into evidence during trial depositions without objection by Mayflower.

**II. Mayflower Listed the Same Deposition Transcripts It Now Seeks to Exclude (Section VI).**

Mayflower objects to the admission of eight "whole, unabridged" deposition transcripts. Dkt. No. 439 at 7–8. Mayflower listed the same eight transcripts, without

page-and-line designations, on its own exhibit list three days earlier. Dkt. No. 434 (Exhibits 28–34, 41). Listing a deposition as an exhibit does not mean that either party will read the whole transcript to the jury. Plaintiffs will designate the portions they intend to present, as Rule 26(a)(3)(A)(ii) contemplates, and the parties have done so. Accordingly, Mayflower's objections are moot, except as to the Rule 30(b)(6) depositions. Further, other depositions may be used if the witness is unavailable, Fed. R. Civ. P. 32(a)(4), and any deposition may be used to impeach, Fed. R. Civ. P. 32(a)(2). A blanket objection to transcripts that Mayflower likely itself intends to use for impeachment purposes itself is premature. It should be overruled without prejudice to specific objections to designations.

## III. The Expert Reports (Section II).

### A. Mayflower waived its objection to the damages experts' reports by not objecting when they were received at the trial depositions.

Mayflower objects to Plaintiffs' expert reports as hearsay and because they allegedly contain "portions of hearsay, speculation, or simply cumulative recitations of Mr. Sloan's medical treatment." Dkt. No. 439 at 4. The reports of Plaintiffs' damages experts—were offered and received as exhibits during those experts' trial depositions, without objection from Mayflower.

That failure to object forecloses Mayflower's objection now. A party may object at trial to deposition testimony that would be inadmissible if the witness were present, but only "[s]ubject to Rules 28(b) and 32(d)(3)." Fed. R. Civ. P. 32(b).

Under Rule 32(d)(3)(B), an objection is waived if it relates to "the form of a question or answer, . . . a party's conduct, or other matters that might have been corrected at that time," and "it is not timely made during the deposition." Even an objection to "the competence, relevance, or materiality of testimony" is waived if "the ground for it might have been corrected at that time." Fed. R. Civ. P. 32(d)(3)(A).

Mayflower's objection is exactly the kind that could have been cured at the deposition. Had Mayflower objected when each report was offered, Plaintiffs could have responded on the spot. They could have laid additional foundation, elicited each opinion and its basis through question and answer, or redacted any portion Mayflower contended was hearsay, speculative, or cumulative. Mayflower instead allowed the reports to be received without objection. It may not hold that objection back until trial, particularly when those depositions were taken for trial purposes.

**IV. Exhibit 52**

Exhibit 52 is not an expert report at all. It is the NMS Labs toxicology report for Jamie Sloan (WO # 22234459), a laboratory record. It is admissible as a record of a regularly conducted activity upon a proper foundation. Fed. R. Evid. 803(6). It shows that Jamie Sloan was not intoxicated or under the influence of any substances at the time of the collision.

## IV. Mayflower's Nondisclosure Objections Ignore the Record (Sections III, IV, and VIII).

Mayflower objects to the video interviews, the family photographs, and the PowerPoint presentation on the ground that they were not produced or identified in discovery. Dkt. No. 439 at 4–6, 8. Rule 26(e) requires a party to supplement "in a timely manner." It applies only where "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). In this case, the parties have consistently supplemented by cover letter and/or email with the production attached—as Mayflower itself has done on multiple occasions, as recently as September 15, 2026 and on October 2, 2026. *See* Background Part C, *supra*. Even where a disclosure is late, exclusion is not warranted where the failure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). These are documents that Mayflower has had in its possession well before trial.

### A. The video interviews (Exhibits 74, 78, 79) were provided to Mayflower's counsel on January 7, 2026

Mayflower objects to recorded interviews of Kyle Sloan, Jordan Stone, and Will Stone, which Plaintiffs understand to be Exhibits 74, 78, and 79.[4] Dkt. No. 439 at 4–5. Mayflower's central premise—that "these interviews were not previously

[4]Section III does not identify exhibit numbers and refers to "Jordan Sloan." Dkt. No. 439 at 4. Plaintiffs' exhibits are video interviews of Kyle Sloan (Ex. 74), Jordan Stone (Ex. 78), and Will Stone (Ex. 79).

produced in discovery," and that its "only indication of these videos came in [Plaintiffs'] privilege log"—is incorrect. *Id.* at 4. Plaintiffs provided the videos to Mayflower's counsel on January 7, 2026. Exhibit 1. Before that, Plaintiffs had identified the videos on their February 2024 privilege log by date, participants, and subject. *Id.*

**HODGE Law Firm**

**Mailing Address:**
P.O. Box 2765
Spartanburg, SC 29304
www.hodgelawfirm.com

**Attorney Charles J. Hodge**
NBTA Certified Civil Trial Specialist
**Attorney Camden Hodge**

**Office Location:**
951 E. Main Street, Suite A
Spartanburg, SC 29302
**Phone:** (864) 585-3873
**Fax:** (864) 585-6485

January 7, 2026

Lewis Brisbois
Todd R. Ehrenreich
153 Stonewood Crossing Drive
2 Alhambra Plaza, Ste 1110
Coral Gables, FL 33134

RE: Kyle Sloan, et al. v. Mayflower Transit

Dear Todd:

Please find enclosed videos which were taken of Kyle Sloan, Jordan Stone and Will Stone. I thought this had previously been provided to you, but looking at the responses we identified the videos but asserted privilege. Obviously, we are withdrawing privilege as to those videos only and are not waiving any future privilege arguments on other documents.

I will be out of the country between the 13th and 29th of January, but I have instructed the team to cooperate fully in the scheduling of any depositions you wish to take in the next couple of weeks.

I trust you had a fine holiday season and I wish you happy New Year.

Sincerely,

Charles J. Hodge

Mayflower cannot show surprise, much less prejudice, of the use of these videos it has had for over 10 months.

As to hearsay, Plaintiffs do not intend to offer the interviews as substantive proof of the matters asserted in them. Kyle Sloan, Jordan Stone, and Will Stone will testify at trial. When their credibility is attacked, their prior consistent statements, made six days after the crash, are admissible to rebut a charge of recent fabrication or improper influence or to rehabilitate their credibility. Fed. R. Evid. 801(d)(1)(B). They also can be used to refresh recollection, and have been relied on by experts providing testimony in this case (see, e.g., testimony of Kim Collins, M.D.) Because admissibility depends on how the trial unfolds, the Court should reserve ruling on these videos at present.

**B. The PowerPoint presentation (Exhibit 154) is an illustrative aid governed by Rule 107.**

Plaintiffs may use the PowerPoint presentation as an illustrative aid in opening statement and/or closing argument. It contains evidence produced by the parties in this case – and in particular, evidence that until recently wasn't objected to by Mayflower at all but instead was listed as Mayflower's own exhibits. Plaintiffs do not offer the presentations as evidence to go to the jury room.

Rule 107 governs Plaintiffs' use. An illustrative aid is "any presentation offered not as evidence but rather to assist the trier of fact in understanding evidence or argument." Fed. R. Evid. 107 advisory committee's note to 2024 amendment. Rule 107 "is intended to govern the use of an illustrative aid at any point in the trial, including in opening statement and closing argument." *Id.* An illustrative aid "is not

evidence" and may not go to the jury room without consent or good cause. Fed. R. Evid. 107(b). Plaintiffs agree that the presentation will not go to the jury room, and to the extent Mayflower's arguments center on that allegation, they are now moot.

Mayflower also concedes that Plaintiffs "utilized it at their Summary Judgment hearing," where Mayflower's counsel saw it. Dkt. No. 439 at 8. A presentation shown to Mayflower in open court has "otherwise been made known" to Mayflower. Fed. R. Civ. P. 26(e)(1)(A). As to notice before trial, Rule 107 "leaves it to trial judges to decide whether, when, and how to require advance notice of an illustrative aid." Fed. R. Evid. 107 advisory committee's note to 2024 amendment.

**C. The Sloan family photographs (Exhibit 59).**

Mayflower objects to twelve photographs of Kyle Sloan's family and the decedents as not produced in discovery, irrelevant, and unfairly prejudicial. Dkt. No. 439 at 6. Mayflower acknowledges that many of the photographs bear a date from "what appears to be, an email from July 15, 2026." *Id.* Mayflower identifies no prejudice from receiving twelve family photographs months before trial. Any delay (which Plaintiff denies) was harmless. Fed. R. Civ. P. 37(c)(1).

The photographs are also relevant. Mayflower asserts that the only disputed fact at trial is agency. *Id.* But Plaintiffs must also prove their damages, and the jury must determine "the full value of the life of the decedent, as shown by the evidence." O.C.G.A. § 51-4-2(a) (spouse); *see* O.C.G.A. § 19-7-1(c)(1) (child). Photographs

of Jamie and Rylie Sloan in life are probative of who they were and what was lost. They are not graphic or gruesome. Twelve photographs of a family are neither cumulative nor "unfair[ly]" prejudicial. Fed. R. Evid. 403. It simply shows the jury what these persons looked like before they were killed.

**V. The Nighthawk Investigation Materials (Exhibits 28, 30, 93) (Section V).**

Mayflower objects to the affidavit, photographs, and videos of Plaintiffs' investigator, Joshua Embrey, as hearsay and as irrelevant. Dkt. No. 439 at 6–7.

Photographs and videos are not hearsay. Hearsay requires a "statement," meaning "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). A photograph of trucks in a parking lot is not an assertion.

The photographs are also relevant. Mayflower and Moholland have told the Court that Moholland's trucks were rebranded shortly after the crash. At summary judgment, Mayflower represented that "[b]y mid-July of 2022, Moholland had rebranded '20 pieces of equipment,'" and Moholland's president testified that the trucks were rewrapped by Labor Day 2022. Dkt. No. 290 at 7; Dkt. No. 354 at 8. Photographs showing Mayflower logos on trucks at the Moholland/Tailored Move facility on March 9, 2023, Dkt. No. 439 at 7, are admissible to impeach that testimony. They also bear on whether Mayflower acquiesced in Moholland's continued use of its marks, which is relevant to agency by implication and

ratification. See, e.g., O.C.G.A. § 10-6-1. Mayflower's argument that the photographs show conditions "eight months after the subject collision," Dkt. No. 439 at 7, goes to their weight, which Mayflower may address on cross-examination. Upon proper authentication these documents are admissible.

**VI. The 911 Audio (Exhibit 75) (Section VII).**

Mayflower objects to "several 911 phone calls" as hearsay and as irrelevant to agency. Dkt. No. 439 at 8. Plaintiffs' Exhibit 75 contains such calls from the scene of the wreck. A 911 call describing an event as it unfolds is a classic present sense impression, admissible because the substantial contemporaneity of the event and the statement negate the likelihood of deliberate or conscious misrepresentation. See Fed. R. Evid. 803(1). Statements made by callers under the stress of a multi-vehicle highway crash are also excited utterances. Fed. R. Evid. 803(2). The calls are relevant to how the collision occurred. Agency is not the only issue the jury will decide; they also must determine fault and damages.

**VII. The Burist Criminal Trial Transcript (Exhibit 157) (Section IX).**

Mayflower objects to the transcript of Nicholas Burist's criminal trial "as a whole and unabridged document." Dkt. No. 439 at 8–9. Mayflower does not identify any particular testimony that is inadmissible. As with the deposition transcripts, Plaintiffs will designate the portions they intend to use. The Trial Transcript has been listed not only because it contains relevant information as to how the wreck

occurred, but also testimony of witnesses that have been named in this civil case. At the very least, it can be used to refresh recollection or for impeachment purposes.

## CONCLUSION

The evidence Mayflower seeks to exclude are the evidence the Court found sufficient to send the question of agency to the jury. They are Mayflower's own statements, verbal acts, and evidence of what Mayflower knew, and fifteen of them are on Mayflower's own exhibit list. Most have already been admitted into evidence during trial depositions without objection. Accordingly, Plaintiffs request that the Court overrule Mayflower's objections or, in the alternative, reserve ruling until trial.

Respectfully submitted this **14th** day of October, 2026.

[Signature Block on Following Page]

HODGE LAW FIRM, P.C.
P.O. Box 2765
Spartanburg, SC 29306
Tel: (864) 585-3873
Fax: (864) 585-6485

/s/ J. Camden Hodge
Charles J. Hodge
Admitted Pro Hac Vice
J. Camden Hodge
Admitted Pro Hac Vice
CHodge@hodgelawfirm.com
camden@hodgelawfirm.com
Attorneys for Plaintiffs

HAMILTON & PADGETT, LLC
13 St. Andrews Ct.
Brunswick, Georgia 31520
P: (912) 200-2727

/s/ Joseph R. Padgett
Joseph R. Padgett
Georgia Bar No. 872672
joseph@hamiltonpadgettlaw.com
Attorney for Plaintiffs

LANGLEY, STILL, AND FOSS LAW FIRM
229 Magnolia Street
Spartanburg, SC 29306
Tel: (864) 774-4662

/s/ T. Ryan Langley
T. Ryan Langley
Georgia State Bar No.: 692386
Matthew T. Foss
Admitted Pro Hac Vice
Ryan@thelangleylawfirm.com
Matt@thelangleylawfirm.com
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I CERTIFY that on **October 14, 2026** I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

s/ **J. Camden Hodge**
Counsel for Plaintiffs