**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | | |
|---|---|---|
| KYLE SLOAN, Individually, and as Personal Representative of the Estates of Rylie Sloan and Jamie Sloan, KYLE SLOAN as Surviving Spouse of Jamie Sloan, and KYLE SLOAN as Surviving Parent of Rylie Sloan; and SUSAN WEST, Individually, and as the next friend and natural guardian of K.W., a minor,<br>Plaintiffs,<br><br>v.<br><br>NICHOLAS BURIST; LOCKE RELOCATIONS LLC; MAYFLOWER TRANSIT LLC; JOE MOHOLLAND, INC.; AND XYZ COMPANIES 1-3;<br><br>Defendants. | * * * * * * * * * * * * * * * * * * | Civil Action No.<br>2:22-cv-00076-LGW-BWC |

**<u>DEFENDANT MAYFLOWER TRANSIT'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT TESTIMONY FROM BROOKS RUGEMER</u>**

Last week, Plaintiffs presented their proffered expert for deposition. This was the "trial deposition", which meant it would be what the jury heard at trial because he would not be present. That proffered expert, had, days before the deposition, served a supplemental report—which relied upon documents the Plaintiffs had long before that date. Plaintiffs supplemental report did not comply with the requirements of Rule 26, and the deposition did not cure those defects—the answers to those necessary elements (such as previous instances of testimony) were not provided. Once he started testifying, he claimed to render opinions on legal conclusions—the terms of a contract—and even claimed he knew the motive behind emails despite no personal knowledge (or even interaction with) the authors of those emails.

Based on this, after full review of the deposition transcript, the rules, governing precedent, and that supplemental report, Mayflower moves to strike this expert. He should not testify before

the jury at trial, because these facts reveal the following: a) an untimely report that lacks sufficient justification, along with failure to disclose necessary elements of his experience to allow adequate and full cross examination during his testimony; b) an opinion that is not valid for experts, in violation of governing precedent regarding the role of experts (and Rule 702); and c) testimony that lacks foundation in personal knowledge, and which, regardless, prejudices beyond any probative value (violating Rules 403, 602, and 702 of the Rules of Evidence).

Accordingly the Court should strike Brooks Rugemer from testifying before the jury, and in further support, Defendant submits the below:

## SUPPORTING MEMORANDUM OF LAW

### A. The expert was not disclosed in compliance with Rule 26, requiring exclusion due to prejudice and non-compliance.

Rule 26(a)(2) of the Federal Rules of Civil Procedure governs the relevant witness disclosures. The rule states that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."

Some expert witnesses are required to submit a report. Plaintiffs do not dispute Rugemer qualifies, but they did not act accordingly. Under Rule 26(2)(B) when an expert is required to submit a report they must include the following materials:

1) A complete statement of all opinions;
2) The facts or data considered by the witness in forming them;
3) The witness's qualifications, including a list of all publications authored in the previous 10 years;
4) A list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
5) A statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Rule 26 requires these disclosures to be made "at the time and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

Mr. Rugemer's expert report was first disclosed on **October 11, 2024**. However, that disclosure only included Mr. Rugemer's written report. It lacked Mr. Rugemer's testimonial history, his statement of compensation, or his CV or publication list as required by Federal Rule 26. For a failure to satisfy the requirements of Rule 26, the Court is empowered to take appropriate sanctions, including and up to the exclusion of the witnesses testimony. This failure to provide compensation statements, testimonial history, or Mr. Rugemer's CV prejudiced the Defendants in their ability competently scrutinize or evaluate Mr. Rugemer's report, qualifications, or potential financial bias. Mr. Rugemer's testimony should be excluded as a sanction pursuant Rule 37.

In fact, this information was not provided to Plaintiff's counsel until *after* the trial deposition of Mr. Rugemer. Mr. Rugemer's compensation was not disclosed until he testified to it, live, on the date of his trial deposition.

Rule 37(c) of the Federal Rules provides that "if a party fails to identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." The rule allows for sanctions, including for attorneys' fees and expenses caused by the failure, as well as failure, as "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action" and "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(i)-(ii).

Plaintiffs had opportunity to provide this information in advance. Given the progress of this case, Plaintiffs are keenly aware of the discovery rules and their language. They chose to serve a supplemental report before the deposition. Yet, Plaintiffs failed to disclose these elements of their purported expert on time (twice), as to a witness where this deposition was to be the only

opportunity for cross-examination. This lack of material and lack of information robbed the Defendants of valuable information for cross examination, or, potentially, to file a motion such as this one, *before* the Plaintiff's testimony was taken. Once he was deposed, the prejudice occurred and Mr. Rugemer's testimony should be excluded because that deposition was made unfair by Plaintiff's tactics. See, e.g., Hackler v. Gen. Motors LLC, No. 2:21-CV-19, 2022 WL 16951664, at *4 (S.D. Ga. Nov. 15, 2022)(Cheesbro, Mag. J.)(explaining, when striking a late disclosed expert, that notwithstanding disclosure of the expert and his substance in other cases, as to late disclosure in the operative case, "Plaintiff does not claim mistake, oversight, or inadvertence. Plaintiff simply does not provide an explanation."); accord Riley v. Tesla, Inc., No. 22-12515, 2025 WL 881387, at *6 (11th Cir. Mar. 21, 2025)(disapproving of expert's use of a "supplemental affidavit [to] bolster[] his opinions" where it was untimely under the expert disclosure rules).

### B. The witness is not an expert under Rule 702 because he is seeking to testify regarding a legal conclusion

Even if this untimeliness is forgiven, the substance of the Rugemer's testimony reveals that the jury should not hear the testimony—it fails the tests under the rules of evidence for admissibility. Rather than wait until trial, this Court should remedy the harm here and prevent the witness from testifying at trial. Rugemer opines on the law (which is not admissible) and reaches conclusions without any underlying expert methodology (which is bolstering, not expert testimony).

"An expert may testify as to his opinion on an ultimate issue of fact" but "An expert may not. . . merely tell the jury what result to reach" and "A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law." Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990). In this case, Mr. Rugemer's testimony is inadmissible and should be excluded. His conclusions are legal conclusions regarding statutory

interpretations and analysis of contracts. Mr. Rugemer's opinions and conclusions become irrelevant and unhelpful to the jury. He simply becomes a vehicle through which the Plaintiffs can run through their checklist of evidence, documents, and other argument.

Mr. Rugemer is a "commercial vehicle specialist." (Rugemer, Pg. 14, ln 3). He runs the "trucking and warehousing group" for Robson Forensic. Prior to that he was a commercial driver from early 80s until the mid-90s. (Rugemer, Pg. 15, ln 13-16). After that he worked as a dispatcher, safety clerk, and in various levels of transportation management. (Rugemer, Pg. 15, ln 17-25.) Mr. Rugemer also operated a company called Maryland Safety Services, which "provided training, CDL Recruiting and hours of service auditing." (Rugemer, Pg. 17, ln 13-29). Following that he was director of safety at a company called consolidated Freightways. (Id.). He has been qualified as a Certified Director of Safety through the North American Transportation Management Institute. (Rugemer, Pg. 19, Ln 13-21). Plaintiff offered Mr. Rugemer as an expert regarding "commercial carrier operations under the Federal Motor Carrier Safety regulations, motor carrier safety management and compliance with the Federal Motor Carrier Safety Regulations." (Rugemer, Pg. 22, ln 12-18.).

Despite being offered only as an expert on commercial motor carrier regulations and safety, Mr. Rugemer provides the inadmissible legal conclusion that *"the agency agreement between Moholland and Mayflower was never terminated as Mayflower alleges."* [1] which he based on *"back and forth emails regarding the tags and the IFTA sticker on the trucks that were in place at the time of the subject crash. The fact that there were payments made after Mayflower alleges that*

[1] (Rugemer, Pg. 35, Ln 8-10.)

*the agency agreement was terminated, there were payments made for several months after the subject crash."*[2]

Rugemer opines that there was an "express agency agreement in place between Mayflower Transit and Joe Moholland on July 1st, 2022" based on his reading of the unambiguous language of the temporary agency agreement. (Rugemer, Pg. 41, Ln 16-20). He even testifies regarding the language of the contract, which is not technical or arcane:

> *"Q: If you look at the temporary agency agreement, look at paragraph six. It's the last page of Exhibit 1 there. You got it there.*
>
> *A: Oh, I'm sorry.*
>
> *Q: Yeah, paragraph six. If you could read the – last sentence of paragraph six after the semicolon in the record, please - - - or just starting with - - - with this agreement creates no rights.*
>
> *A: This agreement creates no rights or obligations not already existing, does not modify or alter the party's rights or obligations under the terms of the agency agreement.*
>
> *Q: All right. And so you connect these three agreements together based on that?*
>
> *A: Yes."*

(Rugemer, Pg. 42, Ln 1-11).

As this Court has explained when addressing this question as to a witness testifying regarding warnings on a ladder—and excluding his opinion as lacking necessary reliability—Rugemer experience in trucking does not make his opinion admissible or exempt from the requirements of the Evidence Rules for experts:

> However, "the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express." Frazier, 387 F.3d at 1261. Put another way, "one may be considered an expert but still offer unreliable testimony." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d

[2] (Rugemer, Pg. 35, Ln 10-17.)

> 1333, 1342 (11th Cir. 2003) (internal citations omitted). Moreover, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). Consequently, the reliability "criterion remains a discrete, independent, and important requirement for admissibility." Frazier, 387 F.3d at 1261.
> As to reliability, the proponent of the expert testimony must demonstrate that the testimony is "based on sufficient facts or data" and is "the product of reliable principles and methods," and that the expert "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. This inquiry must focus "solely on the principles and methodology [of the experts], not on the conclusions that they generate." Daubert, 509 U.S. at 595. Moreover, the facts or data underlying the expert's opinion must be of a type that "experts in the particular field would reasonably rely on ... in forming an opinion on the subject." Fed. R. Evid. 703.

Crews v. Tashin Indus. Corp. USA, No. 5:18-CV-78, 2020 WL 13891303, at *4 (S.D. Ga. Aug. 18, 2020)(Cheesbro, Mag. J.).

In Crews, this Court excluded the expert who offered opinions regarding an adequate warning, since that was not a proper basis for opinion:

> Here, Mr. Saunders offers several opinions phrased in inadequately explored legal criteria that carry special meaning under the law. These include Mr. Saunders' opinions that: "the warnings and instructions provided with the ladderstand were *adequate* for their intended purpose"; "it is not *foreseeable* to a manufacturer[ ] that a user would [ ] disregard published warnings and instructions"; "the subject ladderstand "was not *defective* in [its] design"; and the subject Ladderstand "was not *defective* in [its] manufacture." Doc. 46-8 at 29–31 (emphases added). These opinions closely track relevant legal tests which will be submitted to the jury.[8] Mr. Saunders' cited opinions are impermissible legal conclusions. . . . While Mr. Saunders may offer opinions that go to an ultimate issue, he may not offer opinions in the form of pure legal conclusions. Accordingly, the Court **GRANTS** this portion of Plaintiff's Motion and excludes the above-noted opinions in their present form.

Crews v. Tashin Indus. Corp. USA, No. 5:18-CV-78, 2020 WL 13891303, at *10 (S.D. Ga. Aug. 18, 2020)(Cheesbro, Mag. J.).

The testimony's defect extends to discussion of the communications between the parties, into which the witness injects an opinion—without any connection to recognized expert methodology, data, or reliability. Regarding the license plates, Mr. Rugemer testified:

> "*Q: And so do you* - - - *how do you read that extended deadline that was discussed between my management team and Rob Garr relative to the July 1st collision?*
> *A: It tells me there's just an ongoing, nearly interminable allowance of Moholland to keep using these tags. They're being asked for, they're being asked for. There's* - - - *again, as I said earlier, this whole process should have only taken a couple, three days. There's one email that we looked at where they were collected and sent on the 25th to be received by the 28th of that month. So that's how simple this process is.*
> *And there are so many ways to document that it's being done or at least document that the truck isn't being used during that time, and none of those* - - - *none of those practices or actions were taken.*
>
> *Q: And is that a violation of the industry custom and the Federal Motor Carrier Safety Regulations?*
>
> *A: Of course. I don't want anyone using my truck* - - - *or using my plates without having some kind of agreement with them. It opens with up to any possible scenarios that are bad for me.*
>
> *Q: And does it make Mayflower the responsible motor carrier for safety on the dates that they have authorized the use of their registration, license plates, IFTA stickers and tracker?*
>
> *A: Yes."*

(Rugemer at p. 64).

Whether Mayflower was "the responsible motor carrier for safety" on the date of the incident is a legal opinion. "Statutory interpretation is a matter for a judge" and this Court has discretion to exclude testimony that purports to that via other means, like an expert. See United States v. F.E.B. Corp., 52 F.4th 916, 932 (11th Cir. 2022). The facts on which he relies for his purported opinion are not beyond the jury's comprehension, and he is not applying any recognized or specialized methodology. He expresses his view that Mayflower allowed use of truck on that date; that is for the jury, not him.

In the Eleventh Circuit, an expert cannot testify whether a party broke the law or whether a plaintiff's view of the law is correct. See Plott v. NCL Am., LLC, 786 Fed. Appx. 199, 203–04 (11th Cir. 2019)("The district court concluded that Martin could not testify that it was

"unreasonable" for NCL not to provide floor mats outside the Conservatory doors and not to provide warning signs. The court correctly reasoned that those opinions constitute legal conclusions, which are not a proper topic of expert testimony.").

Here, Plaintiff did just that via Rugemer:

> *"Q: All the documents that you've seen from the lease to the IRP apportionment cab card, the IFTA stickers, do they all support your opinion that on July 1st, 2022, the tractor operated by Nicholas Burist that caused the death of Kyle Sloan's wife and daughter and serious injuries to Kyle himself was under the exclusive possession and control of Mayflower Transit, LLC?*
>
> *A: Yes.*
>
> *Q: And under the title 49, part 376, of the Federal Motor Carrier Safety Regulations, through all those documents make Mayflower Transit/Unigroup, as we've said here in the case, the responsible motor carrier for safety on that day?*
>
> *A: Yes."*

(Rugemer Dep. at 93).

Mr. Rugemer's deposition testimony, as well as his two reports, are replete with impermissible legal conclusions. Rugemer repeatedly makes legal interpretations of the agency agreements in this matter. He also opines whether or not the evidence in the case makes Mayflower the motor carrier for safety under the FMCSA. This is a clear cut legal opinion and is plainly disallowed by the Federal Rules of Evidence and the overwhelming weight of 11th Circuit law.

The 2024 report similarly lacks any indicia of expert testimony, like the testimony:

> *"Information gleaned from UniGroup / Mayflower's own records shows that an ongoing business relationship and agency relationship with Moholland / Burist existed at the time of the subject crash."*

(Oct 2024 Report).

Mr. Rugemer's October 2026 report incorporates the above conclusion, but adds the following:

> *"On July 1, 2022, the tractor Burist was operating carried Mayflower's cab card, Missouri apportioned plates, IFTA credentials, and DOT number. Mayflower was listed as the Motor Carrier Responsible for Safety, and with Mayflower's knowledge, and under an extended plate-return deadline that Mayflower itself had granted."*

See Id.

The above conclusions crystalize the fundamental issue with Mr. Rugemer's testimony. His only conclusion is an impermissible legal opinion. His second or "supplemental" conclusion is a naked recitation of the Plaintiff's alleged facts that is nothing more than the same argument the Plaintiff put forward at the summary judgment stage.

Mr. Rugemer's October 2024 and October 2026 reports, and his opinions and conclusions connected to those reports, should be excluded from any consideration before the jury.

**C. The witness's testimony fails to meet the requirements for admissible testimony under the Federal Rules of Evidence, because he speculates regarding circumstances and uses his proffered status as expert to create prejudice despite no free-standing probative value to his testimony.**

Experts are properly excluded where they rely upon "improper methodology and fail[] to assist the trier of fact." Corwin v. Walt Disney Co., 475 F. 3d 1239, 1250 (11th Cir. 2007) (affirming exclusion of expert report). In Corwin, a copyright case, the Eleventh Circuit affirmed the exclusion of expert reports opining on similarity of the challenged works, because the method was not a recognized method for finding such similarities and instead invited comparison of "random" elements and "stock ideas." 475 F. 3d 1251. The jury or fact-finder could look at the works, or if necessary, summary judgment via the Court could eliminate the claim of infringement, without the addition of an expert providing testimony lacking basis in proper methodology or elements. See Id.

The Court here should, like the Corwin court, exclude the expert who provides no expert element necessary for the jury's decision in the case regarding Mayflower's alleged role in the

incident. Here, Plaintiffs, as in Corwin, seek to have an expert inject validation of their view of the facts, without any recognized methodology beyond reading emails.[3] Here, Rugemer is proffered based on his claim that the emails exchanged during the dispute somehow manifest an implicit extension of the agreement despite the agreement's termination language:

> *Q. And Nikki Crumb responds, good morning, Darnice, thanks for letting me know.*
>
> *A. Yes.*
>
> *Q. Then on the next page, there's communication from Rob Garr and Adam Petrie and Tracy Evans where Adam Petrie says, good afternoon, Rob. Mike Peterson from your office reached out to us from this morning, this is on June 28th, asking for an extension to return the base plates for 12 units. 13· ·After checking with legal, I am sorry to inform that we cannot grant another extension pass this Friday, July 1st.· Did I read it correctly?*
>
> *A. Yes, you did.*
>
> *Q. And that's from Adam Petrie, Senior Manager of Safety Administration?*
>
> *A. With Unigroup, yes.*
>
> *Q. And he references that he has checked with legal about that state. Is that right?*
>
> *A. Yes. After checking with legal, I am sorry to inform you we cannot grant another extension past Friday 7/1.*

(Rugemer at 61-62). Rugemer acknowledges that Moholland inquired about using the plates through the end of 2023, and in response he is told "we need all Missouri plates back by June 15th." (Rugemer at 53-54).

---

[3] Q. you did state earlier that you reviewed certain emails about the approval of the use of the IRP ca[b] card, the IFTA stickers and the license and registration from Mayflower to Joe Moholland?

A. Yes.

(Rugemer at 51-52).

Rugemer opines that the above exchange, ending with a demand for return of the plates by July 1 means the agreement has been extended. There is no basis for that conclusion in any recognized expert methodology; he is just stating his view of the words expressed by lay people in emails. The jury can read these emails and place it in context with other testimony (regarding the termination, the "carrier shipments" in the temporary agency agreements, and similar facts unaddressed here). He must be excluded. See Corwin, 475 F. 3d at 1250 ("The court serves as gatekeeper, charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand."); see also Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1112 (11th Cir. 2005)("Dr. Maris' third opinion—that the MCDC's suicide prevention training was inadequate—is without foundation" because "Dr. Maris has articulated neither a generally accepted standard for suicide prevention training in jails, nor an explanation of how or why he believes the MCDC's training to be inadequate" and "Dr. Maris' eighth opinion—that MCDC "was deliberately indifferent" to Tessier's medical needs—is another conclusion that "is connected to existing data only by the *ipse dixit* of the expert. .. The opinion is unsubstantiated by any proffered facts, explanation, or analysis, and the trial court therefore acted within its discretion in excluding it.").

Lastly, Rugemer must be excluded because Plaintiffs use him as a conduit for inadmissible speculation and prejudice. Rugemer offered his conclusion that Mayflower was engaged in a coverup *after the incident*:

> *"Q: What do you see as the purpose of that Steve Bojan, the director of risk management, is seeking here pictures without Unigroup decals or plates?*
>
> *ATTORNEY MCDONALD: Object to the form. It asks for the witness to speculate as to the mindset of another individual.*
>
> *ATTORNEY LANGLEY: Q: All right. I'll ask it another way. Is it industry custom to try to cover up your involvement in a collision after the wreck?*

*A: It's not - - -.*
(Rugmer Dep. at 78-79).

Plaintiff goes further, eliciting Rugemer's testimony that such post-incident conduct breaks the law:

> *Q. You can answer the question.· Is it industry custom to cover --- to make attempts to cover up involvement in a collision after the fact?*
> *A. No, it is not.*
>
> *Q Is it a violation of the Federal Motor Carrier Safety regulations to try to find ways to make it appear that you were not the motor carrier involved in the collision?*
>
> *A. They don't say it specifically, but there is a section of the Federal Motor Carrier Law that says motor carriers cannot falsify documents or allow others to falsify documents on their behalf.*

(Rugemer Dep. at 78). Thus, Plaintiff seeks to have Rugemer, as an expert, testify that Mayflower covered up its involvement in the incident –after the fact – and that such coverup is illegal. Neither is permissible expert testimony. It is also impermissible speculation regarding the "purpose" of a witness[4], as well as prejudicial testimony with no probative value as to a claim in dispute. The issue for the jury is whether Mayflower was responsible for the load involved in the incident, not anything else. Accordingly, the testimony must be stricken as impermissible expert testimony (there is no expert foundation), speculation (he has no basis to opine on motivation) and prejudicial without probative value. (he cannot opine that Mayflower broke the law).

Rugemer's testimony must be stricken because it violates the Rules of Evidence. Allowing it would make the trial unfair by permitting an expert to improperly bolster Plaintiff's case and

---

[4] Plaintiff did the same elsewhere, attempting to revive a theme this Court has already disapproved of – that Moholland's witness was lying – by asking "Did Robb Garr have an incentive to testify favorably to Mayflower in this case." Rugemer Dep. at 83.

submit prejudicial and unsubstantiated opinions and testimony. This Court should strike Rugemer as witness.

CONCLUSION

Plaintiff's expert cannot testify before the jury at trial, because he was proffered in violation of Rule 26; and, substantively, his testimony fails all relevant tests under the Federal Rules of Evidence. He offers a legal conclusion, his testimony lacks foundation in personal knowledge or any recognized methodology, his testimony does not assist the jury in understanding something that is beyond ordinary understanding, and even if allowed to do so his testimony would prejudice beyond any probative value. The Court should strike Mr. Rugemer as a trial witness.

Respectfully submitted this 23 day of October, 2026.

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

*/s/ Stephen Kyle cDonald*
BRANTLEY ROWLEN
Georgia Bar No. 153031
STEPHEN KYLE MCDONALD
Georgia Bar No. 661387
Todd R. Ehrenreich
*Admitted Pro Hac Vice*
Jeffrey Geldens
*Admitted Pro Hac Vice*

*Counsel for Mayflower Transit, LLC*

600 Peachtree Street N.E.
Suite 4700
Atlanta, Georgia 30308
404-348-8585 Telephone
404-467-8845 Facsimile
Brantley.Rowlen@lewisbrisbois.com
Stephen.McDonald@lewisbrisbois.com

24 Drayton St., Suite 300
Savannah, GA 31401
Tel. (912) 525-4960

Todd.Ehrenreich@lewisbrisbois.com
Jeffrey.Geldens@lewisbrisbois.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have electronically filed the foregoing ***Defendant's Motion to Strike Brooks Rugemer,*** with the Court's Electronic Filing System, which automatically serves a copy on all counsel of record.

This 23rd day of October, 2026.

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

*/s/ Stephen Kyle McDonald*
BRANTLEY ROWLEN
Georgia Bar No. 153031
STEPHEN KYLE MCDONALD
Georgia Bar No. 661387
Todd R. Ehrenreich
*Admitted Pro Hac Vice*
Jeffrey Geldens
*Admitted Pro Hac Vice*

*Counsel for Mayflower Transit, LLC*

600 Peachtree Street N.E.
Suite 4700
Atlanta, Georgia 30308
404-348-8585 Telephone
404-467-8845 Facsimile
Brantley.Rowlen@lewisbrisbois.com
Stephen.McDonald@lewisbrisbois.com

24 Drayton St., Suite 300
Savannah, GA 31401
Tel. (912) 525-4960

Todd.Ehrenreich@lewisbrisbois.com
Jeffrey.Geldens@lewisbrisbois.com