THE EXPERTS
Robson Forensic

October 11, 2024

Charles Hodge
Hodge and Langley Law Firm
229 Magnolia Street
Spartanburg, SC 29306

**RE:** Sloan v. Mayflower et al Robson Forensic File # 24SC0135

*Hines v. Burist, et al., Case No. 2:23-cv-00089-LGW-BWC (S.D. Ga.), Tipton v. Burist, et al., Case No. 2:23-cv-00033- LGW-BWC (S.D. Ga.), and Petno v. Burist, et al., Case No. 2:23-cv-00031-LGW-BWC (S.D. Ga.).*

Dear Attorney Hodge,

As we know, on July 1, 2022, Mr. Nicholas Burist was a truck driver operating a commercial truck owned by Locke Relocations, LLC and which Mayflower Transit, LLC and Joe Moholland, Inc. had the equipment lease for the tractor. Burist was involved in a crash with a vehicle occupied by members of the Sloan Family. Rylie and Jamie Sloan died as a result of the crash and Kyle Sloan was injured.

Additionally, Michael Hines was a passenger inside the Mayflower tractor-trailer at the time of the collision. Further, Tipton and Petno were injured in the collision when Burist first struck their vehicle. I am preparing this report for all Plaintiffs listed in the above captioned matters.

UniGroup / Mayflower contend that the Agency Agreement between themselves and Joe Moholland, Inc. had been terminated in April 2022, and that UniGroup / Mayflower had no responsibility or control over Moholland and / or Burist at the time of the subject crash.

Per your request, I have reviewed materials in the aforementioned case. Following are my analysis and opinions regarding the matter. My opinions are to a reasonable degree of Professional certainty and subject to change if additional information becomes available.

For brevity, all Moholland entities will be referred to as Moholland, and all UniGroup / Mayflower entities will be referred to as Mayflower.

**Analysis**

The basis for my opinions center on two facets:

Robson Forensic Inc.
1570 Fruitville Pike
Lancaster, PA 17601
Phone: 717.293.9050
Toll-Free: 800.813.6736
Fax: 717.293.1195
www.robsonforensic.com

1. The January 26, 2022, email communication between Chris Wynn and Moholland allow future government business to proceed, which is supported by their continuing business and relationship i.e. invoices, payments, equipment lease, and emails dated in 2023.

2. The load "commenced" prior to termination date, per Mayflower's testimony of the definition "commenced" and how this is used in the industry.

Below, I have included basic facts which support these opinions, to wit:

**I. The Continuing Business Relationship Between Moholland and Mayflower.**

It is my Opinion that this agency relationship was never properly terminated. Christopher Wynn, an employee of Mayflower's, deposition was taken on May 9, 2023, and he testified that this transport was a military move, and it was expressly allowed under the correspondence between the parties.

- **Q.** *And you talk about the wind-down, and you say "no additional Mayflower or United authority shipment activity involvement can take place after that date**__, other than Moholland's related military-approved business__**." Did I read that correct?*

  *A. Correct.*

  **Q.** ***So you have authorized them to do military-approved business utilizing Mayflower's DOT number?*** *Isn't that right?*

  ***A.*** *I just know, if they were doing anything, they were -- it was, as you said, a carve-out. I just know that, based on what I had pulled, they would not be doing any further COD, national account.* ***If there was any government military, that could continue on.***

  (Christopher Wynn, 171:15-24; 172:1-8).

It is undisputed that the load being transported by Nicholas Burist and the Defendants was "military approved business." (Mayflower 30(b)(6) 16:15-19; Joe Moholland 30(b)(6) 141:10-21).The discovery, produced to date, therefore shows that this was more likely than not the reason why this move was conducted under Mayflower operating authority.

**a. Indications of Authority based on appearance**

Following the collision, law enforcement discovered that Mayflower Transit's name and logo were prominent on the passenger and driver's side door of the commercial motor vehicle. Further, the license plate of the tractor was registered in Missouri (the state of Mayflower's headquarters), and the International Fuel Tax Agreement (IFTA) sticker was also registered in Missouri.

Additionally, Defendant Burist (and his crew) were wearing “Mayflower” uniforms at the time of the crash, and an Out of Service violation was tagged to Mayflower on June 17, 2022 (less than two weeks prior to the crash). The IFTA sticker is issued to the authorized Motor Carrier who is responsible for the vehicle, in this case, Mayflower. **NOTE** - The Missouri license plate assigned to the International was not reported stolen until July 6, 2022, five days after the crash, according to the Georgia Highway Patrol SCRT Team.

The above is further supported by the vehicle inspection report that qualified the vehicle as a Mayflower approved tractor-trailer on February 15, 2022. (Mayflower 000004). It is my opinion that Mayflower had an existing, and ongoing, relationship with Joe Moholland and Locke, otherwise it would have no reason to certify the tractor-trailer as fit for service or represent the same to the Department of Transportation.

**Q:** *And does Mayflower require these vehicle inspections as part of the general oversight and responsibilities that you identified to me earlier that add value to this whole transaction?*

A: *Yes, it is also required by the FMCS.*

(Mayflower 30(b)(6) Pg. 133).

Moholland testimony supports that this undertaking by Mayflower is indicative of a furthering relationship beyond the initial Agency agreement. (Moholland 30(b)(6) Pg. 107-108). Further indicative of an ongoing agency relationship is the equipment lease that was in place for the tractor that caused the collision at issue.

The lease(Mayflower 000006) states: “[t]he vehicle described below is being operated by Mayflower Transit, LLC (“Mayflower Transit”), DOT #125563, whose principal place of business is One Premier Drive, Fenton, Missouri 63026:

*2014 International Vin # 3HSDJAPR7EN491357 Mayflower Transit (Lessor) is operating this vehicle pursuant to a lease agreement with Joe Moholland Moving which has a term beginning from the date shown below and continues thereafter until one party provides thirty (30) days written notice of its intention to terminate the lease agreement… Signed on 12/05/2017.”*

Mayflower’s 30(b)(6) designee testified as follows:

**Q:** *And it says "Mayflower Transit is operating this vehicle pursuant to a lease agreement with Joe Moholland Moving," right?*

*A: Correct.*

**Q:** *So would this be **in addition** to the Agency Agreement?*

A: *Yes.*

**Q:** *Can you point me to any document that shows that the lease agreement*

*between Mayflower Transit and Joe Moholland for the truck involved in the collision was ever terminated?*

A: *I have not seen the document. That should be -- we can -- we can produce that, though.*

**Q:** *Okay. All right. I'd add that to the list. That's something that easy for you to find?*

A: *Yes.*

(Mayflower 30(b)(6) Pg. 130-131).

To date no evidence has been produced showing the equipment lease agreement was ever terminated, and in fact Mayflower confirmed no other "additional" termination documents exist.

**b. Mayflower corporate designee admitted that it never properly terminated the agency agreement. The agreement states:**

*Any notice provided for in this paragraph shall be deemed to have been given the day it is delivered personally or one business day after being sent by express overnight courier service or three business days after* ***being deposited in the United States mail, certified, postage prepaid****, addressed to the party entitled to receive such notice at its principal place of business.*

(Agency Agreement, JMI 8-9, 11).

Mayflower's 30(b)(6) was asked about this requirement for proper termination:

***Q.*** *Are you aware of any documentation that reflects that that provision was complied with in the termination notice sent to Joe Moholland?*

*A.* *No*.

(Mayflower 30(b)(6) Pg. 72-73).

Further, Moholland's witnesses have testified that Moholland never received or issued notice as required by the agreement via certified mail, return receipt requested. (Moholland 30(b)(6) Pg. 117; 119:6-15). As such, Mayflower's agency agreement was never terminated pursuant to the agreement and was not terminated prior to July 1, 2022. In the industry, the reason you have agreements that require termination in a certain method is to ensure all parties are on the same page regarding the effect of termination.

**c. Independent Contractor Agreement between Locke, Moholland, Mayflower and UniGroup.**

Locke and Moholland signed an Independent Contractor Agreement drafted by Mayflower on March 11, <u>2020,</u> that stated:

*"Joe Moholland, Inc., herein Company, is an authorized motor carrier that transports*

> *and stores household goods and general commodities under either its own operating authority or as an agent of United Van Lines, LLC, and/or Mayflower Transit, herein Van Line, under Van Line's operating authority." (Locke 30(b)(6) Pg. 17, 20, 24).*

Locke did not learn of the purported separation between Mayflower and Moholland until after the July 1, 2022, collision, and operated business as usual up to and including the date of July 1, 2022. (Locke 30(b)(6) Pg.19;101).

d. **Payments From Mayflower To Moholland After Termination Of Agency Agreement**

The agency statements showing payments between Mayflower and Moholland that span from January 5, 2022, to October 26, 2022. There are approximately 70 invoices between Mayflower and Moholland (Mayflower 000061- 000145) spanning several months after the collision. Id. (Mayflower 30(b)(6) Pg. 40, 105-106).

Jason Jones, Senior VP at Mayflower, stated that the long-standing Agency relationship was terminated on April 28, 2022 (Jones EX 12). Exhibit H, however (BATES – Mayflower 000061 – 000145) show various payments to Moholland for several months after the April 28, 2022, termination date. Many of the ledger entries are coded and Mayflower has not supplied definitions for the codes. Other items, however, can be identified. To Wit:

- 4-28-22 Tolls charged back to Moholland - $109.00 – Mayflower 000096
- 5-3-22 Marketing expenses charged to Moholland - $500.00 – Mayflower 000096
- 5-4-22 Agent payment - $9909.31 – Mayflower 000098
- 5-10-22 Tolls - $171.80 – Mayflower 000094
- 5-24-22 MVR Investigations - $29.01 – Mayflower 00090
- 6-2-22 Agent payment - $20,000.00 – Mayflower 000088
- 5-26-22 Trans Advantage balance due - $2,635.60 – Mayflower 000087
- 6-2-22 Marketing expenses - $500.00 – Mayflower 000086
- 6-6-22 Tolls – $21.50 – Mayflower 000086
- 6-21-22 Fuel tax charge - $983.13 – Mayflower 000082
- 6-27-22 Agent payment - $20,000.00 – Mayflower 000080
- 6-23-22 Trans Advantage balance due - $2,635.60 – Mayflower 000080
- 7-6-22 Agent payment - $20,000.00 – Mayflower 000079
- 7-11-22 Agent payment - $20,000.00 – Mayflower 000077
- 7-20-22 Agent payment - $20,000.00 – Mayflower 000076
- 7-18-22 Agent payment - $20,000.00 – Mayflower 000076
- 7-22-22 Agent payment - $20,000.00 – Mayflower 000075
- 7-22-22 Tolls - $312.48 – Mayflower 000075

- 8-1-22 Agent payment - $20,000.00 – Mayflower 000073
- 8-1-22 Agent payment - $20,000.00 – Mayflower 000072
- 8-15-22 Offset payement – Transfer from Agent to Agent – Mayflower 000071
- 8-15-22 Agent payment $3276.70 – Mayflower 000071
- 8-25-22 Trans Advantage balance due - $2,635.60 – Mayflower 000069
- 9-6-22 Agent payment $3266.68 – Mayflower 000068
- 9-21-22 Agent payment $4475.36 – Mayflower 000066

The first month with no financial activity between Moholland and Mayflower was October 2022 (BATES – Mayflower 000060).

If the Agency Agreement between Moholland and Mayflower was truly over, there shouldn't be any final transactions after a short period of time. The custom and practice in Motor Carrier / IC / Agent Agreements is to settle the financials quickly, usually within 30-45 days. This allows time for any charges made by the Agent (fuel card purchases, tolls, etc.) to be calculated and deducted from any final monies that are owed to the Agent.

e. **UniGroup still listed Moholland as an Agent in May 13, 2022**

On May 13, 2022, in response to a query from TMM, UniGroup provided a screen shot showing Moholland as an available Agent for the subject assignment:



**From:** AreaD <aread@unigroup.com>
**Sent:** Friday, May 13, 2022 12:07 PM
**To:** Operations <operations@totalmm.com>
**Cc:** 'Mark Radwanski' <mradwanski@johnson-united.com>
**Subject:** [EXTERNAL] FW: ATP trailer 3090130 load / delivery schedule

Hello TMM,

We are going to send this order ATP. The DA advised, they are unable to service. Can we change the DA?

```
RH530-MPRH530  TEN AGENTS WITHIN 100 MILES O
==> COMMAND: _
ORDER NO:  BOOKER  SEQ NO  YR  PS  OF  SH
           U 1871 - 00428 - 2 -   -   -     W
TO SELECT AN AGENT ENTER AN S BESIDE THE CHOS
SEL AGENT          NAME
    M  417  VIRGINIA TRANSFER & STORAGE     NEW
    M  444  MOHOLLAND TRANSFER              HAM
    M 1447  CLARK TRANSFER & STORAGE COM    CHE
    U  598  BROOKS TRANSFER & STORAGE CO    VIR
    M 2831  KLOKE GROUP                     RIC
    U  606  HILLDRUP                        RIC
    M 2832  KLOKE GROUP                     FRE
```

Moholland created a new entity named <u>Tailored Move</u>. In an August 7, 2023 email to UniGroup, <u>Melodie </u>Garr is using a signature line showing Moholland's address and phone number, and is using

Moholland's "@jmm333.com" email address. Garr is asking UniGroup for help entering an order because Tailored Move isn't a Mayflower Agent:

**From:** Melodie Garr <mgarr@jmm333.com>
**Sent:** Monday, August 7, 2023 8:22 AM
**To:** Williams, Stephanie <Stephanie_Williams@unigroup.com>
**Subject:** U1797-81616-3 Jones, Lucas

* **External email: Treat hyperlinks & attachments with caution.** *

Stephanie,

I have attached a copy of the delivery docs for this SIT shipment. Can you send me the breakdown for this shipment since we are no longer a Mayflower agent? Please let me know if you need anything else.

Thank you,
Melodie Garr

Tailored Move
Joe Moholland Moving
15481 Farm Creek Drive
Woodbridge, VA 22191
703-494-2021

BATES JMI0682 – JMI 0683

https://www.tailoredmove.com/joe-moholland-moving/

Same Great People.
Same Great Service

In 2022, Joe Moholland Moving & Moholland Transfer proudly became part of Tailored Move.

With 25+ years of combined experience, strong recommendations, and a top ratings from JD Powers, Joe Moholland and Tailored Move ensures a stress-free move, granting you peace of mind. Our expanded global reach allows seamless moves across borders, specializing in efficient relocations for homeowners in Virginia, Maryland, and Washington DC.

All of the above appears to contradict Jason Jones, a Senior VP for Mayflower, that they had no ongoing relationship with Moholland:

14. Given that Mayflower had no relationship with Joe Moholland, Inc. and Nicholas Burist on July 1, 2022, and that Mayflower did not own or operate the subject semitruck and trailer on July 1, 2022, Mayflower has no material connection to this litigation or forum regarding the claims that Plaintiff has asserted.

Jones EX 12

### f. **Payments To Burist After Date Of The Subject Crash**

Mayflower assigned Burist a "Vehicle Operator ID" (V/O ID), meaning they assigned him a code. His V/O ID is M22132:

```
OLDR400                        V/O INFORMATION              G
COMMAND:
V/O ID: M22132    STATUS: CANCELLED 04/29/22   AB5: N
NAME: BURIST, NICHOLAS D
TYPE: 2 AGENT V/O FOR AGENCY: M00333 JOE MOHOLLAND MOVING
```

Jones EX 8

And while Mayflower claims they cancelled him in their computer system April 29, 2022, they have a ledger entry showing activity involving Burist on July 6, 2022, June 16, 2022, and May 12, 2022:

MCLM New Claims System

| | | | | | |
|---|---|---|---|---|---|
| 60 | 07/06/2022 | M0444-03322-2 | M22132 | Fink | $295.00 |
| 61 | 07/06/2022 | M0444-03322-2 | M22132 | Fink | $500.00 |
| 62 | 07/06/2022 | M0444-03322-2 | M22132 | Fink | $200.00 |
| 63 | 07/06/2022 | M0444-03322-2 | M22132 | Fink | $275.00 |
| 64 | 07/06/2022 | M0444-03322-2 | M22132 | Fink | $230.00 |

Mayflower 000079

| | | | | | |
|---|---|---|---|---|---|
| 41 | 06/16/2022 | M0444-64739-1 | M22132 | Lewis | $125.00 |
| | | Category Subtotal: | | | $125.00 |
| | | Group Subtotal: | | | $125.00 |

Mayflower 000083

| | | | | | |
|---|---|---|---|---|---|
| 30 | 05/12/2022 | M2501-07006-1 | M22132 | Ritchie | $30.00 |
| 31 | 05/12/2022 | M2501-07006-1 | M22132 | Ritchie | $112.50 |

Mayflower 000092 and Mayflower 000093

Mayflower was still evaluating Burist on May 3, 2022, where they scored his performance a 3 out of 5:

```
HHGD PREV RATG:  4 EFF: 05/03/22
S.P. PREV RATG:    EFF: 12/11/20
PF1=HELP  PF3=END  ENTER
```

Mayflower 003446

### g. **Mayflower Paid Insurance Premiums For Burist On The Day Of The Subject Crash**

On the date of the subject crash. Mayflower made an insurance payment on behalf of Burist:

PDRM Prism-MTI Driver Insurance Premiums

| | | | | |
|---|---|---|---|---|
| 37 | 07/06/2022 | Nq Inv # 2204785 Vic | $583.00 | $0.00 |
| 38 | 07/06/2022 | Nq Inv # 2204876 Vic | $1,620.00 | $0.00 |
| 39 | 07/06/2022 | Nq Inv # 2204925 Vic | $894.00 | $0.00 |
| | | Category Subtotal: | $3,097.00 | $0.00 |
| | | Group Subtotal: | $12,760.00 | $0.00 |

RENT Tai Rentals
CONFIDENTIAL MAYFLOWER 000078

| Line # | Date | Description | Due HQ | Due Agent |
|---|---|---|---|---|
| 40 | 07/01/2022 | At7054 Jones Karin\mike Peters-M00 | $462.20 | $0.00 |
| 41 | 07/01/2022 | At7069 Burist Nicholas\mike Peters | $280.55 | $0.00 |
| 42 | 07/01/2022 | At7074 Shuler Andre\mike Peters-M0 | $600.69 | $0.00 |

Mayflower 000078 - 000079

All of the above contradicts Mayflower's position that they cancelled their relationship with Burist.

## II. The Load Moholland Was Transporting Was Confirmed And Booked While The Mayflower / Moholland Agency Agreement Was Still In Place

### a. The Load Commenced During While The Agency Agreement Was Still Active

Per the Agency Agreement and the Temporary Agency Agreement, all of the requirements and conditions of both agreement were in effect when Mayflower booked this shipment:

Please mark this shipment as HIGH PRIORITY in your system to ensure one of your best crews is assigned. TMM is committed to help resolve any issues that may arise in real time; please contact our office at 866-739-7856 for assistance.

**BOOKING CONFIRMATION FOR SCAC NWMO / BOOKED DATE: 2022-04-06**

**TMM Phone:** (904) 739-7856 / **TMM Email:** operations@totalmm.com
**Sent by:** Jonathan Hendrick - 2022-04-06
**Customer Care Advocate:** Elise Duncan **Extension:** 1343 **Email:** eduncan@totalmm.com

**Shipment Information**

| | |
|---|---|
| **GOgistix ID:** 855935569896 | **Van Line Reg #:** BGNC0520711 |
| **Member Name:** NICHOLS, GREGORY | **ID Number:** 617718/1 |
| **Pack Date:** 2022-06-13 | **GBL Number:** BGNC0520711 |
| **Pickup Date:** 2022-06-15 | **Discount:** SEE GBL |
| **Required Delivery Date:** 2022-07-05 | **Estimated LH:** 4302.30 |
| **Available SIT:** | **Miles:** 622 |
| **Weight:** 5000 | **Code:** 1 |

**Origin**

| | |
|---|---|
| **Origin Address: 1657 Guthrie Street Virginia Beach,VA 23464** | **OA ID:** 20377/5 **GBLOC:** BGNC |
| **Extra Pickup :** | **Corp Code:** |
| **Extra Pickup 2:** | **Origin Agent:** Moholland Transfer Co |
| **Member's Primary Phone: 541-520-3769** | **Origin Agent Address:** 220 E. Street Hampton,VA 23661 |
| **Member's Secondary Phone: 314-458-6312** | **Phone:** 757-827-2900 **Fax:** 757-262-0022 |
| **Member's Tertiary Phone: 314-458-6312** | |
| **RA Name: Nichols, Ashley** | |
| **RA Phone Number:** | |
| **Member's Email:** nichols20@hotmail.com | |

**Hauling**

**Hauling agent:** Joe Moholland Inc **Corp Code:** **Phone:** 703-494-2021
**Physical Hauler:** Joe Moholland Inc **Corp Code:**

Mayflower EX 11

The agency agreement states that for any loads that "commence" during the period of the agreement, these loads are covered by the Agency agreement terms. Paragraph 5.K(g) of the agency agreement states (JMI0011):

> *The termination of this agreement shall not affect any rights or obligations under this agreement which shall have previously accrued or shall thereafter arise with respect to any occurrence prior to termination or any rights or obligations which this agreement specifies shall not end upon such termination, and such rights and obligations shall continue to be governed by the terms of this agreement.*
>
> ***As to any shipment that has <u>commenced</u> prior to the date on which this agreement is terminated, the terms, <u>provisions, and conditions of this agreement will continue to apply to such a shipment</u>.***

Mayflower testified through its corporate designee that this shipment at issue in this case actually "commenced" during the applicability of the agency Agreement:

> **Q:** ***<u>Can we agree that the bills of lading reflect that this shipment commenced on March 15th and March 2nd, 2022?</u>*** *(MR. EHRENREICH: Object to form.)*
>
> A. ***<u>I agree that that's when it commenced, yes.</u>***
> (Mayflower 30(b)(6) Pg. 73-75).

Per the testimony of Mayflower, and the terms of the agency statement – as used in the industry, this load is covered by the Agency Agreement term:

> *"[a]s to any shipment that has commenced prior to the date on which this agreement is terminated, the terms, provisions, and conditions of this agreement will continue to apply to such shipment."*

Additionally, Moholland's 30(b)(6) designee agreed that based on the definition of "commenced" that the load at issue in this case commenced within the pendency of the agency agreement. (Moholland 30(b)(6) Pg. 55). Given the Mayflower testimony that the load commenced *prior* to the termination of the agency agreement, the documents which support the same, and Moholland's testimony of the termination date, the agency agreement was still *in effect* at the time of this collision.

b. **Mayflower Was Monitoring Moholland's Equipment After The Expiration Of The Agency Agreement**

Mayflower claims their Agency Agreement with Moholland ended April 28, 2022. However they continued to monitor Moholland's equipment until May 18, 2022:

Unit Number....: 24 - 0333
VIN Number.....: 1KKVE532XXL114720
Year...........: 1999
Make...........: KEN KENTUCKY
Fuel Type......:
Base State.....: MO
License Year...: 2017
Cancel Date....: 05-18-2022
Inspection Date......: 11-21-2021
Inspection Due Date..: 05-21-2022
Photo Year .........: 2016
Fleet Graphic Design.: A
Safety Comments:

Mayflower 0000146

**FINDINGS**

Within the bounds of reasonable Professional certainty, and subject to change if additional information becomes available, it is my Professional opinion that:

1. Information gleaned from UniGroup / Mayflower's own records shows that an ongoing business relationship and agency relationship with Moholland / Burist existed at the time of the subject crash.

Respectfully,

Brooks Rugemer

Brooks Rugemer
Commercial Trucking Specialist
Robson Forensic, Inc.