**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | | |
|---|---|---|
| KYLE SLOAN, Individually, and as Personal Representative of the Estates of Rylie Sloan and Jamie Sloan, KYLE SLOAN as Surviving Spouse of Jamie Sloan, and KYLE SLOAN as Surviving Parent of Rylie Sloan,<br><br>Plaintiffs,<br><br>v.<br><br>MAYFLOWER TRANSIT LLC; and NICHOLAS BURIST<br><br>Defendants. | ) | Civil Action No.<br>2:22-cv-00076-LGW-BWC |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MAYFLOWER TRANSIT, LLC'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT BROOKS RUGEMER AND REQUEST FOR RULINGS ON OBJECTIONS AT HIS TRIAL DEPOSITION**

Mayflower Transit, LLC asks the Court to strike Plaintiffs' liability expert Mayflower concedes is qualified. Plaintiff served his initial report, CV, and fee schedule on October 11, 2024, in compliance with the deadline for expert reports. (Doc. 202 at 3; Ex. 1, Oct. 11, 2024 service email and Dropbox folder). Mayflower did not depose Mr. Rugemer by the Court's December 11, 2024 liability expert-deposition deadline, did not challenge his opinions by the *Daubert* deadlines, and has never served any discovery about or subpoena to him in the years since disclosure. (*Id.*) On October 14, 2026, Mayflower participated in two depositions of Mr. Rugemer. The first was a discovery deposition that Plaintiffs permitted as a courtesy because Mayflower never issued any deposition notice. The second was a *de bene esse* deposition where Mayflower counsel performed cross-examination.

At the pre-trial conference on October 6, 2026 the parties agreed that Mr. Rugemer's *de bene esse* deposition would take place at his home because Mr. Rugemer was and is under a limb-preservation protocol with a severe knee infection and surgery scheduled for November 30, 2026. Plaintiff addressed this in both the Pretrial Order and verbally in Judge Wood’s chambers during the pretrial conference.

There is no proper basis to strike Mr. Rugemer's testimony, there is no prejudice to Mayflower for any alleged Rule 26 defect, and Mayflower has waived any objection by waiting over two years to raise any objection and then proceeding to conduct two depositions of Mr. Rugemer.

Mayflower’s motion rests on three grounds: (A) Rule 26 disclosure defects; (B) “legal conclusions”; and (C) speculation and prejudice. None justify the drastic remedy of excluding trial testimony.

Mayflower has had Mr. Rugemer’s initial report, CV and fee schedule since October 2024; the one item not served then, his four-year testimony list, was served the morning after Mayflower first asked for it.  There is no prejudice to Mayflower because Lewis Brisbois Law Firm has previously retained Mr. Rugemer as an expert. Moreover, the supplement Mayflower calls late was served before the Rule 26(e)(2) deadline, supplements an opinion disclosed years before, and was the subject of a discovery deposition Mayflower took before the *de bene esse* deposition.  At no time did Mayflower counsel say it could not go forward or seek any relief from the court regarding Mr. Rugemer's deposition. The Rule 702 challenge comes months after the second *Daubert* motions deadline without leave or consultation and attacks an opinion Mayflower has had since 2024.

## BACKGROUND

### A. Mr. Rugemer's qualifications and reports

Mr. Rugemer leads the trucking and warehousing group at Robson Forensic. (Trial Dep. 14:2–7.) He drove approximately 1.4 million interstate miles without a fault-based crash. He then spent decades in motor-carrier safety and compliance management, including as Director of Safety for Consolidated Freightways, where he was responsible for 33 terminals and 3,800 employees. (*Id.* 15:11–18:12.) He has participated in more than 5,000 driver hirings and has personally handled the separation of drivers and owner-operators from carriers. (*Id.* 18:13–25; Disc. Dep. 35:13–36:2, 52:17–53:10.) He is a Certified Director of Safety through the North American Transportation Management Institute and has been certified through the Transportation Safety Institute on the Federal Motor Carrier Safety Regulations. (Trial Dep. 19:1–20:6.) He has testified for plaintiffs and defendants, including on behalf of clients represented by Lewis Brisbois Law Firm, and no court has ever excluded his opinions. (*Id.* 14:17–15:10, 20:23–22:11; Disc. Dep. 29:25–30:6.)

The Second Amended Consolidated Scheduling Order set October 11, 2024 for service of Plaintiffs' expert reports, December 11, 2024 for expert depositions, and January 11, 2025 for "All Civil Motions (Including *Daubert* Motions; Excluding Motions in Limine)." (Doc. 202 at 3.) Plaintiffs served Mr. Rugemer's report on the deadline, together with his CV and fee schedule, by email to all counsel of record, including Mayflower's counsel Brantley Rowlen, Todd Ehrenreich, Jeffrey Geldens, and Brighten Donner. (Doc. 458-2; Ex. 1 Oct. 11, 2024 service email and Dropbox folder). The report concluded that Mayflower's records show an ongoing motor carrier-agent relationship with Joe Moholland Moving and the driver, Nicholas Burist, at the time of the July 1, 2022 collision. It applied the following facts of this case to industry practice to support the opinions: the Mayflower license plates, IRP card registration, IFTA credentials, and logo on and in the tractor on July 1, 2022; the June 17, 2022 out-of-service inspection charged to Mayflower;

the Mayflower equipment lease for the tractor and the absence of any termination of it; Mayflower's agency payments to Moholland for months before and after July 1, 2022; and the industry custom of settling an agent's accounts within 30 to 45 days of a true separation. (Doc. 458-2 at 2–11.) Plaintiffs identified Mr. Rugemer again throughout court filings, including Plaintiff's Status Update to the Court regarding trial witnesses, filed in June 2026.

Mayflower's motion ignores the October 2024 submission of Rugemer's report, CV, and Fee Schedule. Mayflower never served any interrogatories or document requests about Mr. Rugemer, issued no subpoena for his file, raised no question about the October 2024 disclosure, did not depose him by the December 11, 2024 deadline, and filed no *Daubert* motion by January 11, 2025 or the extended *Daubert* motion deadline of February 2026.

Mayflower's document production has continued and remains ongoing as of the date of this filing. On December 19, 2024, at Doc. 271, Mayflower disclosed that it had not included roughly 151,585 pages of documents in its production. On September 21, 2026, the Court ordered Mayflower to complete production of supplemental discovery documents by October 5, 2026. (Doc. 423 at 2.) Mayflower produced some documents on October 2, 2026 (CONFIDENTIALMAYFLOWER126743–140920) some on October 9, 2026 (CONFIDENTIALMAYFLOWER140921–140943) and produced several dozen more liability-related documents and excel spreadsheets after Mr. Rugemer's deposition. On October 16, 2026 Mayflower identified an additional 477,590 pages of potentially responsive documents. One of the documents used at the trial deposition — a June 21, 2022 email of Mayflower's Safety Compliance Manager and Senior Director captioned "Terminated Agent M-333 Joe Moholland (as of 4-28-22)," MAYFLOWER 131391 — was not produced until October 2, 2026. (Trial Dep. Ex. 10 at

3.). Mayflower gives no explanation for why this document was produced long after the close of liability discovery.

Mr. Rugemer updated his report to include the recently-produced discovery from Mayflower. (Disc. Dep. 31:10–13.) Plaintiffs served his supplemental report on October 6, 2026. (Doc. 458-3; Doc. 458-4 at 6.) The supplement accounts for depositions taken after the original report and identifies by Bates number the documents that, "strengthen" his original opinion. (Doc. 458-3 at 1–4.) It states two findings: the original opinion, restated, and that Mayflower is the responsible motor carrier on July 1, 2022 because the tractor carried Mayflower's Missouri registration cab card, Missouri apportioned plates, IFTA credential, and USDOT number. (*Id.* at 5.) Mayflower itself describes the second report as "a naked recitation of the Plaintiff's alleged facts." (Doc. 458 at 10.), implicitly conceding that there is nothing surprising about Mr. Rugemer's conclusions.

## B. Notice and taking of the trial deposition

On September 28, 2026, the Court memorialized the deadlines it announced at the September 21 conference: proposed pretrial order by October 2, pretrial conference on October 6, "Depositions of All Witnesses Taken for Use at Trial" by October 16, and trial on November 17, 2026. (Doc. 422 at 1.) That order left the parties eighteen days to complete every trial deposition. After the discussion of the need for Mr. Rugemer's deposition at his home, Plaintiff's counsel gave the following notices of the Rugemer deposition to every counsel of record:

| Date | Communication |
|---|---|
| Oct. 6, 2026 | Service of supplemental report; "We will work to get his availability for a trial deposition." (Doc. 458-4 at 6.) |
| Oct. 8, 2026 | Scheduling email: trial deposition at Mr. Rugemer's home, 9:00 AM, Wednesday, October 14, with Zoom; notes the medical disability raised at the pretrial conference. (Doc. 458-4 at 5–6.) |

| Date | Communication |
|---|---|
| Oct. 8, 2026 | Notice of Videotaped Deposition De Bene Esse, served on all counsel, invoking Rules 30(b)(3) and 32(a)(4). (Doc. 458-4 at 5; Ex. 2). |
| Oct. 9, 2026 | Zoom credentials circulated. (Doc. 458-4 at 3–4.) |
| Oct. 12, 2026 | Request that anyone attending in person advise in advance (Doc. 458-4 at 3); Plaintiffs' letter to Judge Cheesbro, copied to Mayflower's counsel, advising that the trial deposition would proceed October 14 at 9:00 AM. (Ex. 3 at 2.) |
| Oct. 13, 2026 | Reminder with Zoom link. (Doc. 458-4 at 2.) |
| Oct. 14, 2026 | Link to the anticipated deposition exhibits. (Doc. 458-4 at 1–2.) |
| Oct. 15, 2026 | Updated CV and four-year testimony list, sent "[p]er your request yesterday." (Doc. 458-4 at 1.) |

Mayflower did not move for a protective order, did not ask the Court or Plaintiff's counsel for more time, or in any way indicate an objection to the deposition. On October 13th Plaintiff's counsel traveled to rural Maryland a couple of hours north of Baltimore and undertook great expense to secure a court reporter and videographer at Mr. Rugemer's home for the deposition. On October 14th the depositions went forward with Mayflower counsel without any prior suggestion of an objection. After Mr. Rugemer was sworn for the trial deposition, Mayflower's counsel announced that he was "entitled to a brief discovery deposition before this begins." (Disc. Dep. 11:4–6.) No such deposition had been noticed or requested, but as a courtesy Plaintiff's counsel permitted over an hour of questioning by Mayflower's counsel. (*Id.* 11:7–8, 12:20–13:1, 14:15–16, 26:5–8.)

Plaintiffs had no obligation to permit it. They did so because of the parties' practice in every other deposition during the compressed trial-deposition schedule: before every *de bene esse* deposition, the opposing party was permitted a short discovery examination of the witness. Mayflower's counsel invoked that practice himself — "that's how we've done it on all these other ones" — and referred to his own "mega depositions that we took for some of the medical folks." (*Id.* 11:16–22, 12:6–9; *see also* Trial Dep. 9:12–17 ("the same rules that we've done for all the

other de bene esse depositions").) Plaintiffs agreed, "as an accommodation, because the report was just produced." (Disc. Dep. 14:15–23.) Mayflower examined Mr. Rugemer from 9:24 AM until 10:40 AM on both reports, his compensation, his CV, his testimonial history, the supplemental report line by line, and the industry practice for separating from an agent. (*Id.* 17:19, 19:7–57:19, 64:5–8.) Mayflower's counsel closed by thanking Plaintiffs' counsel "for playing nice in the sandbox and allowing me this discovery deposition based on your supplemental report." (*Id.* 57:22–25.)

The trial deposition then proceeded under the procedure counsel agreed to on the record: objections stated with their grounds, as if at trial, and exhibits marked for trial. (Trial Dep. 9:10–10:1.) Mayflower stated that it was "not objecting to Mr. Rugemer's qualifications as an expert" in commercial carrier operations under the FMCSRs, motor carrier safety management, and FMCSR compliance, and confirmed it was "not disputing his qualifications" as offered. (*Id.* 22:12–22, 29:2–11.)

Mayflower's counsel made only a short objection that it did not have Mr. Rugemer's CV, fee schedule, and recent trial testimony and that "[i]f those materials [CV, fee schedule, and trial list] were previously provided and Plaintiff's Counsel can show me proof that they were previously provided, I will respectfully withdraw my objection." (*Id.* 24:11–15.) Mayflower then cross-examined him. (*Id.* 95:19–112:24.) The next morning, in response to Mayflower's first request, Plaintiffs sent Mr. Rugemer's updated CV (which Mayflower was provided October 11, 2024) and four-year testimony list, which of course would have been incomplete if made in 2024. (Doc. 458-4 at 1.) It was not until long after the depositions were over and after the trial deposition deadline that this motion was filed. The motion ignores the Plaintiff's October 2024 service of the CV and

fee schedule, Mayflower's voluntary discovery deposition, and the fact that it never raised any issue prior to the deposition.

## ARGUMENT

### I. No Rule 37(c)(1) sanction is warranted, and exclusion would be grossly disproportionate.

A party that fails to provide information required by Rule 26(a) or (e) may not use it "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Any updates to Mr. Rugemer's report and/or failure to include Mr. Rugemer's testimony list in the 2024 disclosure were harmless.

#### A. The supplemental report was timely, added no new opinion, and any surprise was cured at Mayflower's request before he testified.

A retained expert's report must be supplemented when it is incomplete or incorrect, and supplementation is due "by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(1)(A), (e)(2). Pretrial disclosures are due "at least 30 days before trial" unless the Court orders otherwise. Fed. R. Civ. P. 26(a)(3)(B). Plaintiffs served the supplement on October 6. The Court's scheduling orders set the deadline for initial expert reports, which Plaintiffs met (Doc. 202 at 3); the Second Amended Scheduling Order set no deadline for supplementation (Doc. 422 at 1). The October 2024 disclosure also expressly reserved supplementation under the Court's phased-discovery orders. (Ex. 1 at 7 (citing Docs. 144, 170).)

The timing is consistent with the ongoing discovery in the case. The supplement accounts for two corporate-designee depositions taken after the original report and for a emails that Mayflower is *still producing*, under court order, in September and October 2026. Mr. Rugemer was asked to update his review in September 2026 (Disc. Dep. 31:10–13), and Plaintiffs served

the supplement on October 6, before the Rule 26(e)(2) deadline, eight days before the deposition, and six weeks before trial.

The report adds nothing substantially new and was never offered into evidence at the trial deposition. Mayflower concedes that the supplemental report is a factual summary of the Plaintiff's allegations. (Doc. 458 at 10.) A supplement that merely recites facts already in the record is not a new opinion sprung on the eve of trial. The supplement addresses the Missouri plates and IFTA credentials issued to Mayflower as the responsible motor carrier, the Mayflower logo and USDOT number on the door, the June 17, 2022 out-of-service violation charged to Mayflower, and the fact that the tractor's Missouri plate was not reported stolen until July 6, 2022. (Doc. 458-2 at 2–3.) The supplement identifies the Mayflower documents behind those facts, including the base-plate correspondence, the cab-card transmittal, and the July 1, 2022 email confirming the plates had not been returned. And critically, Plaintiff is not seeking to enter the report as a trial exhibit so there is no prejudice to Mayflower.

Mayflower had the supplement for eight days before the deposition. In that time it received seven written communications about the deposition and raised no objection, sought no continuance, and moved for no protective order. Any objection to the deposition notice was waived. Fed. R. Civ. P. 32(d)(1). Mayflower then asked for, and received, a discovery deposition aimed at the supplement, examining Mr. Rugemer on its findings, its documents, and the plate-return practice it describes. (Disc. Dep. 31:3–36:25, 47:9–57:19.) Its counsel thanked Plaintiffs for allowing that examination "based on your supplemental report." (*Id.* 57:22–25.) Mayflower's assertion that it lost the chance "to file a motion such as this one, before the Plaintiff's testimony was taken" (Doc. 458 at 4) is without merit. Mayflower ignored the October 11, 2024 production.

Mayflower had the supplement in writing and deposed Mr. Rugemer on it before he gave his trial testimony.

Mayflower cites no authority that supports its drastic request to strike. In *Hackler v. Gen. Motors LLC*, No. 2:21-cv-19, 2022 U.S. Dist. LEXIS 207133 (S.D. Ga. Nov. 15, 2022), the expert had not been disclosed and the proponent offered no explanation. (Doc. 458 p. 4). In *Hackler*, the plaintiff never disclosed the expert or his report until after the deadline and sought to rely on disclosures made by other plaintiffs in other cases. *Id.* at 5–6, 9–10. The Court weighed the five factors it applies under Rule 37(c)(1) — surprise, ability to cure, disruption of trial, importance, and explanation — and found all factors weighed in favor of exclusion. *Id.* at 7–13 (citing *Rangel v. Anderson*, 202 F. Supp. 3d 1361, 1366 (S.D. Ga. 2016)). Curing the omission would have required reopening discovery and reopening summary-judgment briefing and the defendant was denied the chance to depose the expert at all. *Id.* at 10–12. Moreover, the expert's opinions were not important to the case and there was "no discernible explanation" for the failure to disclosure to expert. *Id.* at 12–13. The facts of *Hackler* are inapposite to the case at bar. Here, Mr. Rugemer's report, CV, and fee schedule were served within the Court's deadline. The supplement restates the original opinion and adds detail based on discovery produced days before the report. Mayflower deposed the expert on the report before the trial testimony. Mayflower also has an expert of its own it has identified on the same topics. Nothing needs to be reopened, and trial remains set for November 17. Mayflower's reliance on *Hackler* is therefore misplaced.

The citation to *Riley v. Tesla, Inc.*, No. 22-12515, 2025 LX 230831 (11th Cir. Mar. 21, 2025), is also misplaced. In *Riley,* the expert's "supplemental" affidavit was attached as an exhibit to an opposition to Tesla's motion to exclude, and the plaintiff "failed to explain how [it] was substantially justified or . . . harmless." *Id.* at 15–16. More important, the affidavit sought to patch

the specific defects Tesla moved to exclude. For the first time, the expert said he had used a differential diagnosis, and he swapped "maybe" and "possible" for "a reasonable degree of engineering certainty." *Id.* at 16–18. Here, Mr. Rugemer was disclosed years ago with a substantially similar report two years before trial; the supplement was served and never objected to; and Mayflower deposed him on it before he testified for trial. Mayflower allowed the deposition and did not make any meaningful objection to moving forward under Rule 32(d). Accordingly, *Riley* is inapposite to the case at bar as well.

**B. The CV and fee schedule were served in October 2024; the testimony list was supplied the morning after Mayflower asked for it.**

Mayflower tells the Court that the October 11, 2024 disclosure "only included Mr. Rugemer's written report" and "lacked Mr. Rugemer's testimonial history, his statement of compensation, or his CV or publication list," and that his "compensation was not disclosed until he testified to it, live, on the date of his trial deposition." (Doc. 458 at 3.) The first two statements, and the last, are wrong. Only the testimony list was not in the October 11, 2024 disclosure. On that date, all Lewis Brisbois counsel were served an email enclosing the signed expert disclosure and a "DropBox Link (below) <u>containing the report, CV, and fee schedule</u>." (Ex. 1, Oct. 11, 2024 service email and Dropbox folder). The linked folder contains three files, each dated October 11, 2024: "Brooks Rugemer – CV and Fee Schedule.pdf," "Brooks Rugemer – Sloan Report – Oct 11 2024," and "Plaintiffs (ALL) 2nd Expert Disclosure (10.11.24) (Signed)." (*Id.*)

Statutory Electronic Service - Sloan, Hines, Petno, Tipton, West, et al. v. Mayflower Transit, et al. ...

Matthew Foss

Reply | Reply All | Forward

To: Regina Champion; Matt R. Sessions; Scott McMickle; 'Rowlen, Brantley'; 'Donner, Brighten'; 'Ehrenreich, Todd'; 'jeffrey.geldens@lewisbrisbois.com'; 'JGilson@hallboothsmith.com'; 'hansellwatt@elliottblackburn.com'; 'jmelliott@elliottblackburn.com'; 'pramblett@boydjen.com'; 'Brandy Mai';

Cc: Charles Hodge; Ryan Langley; 'Joseph Padgett'; 'vivian.cerra@lewisbrisbois.com'; 'Burns, Lauren'; 'Rodriguez, Vivian'; **+3 others**

Fri 10/11/2024 3:26 PM

Plaintiffs 5th Set of RFPs to Moholland - 10.11.24 (SIgned).pdf
325 KB

Plaintiffs (ALL) 2nd Expert Disclosure (10.11.24) (Signed).pdf
967 KB

Good afternoon,

I hope everyone is doing well.

For service, on behalf of all Plaintiffs, please find enclosed:

1. All Plaintiffs' Supplemental Expert Disclosure and Certificate of Service;
2. DropBox Link (below) containing the report, CV, and fee schedule; and
3. Plaintiffs' Fifth Set of Requests for Production to Defendant Joe Moholland.

https://www.dropbox.com/scl/fo/jzcmjs2s3objuzx23h4gg/AOLXkd5nurV0nRD5w023VYk?rlkey=uvjxqpi791qodp5uyb4aq8c61&st=1uoju34v&dl=0

These documents are being served via email only unless otherwise requested. If anyone has any questions, concerns, or needs anything additional, please let us know.

Have a great weekend and thank you,

*Figure 1. Plaintiffs' October 11, 2024 service email to all counsel, including Mayflower's counsel of record.*

10.11.24 - ALL PLAINTIFFS Expert Disclosure (Liability)

from Hodge Law Firm

| Name ↑ | Modified |
|---|---|
| Expert Disclosure - 10.11.24 | -- |
| Expert Disclosure - 6.13.2024 | -- |

*Figure 2. Shared Dropbox folder linked in the October 11, 2024 service email.*




*Figure 3. Contents of the "Expert Disclosure – 10.11.24" folder: CV and fee schedule, report, and signed disclosure.*

The signed disclosure certified that Plaintiffs had "disclosed the information (available at this time) required by Rule 26(a)(2)(B)," that the expert "has included applicable rates for time on consultations and analysis," and that "[t]o the extent the same has not been produced, Plaintiffs will supplement accordingly." (Ex. 1, Oct. 11, 2024 service email and Dropbox folder.) Mayflower thus had Mr. Rugemer's qualifications and his rates two years before trial. Mayflower never asked for anything more. It served no discovery about Mr. Rugemer, never wrote to say the disclosure was incomplete, never moved to compel, and let the December 11, 2024 expert-deposition deadline pass without deposing him. (Doc. 202 at 3.) "Depositions are the usual vehicle for questioning a proffered expert witness prior to trial," and a party that lacks information about an expert because it did not seek it has only its "own failure" to blame. *Handley v. Werner Enter.*, 596 F. Supp. 3d 1353, 1360 (2022). *See, e.g.*, *Ward v. Carnival Corp.*, No. 17-24628-CV, 2019 U.S. Dist. LEXIS 41022, at 16-17 (S.D. Fla. Mar. 14, 2019) ("We are in no way saying that Plaintiff was *required* to depose [the expert]. But if Plaintiff lacks salient details as to what [the expert] did or did not do in reaching her conclusions, or how the literature supports her findings, it seems to us that this occurred as a result of Plaintiff's own failure to seek the information he

claims he now does not possess, and not because the expert's process is somehow lacking.); *Altidor v. Carnival Corp.*, No. 20-CV-21516-COOKE/GOODMAN, 550 F. Supp. 3d 1322, 2021 U.S. Dist. LEXIS 139433, at *16 (S.D. Fla. July 27, 2021) ("[M]any of the rhetorical questions presented in Defendant's motion are questions that could (and likely should) have been asked during a deposition."); *cf. Kellner v. NCL (Bah.), Ltd.*, No. 15-23002-CIV, 2016 U.S. Dist. LEXIS 186087, at 2-3 (S.D. Fla. Aug. 17, 2016) ("[C]ourts have fashioned a variety of mechanisms for ensuring the reliability and relevance of expert witness testimony. One such mechanism is, instead of holding a pre-trial *Daubert* hearing, conducting a *voir dire* of the expert witness during trial . . . .").

The only item not in the October 2024 folder was the four-year testimony list. Mayflower's counsel first asked for it at the October 14, 2026 deposition and it was provided the next day. Plaintiff's counsel was not in possession of it until that time.

Furthermore, Mayflower counsel offered to "respectfully withdraw" the Rule 26 objection on proof that the materials had been provided (Trial Dep. 24:11–15), and received the list, with an updated CV, the next morning. (Doc. 458-4 at 1.) Courts in this Circuit decline to strike experts for exactly this kind of omission when it is promptly cured. *See Brown v. Roche Labs., Inc.*, 2012 U.S. Dist. LEXIS 191764 (N.D. Ga. July 3, 2012) (supplemental disclosure cured omission of prior-testimony information; no prejudice); *Watkins v. Vestil Mfg. Corp.*, No. 2:07-CV-0152-RWS, 2009 WL 277602, at *2 (N.D. Ga. Feb. 5, 2009) (ordering supplemental disclosure rather than striking expert); *Foreman v. Am. Rd. Lines, Inc.*, 623 F. Supp. 2d 1327, 1330–31 (S.D. Ala. 2008) (overruling objection where expert promptly supplied list of prior testimony when alerted to the omission). Specifically, in *Brown, 2012 U.S. Dist. LEXIS 191764 at* 8, the court called gaps of the kind Mayflower raises "excellent fodder . . . at a deposition or on cross-examination," not

grounds to strike. *Id.* at *8. Here, Plaintiffs met the expert deadline. Mr. Rugemer's report, CV, and fee schedule were served on time. The only missing item, his testimony list, was supplied the morning after Mayflower first asked for it. And Mayflower had already deposed and cross-examined him.

The late testimony list was harmless for five reasons. First, Mayflower had everything else Rule 26(a)(2)(B) requires two years before trial: the report, the CV, and the fee schedule; and there is nothing to disclose on publications, because Mr. Rugemer has authored none. (Trial Dep. 111:2–4.) Second, Mayflower examined him on his testimonial history and his CV in the discovery deposition before he testified, and on cross-examination at the trial deposition. (Disc. Dep. 20:6–21:24, 22:14–21; Trial Dep. 110:13–111:12.) Third, Mayflower never asked for the list in the two years after the disclosure; it raised the issue for the first time after the witness had been sworn on the morning of his trial deposition, and received the list the next morning. (Trial Dep. 23:24–24:17; Disc. Dep. 11:4–6; Doc. 458-4 at 1.) Fourth, Mayflower identifies nothing in the list that it would have led to any different questioning. Fifth, Mayflower's counsel cannot identify any different questioning because Lewis Brisbois has previously retained Mr. Rugemer on behalf of other clients on multiple occasions. (Trial Dep. 15:4–10).

Mayflower's claim that the deposition "robbed the Defendants of valuable information for cross examination" (Doc. 458 at 3–4) does not survive a review of the transcript. Mayflower conducted a discovery deposition of more than an hour and then a cross-examination that covered the driver's testimony, Locke's ownership of the tractor, Moholland's testimony, the Total Military Moves booking, the temporary agency agreement, the agency-statement entries, Mayflower's "pipeline" explanation, and his retention, rate, testimonial history, CV, and presentations. (Trial Dep. 95:19–112:24.) Mayflower identifies no question it could not ask.

## II. The Rule 702 challenge is untimely, and it fails on the merits.

### A. Mayflower's challenge comes twenty-one months after the initial Daubert deadline.

The Court required "All Civil Motions (Including *Daubert* Motions; Excluding Motions in Limine)" to be filed by January 11, 2025. (Doc. 202 at 3.) Mayflower had Mr. Rugemer's report for three months before that deadline and filed nothing. Its Rule 702 argument is directed at that same report: it quotes the 2024 finding and asks the Court to exclude "Mr. Rugemer's October 2024 and October 2026 reports, and his opinions and conclusions connected to those reports." (Doc. 458 at 9–10.) Mayflower has not sought leave, has not acknowledged the deadline, and has offered no reason for its delay. A motion to exclude an expert's opinions under Rule 702 is a *Daubert* motion and this motion deadline expired long ago.

### B. On the merits, he testifies to regulatory compliance and industry practice, not to the law.

An expert "may testify as to his opinion on an ultimate issue of fact," but may not tell the jury what result to reach or testify to "the legal implications of conduct." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990); *see* Fed. R. Evid. 704(a). The line falls between explaining a technical regulatory and industry framework, which is proper, and announcing which party should win, which is not. Mr. Rugemer's testimony is on the proper side of that line.

Mayflower's reliance on *Crews v. Tashin Indus. Corp. United States*, No. 5:18-cv-78, 2020 LX 76611 (S.D. Ga. Aug. 18, 2020), supports Plaintiffs, not Mayflower's position. *Crews* granted and denied in part a motion to exclude a defense expert and largely admitted his testimony. The Court found him qualified and the challenges to his methodology went to "credibility or persuasiveness," to be tested "during cross-examination or with the presentation of contrary evidence." *Id.* at 1–2, 23–24. The opinions excluded on legal-conclusion grounds were based on

legal concepts the Georgia pattern jury charge would provide to the jury. *Id.* at 30 n.8. The Court's test asks whether a witness uses terms with "a separate, distinct and specialized meaning in the law different from that present in the vernacular." *Id.* at 29. Mr. Rugemer's testimony is framed in industry terms, not legal ones: IRP cab cards, apportioned plates, IFTA licenses and decals, a "grounded" tractor, and agent payments.

The jury will need to understand things it cannot know from ordinary experience: what an IRP apportioned cab card is and why it must be in the cab (Trial Dep. 31:21–32:17, 43:4–18); that the cab card identifies the "Motor Carrier Responsible for Safety" by USDOT number (*id.* 44:1–12); what an IFTA license is, that its decals must be displayed on the cab, and that it is not transferable between carriers (*id.* 31:10–20, 45:4–47:12); that a tractor without plates, registration, and IFTA credentials is "grounded" (*id.* 47:13–21); what a Part 376 lease certification is (*id.* 87:10–88:17); what an agency-statement ledger code such as "AGTP" means (*id.* 49:22–50:2); how a carrier separates from an agent and how quickly plates and credentials can be retrieved (*id.* 63:19–64:9, 81:10–82:4; Disc. Dep. 52:13–57:19); and that a bill of lading does not always identify the motor carrier (Trial Dep. 74:9–75:19). That is specialized knowledge under Rule 702(a). Mayflower conceded his qualifications in exactly these areas. (Trial Dep. 22:19–22, 29:2–11.)

The phrase Mayflower most objects to — that Mayflower was the "responsible motor carrier for safety" (Doc. 458 at 8, quoting Trial Dep. 64:16–20) — is not a legal conclusion Mr. Rugemer invented. It is printed on the Missouri Department of Transportation's cab card for this tractor, which lists "Motor Carrier Responsible for Safety: USDOT Number 0125563, Mayflower Transit LLC." (Trial Dep. Ex. 5, MAYFLOWER 006104; Trial Dep. 44:1–12.) An expert who reads a government credential and explains what it means in the industry is not interpreting a

statute.[1] *United States v. F.E.B. Corp.*, 52 F.4th 916 (11th Cir. 2022). The case of *Plott v. NCL America, LLC*, 786 F. App'x 199 (11th Cir. 2019), on which Mayflower relies, involved an opinion on the meaning of a statute and whether conduct was "unreasonable" under a negligence standard. Neither bars an expert from explaining what a regulatory credential is and whose name is on it.

Nor does Mr. Rugemer construe the agency agreement. At Plaintiffs' request he read two provisions aloud. (Trial Dep. 40:1–7, 42:1–7.) Reading a document into the record is not an opinion. His testimony about the word "commenced" was about industry usage — that a shipment is commenced when it is "booked," put in the system and planned — which is the subject of custom-and-practice testimony. (*Id.* 41:3–14.) Mayflower's own corporate designee gave the same testimony. (Doc. 291-9, pp. 73-75). Mayflower is free to argue the contract; the jury is entitled to know how the industry uses the terms in it.

Plaintiffs do not offer Mr. Rugemer to tell the jury whether an enforceable agency relationship existed under Georgia law, whether the agreements were legally in force on July 1, 2022, or whether Mayflower is liable. Those determinations belong to the Court's instructions and the jury's verdict. Plaintiffs offer him to explain what the credentials, leases, ledgers, and plate correspondence are, how motor carriers ordinarily use and administer them, and what a carrier that has truly separated from an agent does with them. That is the line *Montgomery* draws, and it is the line Plaintiffs ask the Court to apply answer by answer. Mr. Rugemer explains what an IRP cab card, an IFTA license, and a Part 376 lease certification are; that the Missouri cab card identifies Mayflower as the "Motor Carrier Responsible for Safety"; that those credentials cannot be

---

[1] Mayflower's own 30(b)(6) witness also testifies regarding this issue:
Q: Do you have any basis to refute that Joe Moholland's correspondence indicates that it believed it was running under Mayflower's authority as their responsible motor carrier for safety through March of 2023?
A: No. (Doc. 291-10 p. 39).

transferred to another carrier; and how a carrier that has truly separated from an agent retrieves them, and how quickly. (Trial Dep. 31:10–32:17, 43:4–47:21, 63:19–64:9, 81:10–82:4, 87:10–88:17.) That testimony bears on a disputed fact for the jury, whether Mayflower controlled the tractor on July 1, 2022, and is exactly the ultimate-fact testimony *Montgomery* permits.

**C. His method is the experience-based method Rule 702 permits. Furthermore, Mayflower did not properly raise or preserve its objection.**

UnderRule 702 an expert may be qualified by experience where the expert states "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Frazier, 387 F.3d 1244, 1261 (2004)*. Mr. Rugemer did exactly that. He explained that in his vast multi-decade experience when a carrier separates from a driver, owner-operator, or agent, it retrieves the plates and cab card, cancels credentials, and withholds final settlement until equipment is returned; that a tractor can be grounded in a day by pulling its plates and cab card; that plates can be overnighted back in 48 to 72 hours; and that, in his experience separating owner-operators, the process takes days, not months. (Trial Dep. 63:19–64:9, 81:10–82:4, 106:24–107:14; Disc. Dep. 35:13–36:2, 52:13–57:19.) He then applied that practice to Mayflower's own documents — the plate-return emails, the extension up to "Friday 07/01," the post-collision plate deletion, the agency statements — and explained why the record belies Mayflower's allegations. That is the method *Frazier* describes. Notably, the industry-practice testimony Mayflower now calls unhelpful is testimony Mayflower itself elicited, at length, in its discovery examination. (Disc. Dep. 52:13–57:19.)

*Corwin v. Walt Disney Co.*, 475 F.3d 1239 (11th Cir. 2007), and *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092 (11th Cir. 2005), are also inapposite. In *Corwin* the expert's comparison method was not a recognized method for assessing similarity; in *Cook* the expert articulated no standard at all. On the opinions Mayflower quotes related to *Cook* (Doc. 458

p.12), the expert "articulated neither a generally accepted standard for suicide prevention training in jails, nor an explanation of how or why he believes the [jail's] training to be inadequate," and his "deliberately indifferent" opinion was "unsubstantiated by any proffered facts, explanation, or analysis." *Id.* at 1112. Mr. Rugemer's testimony did the opposite – it "assist[ed] the trier of fact." *Id.* Mr. Rugemer's 2024 report and 2026 supplement tie each conclusion to Mayflower's own Bates-numbered records and to the industry custom of settling an agent's accounts within 30 to 45 days. (Doc. 458-2 at 5–6; Doc. 458-3 at 2–4.) At his deposition, he identified the standard: the FMCSR and state credentialing framework, and the industry practice for separating from an agent. He then explained, from his own experience separating drivers and owner-operators, how a carrier grounds a tractor by pulling its plates and cab card within days. (Trial Dep. 31:10–32:17, 45:4–47:21, 63:19–64:9, 81:10–82:4; Disc. Dep. 52:13–57:19.) *Cook* also evaluated the expert's opinions "each . . . in turn," *id.* at 1111, and recognized that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact" under Rule 704(a), *id.* at 1112 n.8. Even where it affirmed partial exclusion, the court cautioned that it did "not suggest that it would have been impossible . . . to extract from [the expert] some admissible expert opinions." *Id.* at 1113.

Mr. Rugemer explained how Mayflower's documents measure against industry standard. Just because a jury could read the emails does not mean it could understand, without expert help, why a carrier that has truly cut ties with an agent does not allow the agent to continue to use the carrier's apportioned plates, cab card, and IFTA credentials for many months.

Mayflower's remaining points go to weight. Mayflower cross-examined Mr. Rugemer on at length. (Trial Dep. 100:8–19, 105:3–106:24, 108:19–109:19.) "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional

and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). Mayflower must not be "overly pessimistic about the capabilities of the jury and of the adversary system generally." *Id.*

**III. Rules 602 and 403 do not support exclusion**

Rule 602's personal-knowledge requirement "does not apply to a witness's expert testimony under Rule 703." Fed. R. Evid. 602. The question is not whether Mr. Rugemer spoke with the authors of the emails but whether the documents are the kind of data on which a motor-carrier safety expert reasonably relies. Fed. R. Evid. 703. A carrier's own registration records, plate correspondence, inspection records, and agency statements are precisely that.

Mayflower says Mr. Rugemer "claimed he knew the motive behind emails." (Doc. 458 at 1.) The transcript shows otherwise. When Mayflower objected to a question asking the purpose of Mr. Bojan's July 12, 2022 request for photographs, Plaintiffs withdrew it — "I'll ask it another way" — and the witness never answered it. (Trial Dep. 78:14–24.) He did not testify to anyone's motive.

As to Mayflower's remaining arguments in the brief to: Mayflower-marked equipment remained at Moholland's yards after July 13, 2022 (*id.* 79:25–80:4), the separation process takes days (*id.* 81:4–82:9), and the contents of Mayflower's July 11, 2022 cease-and-desist letter, Mayflower did not timely object (*id.* 84:5–86:13). These are all probative of the central disputed allegation, Mayflower's control of the tractor on July 1, 2022 and not substantially outweighed by any danger of unfair prejudice. Fed. R. Evid. 403.

## IV. Plaintiff Requests the Court Rule On *De Bene Esse* Deposition Objections Before Trial

The parties agreed that objections at the trial depositions would be stated with their grounds, as at trial. (Trial Dep. 9:10–10:1, 23:9–19, 27:24–28:20.) This is consistent with Rule 32(d)(3)(B), which states an objection is waived if it relates to the manner of taking the deposition, the form of a question or answer, the oath or affirmation, a party's conduct, or other matters that might have been corrected at that time, and it is not timely made during the deposition. Rule 30(c)(2) adds the requirement that objections to any aspect of a deposition be made timely during the deposition and an objection must state its specific ground unless apparent from context. Fed. R. Evid. 103(a)(1)(B).

Mayflower objected on hearsay grounds to the June 28, 2022 email from Nicole Crum, Manager, Safety (Trial Dep. Ex. 8, PRIV001193), and to the June 21, 2022 emails of Sue DeMien, Safety Compliance Manager — Risk Management, and Chris Wynn, Senior Director (Trial Dep. Ex. 10, MAYFLOWER 131391). (Trial Dep. 57:12–18, 71:2–5, 76:3–77:4.) Each is a statement "offered against an opposing party" and "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). Mayflower's response — that the authors were not shown to be officers authorized to speak for Mayflower (Trial Dep. 59:22–60:5, 71:15–23) — states the test for Rule 801(d)(2)(C), not (D). Rule 801(d)(2)(D) requires only that the statement concern a matter within the scope of the declarant's employment, and these emails concern the work of these employees: the return of Mayflower's plates and an inspection charged to Mayflower's USDOT number. That the authors were UniGroup (Mayflower) employees (Trial Dep. 37:2–7.) The emails are also independently admissible for a non-hearsay purpose — Mayflower's notice, knowledge, and ratification that its

plates remained on Moholland's equipment before and up to July 1, 2022 — which is relevant to whether Mayflower controlled and permitted their use. Fed. R. Evid. 801(c)(2).

Mayflower objected that redirect regarding Mayflower's plates and its July 2022 "unqualify the equipment" correspondence exceeded the scope of cross. (Trial Dep. 116:22–117:1, 118:4–9.) Mayflower's cross elicited Rob Garr's testimony that Moholland had no relationship with Mayflower on July 1, 2022, that Mayflower had no Samsara access, that Mayflower received no compensation, and that Moholland should have removed the Mayflower decals and DOT number by the date of the collision. (*Id.* 98:21–101:19.) Redirect showing that Mayflower's own correspondence contradicts that account is within the scope of cross. Fed. R. Evid. 611(a)–(b). Plaintiff requests a ruling in its favor on these objections.

## CONCLUSION

Mayflower's Motion to Exclude and its Rule 702 challenge are without merit, untimely under Doc. 202; and should be denied.

## CERTIFICATE OF SERVICE

I hereby certify that on October 30 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

Respectfully submitted this 30th day of October 2026.

HODGE LAW FIRM
P.O. Box 2765
Spartanburg, SC 29306
Tel: (864) 585-3873
Fax: (864) 585-6485

*<u>/s/ Charles J. Hodge</u>*
Charles J. Hodge
Admitted Pro Hac Vice
J. Camden Hodge
Admitted Pro Hac Vice
CHodge@hodgelawfirm.com
Camden@hodgelawfirm.com
Attorneys for Plaintiffs

HAMILTON & PADGETT, LLC
13 St. Andrews Ct.
Brunswick, Georgia 31520
P: (912) 200-2727

*<u>/s/ Joseph R. Padgett</u>*
Joseph R. Padgett
Georgia Bar No. 872672
joseph@hamiltonpadgettlaw.com
Attorney for Plaintiffs

LANGLEY STILL & FOSS LAW FIRM
229 Magnolia Street
Spartanburg, SC 29306
Tel: (864) 774-4662

*<u>/s/ T. Ryan Langley</u>*
T. Ryan Langley
Georgia State Bar No.: 692386
Matthew T. Foss
Admitted Pro Hac Vice
Ryan@LSFlawfirm.com
Matt@LSFlawfirm.com
Attorneys for Plaintiffs