**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | |
|---|---|
| KYLE SLOAN, Individually; and as Personal Representative of the Estates of Rylie Sloan and Jamie Sloan; KYLE SLOAN as Surviving Spouse of Jamie Sloan; KYLE SLOAN as Surviving Parent of Rylie Sloan, | CASE NO. 2:22-CV-00076-LGW |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | THIRD AMENDED COMPLAINT |
| MAYFLOWER TRANSIT LLC and NICHOLAS BURIST, | |
| Defendants. | |

**THIRD AMENDED COMPLAINT FOR DAMAGES**

COME NOW Kyle Sloan, individually, as Personal Representative of the Estates of Rylie Sloan and Jamie Sloan, as surviving spouse of Jamie Sloan, and as surviving parent of Rylie Sloan, by and through their counsel of record, and hereby file this Third Amended Complaint for Damages against Defendants Nicholas Burist and Mayflower Transit, LLC, showing this Honorable Court as follows:

**NATURE OF COMPLAINT**

1. This is a civil action for damages against Defendants Nicholas Burist and Mayflower Transit, LLC arising out of a motor vehicle collision. Plaintiffs bring

this action to obtain full and complete relief from Defendants.

**PARTIES, JURISDICTION, AND VENUE**

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332, under diversity of citizenship. More than $75,000 is in controversy and Plaintiffs and Defendants are citizens of different states for purposes of diversity.

3. Plaintiff Kyle Sloan is a citizen of Spartanburg County, South Carolina.

4. Decedents were residents and citizens of Spartanburg County, South Carolina at the time of their death. The vast majority of the evidence in this action will relate to establishing the beauty and value of their lives.

5. Kyle Sloan sustained personal injuries after his vehicle was struck by a semi-truck on Interstate 95 in Camden County, Georgia at approximately 2:30 P.M. on July 1, 2022.

6. Kyle Sloan is the widower of Jamie Sloan, deceased. Kyle Sloan is the proper party to bring this wrongful death action for the value of Jamie's life.

7. Kyle Sloan is the father of Rylie Sloan, deceased. Since Rylie Sloan died without spouse or child, Kyle Sloan is the proper party to bring this wrongful death action for the value of Rylie's life.

8. Kyle Sloan is the duly appointed Personal Representative of the Estates of Jamie Sloan and Rylie Sloan and is therefore the proper party to bring this action for all damages recoverable by their estates. Kyle Sloan was appointed Personal

Representative of these estates by Spartanburg County, South Carolina Probate Court.

9. Defendant Nicholas Burist ("Defendant Driver") is a citizen and resident of Virginia. At all times relevant hereto, Defendant Driver was an employee, agent, and/or apparent agent of Defendant Mayflower Transit, LLC ("Defendant Mayflower" or "Mayflower"), and was the driver of a 2014 ProStar International tractor, VIN # 3HSDJAPR7EN491357, bearing tag number 59AP8M, pulling a trailer bearing VIN # 5V8VA53246M605277. Defendant Driver was operating that tractor-trailer under Defendant Mayflower's federal motor carrier authority and DOT number at the time of the collision. Defendant Driver's acts and omissions killed the Decedents and severely injured the Plaintiffs. Defendant Driver can be served with process through the Camden County Sheriff at the Camden County Jail in Georgia.

10. Defendant Driver is a non-resident motorist who availed himself of the laws and protections of the State of Georgia by operating a commercial motor vehicle in Camden County, Georgia, that was leased, placarded, and operated under the authority of Defendant Mayflower.

11. Defendant Mayflower is a foreign, for-profit business entity organized and existing under the laws of the state of Missouri. Its principal place of business is located in Fenton, Missouri. Service may be had upon this defendant at One

Premier Drive, Fenton, St. Louis County, Missouri 63026 or upon its registered agent, CT Corporation System, located at 289 S. Culver Street, Lawrenceville, GA, 30046-4805.

12. At all times material herein, Defendant Mayflower engaged in the business of long haul commercial over-the-road trucking and transportation. Additionally, Defendant Mayflower regularly does and solicits business within the state of Georgia. Further, Defendant Mayflower derived substantial revenue from goods used or consumed or services rendered in Georgia.

13. Defendant Mayflower is registered to do business in Georgia and has several store locations and agents in Georgia. (See Affidavit of James Eskew, Doc. 68.).

14. At all times material herein, Defendant Mayflower was licensed by the U.S. Department of Transportation and was subject to Federal and State laws governing that industry. Defendant Mayflower's DOT number is 125563 and Defendant Driver was operating with this number on his commercial vehicle at the time of this collision.

15. Defendant Mayflower Transit, LLC's parent company is non-party UniGroup, C.A. ("UniGroup"), a Missouri corporation pursuant to Mo. St. Sec. 357.010. Mayflower is a "Brand" of UniGroup.

16. That herein, Defendant Mayflower and Defendant Driver are referred

to collectively as the "Defendants."

17. Pursuant to O.C.G.A. § 14-2-504, Defendant Mayflower may be served with process upon its registered agent and/or upon the Secretary of State pursuant to the Georgia Non-Resident Motorist Act, O.C.G.A. § 40-12-1 et seq.

18. This Court has personal jurisdiction over Defendants pursuant to Georgia's long-arm statute, O.C.G.A. § 9-10-91, because Defendants transacted business within this state, committed a tortious act or omission within this state, and/or committed a tortious injury in this state while regularly doing and soliciting business, engaging in a persistent course of conduct, and deriving substantial revenue from goods used or consumed or services rendered in this state.

19. In accordance with 28 U.S.C § 1391 (c) and (d), venue is proper in the Southern District of Georgia as Defendants maintain minimum contacts, transact business in the Southern District of Georgia, and are therefore subject to personal jurisdiction. Additionally, and more specifically, venue is appropriate in this Court, and this Court has personal jurisdiction over Defendants because the incident causing the tortious injury giving rise to this complaint took place in the Southern District of Georgia. As pleaded herein and in filings with the Court, subject matter jurisdiction, specific and general personal jurisdiction, and venue are proper.

## MAYFLOWER'S MOTOR CARRIER AUTHORITY, AGENCY, AND CONTROL

20. At all times relevant to this Complaint, Defendant Driver was employed and working in the course and scope of his employment and/or agency with Defendant Mayflower. Defendant Driver operated the tractor-trailer in furtherance of Defendant Mayflower's business.

21. Non-party Joe Moholland, Inc. ("Moholland") is a party to an "agency agreement" with Defendant Mayflower and, pursuant to that agreement, provides transportation under Mayflower's federal motor carrier authority. As an agent, Moholland is required to comply with all of Mayflower's policies and procedures.

22. The agency agreement between Mayflower and Moholland provides that "any shipment that has commenced prior to the date on which this agreement is terminated, the terms, provisions, and conditions of this agreement will continue to apply to such shipment." This shipment commenced prior to the termination date, and as such, Moholland was an agent of Mayflower at the time of the collision.

23. Pursuant to the agency agreement, Mayflower controls the rates and charges to customers and the compensation paid to Moholland, and can penalize Moholland and/or non-party Locke Relocations LLC ("Locke") for non-compliance with Mayflower's policies, including the Agency Manual, the Agency Resource Manual, and the Agency Resource Guide (and the current iterations of these).

24. Pursuant to the agency agreement, Moholland may enter into independent owner agreements with drivers, but must do so only on forms approved

by Mayflower. Moholland may not use drivers who are disqualified pursuant to Mayflower's "disqualification policies."

25. Pursuant to the Independent Contractor Operating Agreement, authored and prepared by Mayflower Transit, LLC, Mayflower controls rates and charges to customers and compensation for Moholland, and can penalize Moholland and/or Locke for non-compliance with Mayflower's policies. Mayflower never terminated this agreement, and Locke had no notice of termination.

26. Defendant Mayflower provided an equipment lease to Moholland for the tractor and/or the trailer that was being operated at the time of the collision. The equipment lease for the tractor reads, "[t]he vehicle described below is being operated by Mayflower Transit, LLC ("Mayflower Transit"), DOT #125563, whose principal place of business is One Premier Drive, Fenton, Missouri 63026: 2014 International Vin # 3HSDJAPR7EN491357 Mayflower Transit (Leassor – Mayflower's spelling) is operating this vehicle pursuant to a lease agreement with Joe Moholland Moving which has a term beginning from the date shown below and continues thereafter until one party provides thirty (30) days written notice of its intention to terminate the lease agreement… Signed on 12/05/2017." Upon information and belief, the equipment lease agreement was never terminated.

27. Defendant Mayflower also qualified the tractor in February of 2022 that was driven by Defendant Nicholas Burist, at the time of the collision on July 1, 2022.

28. Defendant Mayflower and Moholland utilize another UniGroup subsidiary, non-party Trans Advantage, Inc. ("Trans Advantage"), which leased and/or financed the tractor at issue in this collision. Trans Advantage has registered by consent to do business in Georgia. Trans Advantage was and/or is a subsidiary of Mayflower and directly benefited Mayflower through its role in leasing and financing the tractor and/or trailer at issue in the collision.

29. Locke's insurance policy lists the tractor, the 2014 International VIN # 3HSDJAPR7EN491357, on its policy, and lists the secured party as "Trans Advantage Inc. and its successors and assigns." This comports with Mayflower's control of, agency over, and contractual arrangements concerning the tractor.

30. Defendant Mayflower authorized and was responsible for the use of said tractor-trailer by Defendant Driver, and under its authority as a motor carrier. Defendant Mayflower's DOT numbers were displayed on both doors of the tractor trailer.

31. At all times relevant to this Complaint and to the motor vehicle collision at issue, the tractor-trailer being operated by Defendant Burist contained markings identifying it as it being "Operated by Mayflower Transit Fenton, MO."

32. Moholland advertises on its Facebook page that "We are a Mayflower moving and storage company that operates out of Virginia and the Washington DC area, and we provide all types of moving and storage services both locally and

internationally."[1]

33. At one time, prior to this incident, Moholland advertised the relationship between Moholland and Mayflower on their website homepage which read, "[w]ith our high expectations from when we began in 1987, we were able to meet Mayflower's expectations in 1998 and become an agent for them to help people move all across the globe."

34. Defendant Mayflower was the broker or principal for the relocation of household goods through its agents, Moholland, Locke, and Defendant Driver.

35. Defendant Mayflower chose to retain and/or hire Locke, Moholland, and/or Defendant Driver without ensuring that they could operate in a safe and competent manner by, in part, failing to ensure the proper selection of an authorized interstate motor carrier that had the proper financial security.

36. Defendant Mayflower failed to properly lease and/or terminate the equipment lease of the commercial motor vehicle (tractor) operated by Defendant Driver at the time of the collision. Additionally, Mayflower chose not to properly terminate the agency agreement by certified mail, return receipt requested, as required by the agreement.

37. Defendant Mayflower expressly authorized the use of the tractor plates through July 1, 2022, the date of the crash.

---

[1] https://www.facebook.com/joemohollandmoving/

38. Defendant Mayflower is also liable for the negligent brokerage and/or the arranging and facilitating of the shipment of household goods through Locke and Moholland.

39. Federal regulations require an interstate carrier that leases a vehicle to (1) make the arrangement in writing signed by the parties specifying the duration and the compensation to be paid by the carrier, (2) carry a copy of the arrangement in each motor vehicle to which it applies during the period the arrangement is in effect, (3) inspect the motor vehicle and obtain liability and cargo insurance on it, and (4) have control of and be responsible for operating the vehicle in compliance with the federal regulations and other applicable laws as if the motor vehicle was owned by the carrier.

40. Defendant Mayflower was negligent in failing to properly terminate the agreement within the time prescribed, or failed to do so within a reasonable time period, and as a result the relationship continued between Mayflower and Moholland, by and through Defendant Driver and Locke. This is further evidenced by the DOT numbers, license plate numbers, identification numbers, placards, and signage on the truck and trailer at the time of the incident.

41. Moholland acted as an agent of Mayflower. As a part of the agency agreement, Moholland uses and stores Mayflower trucks and trailers at its address listed for business activity. Further, many employees, agents, representatives, and

officials are shared by both Mayflower and Moholland.

42. As of March 2023, there existed several commercial motor vehicles on Moholland's lot that still displayed "Mayflower" markings.

43. Upon information and belief, Defendant Driver has an email address that is registered to Mayflower ending in @mayflower.com.

44. That, upon information and belief, Moholland and Mayflower have (or had at the time of this incident) identical or nearly identical ownership, governance, management, office locations, letterhead, equipment, telephone numbers, and other indicia of corporate identity. In fact, the former sign outside of Moholland's listed business address stated, "Mayflower Transit Joe Moholland Moving," and when viewing Google Street images, there exists Mayflower commercial motor vehicles, trailers, and other entities/subsidiaries of Mayflower.

45. That upon information and belief, Moholland and Defendant Mayflower are so intertwined within the corporate web as to constitute a single business enterprise, and/or partnership.

46. No reasonably prudent motor carrier, broker, agent, or master would have hired Defendant Driver or allowed him to take possession of its truck and trailer.

47. Defendant Mayflower uses its marketing and advertising to encourage and promote the services of its agents, including Moholland and Locke, for its own

pecuniary gain.

48. In fact, continuing after the collision that seriously and fatally injured the Plaintiffs, Moholland was continuing to receive payments from Mayflower Transit.

49. Defendant Mayflower had knowledge, or should have had knowledge, of Defendant Burist transporting goods under its authority within days and/or weeks prior to the subject collision.

50. Defendant Mayflower, through Trans Advantage, had actual notice that ongoing service was being performed on the tractor that Defendant Burist was driving at the time of the collision.

## GENERAL ALLEGATIONS

51. Plaintiffs incorporate herein by reference all of the allegations of the previous paragraphs of this Complaint.

52. That on or about July 1, 2022, Defendant Driver, in his capacity as an employee, agent, and/or apparent agent of Defendant Mayflower, was traveling southbound on I-95 in Camden County, Georgia.

53. That on or about July 1, 2022, Defendant Driver, after recklessly colliding with other vehicles, left his lane of travel and began to travel through the center guardrails.

54. After traveling through the guardrails, the tractor trailer entered the

northbound lane of travel and struck Plaintiff's 2021 Honda Pilot bearing SC license plate number NKU208 and Vin # 5FNYF5H26MB047898.

55. The Defendant Driver suddenly and without warning left his proper lane of travel, crossed over the median and forcefully struck Plaintiff's vehicle.

56. Inside Plaintiff's Honda Pilot was the driver, Plaintiff Kyle Sloan, Decedents Jamie Sloan and Rylie Sloan, and K.W., a minor, each of whom suffered injuries and/or fatal injuries.

57. As a result of Defendants' negligence, four people died, and several more were hospitalized.

58. Further, the interstate was closed in both directions for several hours.

59. As set forth in the Georgia Motor Vehicle Crash Report, specifically Report Number C000745264-01, Defendant Driver was driving under the influence of drugs and/or alcohol which was also one of the contributing factors of Plaintiff's injuries and the untimely death of Decedents. This constitutes a violation of O.C.G.A § 40-6-391(A)(2) and further constitutes negligence *per se* under Georgia law.

60. As a result of the incident, Defendant Driver was given several citations by the investigating officers. These citations include (1) O.C.G.A. § 40-8.76.1; (2) O.C.G.A. § 40-6-393(A); (3) O.C.G.A. § 16-13-2(b); (4) O.C.G.A. § 40-6-253; (5) O.C.G.A. § 40-6-49; (6) O.C.G.A. § 40-6-48; (7) O.C.G.A. § 40-1-8(b)(2)(E); (8)

O.C.G.A. § 40-6-391(a)(1-5); and (9) O.C.G.A. § 40-6-39.

61. In addition to the above, Defendant Driver was negligent *per se* in violating laws of the State of Georgia. Specifically, Defendant Driver violated O.C.G.A § 40-6-48 in failing to maintain his lane of travel; O.C.G.A § 40-6-93 in failing to exercise due care; O.C.G.A § 40-6-390 for driving reckless; and O.C.G.A § 40-6-394 for causing serious injury by a vehicle.

62. That at all times material hereto, Defendant Driver had a duty to operate the vehicle he was driving in a safe and prudent manner and to avoid injuring other motorists, specifically the Plaintiffs and the Decedents.

63. Defendant Driver chose not to operate the tractor-trailer with the due care exercised by individuals in like or similar circumstances and operated the vehicle in a manner showing a disregard for the safety of others, including Plaintiffs and the Decedents. Defendant Mayflower is legally responsible for these actions and inactions of Defendant Driver.

64. Following the collision, as relevant to Defendants, pertaining to the negligent maintenance, repair, operation, and entrustment of the vehicle, the truck/trailer had the following deficiencies: 393.75(a)(1) (Tire-ply or belt material exposed: Tractor: Left side axle number 1 outside tire has belt material exposed); 393.75(a)(3) (Tire-flat and/or audible air leak: Tractor: Right side axle number 1 tire is flat.); 393.48(a) Inoperative/defective brakes: Tractor: Right side axle number 3

brake drum friction surface is contaminated by oil and grease; 396.5(b) (Hubs - Wheel seal leaking - inner wheel: Tractor: Right side axle number 3 inner wheel seal actively leaking); 393.207(a) Axle positioning parts defective/missing: Tractor: Left side axle number 1 u-bolt assembly is cracked; 393.75(a)(3) (Tire-flat and/or audible air leak: Trailer: Right side axle number 1 and 2 outside tire is flat); 393.201(a) (Frame cracked / loose / sagging / broken: Trailer: Floor is sagging); 393.11 (No or defective lighting devices or reflective material as required: Trailer: 4 of 6 side marker lamps missing); 393.83(g) (Exhaust leak under driver and/or sleeper compartment: Tractor: Exhaust leak under cab, whole in exhaust.); 393.48(a) (Inoperative/defective brakes: Trailer: Right side axle number 1 brake is defective. Brake drum is rusted.); 393.60(c) (Damaged or discolored windshield: Tractor: Windshield cracked.); and 396.3(a)(1) (Brakes Out of Service: The number of defective brakes is equal to or greater than 20 percent of the service brakes on the vehicle or combination).

65. Defendants were on actual and/or constructive notice of the above deficiencies and failed to correct and/or failed to cure in a reasonable manner.

66. One or more of the above deficiencies existed prior to the collision, and Defendants knew or should have known the nature and extent yet chose not to maintain and/or repair in accordance with industry standards, and the rules and regulations of the FMCSA and State laws.

67. Plaintiffs and the Decedents acted with reasonable care under the conditions and circumstances then existing.

68. Plaintiffs and the Decedents did nothing to contribute to their bodily injuries and/or fatal injuries.

## COUNT ONE - NEGLIGENCE OF NICHOLAS BURIST

69. Plaintiffs incorporate herein by reference all of the allegations of the previous paragraphs of this Complaint.

70. At all times material hereto, Defendant Driver was a professional driver with a commercial driver's license and, at the time of the incident, was driving a dangerous vehicle entrusted to him by Defendant Mayflower.

71. At all times material hereto, Defendant Driver was driving a commercial motor vehicle in interstate commerce and was subject to not only to Georgia traffic laws and trucking safety regulations, but also the Federal Motor Carrier Safety Regulations.

72. At all times material hereto, Defendant Driver owed a duty of care to maintain and operate its commercial motor vehicle in a safe manner in compliance with all safety rules, including statutes, rules and regulations governing the operation and maintenance of vehicles including tractor trailers upon Georgia, and interstate roadways.

73. Defendant Driver was negligent in the operation, maintenance, and

inspection of the commercial motor vehicle he was driving.

74. Defendant Driver was driving in a grossly negligent manner, including driving recklessly and erratically before losing control of his tractor trailer and killing the Decedents and severely injuring the Plaintiffs.

75. Defendant Driver was negligent, grossly negligent, and/or negligent *per se* which constitutes the direct and proximate cause of the injury to Plaintiffs and Decedents, also consisted of, but is not limited to the following:

a) Not maintaining control of his vehicle in violation of O.C.G.A. § 40-6-48;

b) Driving an unsafe vehicle in violation of O.C.G.A. § 40-8-7;

c) Not keeping his vehicle under control at all times, in violation of O.C.G.A. § 40-6-390;

d) Not exercising due care in operating a motor vehicle in violation of O.C.G.A. § 40-6-241;

e) Acting in reckless disregard for the safety of persons or property in violation of O.C.G.A. § 40-6-241.2;

f) Not keeping a proper lookout;

g) Driving under the influence of alcohol and/or drugs;

h) Not adhering to safe driving principles expected of professional drivers;

i) Not operating the truck in accordance with generally accepted safety principles for professional drivers and/or the commercial motor vehicle

industry;

j) Not operating the truck in a safe and prudent manner in view of the conditions that existed at the time of the subject collisions;

k) Violating the Georgia Uniform Rules of the Road including O.C.G.A. § 40-6-49 (following too closely); O.C.G.A. § 40-6-180 (failing to drive his vehicle at a reasonable and prudent speed under the conditions); O.C.G.A. § 40-6-390 (driving a vehicle in reckless disregard of the safety of persons or property); and any other violations, each of which constitute negligence *per se*;

l) Otherwise failing to act reasonably and prudently as a professional commercial driver should under the circumstances; and

m) Such other specifications of negligence that shall be added by amendment or proven at trial.

76. At the time of the subject wreck, Defendant Driver had a duty to drive in conformance with the Federal Motor Carrier Safety Regulations and Georgia law as well as the industry and corporate standards and guidelines emanating from these safety regulations and Georgia law, including, but not limited to, the Required Knowledge and Skills set forth in 49 CFR §§ 383.111 and 383.113 as well as the mandates of 49 CFR §§ 390-395.

77. Alone and/or in conjunction with the negligence of Defendant

Mayflower, Defendant Nicholas Burist's negligence directly and proximately caused Plaintiffs' injuries and damages. Defendant Nicholas Burist is therefore liable for Plaintiffs' injuries and damages.

**COUNT TWO - NEGLIGENCE OF MAYFLOWER TRANSIT**

78. Plaintiffs incorporate herein by reference all of the allegations of the previous paragraphs of this Complaint.

79. At all times material hereto, Defendant Driver was an employee, agent, and/or apparent agent of Defendant Mayflower acting within the scope of course of his employment or agency.

80. Moholland acted as an agent of Defendant Mayflower and in furtherance of Defendant Mayflower's business.

81. Locke acted as an agent and/or independent contractor, approved by Mayflower, in furtherance of Defendant Mayflower's business.

82. That Defendant Mayflower encouraged and required its agents to be profitable through solicitation of its services in an effort to provide maximum profits to Mayflower.

83. At all times material hereto, Defendant Driver was operating a commercial motor vehicle under dispatch and under the authority granted to him by Defendant Mayflower and its agents.

84. Defendant Driver was operating on behalf of Defendant Mayflower and

in furtherance of the business of Defendant Mayflower and its agents.

85. FMCSR 49 C.F.R. § 390.13 provides that "[n]o person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter." Through the conduct described herein, Mayflower knowingly allowed others to continue operating the subject tractor under Mayflower's cab card, Missouri apportioned plates, IFTA credentials, and USDOT number. Said credentials identify Mayflower to law enforcement, regulators, and the motoring public as the motor carrier responsible for the vehicle safety and its operation.

86. Mayflower aided and abetted Joe Moholland’s violation of 49 C.F.R. 390.21 by allowing Joe Moholland to use Defendant Mayflower’s USDOT number, registration, and license information, name, and logo to transport the load on July 1, 2022, which is prohibited by § 390.13.

87. At all times material hereto, Defendant Mayflower maintained immediate direction and control of Defendant Driver and of the vehicle he was operating.

88. Plaintiffs and Decedents suffered injuries, harm, fatal injuries, and damages as a result of Defendant Mayflower’s agent/employee’s operation of the subject vehicle in a negligent and reckless manner.

89. Defendant Mayflower is liable for its own negligence and for the tortious acts, negligence, and negligent actions and omissions of Defendant Driver

and of its agents pursuant to the doctrine of respondeat superior, the rules of agency, and by operation of common law, apparent agency, and the Federal Motor Carrier statutes and regulations.

90. As a direct and proximate result of the foregoing breaches of duties, Plaintiffs did suffer the injuries and damages laid out herein.

**COUNT THREE – VICARIOUS LIABILITY – MAYFLOWER AS STATUTORY EMPLOYER UNDER THE FMCSR**

91. Plaintiffs incorporate herein by reference all of the allegations of the previous paragraphs of this Complaint.

92. The Federal Motor Carrier Safety Regulations ("FMCSR"), define two types of motor carriers: (a) "private motor carriers" as "a person who provides transportation of property or passengers, by commercial motor vehicle, and is not a for-hire motor carrier," and (b) "for-hire motor carriers" as "a person engaged in the transportation of goods or passengers for compensation." 49 C.F.R. § 390.5.

93. When used in the FMCSR, the term "motor carrier" "means a for-hire motor carrier or a private motor carrier" and "includes a motor carrier's agents, officers and representatives as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories." 49 C.F.R. § 390.5.

94. The FMCSR defines a "driver" as "any person who operates any commercial vehicle." 49 C.F.R. § 390.5.

95. The FMCSR defines "employee" as "any individual, other than an employer, **who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial vehicle (including an independent contractor while in the course of operating a commercial motor vehicle)**, a mechanic, and a freight handler. Such term does not include an employee of the United States, any State, any political subdivision of a State, or any agency established under a compact between States and approved by the Congress of the United States who is acting within the course of such employment." 49 C.F.R. § 390.5 (emphasis added).

96. The FMCSR defines **"employer" as "any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it,** but such term does not include the United States, any State, any political subdivision of a State, or an agency established under a compact between States approved by the Congress of the United States." 49 C.F.R. § 390.5.

97. Defendant Mayflower is an "authorized motor carrier" subject to the Federal Motor Carrier Safety Regulations.

98. Defendant Mayflower operates under USDOT number 125563; MC Number 2934; and Freight Forwarding Number 7137.

99. As part of its operations as a motor carrier, Defendant Mayflower maintains a fleet of trucks, trailers, and other equipment, including owned and leased tractors and trailers.

100. Defendant Mayflower was legally bound to transport the cargo, and/or the equipment used to transport such cargo, that was being transported by Defendant Burist at the time of the collision.

101. Defendant Mayflower was acting as a "motor carrier" of the tractor trailer at the time of its collision with Plaintiffs and was the statutory employer of Defendant Burist. Defendant Mayflower was contractually obligated, according to the agency agreement, to provide services including oversight, training, and additional specifications per the agency agreement.

102. Defendant Mayflower had knowledge, or should have had knowledge, that Defendant Burist was driving a tractor that Mayflower maintained the lease agreement and equipment lease on.

103. Both the trailer and the tractor were negligently maintained and unsafe/unfit for highway travel, specifically in Georgia.

104. Defendant Mayflower, through its agreements with Moholland, and/or Locke, had the right to control and/or did control the activities and work of

Moholland and/or Locke and their drivers, including Defendant Burist, by one or more of the following particulars:

a. Defining the delivery route drivers must take while engaged in the transport of Mayflower loads and/or equipment;
b. Requiring that drivers receive its advance approval for any trip layover time, driver detention, route changes, payment of tolls, and other matters of operation;
c. Providing payment to Moholland, as evidence of a continuing agency agreement;
d. Using and utilizing Mayflower's destination agents for loads;
e. Authorizing the use of the plates;
f. Requiring or encouraging its drivers to use TransAdvantage;
g. Allowing Drivers and Agents to use their IFTA credentials;
h. Maintaining that Mayflower Transit is "the responsible motor carrier for safety";
i. Establishing set times for the pickup and delivery of loads for drivers;
j. Providing drivers and crew members uniforms that displayed the Mayflower brand;

k. Such other means of control over the operations, activities, and work of drivers operating as provided for by Mayflower's agreements with Moholland and/or Locke;

l. Listing Defendant Burist as an agent on Mayflower's website and giving him an email address within its domain;

m. Allowing or ordering Defendant Burist to operate its equipment, including the trailer and trailer;

n. Qualifying Defendant Burist as a driver;

o. Qualifying the Mayflower Tractor and other equipment;

p. Continuing to allow Moholland access to the mainframe, including after the collision;

q. Providing that Mayflower was not required to pay any money to Moholland unless it followed specifically Mayflower's rules, policies, and procedures in the transit or delivery of any cargo assigned by Mayflower to Moholland;

r. Providing that Moholland was not required to pay any money to Locke unless it followed all rules, policies, and procedures in the transit or delivery of any cargo; and

s. Requiring Moholland to keep and provide documents to and for Mayflower related to routes, deliveries, payments, and other matters.

105. At all times relevant to this Complaint and the motor vehicle collision

that is the subject of this action, Defendant Mayflower was Defendant Burist's statutory employer while Defendant Burist was engaged in the transportation of Mayflower's loads and/or equipment.

106. Defendant Burist was a statutory employee of Mayflower under 49 U.S.C. § 31132(2).

107. Accordingly, Defendant Mayflower is vicariously liable under the doctrine of respondeat superior for Defendant Burist's negligent acts and/or omissions committed during the course and scope of his agency and/or employment, and Defendant Burist was operating under the authority of Mayflower.

108. Therefore, Plaintiffs may recover from Defendant Mayflower for their injuries and damages.

109. Defendant Mayflower has certain duties and responsibilities, including but not limited to those defined by the Federal Motor Carrier Safety Regulations, State trucking safety regulations, and trucking industry standards.

110. Those duties include the duty to properly qualify Defendant Driver, the duty to properly train Defendant Driver, the duty to properly supervise Defendant Driver, the duty to properly inspect and maintain its vehicles, and the duty to otherwise establish and implement appropriate management controls and systems for the safe operation of its commercial motor vehicle.

111. Defendant Mayflower was negligent and/or grossly negligent in one or

more of the following particulars:

(a) In negligently entrusting the vehicle to someone Mayflower knew or should have known would operate the vehicle without using due care and without regard for the safety and rights of the public using the roadway and the Plaintiffs in particular;

(b) In negligently entrusting the vehicle to someone they knew or should have known would operate the vehicle in a negligent, grossly negligent, careless, reckless, willful, wanton, and unlawful manner as to create a dangerous situation and render a collision inevitable or highly likely, in disregard of the laws of the State of Georgia;

(c) In negligently entrusting the vehicle to someone they knew or should have known would fail to exercise that degree of care that a reasonable and prudent person would have exercised under the same or similar circumstances;

(d) In choosing not to appreciate the gravity and seriousness of having an unsafe, unqualified driver with a history of careless driving use their vehicle;

(e) In choosing not to ensure that the driver of their vehicle would comply with all applicable statutory codes and regulations;

(f) In choosing not to properly hire, train, and/or supervise their employee/agent driver Defendant Driver to ensure that the vehicle was driven and operated in a safe and proper manner;

(g) In choosing not to properly train and/or supervise their employee/agent driver Defendant Driver and others involved with maintenance, repair, regulatory compliance, and/or safety to ensure that proper pre-trip, post-trip, periodic, quarterly, and/or annual inspections were performed, including properly on the subject vehicle, and its component parts;

(h) In choosing, by and through their employee/agent driver Defendant Driver, not to have the required driver knowledge necessary in order to safely operate the subject vehicle, including but not limited to the procedures to obey traffic laws and the rules of the road;

(i) In choosing not to create, maintain, adhere to, and/or implement appropriate policies and procedures to ensure alcohol and drugs were not being used or consumed by its employees and drivers;

(j) In choosing not to create, maintain, and/or implement appropriate policies and procedures related to inspection and safety for its drivers, including their employee/agent driver Defendant Driver, and for safety, regulatory compliance, and/or inspection, maintenance, and service of motor vehicle;

(k) In choosing not to properly and/or timely inspect, maintain, service, and/or repair the subject vehicle/trailer and its component parts to ensure that the same could be utilized and operated safety;

(l) In choosing not to use due care;

(m) In any other acts that represent a breach of the statutory or common laws of the State of Georgia or the United States; and

(n) In any other such manner that Plaintiffs may become aware of through discovery and/or at trial.

112. Additionally, Defendant Mayflower knew or should have known about Defendant Driver's drug and/or alcohol addiction and abuse of drugs.

113. Defendant Mayflower knew or should have known about Defendant Driver's current use, abuse, and/or addiction to drugs and/or alcohol.

114. Defendant Mayflower knew or should have known that Defendant Driver's current and/or past addiction to drugs and alcohol, and/or abuse of drugs, could cause severe injuries and death to the general public, including the Decedents and Plaintiffs.

115. Despite having the aforesaid knowledge, Defendant Mayflower qualified and retained Defendant Driver and allowed him to operate a commercial

motor vehicle under its authority.

116. Despite knowing, or having reason to know, of the above, Defendant Mayflower failed to disqualify Defendant Driver prior to this collision and continued to allow him to operate the commercial motor vehicle to facilitate Mayflower's business interests.

117. Defendant Mayflower not only allowed Defendant Driver to operate the vehicle within the state of his residence, Virginia, but allowed, facilitated, and encouraged Defendant Driver's transportation throughout the United States without properly monitoring or supervising this driver.

118. As a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, willfulness and wantonness of Defendants, as is set forth more fully herein, Plaintiffs were injured, have endured pain and suffering, have suffered mentally and emotionally, and have incurred, and will incur, various medical expenses, and have otherwise been damaged and injured.

119. As a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, willfulness and wantonness of the Defendants, as is set forth more fully herein, Decedents were killed and Plaintiffs suffered mentally and emotionally, endured pain and suffering, lost the companionship of Decedents and have incurred, and will incur, various medical expenses, and otherwise suffered damages.

120. As a direct and proximate result of negligence of all Defendants, Plaintiffs and Decedents sustained serious bodily injuries, pain and suffering, and fatal injuries.

121. Defendants are liable for all damages allowed by law for the injuries, damages, and losses sustained by Plaintiffs and the Estates in this case.

## COUNT FOUR - LOSS OF CONSORTIUM

122. Plaintiffs incorporate herein by reference all of the allegations of the previous paragraphs of this Complaint.

123. Plaintiff Kyle Sloan and Decedent, Jamie Sloan, were legally married at the time of the incident.

124. As a direct and proximate result of the injuries Defendants caused Plaintiff Sloan to experience, Plaintiff Sloan lost companionship, consortium, family relationship, society, and services.

125. That due to negligence, gross negligence, carelessness, recklessness, willfulness and wantonness of Defendants, Plaintiff Kyle Sloan has experienced the loss of society, guidance, affection, companionship, and sexual relations of his wife, Decedent.

126. Plaintiff Sloan is accordingly entitled to recover damages from the Defendants based upon his loss of society, companionship, services and affection in the amount to be proven at trial.

127. That as a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, willfulness and wantonness of Defendants, as is set forth more fully above, Decedent has been unable to provide for Plaintiff Sloan as she had done in the past, including, but not limited to, chores, loss of emotional support, and decreased affection and marital quality.

**COUNT FIVE – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

128. Plaintiffs incorporate herein by reference all of the allegations of the previous paragraphs of this Complaint.

129. Plaintiff Kyle Sloan was the husband of Decedent Jamie Sloan.

130. Plaintiff Sloan was in close proximity to Jamie Sloan when she was injured and killed as a result of Defendants' individual and collective negligence.

131. As a direct and proximate result of the negligence of Defendants, Plaintiff Sloan has suffered mental and emotional pain, trauma and distress from witnessing his wife's injures and death, and will incur these damages into the future.

132. Plaintiff Kyle Sloan was the father of Decedent Rylie Sloan.

133. Plaintiff Sloan was in close proximity to Rylie Sloan when she was injured and killed as a result of Defendant's individual and collective negligence.

134. As a direct and proximate result of the negligence of Defendants, Plaintiff Sloan has suffered mental and emotional pain, trauma and distress from witnessing his daughter's injuries and death, and will incur these damages into the

future.

135. As a direct and proximate result of the negligence of Defendants, Kyle Sloan has suffered mental and emotional pain, trauma, anxiety, fear, loss of enjoyment of life, and diminished quality of life.

136. By virtue of their negligence, Defendants are each liable to Plaintiffs for negligent infliction of emotional distress as determined by the jury at the trial of this case.

**COUNT SIX – ESTATE CLAIMS OF JAMIE SLOAN**

137. Plaintiffs incorporate herein by reference all of the allegations of the previous paragraphs of this Complaint.

138. Plaintiff Sloan is the duly appointed Personal Representative of the Estate of Jamie Sloan under the laws of South Carolina and is therefore the proper party to bring this action to recover damages on behalf of her estate.

139. Prior to the collision at issue, Jamie Sloan was aware of the impending collision and suffered conscious awareness of the impending collision which resulted in her injuries and death, such awareness constituting an element of pre-death pain and suffering.

140. After the collision at issue, Jamie Sloan experienced conscious awareness of her injuries and impending demise, such awareness constituting an element of pre-death pain and suffering.

141. Jamie Sloan's conscious awareness of the impending collision and of her injuries and impending death constitute damages recoverable by her estate and for which recover is sought herein.

142. The estate is further entitled to recover funeral and burial expenses on behalf of Jamie Sloan.

## COUNT SEVEN – ESTATE CLAIMS OF RYLIE SLOAN

143. Plaintiffs incorporate herein by reference all of the allegations of the previous paragraphs of this Complaint.

144. Plaintiff Sloan is the duly appointed Personal Representative for the Estate of Rylie Sloan under the laws of South Carolina and is therefore the proper party to bring this action to recover damages on behalf of the estate.

145. Prior to the collision at issue, Rylie Sloan was aware of the impending collision and suffered conscious awareness of the impending collision which resulted in her injuries and death, such awareness constituting an element of pre-death pain and suffering.

146. After the collision at issue, Rylie Sloan experienced conscious awareness of her injuries and impending demise, such awareness constituting an element of pre-death pain and suffering.

147. Rylie Sloan's conscious awareness of the impending collision and her injuries and impending death constitute damages recoverable by her estate and for

which recovery is sought herein.

148. The estate is further entitled to recover funeral and burial expenses incurred on behalf of Rylie Sloan.

**COUNT EIGHT – WRONGFUL DEATH OF JAMIE SLOAN**

149. Plaintiffs incorporate herein by reference all of the allegations of the previous paragraphs of the Complaint.

150. Plaintiff Sloan is the surviving spouse of Jamie Sloan and the proper party to bring the claim for her wrongful death.

151. At the time of her death, Jamie Sloan was approximately 43 years old.

152. Plaintiff Sloan is entitled to recover pecuniary damages arising from the death of Jamie Sloan.

153. Plaintiff Sloan is entitled to recover damages for the full value of Jamie Sloan's life, without deducting for any of the necessary or personal expenses she would have incurred had she lived, for Jamie Sloan's wrongful death caused by Defendants' wrongful acts and/or omissions.

**COUNT NINE – WRONGFUL DEATH OF RYLIE SLOAN**

154. Plaintiffs incorporate herein by reference all of the allegations of the previous paragraphs of the Complaint.

155. Plaintiff Sloan is the surviving parent of Rylie Sloan and the proper party to bring the claim for her wrongful death.

156. At the time of her death, Rylie Sloan was approximately 14 years old.

157. Plaintiff Sloan is entitled to recover pecuniary damages arising from the death of Rylie Sloan.

158. Plaintiff Sloan is entitled to recover damages for the full value of Rylie Sloan's life, without deducting for any of the necessary or personal expenses she would have incurred had she lived, for Rylie Sloan's wrongful death caused by Defendants' wrongful actions and/or omissions.

**DAMAGES**

159. Plaintiffs incorporate herein by reference all of the allegations of the previous paragraphs of the Complaint.

160. Defendants directly and proximately caused Decedent's injuries through one or more of the negligent acts or omissions stated above. Therefore, Defendants are directly and/or vicariously liable for the Plaintiffs' injuries and Decedents' death that resulted from this wreck.

161. That as a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, willfulness, and wantonness of the Defendants, as is set forth more fully above, Decedents and Plaintiffs have been damaged and injured in the following respects:

a) In being required to expend monies for their medical care, and that of their minor children, Plaintiff Sloan's funeral expenses, and attendant services;

b) In Decedents' suffering death;

c) The nature of Decedents' injuries required Plaintiff Sloan and/or the Estates of Decedents to expend significant amount of money to replace and repair property damage caused in the collision;

d) Personal injuries;

e) All elements of pain and suffering, both mental and physical;

f) Wrongful death as to Plaintiff Sloan;

g) Negligent infliction of emotional distress, mental shock and suffering;

h) Wounded feelings;

i) Money for medical care, treatment, and attendant services;

j) Pecuniary loss including loss of income, lost wages and loss of earnings capacity;

k) Loss of enjoyment of life and change in their personality, all to the permanent detriment to their health and physical well-being;

l) Grief and sorrow including but not limited to the knowledge that Decedents suffered horrific deaths;

m) Deprivation of use and comfort of Decedents' society, including loss of experience, knowledge and judgment in managing the affairs of themselves and their beneficiaries as to Plaintiff Sloan;

n) Loss of consortium including but not limited to, loss of love, companionship, affection, society, comfort, and affection as to Plaintiff Sloan;

o) Past medical, funeral, and incidental expenses; and

p) Any other elements of damages allowable under O.C.G.A §§ 51-4-4; 51-4-5, 19-7-1 and any other allowable damages under Article 1 of Chapter 12 of Title 51.

162. That as a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, willfulness and wantonness of Defendants, as is set forth more fully above, Plaintiffs were injured, have endured pain and suffering, have suffered mentally and emotionally, and have incurred, and will incur, various medical expenses, and have otherwise been damaged and injured.

163. Plaintiffs are entitled to judgment against Defendants for actual, and compensatory damages for their personal injuries set forth herein in an amount that is fair, just, and reasonable, plus whatever costs, interest, and attorneys' fees under O.C.G.A. § 13-6-11 that he may be entitled as determined by a jury.

164. Plaintiff Sloan, as surviving father and husband of Decedents is entitled to recover compensatory damages for the wrongful death and survival of Decedents, the measure of which under Georgia law is the full value of their lives, both economic and intangible, as determined by the enlightened conscience of a fair and impartial jury.

**WHEREFORE**, PLAINTIFFS demand and pray as follows:

a) That process be issued and service be had upon Defendants as provided by law;
b) For a trial by a jury as to all issues so triable;
c) For judgment in favor of Plaintiffs and against Defendants;
d) That Plaintiff Sloan, as Personal Representative of the estates of Jamie and Rylie Sloan, be awarded general damages in an amount to be determined by the enlightened conscience of a fair and impartial jury

for pre-death pain and suffering along with funeral and burial expenses in an amount to be proven at trial;

e) That Plaintiff Sloan, as the surviving spouse and parent of Jamie and Rylie Sloan, be awarded wrongful death damages in the amount of the full value of their lives;

f) That Plaintiffs recover all damages for all losses compensable under Georgia law as set forth above;;

g) That all expenses and costs of litigation, including attorney's fees be cast against the Defendants; and

h) For such other and further relief as the Court deems just and proper.

This _______ day of _______________ 2026
Spartanburg, South Carolina

[Signature Blocks on Following Page]

***s/ Charles J. Hodge***
Charles J. Hodge
Admitted Pro Hac Vice
J. Camden Hodge
Admitted Pro Hac Vice
HODGE LAW FIRM
P.O. Box 2765
Spartanburg, SC 29306
Tel: (864) 585-3873
Fax:(864)585-6485
CHodge@hodgelawfirm.com
**Attorneys For Plaintiff**

**T. Ryan Langley**
T. Ryan Langley
Georgia State Bar No.: 692386
Matthew T. Foss
Admitted Pro Hac Vice
LANGLEY LAW FIRM
229 Magnolia Street
Spartanburg, SC 29306
Tel: (864) 774-4662
Ryan@thelangleylawfirm.com
Matt@thelangleylawfirm.com
**Attorneys For Plaintiff**

**Joseph R. Padgett**
Joseph R. Padgett
Hamilton & Padgett, LLC
GA Bar No. 872672
13 St. Andrews Ct.
Brunswick, Georgia 31520
P: (912) 200-2727
joseph@hamiltonpadgettlaw.com
**Attorneys For Plaintiff**