**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | | |
|---|---|---|
| KYLE SLOAN, Individually, and as Personal Representative of the Estates of Rylie Sloan and Jamie Sloan, KYLE SLOAN as Surviving Spouse of Jamie Sloan, and KYLE SLOAN as Surviving Parent of Rylie Sloan; and SUSAN WEST, Individually, and as the next friend and natural guardian of K.W., a minor,<br>Plaintiffs, | * | Civil Action No.<br>2:22-cv-00076-LGW-BWC |
| v. | * | |
| NICHOLAS BURIST; LOCKE RELOCATIONS LLC; MAYFLOWER TRANSIT LLC; JOE MOHOLLAND, INC.; AND XYZ COMPANIES 1-3;<br>Defendants. | * | |

**DEFENDANT MAYFLOWER TRANSIT'S OBJECTION MEMORANDUM AS TO PLAINTIFFS' PROFFERED VERDICT FORM AND REQUEST FOR ITS VERDICT FORM TO BE ADOPTED BY THE COURT**

Plaintiffs proffer a verdict form that would improperly confuse the jury, address issues irrelevant here, and likely sway the jury in their favor despite no reason to do so. Rather than focus the jury on agency/vicarious liability, Plaintiffs' verdict form turns a tort case into an administrative law or regulatory proceeding about "lease liability" and a truck-labeling regulation. They do so to lighten their burden on the key question of agency or attribution, inaccurately claiming that the regulations provide a means to attribute an intentional tort as a matter of law. They do not, so the jury should not address the questions proposed in Plaintiffs' way. The arguments Plaintiffs proffer in support of this verdict form (Dkt. # . 462) fail scrutiny and lack support in the cases they cite.

Mayflower's verdict form properly addresses the questions for the jury and permits apportionment of fault as required by Georgia law. Consequently, for the reasons stated below, Mayflower objects to their proffered verdict form (462-1) and requests the Court adopt Mayflower's verdict form. In further support, Mayflower states:

**1. "Lease liability" is not a theory of negligence that must be on the verdict form—neither the expert's testimony nor the facts of this case require the jury's decision on whether Mayflower was the "motor carrier" under the regulations.**

This is a tort case, not a commercial case or regulatory proceeding. The Plaintiffs were injured when the truck, operating under Mohollland's authority, crashed while driven by Burist (who was hired by Locke). That is the evidence the jury will hear. As to that evidence, the only reason Mayflower is in this case is because Moholland did not take Mayflower's markings and DOT number off a truck that it was using for a load that did not involve Mayflower. That is also in the evidence the jury will hear. Pre-trial, every fact witness has testified that this was not a Mayflower load. Every document manifests that Mayflower was not involved in this load on the date of incident. Yet the markings and DOT number were on the truck, triggering Plaintiffs' suit of Mayflower.

To avoid this lack of agency or connection, Plaintiffs want the jury to decide a legal question, whether Mayflower has "lease liability" under a federal regulation. That is not a question for the jury's verdict form. The jury should be addressing the facts of this load, not parsing regulations. Plaintiffs argue that a federal regulation "imposes liability regardless of agency relationships." There is no such broad premise in governing authority, and the case cited does not apply here.

First, in Price, a Georgia Court of Appeals case that distinguishes Plaintiffs' cited case, the Court rejected such a leap. In Stubbs, Plaintiff argued that because the entity operating the vehicle

that crashed couldn't have its own DOT number then the only party with a DOT number (Stubbs) had to be liable, and the Georgia Appeals Court rejected that "inference" explaining that:

> it is undisputed that Stubbs Oil did not own the tanker truck driven by Hinson and involved in the accident, and thus it was not operating as a motor carrier at that time. Additionally, there is no evidence of a written lease between Stubbs Oil and Southern Oil or Hinson regarding that vehicle. Furthermore, despite the plaintiffs' arguments, there is similarly no evidence of an oral lease between ***612** Southern Oil and Stubbs Oil. Rather, the evidence shows that (1) Southern Oil and Stubbs Oil denied the existence of an oral lease; (2) Hinson was directly employed by Southern Oil; (3) only Southern Oil contacted Hinson and directed his actions regarding deliveries; and (4) Stubbs Oil exercised no control over Hinson or Southern Oil beyond prescribing the basic parameters for the delivery. Additionally, the tanker truck involved in the accident bore the logo and DOT number of Southern Oil, not Stubbs Oil.

Stubbs Oil Co., Inc. v. Price, 848 S.E.2d 739, 745 (Ga. Ct. App. 2020).

Plaintiffs want to jury to make Mayflower a "statutory employer", but the "lease liability" question is not a path to agency here. Plaintiffs' question is impermissibly confusing on the verdict form and will open the door to irrelevant, prejudicial testimony about trucking regulations and Mayflower's operations generally. This case is about one load and the impaired driver who crashed while driving under Moholland's authority.

Focusing on "lease liability" moves the case to a collateral issue that is not necessary for the jury's consideration as to Mayflower's alleged liability. This is not a regulatory proceeding, and it is not a contract, commercial, or insurance case. This case involves responsibility for a tort by the driver of the truck on that date. In that situation, the Stubbs court rejected a "statutory employer" theory and refused the claim that "motor carrier" was the dispositve issue. Moreover, in that 2020 case (ten years after Plaintiffs' Zegel case), the Georgia Court of Appeals applied these regulations as a theory of vicarious liability, not an "independent" basis for such liability. The agency question—control—was dispositive, not any technical claim regarding "lease liability." See Stubbs Oil Co., Inc. v. Price, 848 S.E.2d 739, 744 (Ga. Ct. App. 2020)(rejecting

vicarious liability, based on Plaintiffs' claim that "because Stubbs Oil had a DOT number, the plaintiffs claim that it was a motor carrier under the FMCSRs" and explaining "the relevant inquiry is whether Stubbs Oil "acted as a motor carrier in the specific transaction at issue." And in this case, it is undisputed that Stubbs Oil hired Southern Oil to transport its fuel products, and that Southern Oil used its own vehicle and driver in doing so."). There is no tort of negligent lease termination, thus showing that "lease liability" is an impermissibly confusing route here for the jury's agency determination.

Plaintiffs rely upon an earlier Georgia case for their view of how the jury should be instructed on this purported "independent" basis. The case they cite, however, involves evidence of an admitted agency relationship. In Zegel, "evidence was adduced at trial which authorized the jury to conclude that Surlina and PN Express had entered into an oral lease of **Surlina's truck, based on Surlina's admission that such a lease was in effect**, and on testimony that Surlina's truck carried the PN Express logo. Further, evidence at trial which **showed that Surlina had been hired by PN Express on May 1, 2007, and that Surlina was in constant telephone contact with Soldat, PN Express's manage**r" PN Exp., Inc. v. Zegel, 697 S.E.2d 226, 229 (Ga. Ct. App. 2010). Here, in contrast, there is no such evidence. Indeed, the Zegel court does useful analysis for this case, when distinguishing another case (finding no use for statutory employment) by explaining "reliance on *Clarendon* is misplaced, because that case is distinguishable on its facts from the case at bar" since in Clarnedon " no evidence of a lease arrangement was adduced: the driver denied that he had entered into a lease with the defendant motor carrier; there was no evidence that the defendant motor carrier knew that the driver had been hired to pick up loads; and the defendant's logo and DOT numbers were not displayed on the driver's truck." PN Exp., Inc. v. Zegel, 697 S.E.2d 226, 229 (Ga. Ct. App. 2010). Here, the only fact—the DOT number—is not enough, since

all the evidence (including the police report) concurs that Mayflower's DOT number is not indicative of the truck's owner or operator.

In contrast, when agreeing to the instruction, the Zegel court again explained "When Surlina was asked if he "had a leasing arrangement with PN Express," he replied, "Yes." and that *Surlina's* testimony on this point was conflicting, but it was for the jury to resolve that conflict" and further "Surlina further testified that Soldat provided him with the PN Express logo and DOT authorization numbers, ***and that Soldat knew that Surlina's truck carried the logo and the DOT numbers*.**" PN Exp., Inc. v. Zegel, 697 S.E.2d 226, 231 (Ga. Ct. App. 2010). Here, there is no evidence that Mayflower knew that Burist was driving on this date. Indeed, the testimony is that Mayflower was informed of the load after the incident.

Thus, this theory also fails the evidence, and the jury cannot decide a question not required by the evidence. Plaintiffs claim there is "unequivocal" evidence of "authorizations" . Plaintiffs do not cite the testimony of any fact witness—because all the fact witnesses have said that the DOT number and authority (legally, not on the truck) were Moholland's. Plaintiffs seek to use their verdict form to bias the jury against this evidence despite no basis in law.

Plaintiffs' proposed jury question, unlike agency generally (or the straightforward "responsible motor carrier" question), is one for which Plaintiffs seek improperly to shift the balance against Mayflower. For example, Plaintiffs proffer an expert to guide the jury to that answer. But Plaintiffs cannot use an expert to contradict factual evidence and inject an irrelevant, prejudicial question for the jury on the verdict form. Their expert has no facts upon which to rely, and the interpretation of a contract is a question of law. If, as the Court ruled on summary judgment, a jury can decide whether there was permission to use the truck, that is a question of fact and not a legal question regarding the "responsible motor carrier." Moreover, in Georgia,

"Application of the Respondeat Superior Rule **arises when the employer's own negligence is alleged to be a proximate cause of the plaintiff's injuries**" and not "Thus, apportionment of fault to the employer on account of its own negligence is not an apportionment of vicarious liability." Quynn v. Hulsey, 310 Ga. 473, 480–81, 850 S.E.2d 725, 731 (2020). Here, though, the claim of "statutory employer" is an attempt to avoid this distinction by making Burist (and Moholland, and Locke's) conduct attributable to Mayflower. Mayflower's "own negligence" is not present here, as there is no evidence that Mayflower had any role in this specific role. The only possibility is via vicarious liability, which is covered by the instruction on agency. There is no "independent" basis for "agency" here.

Plaintiffs' claim to this additional question on the jury form is an improper injection of an irrelevant issue for the jury here. See Schramm v. Foster, 341 F. Supp. 2d 536, 550 (D. Md. 2004)(explaining, as to carrier liability, that "the fact that Robinson performed carrier services in previous contracts is irrelevant to determining Robinson's role in the transaction at issue." because "The dispositive issue is not whether Robinson had performed carrier services pursuant to previous contracts, but whether, in the specific transaction with Jasper, Robinson chose to use its carrier authority to ship the load"). Plaintiffs have no basis to have the jury decide that Mayflower "chose" to use its "carrier authority" as to this load. The evidence instead relates—even if the affirmative evidence of Moholland's responsibility is somehow rejected despite no rebuttal—to whether Mayflower somehow passively, or constructively, had its name on this truck and load.

That is a question of agency law and ratification answered under Georgia's agency law not the industry regulations. Plaintiffs seek to inject the industry regulation to receive multiple bites at the same apple despite no basis in law or fact to do so. The Court should reject Plaintiffs' verdict

form. Mayflower's verdict form accomplishes the inquiry without causing the mischief Plaintiffs invite.

2. **Course and scope is a necessary interrogatory; Plaintiffs incorrectly seek to deprive Mayflower of an agency interrogatory regarding whether the jury has concluded that "agency" was in force when Burist crashed the truck.**

To compound this confusion, Plaintiffs want the jury avoid answering whether, if Buris was somehow operating with (passive) permission of Mayflower due to those markings (and the documents left in the glove box by Moholland despite obligation to return them), he was acting within the course and scope of such alleged agency. The Court should reject that proposal.

Here, Burist was indisputably intoxicated and committed a crime when he crashed the truck. Because of this fact, Mayflower is entitled to this second question regarding the course and scope of agency. Here, because the issue of agency—and course and scope—will determine the jury's allocation of liability to Mayflower and others, Plaintiffs bear the burden to provide evidence not only that Burist (and his employer, and the truck's owner) were acting for Mayflower and under its authority, but also that such act was within the granted authority. Mayflower cannot be liable for a tort to which it did not agree or foresee. Therefore, the special verdict requesting instruction on this theory of liablity must be given. Stewart & Stevenson Services, Inc. v. Pickard, 749 F.2d 635, 644 (11th Cir. 1984)("the use of a special verdict in multiple theory of recovery cases eliminates the uncertainty as to whether the jury's verdict was based wholly on an improper theory requiring retrial of the case, as with a general verdict and reveals the whole case for what it is, both fact and law, for complete and final acceptance of the correct legal theory by the reviewing Court."). Where a plaintiff's recovery depends on ensuring the jury relied on the proper facts and evidence among differing views (as here, where there is a claim to ratification of an intentional tort) denying the special verdict is error. See Id.

The jury instructions are not a substitute for this interrogatory. Plaintiffs cite no authority for their rule that the instructions can be substituted for the special verdict form. Prejudice to Mayflower, given the elements of the claim (and this defense) outweighs any claim Plaintiffs assert regarding "cumbersome" verdict form.

Plaintiffs also allege that this interrogatory remove a presumption to which they are entitled under Georgia law. They are wrong. Georgia law does not presume as they claim. They must prove the identity of the defendant, not assert it. Here, that proof requires evidence of agency, and under Georgia law agency liability requires that the tort have been in the course and scope of employment.

At issue is Burist's intentional tort and criminal act. In such cases, the employer is not liable. For example, in Jefferson, there was no vicarious liability as to an employee who forged mammography reports "because she had become "really careless and lazy for lack of a better word," instead of transmitting the films promptly to the radiologists, she allowed her work to get "so backed up" that she "would just go into the computer like the doctor would do" and create fraudulent reports." Jefferson v. Houston Hosps., Inc., 784 S.E.2d 837, 842 (Ga. Ct. App. 2016). Getting drunk, like committing theft, is outside the employer's business and employee's duties:

> The evidence presented by Sexton did not show that stealing tires was within the scope of Brooks' employment; on the contrary, the testimony by deposition of Brocato, Sexton's former employee, stated that he wouldn't consider Brooks to be acting on behalf of Southern (when he was stealing tires) and "I am sure he wasn't getting paid by the company (Southern) to do that." It is well-settled that the mere fact that a tortious act of an employee amounts to a crime does not, per se, relieve his employer from liability. The test of liability is the same as in cases where a non-criminal act is involved; **the act must have been one authorized by the employer prior to its commission, ratified after its commission, or committed within the scope of the employment.** 53 Am.Jur.2d s 445. The evidence shows that Brooks was not acting within the scope of or in the prosecution of the business of Southern when he was stealing tires, and Southern did not ratify Brooks' actions. Sexton produced no evidence which connected the theft of tires with Southern's business or which showed that Brooks acted on behalf of Southern when he stole the tires.

> The several thefts involved Brooks only and did not involve the employer. "There is no liability on the part of the master arising from the mere relationship of master and servant. (Cits.) . . . There is a long line of decisions to the effect that if the servant steps aside from his employment and acts without the scope of his master's business, and commits a tort, the master is not liable. (Cits.)"

Sexton Bros. Tire Co. v. S. Burglar Alarm Co. of Georgia, Inc., 265 S.E.2d 335, 336 (Ga. Ct. App. 1980) (emphasis added).

Indeed, Georgia law has long excluded employee's illicit pleasure on the job as a basis for employer liability. Back in 1938, the Georgia Court of Appeals explained:

> The petition shows specifically that the messenger, at the time he committed the tort, was not doing anything in furtherance of his master's business, even if it could be said that he went to the house of the plaintiff on business for the master. **It is clearly shown that the plaintiff offered no objection to furnishing the messenger with a duplicate receipt for the telegram which had been delivered to her earlier that night; that she told him to wait a minute, went into the living room, and was actually in the act of writing the receipt when the messenger, who had come into the living room uninvited and was secretly standing behind her, placed his hands upon her shoulders, and then engaged in the unlawful conduct of which she complains. It would be taxing reason too much to say that his conduct had any relation to or connection with the business of his employer.** It is not a case where the conduct was resorted to for the purpose of forcing compliance with his request for a duplicate receipt, and where the master would be liable whether the means adopted were appropriate or not. Manifestly the messenger, with no suggestion on the part of the plaintiff that his request for a duplicate receipt would not be granted, was at the time engaged in a personal, lascivious enterprise of his own, rather than in attempting to accomplish anything even remotely connected with the business of his employer. It is not even asserted in the petition that the original receipt had been lost. **It is merely stated that the messenger *said* that it had been lost, an utterance which, in view of his subsequent conduct, rather suggests a ruse or piece of deception on his part. Nor is it alleged that the company sent him to procure a duplicate of the receipt which he *said* had been lost. Having stepped aside from his master's business for the time being, in his tortious conduct towards the plaintiff, the master is not liable for his act.**

Stafford v. Postal Tel. & Cable Co., 198 S.E. 117, 119–20 (Ga. Ct. App. 1938)(emphasis added). The Safford court, addressing Georgia law, makes no mention of a "presumption"; quite the opposite, it notes that there is no connection "even if it could be said" the tortfeasor arrive "on

business of the master." Id. Here, as in Stafford, the course and scope issue is for Plaintiff, not Mayflower. Mayflower is entitled to have the jury address it clearly.

That is doubly so where the attributed tort is an intentional tort unrelated to the job provided Plaintiffs are wrong regarding Georgia law, and indeed, only providing the interrogatory can cure the confusion they invite with their claim. Georgia law requires Plaintiffs, not Mayflower to show this was within the scope of agency. See Cmty. Theatres Co. v. Bentley, 76 S.E.2d 632, 634 (Ga. Ct. App. 1953)("Although agency is alleged generally in this case . .. nothing set forth raises the reasonable inference that the employer authorized or ratified his criminal acts, or that the perpetration of [illegal acts] upon children coming to the theater as the defendant's invitees was within the scope of his employment"); accord Georgia Interlocal Risk Mgmt. Agency v. Godfrey, 614 S.E.2d 201, 205 (Ga. Ct. App. 2005)("Carswell did not commit any of the acts at issue here on behalf of the City or its police department" and "Carswell acted for purely personal reasons, completely disconnected from the authorized business of his employer" because "Nothing he did accomplished " 'the ends of his employment,' "[18] which required that he "serve and protect innocent citizens." Moreover, the City was not exercising any direction or control over him at the time he committed the acts, and he certainly was not operating within the scope of his employment as a police trainee at that time.").

3. **Plaintiffs cannot ask the jury to determine if Mayflower was "Violating 49 C.F.R. 390.21" or "aiding and abetting Joe Moholland's violation of the law"**

The Federal Motor Carrier Safety Regulations do not create a cause of action here, and they cannot be used to show negligence per se (or even negligence) by Mayflower as to Plaintiff's alleged torts. Under Section 390.21 of Chapter 49 of the Code of Federal Regulations, "Every self-propelled CMV subject to subchapter B of this chapter must be marked as specified in

paragraphs (b), (c), and (d) of this section, and each unit of intermodal equipment interchanged or offered for interchange to a motor carrier by an intermodal equipment provider subject to subchapter B of this chapter must be marked." 49 C.F.R. § 390.21. Plaintiffs were not injured by a violation of Section 390.21, since Burist did not crash his truck due to insufficient identification of Moholland's DOT number on the truck. See Eastside Recovery, LLC v. Calhoun, 890 S.E.2d 135, 140 (Ga. Ct. App. 2023)(rejecting negligence per se claim based on regulation unrelated to the claim at issue); see also Mack v. Old Dominion Freight Line, Inc., No. 5:21-CV-00118-TES, 2023 WL 1930394, at *4 (M.D. Ga. Feb. 10, 2023)("Without specifically connecting the extent of the diminished braking to the bent L5 pushrod and the air leak, there simply isn't a causal connection between the supposed violation of the applicable Federal Motor Carrier Safety Standards and the collision itself."). There is also no cause of action under the regulation for damages here, and Plaintiffs have no authority to support expansion of the law here.

Given this element of Georgia negligence law, Plaintiffs cite no case that supports their view that "negligence per se" can apply to a regulation whose (alleged) violation caused no harm to them. There is no negligence per se here, and there is also nothing to aid or abet that is relevant to Plaintiffs' suit here. Parris v. Gooch, 932 S.E.2d 658, 661–62 (Ga. Ct. App. 2026), addressed, whether Onsite had actual or constructive knowledge of Parris's drug use and his multiple speeding tickets while driving Onsite trucks and yet took no action and continued to allow him to drive its vehicles." The Parris case also involved an "employee" of Onsite, not a third party driver. Moreover, the alleged violation (as to Mayflower) is not "unrebutted" since the evidence shows Mayflower was unaware that the truck was being used for this load, much less that Burist would be driving it. Regardless, the labeling regulations were not at issue and the "negligence per se" was based on a regulation applicable to the case.

Plaintiffs' other cited cases do not support adding this element to the jury verdict form and further illustrate why the jury should not be misled with this unnecessary inquiry. The Kearney v. Oppenheimer & Co., Inc., 915 S.E.2d 709, 716–17 (Ga. Ct. App. 2025) was a RICO case where there was "a long list of actions and omissions by Oppenheimer that either somehow facilitated Woods's operation of the Horizon scheme between 2008 and 2016, concealed evidence of his fraudulent activities from investors between 2008 and 2021, or failed to comply with reporting requirements" that related to the scheme alleged to harm. The Kearney court found no proximate cause, too. See Id. In Rockefeller, the plaintiffs cited a regulation that "establishes a standard of conduct under which a PA may perform only those tasks in his job description and only under the direction of the applying physician" and "These limitations are intended to protect the health and welfare of patients such as Rockefeller, by insuring that the PA's treatment of the patient is overseen by a physician who is qualified to supervise the PA in the tasks performed" so "These limitations are certainly intended to guard against harm suffered by patients as a result of mistakes such as those charged to McPeters." Rockefeller v. Kaiser Found. Health Plan of Georgia, 554 S.E.2d 623, 627 (Ga. Ct. App. 2001). Not so here, since the labeling had nothing to do with the driving. Mack v. Old Dominion Freight Line, Inc., No. 5:21-CV-00118-TES, 2023 WL 1930394, at *4 (M.D. Ga. Feb. 10, 2023)(explaining that "mere speculation is not enough" and a causal connection is required for insertion of regulation violation as part of plaintiff's proof).

Moreover, Plaintiffs cannot ask the jury whether Mayflower was "aiding and abetting Joe Moholland's violation of the law." There is no allegation in the Complaint regarding conspiracy. There is no evidence of conspiracy. To the extent such inquiry is relevant, it is covered—without the prejudicial connotation of "aiding and abetting" language—by the agency elements of the jury's inquiry that Mayflower proposed. If the jury determines agency, then "aiding and abetting"

is unnecessary for consideration. This case also is neither a criminal trial nor regulatory proceeding, and accordingly "violation of the law" is not generally at issue. The only question for the jury is whether Mayflower was responsible for this load, despite testimony from Moholland that the load was under its authority, and event the police report listing Moholland as owner. Plaintiffs are seeking to backdoor their claim that Moholland is somehow "lying" for Mayflower despite no such evidence.

**4. Mayflower's verdict form is the proper form here.**

Mayflower's verdict form correctly addresses the issues in dispute, fairly and completely. First, apportionment is proper among the responsible parties, under Georgia law. "The purpose of the apportionment statute is to have the jury consider all of the tortfeasors who may be liable to the plaintiff together, so their respective responsibilities for the harm can be determined." Couch v. Red Roof Inns, Inc., 291 Ga. 359, 365, 729 S.E.2d 378, 383 (2012). The statute applies in Federal court. See, e.g., Bullock v. Volkswagen Group of Am., Inc., 160 F. Supp. 3d 1365, 1380 (M.D. Ga. 2016)(stating the statute "applies to all actions brought against one or more persons for injury to person or property"); see also Fed. Deposit Ins. Corp. v. Loudermilk, 930 F.3d 1280, 1290 (11th Cir. 2019)("The "touchstone inquiry" for the apportionment statute is whether fault is divisible."). Plaintiffs filed suit against Mayflower, Locke, and Moholland. The issue of Moholland, Burist, and Locke's liability was litigated throughout the case, and the record contains evidence upon which the jury could find and apportion those Defendants' fault. This case calls for apportioning fault on the verdict form.

The verdict form Mayflower submitted addresses comparative fault, and also the important question of agency, both as to its existence, and if present, whether this tort is within its course and scope. There is no separate inquiry or instruction required for the motor regulations, because

the labeling regulation is not at issue. The expert's testimony regarding the "lease" is likewise irrelevant and confusing; regardless, it is an attempted legal conclusion proffered in the guise of expert opinion. Mayflower's form accomplishes the inquiry better by asking the single question of motor carrier responsibility—i.e., whose load was it that crashed into Plaintiffs. There is no need to have collateral questions (the commercial relations of Mayflower and Moholland) addressed, because the only question is this load and whether Mayflower was part of it. Plaintiffs seek to stray the question from this point, so their proffered form must be rejected.

**CONCLUSION**

Plaintiffs proffer a verdict form that would improperly confuse the jury, address issues irrelevant here, and likely sway the jury in their favor despite no reason to do so. The arguments they proffer in support of this verdict form (Dkt. # . 462) fail scrutiny and lack support in the cases they cite. The "lease liability" is not an independent basis for vicarious liability, because it obscures the real inquiry and invites confusion regarding an irrelevant question. Rejecting an interrogatory on course and scope of agency deprives Mayflower of an important defense to the claim of agency—i.e., whether it is responsible for the intentional tort Burist committed. Allowing a question about the truck labeling regulations—in a case where the labeling had nothing to do with the crash that harmed plaintiffs—is unnecessary and misleading, especially when couche with a question whether Mayflower "aided and abetted" Moholland in "breaking the law." Such prejudice is unnecessary and improper. Consequently, for the reasons stated above, Mayflower objects to their proffered verdict form (462-1) and requests the Court adopt Mayflower's verdict form. Mayflower's verdict form is fair, reflects the issues in dispute for the jury to resolve, and correctly addresses the law.

Respectfully submitted this 3rd day of November, 2026.

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

*/s/ Stephen Kyle cDonald*
BRANTLEY ROWLEN
Georgia Bar No. 153031
STEPHEN KYLE MCDONALD
Georgia Bar No. 661387
Todd R. Ehrenreich
*Admitted Pro Hac Vice*
Jeffrey Geldens
*Admitted Pro Hac Vice*

*Counsel for Mayflower Transit, LLC*

600 Peachtree Street N.E.
Suite 4700
Atlanta, Georgia 30308
404-348-8585 Telephone
404-467-8845 Facsimile
Brantley.Rowlen@lewisbrisbois.com
Stephen.McDonald@lewisbrisbois.com

24 Drayton St., Suite 300
Savannah, GA 31401
Tel. (912) 525-4960

Todd.Ehrenreich@lewisbrisbois.com
Jeffrey.Geldens@lewisbrisbois.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have electronically filed the foregoing Objection to Plaintiff's Verdict Form and Request for Adoption of its Own with the Court's ECF system which will electronically serve a copy on all counsel of record.

This 3rd day of November, 2026.

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

*/s/ Stephen Kyle McDonald*
BRANTLEY ROWLEN
Georgia Bar No. 153031
STEPHEN KYLE MCDONALD
Georgia Bar No. 661387
Todd R. Ehrenreich
*Admitted Pro Hac Vice*
Jeffrey Geldens
*Admitted Pro Hac Vice*

*Counsel for Mayflower Transit, LLC*

600 Peachtree Street N.E.
Suite 4700
Atlanta, Georgia 30308
404-348-8585 Telephone
404-467-8845 Facsimile
Brantley.Rowlen@lewisbrisbois.com
Stephen.McDonald@lewisbrisbois.com

24 Drayton St., Suite 300
Savannah, GA 31401
Tel. (912) 525-4960

Todd.Ehrenreich@lewisbrisbois.com
Jeffrey.Geldens@lewisbrisbois.com