**In The Matter Of:**

*Kyle Sloan, et al. v*
*Nicholas Burist, et al.*

---

*Robert McCabe 30(b)(6) rep. for Unigroup, C.A.*
*October 29, 2024*
*Zoom Video Deposition*

---

*Janice D. Hayward, RMR*
*Independent Court Reporter*
*843.478.6756*
*JanHayward1@gmail.com*

Original File 10-29-2024 Unigroup.txt
**Min-U-Script® with Word Index**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION
CASE NO. 2:22-CV-00076-LGW

KYLE SLOAN, INDIVIDUALLY; AND AS PERSONAL REPRESENTATIVE OF THE ESTATES OF RYLIE SLOAN AND JAMIE SLOAN; KYLE SLOAN AS SURVIVING SPOUSE OF JAMIE SLOAN; KYLE SLOAN AS SURVIVING PARENT OF RYLIE SLOAN; AND SUSAN WEST, INDIVIDUALLY; AND AS THE NEXT FRIEND AND NATURAL GUARDIAN OF K.W., A MINOR,

Plaintiffs,

vs.

NICHOLAS BURIST; LOCKE RELOCATIONS LLC; UNIGROUP, C.A.; MAYFLOWER TRANSIT LLC; JOE MOHOLLAND, INC.; VANLINER INSURANCE COMPANY; AND XYZ COMPANIES 1-3,

Defendants.

-----------------------------------

ZOOM VIDEOCONFERENCE DEPOSITION
30(B)(6) DEPOSITION OF UNIGROUP, C.A.

WITNESS: ROBERT MCCABE
DATE: Tuesday, October 29, 2024
TIME: 2:04 p.m.
LOCATION: Zoom Videoconference

REPORTED BY: KATIE L. GRAFF

FOR:

Janice D. Hayward, RMR
NCRA Registered Merit Reporter
240 Oak View Way
Summerville, South Carolina 29483
843.478.6756
JanHayward1@Gmail.com

Any Court, party, or person who has purchased a transcript, may, without paying a further fee to the reporter, reproduce a copy or portion thereof as an exhibit pursuant to Court order or rule or for internal use, but shall NOT otherwise provide or sell a copy or copies to any other party or person.

APPEARANCES

FOR THE PLAINTIFFS

Charles Hodge
chodge@hodgelawfirm.com
Hodge Law Firm
951 East Main Street
Spartanburg, South Carolina 29302

FOR THE PLAINTIFFS

Matthew Foss
Matt@langleylawfirm.com
Langley Law Firm
229 Magnolia Street
P.O. Box 2765
Spartanburg, South Carolina 29306

FOR THE PLAINTIFFS

Ryan Langley
Ryan@langleylawfirm.com
Langley Law Firm
229 Magnolia Street
P.O. Box 2765
Spartanburg, South Carolina 29306

FOR THE PLAINTIFFS

Joseph R. Padgett
jpadgett@rodenlaw.com
Roden Law
333 Commercial Drive
Savannah, Georgia 31406

FOR THE PLAINTIFF K.W.

Joseph J. Steffen, Jr.
joe@joesteffen.com
Joseph J. Steffen, Jr.
223 West York Street
Savannah, Georgia 31401

FOR THE PLAINTIFF MAKAYLA JANIA HINES, INDIVIDUALLY, AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MICHAEL ANTHONY HINES, JR., DECEASED

Andrew Norden
anorden@realtoughlawyers.com
Osborne Francis
433 Plaza Real Boulevard, Suite 271
Boca Raton, Florida 33432

FOR THE PLAINTIFFS THELMA PETNO AND RAYMOND E. TIPTON

Jonathan A. Pope
jpope@hastypope.com
Harrison Loftin
hloftin@hastypope.com
Hasty Pope LLP
211 East Main Street
Canton, Georgia 30114

FOR THE DEFENDANTS THELMA PETNO AND RAYMOND E. TIPTON

Daniel Snipes
dsnipes@statesborolawgroup.com
Taulbee, Rushing, Snipes, Marsh & Hodgin, LLC
12 Siebald Street
Statesboro, Georgia 30458

FOR THE DEFENDANT NICHOLAS BURIST

Angela Cooper
acooper@dcplaw.com
Dennis, Corry, Smith & Dixon, LLP
900 Circle 75 Parkway, Suite 1400
Atlanta, Georgia 30339

FOR THE DEFENDANT LOCKE RELOCATIONS LLC

James L. Elliott
jelliott@ebbglaw.com
Elliott & Blackburn
3016 North Patterson Street
Valdosta, Georgia 31602

FOR THE DEFENDANT UNIGROUP, C.A.

Todd Ehrenreich
Todd.Ehrenreich@lewisbrisbois.com
Jeffrey Geldens
jeffrey.geldens@lewisbrisbois.com
Brighten Donner
brighten.donner@lewisbrisbois.com
Lewis Brisbois Bisgaard & Smith
600 Peachtree Street, Northeast Suite 4700
Atlanta, Georgia 30308

FOR THE DEFENDANT UNIGROUP, C.A.

Mark Volansky
mark_volansky@unigroup.com
Valerie Pacer
valerie_Pacer@unigroup.com
Unigroup Inc.
1 Premier Drive
Fenton, Missouri 63026

FOR THE DEFENDANT JOE MOHOLLAND INC.

Matthew R. Sessions
msessions@mkblawfirm.com
McMickle, Kurey & Branch, LLP
217 Roswell Street
Alpharetta, Georgia 30009

FOR THE DEFENDANT VANLINER INSURANCE COMPANY

Carly Knight
carly.knight@swiftcurrie.com
Swift Currie
1420 Peachtree Street NE, Suite 800
Atlanta, Georgia 30309

FOR THE DEFENDANT PAYNE INC.

James E. Gilson
jgilson@hallboothsmith.com
Hall Booth Smith, PC
191 Peachtree Street NE, Suite 2900
Atlanta, Georgia 30303

LEGAL VIDEOGRAPHER

Tony Graff
tgraff@relyreporting.com
Rely Reporting LLC
Summerville, South Carolina

INDEX TO EXAMINATIONS

Examination By Mr. Langley 9
Examination By Mr. Norden 41
Examination By Mr. Pope 63

INDEX TO EXHIBITS

1 Notice of Deposition 12
2 organizational chart 21
3 self-termination 40

(The deposition begins at 2:04 p.m.)

THE VIDEOGRAPHER: We are now on the record at 2:04 p.m., October 29th, 2024. Counsel has waived the reading of the caption. This is the 30(b)(6) video deposition of UniGroup via Bob McCabe.

Present is the court reporter, Katie Graff, and I am Tony Graff, the legal videographer.

Counsel, please state your appearances for the record.

MR. LANGLEY: Ryan Langley, Charlie Hodge, and Matt Foss for Kyle Sloan and the plaintiffs.

MR. PADGETT: Joseph Padgett for Kyle Sloan and the plaintiffs as well.

MR. NORDEN: Andrew Norton for Makayla Hines.

MR. STEFFEN: Joe Steffen for Plaintiff Kara West.

MR. SNIPES: Dave Snipes for Plaintiffs Petno and Tipton.

MR. EHRENREICH: Are we on to the defendants now?

MS. COOPER: Angela Cooper for

Nicholas Burist.

MR. EHRENREICH: This is Todd Ehrenreich, Brighten Donner, and Jeff Geldens for UniGroup.

MR. SESSIONS: Matt Sessions for Joe Moholland.

MR. ELLIOTT: Jim Elliott for Locke Relocations.

MR. GILSON: Jim Gilson for Payne, Inc.

MS. KNIGHT: Carly Knight for Vanliner Insurance Company.

THE VIDEOGRAPHER: Will the court reporter please swear or affirm the witness.

(ROBERT MCCABE, after being sworn/affirmed, testified as follows:)

EXAMINATION

BY MR. LANGLEY:

Q All right. Mr. McCabe, I'm Ryan Langley. It's nice to meet you over video here today. I'll be taking your deposition, ask you a number of questions on the record in your role as the 30(b)(6) designee for UniGroup.

Have you been designated as a

30(b)(6) corporate representative for UniGroup before?
A I don't believe so.
Q Okay. Have you ever given a deposition before?
A I have.
Q And when was the last time you gave a deposition?
A Probably two to three years ago.
Q All right. Do you know why you were designated as the 30(b)(6) deponent in this case?
MR. EHRENREICH: Bob, that's a kind of question where if the reasons were things that I presented to you or Mark Volansky, that's attorney-client. Anything outside of that feel free to answer.
A So my assumption is I'm an officer of UniGroup.
BY MR. LANGLEY:
Q Okay. All right. Well, I just wanted to try to figure out what sort of ground rules I needed to go over and your experience. Are you an attorney?
A No, sir.

Q Do you have any kind of legal training?
A No, sir.
Q Since it's been a couple, three years since your last deposition, I'll just go over some of the basics. You're doing a good job of answering out loud as opposed to saying huh-uh or um-hum. I need you to continue to do that.
And we're recording the deposition a number of different ways today. But if you could say yes or no and then give any explanation that you'd like or as appropriate to the question so we've got a verbal response, I would appreciate that.
If you don't understand a question I ask, I need you to point that out to me and not ask counsel. Our rules require that the answer be given to me, that you not seek the advice of counsel.
As Todd mentioned, if one of my questions implicates as a part of your answer a need to reference something that Todd or one of the other attorneys for Mayflower or UniGroup or general counsel for UniGroup said to you in the context of seeking legal advice, then I'm not looking for you to answer that question. That would be a violation

of attorney-client privilege.
But anything else that you know, anything about your preparation, there's a crossover and sort of gray area in that. You've been designated as a 30(b)(6) deponent in this case, or designee.
And so that means that you're the most educated person, the most knowledgeable person either by education or experience, on the topics that we have provided or the elements of the notice of the 30(b)(6) deposition that we've sent for today.
Have you seen a copy of that Notice of Deposition?
A Yes, sir.
Q And do you have that there in front of you?
A I do.
MR. LANGLEY: We'll mark that is Exhibit 1.
(Plaintiff's Exhibit Number 1 was marked for identification.)
BY MR. LANGLEY:
Q And Katie will just send you these as exhibits later. Any that you don't have -- is it

okay if I call you Bob?
A Yes, sir, please.
Q All right. Yeah, please call me Ryan. Any exhibit that I make reference to that you don't have there in front of you, please just let me know and I'll do my best to get it pulled up on the screen. I think Matt's got the capability of doing that, and he's here in the office with us.
So we'll mark the Notice of Deposition as Exhibit 1 and just go through -- I know, Bob, you said you'd read this before, but can you go back and confirm that you're prepared to speak on each of these topics either by education or experience or interaction with -- subsequent to this notice sufficient to qualify you as the person most knowledgeable at UniGroup on all these topics?
A Yes, to the best of my ability.
Q Okay. Is there anything that would limit your ability today? You're not under the influence of any kind of drug or alcohol that would affect your ability to tell the truth today?
A No, sir.
Q Is there any other limitation to your ability to provide testimony as most knowledgeable person at UniGroup as a 30(b)(6) designee today?

MR. EHRENREICH: Yeah, so hold on. So this isn't the person with the most knowledge. This is the 30(b)(6) corporate rep. So it's a little bit different. The depositions would be different if this was the person with the most knowledge.

MR. LANGLEY: Well...

MR. EHRENREICH: It would be different, because Mr. McCabe, as a 30(b)(6), could talk to others with that knowledge and then present it on behalf of UniGroup.

MR. LANGLEY: Right. And so as the designee, that's his responsibility is to go find that information from the person most knowledgeable and make himself the designee to provide that information.

MR. EHRENREICH: I'm agreeing with you.

MR. LANGLEY: All right. Very good.

BY MR. LANGLEY:

Q So either by your own action, and that's sort of what I was talking about before, your own action or education or experience, or through talking with the most knowledgeable person at

UniGroup, you're prepared to be the designee -- the corporate designee with the most information on these topics. Can we agree to that?
A I agree.
Q Okay. Great. Let's start with number 1. The names of any South Carolina, Georgia, or Florida members of UniGroup cooperatives.
A Okay. There's several. And are you specific to those particular states that are in the question?
Q Sure. Start with South Carolina, if you would, please.
A Okay. South Carolina is Nilson Van & Storage.
Q How long has Nilson Van & Storage been a member of UniGroup cooperative?
A I don't have that readily available, but it has been decades.
Q Okay. Are there any other South Carolina members of the UniGroup cooperative?
A No, sir.
Q All right. How about Georgia?
A ADSI, ADSI Moving Systems. H&S Transfer Company. And Lindsay Transfer & Storage.
Q Okay. And Florida?

A Florida is A-1-A Atlantic Moving & Storage, A&A Transfer & Storage, Sorensen Moving & Storage, Coastal Moving & Storage, Conser Moving & Storage, Browning Moving & Storage, Interstate Moving & Storage, and Peluso Moving & Storage.
Q Can you spell the name of the South Carolina member for me?
A Nilson, yeah. It's N-I-L-S-O-N Van & Storage.
Q Okay. And that's pronounced Nilson?
A Nilson, yes, sir.
Q And that entity has been a member of the cooperative for decades. So it would've been a member of the cooperative at all times in the year 2023?
A Yes, sir.
Q What's the address for Nilson Moving & Storage?
A I'm sorry, I didn't catch that.
Q Can you give me the address for Nilson?
A I can't -- I don't have that readily available, but we can get that for you.
MR. EHRENREICH: If you have the city, provide the city if you don't have the full address.

A I don't even have the city in front of me, but I can get that information for you.
BY MR. LANGLEY:
Q All right.
MR. EHRENREICH: Do you want him to do it now, Ryan?
MR. LANGLEY: I was just looking on the magic Google machine here, what it said, and see if I can provide him an address he may be able to confirm.
BY MR. LANGLEY:
Q This says Columbia, South Carolina. Does that sound right, Bob?
A Yes, sir.
Q Okay. It's Nilson Van & Storage. Would that be the same entity?
A That is the same entity.
Q Okay. It looks like they've got different offices.
A They have multiple locations.
Q All right. And since you're an officer at UniGroup, what's that position and how long have you been in that position?
A So I'm the chief operating officer of UniGroup. I have been in that position for a

little over two and a half years. I've been with UniGroup for 31 years.
Q For 30 years?
A 31, yes.
Q 31 years. Congratulations, that's quite a tenure.
So you were at UniGroup at the time of this collision, July 1st, 2022. Is that right?
A Yes, sir.
Q When were you made aware of it?
A I don't recall the exact time of it. Yeah, I don't recall the exact time.
Q Do you remember how long after the collision you were made aware of it? Days, weeks, months?
A Probably most likely days.
Q And in your role as chief operating officer, did you have any communication with Rob Garr or anybody else at Moholland about this collision?
A No, sir.
Q How about any of the other roles you've had at UniGroup. Did you have any other conversations or discussions about this collision in

the days after?
A Not that I recall, no.
Q Okay. Well, who would've told you in the days after the collision about this, and why would they have felt the need to tell you about it?
MR. EHRENREICH: Yeah, so he's not answering that. This -- we're going to stay within the confines of what the court ordered us to do. And it's jurisdictional. So jurisdictional doesn't even fit into your topics on the collision and how he found out.
MR. LANGLEY: Okay. So are you instructing him not to answer that?
MR. EHRENREICH: I am. And it's jurisdictional discovery. That has nothing to do with jurisdictional discovery, so I am, correct.
MR. LANGLEY: All right.
BY MR. LANGLEY:
Q Okay. In your job as chief operating officer at UniGroup, does that mean you're over Mayflower in any way?
A So Mayflower is a subsidiary of UniGroup, which is the parent company.

Q And is that the same as a member of the UniGroup co-op?
A No, sir.
Q And how is it different? How is it documented as different? We don't have any documentation to show the -- and we've talked about this in the meeting confer yesterday with your counsel, and I think he's working on providing some documentation to show Nilson's admission or some other type of record that UniGroup might need to document Nilson's status, you know, distinguishing it from a subsidiary like Mayflower to a member, I guess a co-op, is really what we're looking at.
What's the difference and how are they treated differently and that kind of thing?
A So UniGroup is made up of members who are independent companies that are engaged in the business of moving and storage and logistics.
Mayflower is a -- so the members are part of the cooperative of UniGroup, and then UniGroup is the parent company of Mayflower.
Q Okay. Does UniGroup have independent employees or any shared employees with Mayflower?
A UniGroup -- excuse me. UniGroup is the parent company that has the employees that provide

the services of those subsidiaries.

Q So all Mayflower workers are UniGroup workers?

A They are UniGroup employees.

Q Okay. So when we see UniGroup employees taking action by emails or something like that with regard to Joe Moholland in this case, that's on behalf of Mayflower Transit LLC as the motor carrier responsible for safety with Joe Moholland?

A That is correct.

Q All right. Can you tell me any documents that you reviewed in preparation for today other than those that you reviewed directly involving counsel on?

A Yeah. Just the document we talked about earlier, the corporate structure, which I think you're getting a copy of. Our bylaws I reviewed, the bylaws of the cooperative of UniGroup. I think that's pretty much it.

Q All right.

MR. LANGLEY: And that organizational chart I think we've got in there, we can mark that one as Exhibit 2.

(Plaintiff's Exhibit Number 2 was marked for identification.)

BY MR. LANGLEY:
Q Starts with -- it's got a heading, Corporate Structure, UniGroup Subsidiaries and Organization Chart?
A That is correct.
Q All right. Do you need me to pull that up on the screen for you or have you got it there in front of you? Do you need me to pull it up, Bob, or have you got it with you?
A I just have a paper copy of it.
Q Yeah, that's fine. All right.
MR. LANGLEY: Madam Court Reporter, we'll mark that as Exhibit 2.
BY MR. LANGLEY:
Q And so UniGroup is a Missouri cooperative association. That's what it says. Is that right?
A That's correct.
Q Okay. And it --
A Registered --
Q I'm sorry.
A I just said registered with the state of Missouri.
Q Registered with the state of Missouri. So it's not a cooperation and it's not an LLC, it's kind of something in between. Is that fair?

A It's a cooperative.
Q We don't have cooperatives in South Carolina and Georgia and North Carolina as far as I know. So it's a little different from what we're used to seeing. Part of why we're doing this jurisdictional deposition is to make sure we understand the nature of that.
So if I'm asking you some questions that seem dumb, just bear with me on that. My understanding is the basic structure is that it's like an LLC because it has members like an LLC would have, that some have voting rights and others don't depending on the number of shares that the member holds.
25 or more, I think your counsel has represented to us, qualifies as a voting shareholder status. And 25 -- or less than 25 is the nonvoting status. Is that right?
A Yes. As defined by our bylaws.
Q Okay. And so at some point, one of the shares -- or at some point, Joe Moholland Moving and its various other related entities, Joe Moholland Transport, was a member of the co-op. Is that right?
A That is correct.

Q And they -- do you know when Joe Moholland was terminated as a member of the co-op?
A Final termination was the end of April of 2022.
Q Okay. But Joe Moholland remains a shareholder in the co-op today, right?
A He is a shareholder, yes. So when a member terminates, their rights are terminated. And the shares are redeemed over time as defined by our bylaws.
Q All right. And it looks like the bylaws gives some flexibility on the redemption to the Board of Directors of UniGroup. And so the timing of that can be spread out over time or it can all be done at one time. Do you know the reason why it's been spread out over time?
A Not specific reasons. It is the discretion of the Board of Directors of redemption policy which is attached to the bylaws.
Q Right. And I think one of the redemption policies said something about the needs of the organization at UniGroup, in the organization, the costs, expenses associated with that relationship.
Is one of the reasons that those shares have not been terminated this legal action in

determining whether or not there's going to be some expense borne by the organization for Joe Moholland and its relationship to UniGroup and Mayflower for this wreck?

MR. EHRENREICH: Yeah, so he can't answer that. That would be attorney-client. He'd only have the knowledge from counsel.

BY MR. LANGLEY:

Q Do you have any knowledge about the reason for the decision not to redeem the Joe Moholland shares other than what was shared with you by legal counsel?

A I do not.

MR. LANGLEY: So, Todd, you're instructing him not to answer based on attorney-client privilege there?

MR. EHRENREICH: I am.

BY MR. LANGLEY:

Q Who owns UniGroup?

A The members of the cooperative. So, again, it's -- UniGroup is made up of members who are independent companies throughout the country that are engaged in the business of moving and storage and logistics.

Q So tell me how that works for the division of profits between one of the subsidiaries like Mayflower and one of the members like Joe Moholland historically.

A So the cooperative operates on a percentage of revenue of each order to provide services for the members of the cooperative. Any other profits are -- and proceeds are defined in our bylaws on how they're distributed.

Q Okay. Do you know the split between Mayflower and Joe Moholland for moves that would've happened prior to the alleged termination of membership?

MR. EHRENREICH: I'll let him answer this. This is getting far afield on the jurisdictional aspect of it, but I'll let him answer this question.

MR. LANGLEY: Okay.

A So maybe you could rephrase the question or restate the question.

BY MR. LANGLEY:

Q You said that there's a percentage of. I'm trying to get an understanding of what that means. What percent, who's paid what, how that is divided up.

Because you said earlier that UniGroup has employees, but it's essentially operating on behalf of its subsidiaries, right?

So does the money go to UniGroup? Does the money go to its percentage? Does the money go to the subsidiaries? And then if so, what percentage goes to that subsidiary versus the percentage that goes to its member?

And here, I'm just using the parties in this case to give names to that so that I can understand how the relationship operated between the parties.

MR. EHRENREICH: I don't -- why don't we -- if it's okay with you, Ryan, why don't we just speak generalities how it works. And then if you want to get more specific.

So instead of going for the specific to the general, let's do it the opposite, okay, if that's all right with you.

MR. LANGLEY: Okay.

MR. EHRENREICH: I want him to answer it. We're just getting far afield. So I want you to get your answers. And so

let's start with the general. And if you want to follow up, we could take it question by question. So let's do it that way, if that's okay.

MR. LANGLEY: Okay. I'll try again on my question and see if we can get to something that's general enough to meet your concern.

MR. EHRENREICH: Okay.

BY MR. LANGLEY:

Q Under the normal circumstances, UniGroup operates on behalf of its subsidiaries, right, Bob? That's what you told me earlier?

A Correct.

Q And so when UniGroup is operating on behalf of its subsidiaries and it's dealing with its members, what is the percentage revenue split between UniGroup as the parent -- the subsidiary, Mayflower, or any of the others and then any of the members?

MR. EHRENREICH: Yeah. So he's not answering that question. What you can ask is just generally, is there a percentage split. I don't think that the actual percentages have anything to do with

jurisdictional discovery.

MR. LANGLEY: Well, the issue is who is doing what, really, is what I'm trying to understand. And if all the employees that, let's see, are at UniGroup are acting on behalf of the subsidiaries, I'm just trying to understand how that works basically.

And if you have a given transaction, where does the money flow into, how is it split between the subsidiary and the member, and who's doing the work.

So that's why I think it would be -- go to the jurisdictional question is if there's interaction between the parent and subsidiary in a particular state, which I guess is the allegation here, and maybe we can use Nilson as an example if you're more comfortable with that.

I think we're entitled to understand the way that Nilson interacts with the subsidiary Mayflower, Vanliner, or whichever one it is, and UniGroup for the purpose of evaluating your contention,

which is all of this operation is like an LLC and we have members that participate like their LLC members; and, therefore, should be treated like an LLC for purposes of diversity, not like a corporation which only has one principal place of residence and that's it.

MR. EHRENREICH: Yeah. So our contention is different. Our contention is that this is a co-op and that Nilson is a citizen of South Carolina and also a member of the co-op. That's our simple argument. It's not an LLC argument.

If you want to keep it -- if you want to confine your questions to Nilson, I'll give you more latitude. But if you're going to ask about other members, then I'm not going to give you the same latitude.

MR. LANGLEY: Okay. Well, Nilson -- we'll try it that way and see where we get to.

BY MR. LANGLEY:

Q Nilson has 25 shares, according to the documents that were produced by UniGroup, Bob. And

so if Nilson does a transaction where they're moving someone -- let's just use kind some of the facts of this case to make it as close as possible.

If there's a military move performed by Nilson on behalf of Mayflower as the motor carrier responsible for safety, and let's say a thousand dollars is generated from that move, how much goes to UniGroup, how much goes to Mayflower, and how much goes to Nilson?

MR. EHRENREICH: Object to the form.

BY MR. LANGLEY:

Q So when he makes an objection as to the form, that's different than the objection instructing you not to answer. Unless he instructs you not to answer, Bob, then you need to give the best answer you can to that.

A Okay. Fair. So UniGroup receives a portion of those -- a percentage of that revenue to provide a suite of services that are standard services for all of our members. They also can have services à la carte, which is the cooperative.

So they -- it depends, is where I would go, on what services they are actually purchasing in addition to the suite of services that

we offer. But UniGroup receives that percentage of the interstate transaction.

Q And can you give me a further breakdown on that, what percentage goes to UniGroup, what percentage goes to --

MR. EHRENREICH: Yeah, so he's not going to give you the specifics how much of a percentage. I think he explained to you how it works and acknowledging that there are percentages that are taken. But the amount of percentages he's not going to give you.

MR. LANGLEY: Well, help me understand your argument. Because I --

MR. EHRENREICH: Sure.

MR. LANGLEY: I thought all along, Todd, you were saying that because it's an LLC -- or because it's a cooperative, it's most analogous to an LLC, meaning that it has members in every state. Well, at least the states where it has members.

And so there is no diversity in those states. As distinct from a corporation which just has one principal place of business and would be diverse in

all states except for that one state where its principal place of business is.

The reason I'm trying to get a finer point on your argument is because I think the interaction between UniGroup, its members, and its subsidiaries is important to confirm or deny that that analogy is appropriate.

MR. EHRENREICH: Right. So Nilson is a member, it's not a subsidiary. And Nilson is a citizen of South Carolina and a member of the co-op. Therefore, our arguments all flow from that.

MR. LANGLEY: And that's why I think it's relevant for me to understand the portion of any proceeds that goes to Nilson, if any, and doesn't act like --

MR. EHRENREICH: Right. I think our disagreement is that the specifics of the -- the percentages, the numbers, I don't think have anything to do with these issues whatsoever.

I think when Mr. McCabe was explaining to you the interaction of the members and UniGroup, to give you the

understanding on the relationship and how it works, I think he just laid it out for you.

But the specific numbers, I disagree and I'm not going to allow him to provide those, because it has nothing to do with our issue at hand.

MR. LANGLEY: Well, I think it does. Let me just see if I can ask another question that's a little more general. Maybe that will make sense.

BY MR. LANGLEY:

Q In the transaction that I've laid out as an example there, Bob, there are three parties: UniGroup as the parent, Mayflower as the mem- -- as the subsidiary, and Nilson as the member.

Does some money -- regardless of the amount of the percentage, does some percentage go to each one of those parties, or does a hundred percent go to the subsidiary and the member, or does a hundred percent go to the member and the parent company?

A So that's a lot of hundreds. A portion --

Q Yeah, well, I'm trying to work within the

confines of your counsel's objections, and I can't get the percentage. I'm trying to make it general.

A So, yeah, I would say UniGroup receives a portion of the interstate transaction to provide those suite of services to our members.

Q Okay. And does the subsidiary receive any proceeds from the transaction?

A It all rolls up into the parent of UniGroup.

Q Okay. So in any transaction where one of the members is performing the actual services, Nilson is doing the moving. The proceeds are split entirely between UniGroup and Nilson, the subsidiary doesn't receive any payment on one of those types of moves. Is that right?

A Yes. To the best of my knowledge, yes.

Q Did UniGroup receive any payment for the transport that's at issue in this case on July 1st, 2022?

MR. EHRENREICH: Not part of this, and it wasn't part of your 30(b)(6). So he would not have knowledge.

MR. LANGLEY: I think it's a reasonable follow-up to this question. It was part of our --

MR. EHRENREICH: You can -- you can send written discovery on that. But it wasn't part of your designated 30(b)(6), and he has not been briefed by counsel on those issues.

MR. LANGLEY: Well, you're not going to let him answer any questions where he has been briefed by counsel, so --

MR. EHRENREICH: So that the briefing -- the briefing, like all predepositions like you do with your clients, you go over what's been presented to you and what has been discussed at a meet and confer. That's what I discussed with Mr. McCabe.

The specifics of this incident and the specifics of Moholland was not part of the 30(b)(6) notice and he was not prepared for those.

BY MR. LANGLEY:

Q Do you know, Bob, independent of any preparation or not, whether UniGroup was paid any money for the move done by Joe Moholland that's the subject of this collision we're here about today on July 1st, 2022?

MR. EHRENREICH: Yeah, so he's not going to answer that either. He's not here as an independent witness. He is here on behalf of UniGroup on a 30(b)(6) jurisdictional deposition.

BY MR. LANGLEY:

Q Were you involved at all in the termination between Mayflower and Joe Moholland Inc. or Taylor move?

MR. EHRENREICH: You, meaning him individually or you meaning UniGroup?

MR. LANGLEY: Both.

MR. EHRENREICH: He's not here in his individual capacity. He's here on behalf of UniGroup. So you can ask him if UniGroup was.

MR. LANGLEY: I think he's already told me any time we see UniGroup operating, they're taking action on behalf of Mayflower with regard to the termination. Is that right?

THE WITNESS: That's correct.

BY MR. LANGLEY:

Q Okay. So did you participate in that individually as an employee of UniGroup?

A Yes, I did in presentation to the board.
Q Okay. Tell me about that.
MR. EHRENREICH: No, you're not telling him about it. He's not here in his individual capacity. You're here to ask questions about UniGroup.
You're not here to ask Bob McCabe about Bob McCabe's role in anything. That's not how 30(b)(6) depositions go, and I'm not going to allow it.
MR. LANGLEY: He's already said he's taken action on behalf of UniGroup as an employee of UniGroup and the termination I'm entitled to know the details of that.
MR. EHRENREICH: You're not entitled to know the details of that. What does that have to do with whether Nilson is a citizen of South Carolina and whether you've destroyed diversity by naming UniGroup because it's a co-op and one of its members is a citizen of South Carolina?
I'm not sure -- I'm not following at all. This is not a -- this

is not a person with the most knowledge. This isn't somebody who is an dependent eyewitness.

This is somebody who's been presented as a 30(b)(6) witness on jurisdictional issues. We discussed it yesterday, you and I.

MR. LANGLEY: We'll go off the record for a second.

MR. EHRENREICH: Okay.

THE VIDEOGRAPHER: We are now off the record at 2:40 p.m.

(The deposition went off the record.)

THE VIDEOGRAPHER: We're back on the record at 2:59 p.m.

BY MR. LANGLEY:

Q All right. Thanks for your patience there, Bob. I wanted to confirm with our team and see if we could expedite this -- the rest of your deposition, and I think we can. A couple of remaining questions, may be a few follow-ups.

One, can we agree that anytime there's communication that's referencing UniGroup that's been produced in this case, that that's on behalf of Mayflower?

MR. EHRENREICH: Object to form.
A Yes, I would agree.
BY MR. LANGLEY:
Q Okay. And then do you have the part of the bylaws that is the member agent self-termination document? It says confidential UniGroup 32 at the bottom. It's called Bates stamp.
A Yes, I do. Is it like Section 24 or 25?
Q It doesn't say a section on the document I have. It says 11/15/23 confidential UniGroup 32. I can pull it up for you if you want to have a look at it.
A Sure.
MR. EHRENREICH: Yeah, if you would do that, that would be great.
MR. LANGLEY: Yeah.
THE WITNESS: Oh, yes. Okay.
MR. LANGLEY: We'll mark this is Exhibit 3, Madam Court Reporter.
(Plaintiff's Exhibit Number 3 was marked for identification.)
BY MR. LANGLEY:
Q And is this, Bob, a document that outlines the responsibilities that Mayflower would have in termination of one of its agents?

A That is correct.
Q Okay.
MR. LANGLEY: All right. That's all the questions I have. Oh, one more. Sorry.
BY MR. LANGLEY:
Q The date down at the bottom says 11/15/23. Can we agree that would've been applicable in January of 2022 through July 1st of 2022, the date of this wreck?
A Yes. I would say it was very similar, yes.
Q Okay. And the area services director that's referenced in this document, ASD -- or agency success director I think it actually says. Do you know who that was for the Georgia and Virginia region applicable to this?
A Yes. His name is Chris Wynn.
Q Chris Wynn?
A Yes.
Q Okay.
MR. LANGLEY: All right. Please answer any questions --
MR. EHRENREICH: -- yeah, sorry, Ryan, you deposed Chris back in May of

last year.

MR. LANGLEY: Right.

MR. EHRENREICH: Yeah. Sorry, I don't have any questions. We'll certainly take a copy and I'll pass it on to Mr. McCabe for him to take a look at.

MR. NORDEN: Guys, we've got a cross notice here and --

MR. EHRENREICH: Okay. You do. You're right. My apologies. Sorry about that.

MR. NORDEN: Okay.

MR. EHRENREICH: Yeah, sorry.

MR. NORDEN: Just give me one second.

EXAMINATION

BY MR. NORDEN:

Q All right. Mr. McCabe, are you ready to proceed?

A Yes, sir.

Q I have got the same documents that you said that you have reviewed in preparation for your testimony here today. I'd like to go through some of those with you. And just as Ryan did a moment ago, I'm going to ask you to flip forward to a Bates page ending in confidential UniGroup 40.

So at the very bottom of each of these pages, hopefully you have the same Bates pages and --

MR. NORDEN: Does he have the same Bates documents as everybody?

MR. EHRENREICH: He has the same documents. I'm not sure if his are Bates stamped, but he has the same documents that we produced to everybody.

MR. NORDEN: All right. No problem.

BY MR. NORDEN:

Q All right. Mr. McCabe, do you see my screen here that has the member number of shares and so forth?

A Um-hum.

Q Yes?

A Yes, sir.

Q Okay. So this document, do you know where it came from?

A I do not.

Q Do you know who generated it?

A I do not.

Q Do you know if it's a document that is kept in the ordinary course of business of UniGroup?

A I would assume so.

Q Do you know if it's an excerpt --
A I'm sorry, at least the information on the document.
Q Right. And so I guess that's really what I'm getting at is, the information that we see on this document, do you know where that was extracted or excerpted from?
A I do not.
Q Do you know if that was prepared specifically in anticipation of this deposition?
A I do not.
Q Ryan didn't ask you this. I know you said that you're the COO of UniGroup and you've been with the company for over 31 years. Are you testifying out of Missouri today?
A I am.
Q And the office that you're in, where is that physically located? What's the address there?
A It's 1 premier Drive.
Q Okay.
A Fenton, Missouri.
Q The main business address for UniGroup, correct?
A Yes.
Q All right. There is an individual I'm

curious about, Kathy Steis. Are you familiar with that name?
A Kathy Steis, maybe?
Q Steis, S-T-E-I-S.
A Yes, I am familiar.
Q And is Kathy somebody who you have interaction with as part of your role and responsibility of the company?
A From time to time.
Q Did you speak with her or have any communication with her in preparation for your testimony here today?
A No, sir.
Q Did you see any of the documents that were provided by UniGroup that appear to have been generated by Kathy?
A No, sir.
Q What is your understanding of what her general role and responsibility would be in terms of maintenance of documents as it relates to members of the co-op?
A So she reports to Chris Wynn, which is the agency success director.
Q He's the what director? Sorry.
A He's the ASD on that last document.

Agency success director.

Q Okay. And so a couple things that I'd like to go through with you. Obviously, there are a number of entities on this. This is a one-page document within the production, and it only lists Florida, Georgia, and one South Carolina entity.

There are -- there is only one Florida entity that I see, that being Peluso Movers, that is noted to have any stock certificate. Are you with me on that?

A Yes.

Q The other Florida entities, do they not hold any stock?

A Well, it has a number of shares in the center column.

Q Okay.

A Whether a stock certificate exists or not, I'm unaware.

Q Okay. Because we only saw -- and counsel provided us with a stock certificate specific to Peluso Movers. Can you just explain that a little bit more for me how an entity would have shares but no stock certificate, please.

MR. EHRENREICH: Yeah, let me intervene. So the agreement was that we

would provide an example of a stock certificate, and that was the agreement of counsel. So we provided one.

So Mr. McCabe nor UniGroup made that decision to provide that. That was by agreement of counsel that we would provide that stock certificate -- or not that one but an example of one. I'm sorry.

MR. NORDEN: Sure. And, Todd, maybe you can clarify this for me, then. So on the column that is for stock certificates which says that stock is certificated only at a member's request, that's what I'm trying to understand is can somebody hold shares without having certificates?

MR. EHRENREICH: Yeah. So if -- you don't -- you don't have to physically possess one. If somebody wants to physically possess one, then one can be generated. But you don't have to physically possess it, and that's what that's telling you.

MR. NORDEN: Okay. Thank you.

BY MR. NORDEN:
Q Mr. McCabe, back to you. So on any of those Florida entities, do you have any information as we sit here today as to when any of them became members?
A Not specific dates.
Q Okay.
A But, again, these have all been with us for quite some time.
Q Sure. So, for example, I know with Nilson Van & Storage, the South Carolina entity, you said it was decades, I believe.
Just looking at this list and your time at the company and being an officer, can you tell me if any of those Florida entities are decades as well that they have been members of the co-op?
A Yes. I would say in decades with an S, it's probably not as a general term. But A-1-A Atlantic has been with us for a long time. A long time being, let's say, you know, 10 years plus. A&A Transfer, the same. Sorensen is probably one of the newer ones, but definitely seven or eight years.
Q Okay. And would the current status of any

of these entities and their membership, is that information that you have available?

A Current status as far as like when they joined the --

Q Only whether or not they are still members, sir.

A Oh, yes.

Q All right.

MR. NORDEN: And I don't know whether or not -- I know there are a couple of exhibits marked that Ryan had marked in.

I'm just going to go ahead and mark the production which totals -- the initial production -- 56 pages as Exhibit 4 to this transcript.

MR. EHRENREICH: Yes. So we can't attach it because of the confidentiality. So you can't -- you can reference it and I'm happy about that.

But to attach it, that's the whole point of the confidential nature of this. So everyone has a copy of it, so everyone knows what it is. But if we attach a copy, then it becomes public, and that's what we're trying to prevent.

MR. NORDEN: All right.
MR. EHRENREICH: But we have no objection to making that statement on the record as your composite exhibit.
MR. NORDEN: Okay. So we'll identify it and it just won't actually be attached. That's not a problem.
MR. EHRENREICH: Correct. Yeah.
BY MR. NORDEN:
Q Okay. Mr. McCabe, what I've got up on the screen are the bylaws that have been referenced a couple of times. Is this -- the bylaws are something you're, I assume as the COO, familiar with?
A Yes.
Q All right. And as it relates to -- I'm trying to remember. There was only one entity that you listed, and I think it was Peluso Movers at the outset about the Florida entities, which we also have a stock certificate for.
And can you tell me, based upon the bylaws that we've got and the qualifications for membership, whether or not -- what their status would be as a 20-share member?
A So they are a member of the cooperative

having shares in the cooperative. They are below the threshold of 25, so they're a nonvoting member.

Q Okay. And as I understand it, having read through the bylaws, anybody who becomes a member is supposed to make an agreement to get up to a 25-share status, right?

A That's correct. Over time.

Q Okay. Is it -- at the time that the relationship begins, is there some plan as to how long that will take?

A To the best of my knowledge, there is none in place right now.

Q Okay. And what's the difference between a legacy member or a new member?

A So when the cooperative was formed, we had members already and they became legacy members. So they became part of the cooperative. And then new members are any new members after the cooperative was formed that come into the cooperative.

Q Okay. One of the things that came up while you were talking to Ryan earlier is obviously related to a conversation you all were having about UniGroup acting on behalf of its members and it's

comprised of its members, right?
And if I understood your testimony earlier this afternoon, it is that Joe Moholland is still a member of the co-op, correct?
A Still a shareholder.
Q Still a shareholder, excuse me.
And so as a shareholder, Moholland is also a partial owner of UniGroup CA, true?
A That's correct.
Q And --
MR. EHRENREICH: So, remember, this is jurisdictional. So I'll give you some latitude, but we're not going into that aspect of it.
MR. NORDEN: Yeah, I've got one more question, Todd.
MR. EHRENREICH: No problem.
MR. NORDEN: I'm not getting into this.
MR. EHRENREICH: Appreciate it.
BY MR. NORDEN:
Q Would you also, then, agree with me that currently Moholland is a partial owner of UniGroup CA and its subsidiaries?

MR. EHRENREICH: Object to form.
A It is a member of the cooperative which is UniGroup.
BY MR. NORDEN:
Q I'll drop down to the next set of documents I'd like to talk to you about. Give me just one second.
So I'm still going to be within the bylaws, and this is going to be on the Bates Page 22 of the bylaws. This is a consent notification section. Do you see where I'm at?
A I can see it.
Q And am I reading this accurately, that there should be written notification to Peluso as it relates to adoption of these bylaws and them being bound by them?
A Correct.
Q Okay. So I'd like to take a minute and look at the corporate structure for UniGroup, its subsidiary org chart. Is this something also you had an opportunity to look at in anticipation of this deposition today?
A Yes, sir.
Q All right. So as it relates to the members of the co-op, and let's focus on Peluso

since that's what we've been discussing as one of the Florida members, can you tell me where Peluso would fall within this org chart?

A If can you scroll up just a little bit.

Q Sure.

A You see it above UniGroup.

MR. EHRENREICH: If you scroll down.

A I'm sorry, scroll down. Sorry.

MR. EHRENREICH: What's up at the top of the very top. Keep going.

A There you go.

So Peluso is a UniGroup member and shareholder.

BY MR. NORDEN:

Q Okay. And this corporate org chart, when was this generated? Meaning was it something that was generated for today, or is this just a document that's kept in the ordinary course of business at UniGroup CA?

A I believe it is a document kept in the normal course of business.

Q Okay. And so then, can you tell me -- I'm going to move down on the org chart as we flow down through transportation services group.

A Um-hum.

Q When we get over to Mayflower Transit and then the entities that are listed under Mayflower Transit, can you describe for me or explain who these companies are and how they are referred to?
A Yes. They are subsidiaries of Mayflower that conduct business with government entities.
Q Okay.
A So military and government services.
Q All right. And so we should not see any of the members that we've been talking about on that first chart that we looked at as a subsidiary under Mayflower Transit LLC, true?
A That's true.
Q Okay. Would Moholland have ever been an entity that would've been doing business as a subsidiary of Mayflower Transit LLC?
MR. EHRENREICH: Object to the form. They're not subsidiaries. Objecting to the term subsidiary. Mayflower is a subsidiary. Those in that box you're pointing at, those are not subsidiaries.
BY MR. NORDEN:
Q All right. How would you refer to these entities that are listed below Mayflower, Mr. McCabe?

A They are companies that are used in the normal course of business for government and military work.
Q Would Moholland have been one of those entities that would have been used in the ordinary course of business for Mayflower to do military moves?
A They would not be in this box.
Q Okay. Should Moholland have only been included -- if we were putting all the names in -- up within the UniGroup members and shareholders box?
A That's correct.
Q Thank you.
All right. We're going to be at Bates Page 40 of the UniGroup production for this deposition. Can you see my screen, Mr. McCabe?
A Yes, sir.
Q Mayflower Transit Common Owner Groups, do you see where I'm referring to?
A Yes, I do.
Q All right. Can you tell me what this document is, please, sir?
A So it's put together by the request of this deposition, I'm sure, because it's limited to Georgia, Florida, and, I assume, South Carolina.

Q Yes, sir. Nilson is right there.
A Yep. So those are the agents of Mayflower that provide services. They are city, state, and address.
Q And when you say agents of Mayflower, can you explain what that means, please?
A So -- yes. You have members of UniGroup, and then you have agents of Mayflower Transit. So it is their agreement to provide services on behalf of Mayflower.
Q And so a -- are agents also sometimes referred to as common owners?
A The common -- when we refer to common owner, that is the -- when an agent has multiple locations, the common owner is one -- their main location, if you will.
Q All right. So there are certain boxes that are just white, and you see some are kind of grayscale. Do you have any idea why that is?
A I do not.
Q Okay. Let me see if I can find Peluso here.
Okay. So there's Peluso that we talked about on the one page. On the common owner groups, I'm going to move slowly and you tell me if

you see it. I did not when I scrolled through.
But as it relates to them acting as an agent, is that something that is separate and distinct from their status as a member of the co-op?
A I'm still looking for Peluso. Sorry.
Q Yes. No problem.
A So an agent has an agency agreement with Mayflower to provide services on behalf of Mayflower. They have their membership into the cooperative that's governed by the bylaws.
Q Could Peluso be a member of the co-op and not act as an agent of Mayflower?
A They could in the terminated status.
Q Say that for me one more time.
A In a terminated status, they could.
Q Okay. And so really what I'm trying to understand is, as I understand what we are discussing, once somebody becomes a member of the co-op and they are active, they would also then have some type of agreement whereby they would act as an agent on behalf of Mayflower. Is that accurate?
A That is accurate.
Q And if Peluso is in good standing with -- and an active member of the co-op, should Peluso show up on the Mayflower Transit Common Owner

Group's document that we were looking at here?
A Yes.
Q Which is why I asked you that question earlier about whether you knew what their status was. And this may be a continuation, sir, of the same document.
A It is. It goes under United Van Lines.
Q Okay. And so...
A Yeah, one was Mayflower, one was United.
Q Okay. And there we have Peluso.
A Right.
Q So as a member of the UniGroup co-op, do certain entities only act as agents for United Van Lines?
MR. EHRENREICH: So we're not going there. This is -- it's just jurisdictional. He's not here on behalf of United Van Lines.
If you can tell me how this has anything to do with the jurisdictional discovery that we're here on, I'll listen to you, but other than that, he's not going to speak on behalf of United Van Lines today.
MR. NORDEN: Todd, I'm just trying to

understand -- well, in all fairness, this was produced by UniGroup for the purpose of this deposition. He's a designee. And I'm just trying to understand what you all have produced.

BY MR. NORDEN:

Q Mr. McCabe, in addition to being the COO of UniGroup, do you hold any other positions as a corporate officer of any other entity?

A Yes, I do.

Q What entities are those, sir?

A For instance, on that organizational chart, Frontline Relocations Solutions I'm the President of. President and COO, I believe.

Q Okay. Do you hold any position with United Van Lines?

A I am the COO of United Van Lines.

Q And did you review these documents in anticipation of your testimony here today, sir?

A I did not review this document, no.

Q And just like I asked you about some of the other documents, this is the United Van Lines Common Owner Group page that we were just referring to. And I'll just move up to the last page after the Mayflower Transit Common Owner Groups. Do you

see the field, name, city, state, and address?
A Yes, sir.
Q When we come down to the United Van Lines, do you see that there are additional fields?
A Yes, sir.
Q Do you have any additional idea why there's a difference between these two forms that were produced here?
A I do not, other than the carrier is U for United or M for Mayflower. And I'm not sure what office type is.
MR. NORDEN: Sir, just give me one moment. I'm going to check my notes and come back and see if there's any additional questions I have for you. Give me just one moment, please.
THE WITNESS: Sure.
(The deposition went off the record.)
BY MR. NORDEN:
Q All right. Mr. McCabe, are you ready to continue?
A Yes, sir.
Q Okay. I've got back up on the screen the chart that we discussed initially with the member shares and so forth.

As the COO of UniGroup CA, what would you look to to determine the status of any member of the co-op right now? And if you wanted to see who was currently a member of the co-op, what would you go and look to?

MR. EHRENREICH: So let's remember, this is a 30(b)(6) corporate representative. He's not here on his individual capacity. I'll let him answer the question, but I want to keep in those confines.

MR. NORDEN: Okay, but as an officer --

MR. EHRENREICH: I just said he could answer the question.

THE WITNESS: So as far as the status of their membership in the cooperative, is that the question?

BY MR. NORDEN:

Q Right. So aside from this static document that we looked at and I had asked you if you knew who prepared it, when it was prepared, what it was drawn from and so forth, I'm asking you because you're the designee here, how would you determine who is currently a member and what their status is?

Like, what would you look to?
A I would more than likely talk with Kathy Steis to get the current status of a particular member.
Q And does she work out of that same location as yourself?
A She does.
Q Okay. And the only reason that I have her name, you can see it on the back, bottom of the page here, that Ms. Steis had prepared these common owner group lists that were produced here. And she's listed her department is business development. Is that, in fact, what Ms. Steis does?
A Well, she works within the -- she's the administrative assistant of business development.
Q So would you consider her to be kind of the go-to person if you need information about members and so forth?
A Herself or Chris Wynn. Chris Wynn is no longer with the company, though. He is retired.
MR. NORDEN: Okay, I don't have any other questions for you, sir. Thank you for your time.
THE WITNESS: Thank you.
MR. EHRENREICH: Hey, Ryan, did you

guys have any follow-ups? I'll take that as a no. All right.

MR. LANGLEY: None from us, Todd, but I think Dan Snipes, John Pope --

MR. POPE: -- yeah, I just got a quick question.

MR. EHRENREICH: Go ahead.

EXAMINATION

BY MR. POPE:

Q Bob, my name is John Pope. I'll be very brief. I wanted to reference the Bates number document 32 which I believe is, When Member/Agent Self-Terminates, Voluntary is the title.

A Okay.

Q Do you have that in front of you?

A I'm seeing if I do.

Q I can show it if you need me to.

A Yeah, that would be probably best, please.

Q Okay. Can you see my screen?

A Yeah, it's a little small.

Q Yeah, it is a little small. Let me see if I can make a bigger.

Well, I don't want to waste your time. I want to ask you specifically about number 9

on Bates number 32 which states the AAE administration assistant will send out the designated UniGroup executive management and the board of directors the day of the member's termination.

Do you know who the AAE administrative -- administrative assistant is?

A Yeah, that would be Kathy Steis.

Q And has she been in that position for some time?

A Yes, sir.

Q Do you know how long, roughly?

A Oh, gosh, well over 10 years.

Q Okay.

MR. POPE: That's all the questions I have.

MR. EHRENREICH: Thank you. Anybody else?

THE VIDEOGRAPHER: This concludes the 30(b)(6) videotape deposition of Mr. Bob McCabe at 3:34 p.m.

MR. EHRENREICH: Thank you.

(The signature is reserved and the deposition concludes at 3:34 p.m.)

---oOo---

STATE OF SOUTH CAROLINA )
: CERTIFICATE
COUNTY OF DORCHESTER )

I, Katie L. Graff, Notary Public, certify that I was authorized to and did voice stenographically report the foregoing deposition, and that the transcript is a true record of the testimony given by the witness.

I further certify that the witness was duly sworn and cautioned by me to tell the truth, the whole truth, and nothing but the truth. I certify that the same was reduced to typewritten form from my original voice stenograph notes by computer-aided transcription.

I further certify that I am not of counsel or kin to any of the parties to this cause of action nor am I interested in any manner in its outcome.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this the 19th day of November 2024.

Katie L. Graff

Katie L. Graff
Notary Public, South Carolina
My Comm. Expires 03-07-2033

November 19, 2024

Robert McCabe
c/o Todd Ehrenreich

Dear Deponent,

Please find a copy of your deposition. You will also find enclosed the attestation page from the original deposition.

This is a verbatim transcript. If, however, you feel that it is necessary to make any corrections or changes, you may do so on the attestation page, indicating page and line number. You must state your reason for making the change.

Upon completion, please sign and date the attestation page from the original transcript in front of a notary public and return within 30 days to Katie L. Graff, 156 Whitetail Road, Summerville, South Carolina 29483.

If you have any questions, feel free to contact me.

Yours truly,

Katie L. Graff
Court Reporter

ATTESTATION

In Re: Sloan, et al. v. Burist, et al.
Case No.: 2:22-cv-00076-LGW
Deposition of: Robert McCabe as 30(b)(6) representative of UniGroup, C.A.
Date Taken: Tuesday, October 29, 2024
Taken Before: Katie L. Graff, Notary Public

I have read the transcript of my deposition and find that no changes are necessary.

____________________________
Name of Deponent

Having read the transcript of my deposition, I wish to make the following corrections: (State reason.)

Page Line :

Page Line :

Page Line :

Page Line :

Page Line :

____________________________
Name of Deponent

Sworn to and subscribed before me this ______ day of__________, 202 , in ______________ County, South Carolina.

____________________________
Notary Public
State of South Carolina
My Comm. Expires:______________

## A

**A&A (2)** 16:2;48:22
**A-1-A (2)** 16:1;48:19
**AAE (2)** 65:1,6
**ability (4)** 13:17,19,21,24
**able (1)** 17:10
**above (1)** 54:6
**according (1)** 30:24
**accurate (2)** 58:21,22
**accurately (1)** 53:13
**acknowledging (1)** 32:9
**act (4)** 33:17;58:12,20; 59:13
**acting (3)** 29:6;51:25;58:2
**action (6)** 14:22,24;21:6; 24:25;37:19;38:13
**active (2)** 58:19,24
**actual (2)** 28:24;35:11
**actually (3)** 31:24;41:15;50:6
**addition (2)** 31:25;60:7
**additional (3)** 61:4,6,15
**address (8)** 16:17,20,25;17:10; 44:18,22;57:4;61:1
**administration (1)** 65:2
**administrative (3)** 63:15;65:7,7
**admission (1)** 20:9
**adoption (1)** 53:15
**ADSI (2)** 15:23,23
**advice (2)** 11:17,24
**affect (1)** 13:20
**affirm (1)** 9:14
**afield (2)** 26:15;27:24
**afternoon (1)** 52:3
**again (3)** 25:22;28:5;48:8
**agency (4)** 41:14;45:23;46:1; 58:7
**agent (6)** 40:5;57:14;58:3,7, 12,21
**agents (6)** 40:25;57:2,5,8,11; 59:13
**ago (2)** 10:9;42:24
**agree (6)** 15:3,4;39:22;40:2; 41:8;52:23
**agreeing (1)** 14:18
**agreement (7)** 46:25;47:2,6;51:6; 57:9;58:7,20
**ahead (2)** 49:12;64:7
**alcohol (1)** 13:20
**allegation (1)** 29:18
**alleged (1)** 26:12
**allow (2)** 34:5;38:10
**along (1)** 32:16
**amount (2)** 32:11;34:18
**analogous (1)** 32:19
**analogy (1)** 33:8
**Andrew (1)** 8:17
**Angela (1)** 8:25
**anticipation (3)** 44:10;53:21;60:19
**apologies (1)** 42:10
**appear (1)** 45:15
**appearances (1)** 8:11
**applicable (2)** 41:8,17
**appreciate (2)** 11:13;52:21
**appropriate (2)** 11:11;33:8
**April (1)** 24:3
**area (2)** 12:4;41:13
**argument (4)** 30:13,13;32:14; 33:4
**arguments (1)** 33:13
**ASD (2)** 41:14;45:25
**aside (1)** 62:20
**aspect (2)** 26:16;52:15
**assistant (3)** 63:15;65:2,7
**associated (1)** 24:23
**association (1)** 22:16
**assume (3)** 43:25;50:13;56:25
**assumption (1)** 10:18
**Atlantic (2)** 16:1;48:20
**attach (3)** 49:17,20,24
**attached (2)** 24:19;50:6
**attorney (1)** 10:24
**attorney-client (4)** 10:15;12:1;25:7,17
**attorneys (1)** 11:22
**available (3)** 15:17;16:22;49:2
**aware (2)** 18:11,15

## B

**back (7)** 13:12;39:14;41:25; 48:2;61:14,23;63:9
**based (2)** 25:16;50:21
**basic (1)** 23:10
**basically (1)** 29:8
**basics (1)** 11:5
**Bates (9)** 40:7;42:24;43:2,5, 7;53:9;56:15;64:11; 65:1
**bear (1)** 23:9
**became (3)** 48:4;51:17,18
**becomes (3)** 49:24;51:5;58:18
**begins (2)** 8:1;51:10
**behalf (18)** 14:11;21:8;27:3; 28:12,16;29:6;31:5; 37:4,14,19;38:13; 39:25;51:25;57:10; 58:8,21;59:17,23
**below (2)** 51:1;55:24
**best (6)** 13:6,17;31:16; 35:16;51:12;64:18
**bigger (1)** 64:23
**bit (3)** 14:4;46:22;54:4
**Board (4)** 24:13,18;38:1;65:4
**Bob (17)** 8:6;10:12;13:1,11; 17:13;22:8;28:12; 30:25;31:15;34:14; 36:21;38:7,8;39:18; 40:23;64:10;65:20
**borne (1)** 25:2
**Both (1)** 37:12
**bottom (4)** 40:7;41:7;43:1; 63:9
**bound (1)** 53:16
**box (3)** 55:20;56:8,11
**boxes (1)** 57:17
**breakdown (1)** 32:3
**brief (1)** 64:11
**briefed (2)** 36:4,8
**briefing (2)** 36:10,10
**Brighten (1)** 9:3
**Browning (1)** 16:4
**Burist (1)** 9:1
**business (14)** 20:18;25:24;32:25; 33:2;43:24;44:22; 54:18,21;55:6,15; 56:2,6;63:12,15
**bylaws (16)** 21:17,18;23:19; 24:10,11,19;26:9; 40:5;50:11,12,22; 51:5;53:9,10,15; 58:10

## C

**CA (4)** 52:8,25;54:19;62:1
**call (2)** 13:1,3
**called (1)** 40:7
**came (2)** 43:19;51:22
**can (47)** 13:11;15:3;16:6,20, 22;17:2,9;21:11,22; 24:14,14;27:11;28:6, 22;29:19;31:16,20; 32:3;34:9;36:1,1; 37:15;39:20,22; 40:11;41:8;46:21; 47:11,15,20;48:14; 49:18;50:21;53:12; 54:2,4,22;55:3;56:16, 21;57:5,21;59:19; 63:9;64:17,20,23
**capability (1)** 13:7
**capacity (3)** 37:14;38:5;62:9
**caption (1)** 8:5
**Carly (1)** 9:11
**Carolina (15)** 15:6,11,13,19;16:7; 17:12;23:3,3;30:11; 33:11;38:19,23;46:6; 48:11;56:25
**carrier (3)** 21:8;31:6;61:9
**carte (1)** 31:21
**case (7)** 10:11;12:5;21:7; 27:10;31:3;35:18; 39:24
**catch (1)** 16:19
**center (1)** 46:15
**certain (2)** 57:17;59:13
**certainly (1)** 42:4
**certificate (7)** 46:9,17,20,23;47:2, 7;50:20
**certificated (1)** 47:13
**certificates (2)** 47:12,16
**Charlie (1)** 8:12
**chart (9)** 21:22;22:4;53:20; 54:3,15,23;55:11; 60:13;61:24

**check (1)**
61:13
**chief (3)**
17:24;18:18;19:21
**Chris (6)**
41:18,19,25;45:22;63:19,19
**circumstances (1)**
28:11
**citizen (4)**
30:11;33:11;38:19,22
**city (5)**
16:24,24;17:1;57:3;61:1
**clarify (1)**
47:11
**clients (1)**
36:12
**close (1)**
31:3
**Coastal (1)**
16:3
**collision (7)**
18:8,15,21,25;19:4,11;36:24
**Columbia (1)**
17:12
**column (2)**
46:15;47:12
**comfortable (1)**
29:20
**Common (10)**
56:18;57:12,13,13,15,24;58:25;60:23,25;63:10
**communication (3)**
18:19;39:23;45:11
**companies (4)**
20:17;25:23;55:4;56:1
**Company (10)**
9:12;15:24;19:25;20:21,25;34:22;44:14;45:8;48:14;63:20
**composite (1)**
50:4
**comprised (1)**
52:1
**concern (1)**
28:8
**concludes (2)**
65:19,24
**conduct (1)**
55:6
**confer (2)**
20:7;36:14
**confidential (4)**
40:6,10;42:25;49:21
**confidentiality (1)**
49:17
**confine (1)**
30:15
**confines (3)**
19:8;35:1;62:11
**confirm (4)**
13:12;17:10;33:7;39:18
**Congratulations (1)**
18:5
**consent (1)**
53:10
**Conser (1)**
16:3
**consider (1)**
63:16
**contention (3)**
29:25;30:9,9
**context (1)**
11:23
**continuation (1)**
59:5
**continue (2)**
11:7;61:21
**conversation (1)**
51:24
**conversations (1)**
18:25
**COO (6)**
44:13;50:13;60:7,14,17;62:1
**co-op (20)**
20:2,13;23:23;24:2,6;30:10,12;33:12;38:21;45:21;48:17;52:4;53:25;58:4,11,19,24;59:12;62:3,4
**COOPER (2)**
8:25,25
**cooperation (1)**
22:24
**cooperative (22)**
15:16,20;16:13,14;20:20;21:18;22:15;23:1;25:21;26:5,7;31:22;32:18;50:25;51:1,16,18,20,21;53:2;58:10;62:17
**cooperatives (2)**
15:7;23:2
**copy (6)**
12:13;21:17;22:10;42:5;49:22,24
**corporate (9)**
10:1;14:3;15:2;21:16;22:3;53:19;54:15;60:9;62:7
**corporation (2)**
30:5;32:24
**costs (1)**
24:23
**Counsel (15)**
8:4,10;11:16,18,23;20:8;21:14;23:15;25:8,13;36:4,8;46:19;47:3,6
**counsel's (1)**
35:1
**country (1)**
25:23
**couple (5)**
11:3;39:20;46:2;49:10;50:12
**course (5)**
43:24;54:18,21;56:2,6
**court (5)**
8:7;9:13;19:8;22:12;40:19
**cross (1)**
42:7
**crossover (1)**
12:3
**curious (1)**
45:1
**current (3)**
48:25;49:3;63:3
**currently (3)**
52:24;62:4,25

**D**

**Dan (1)**
64:4
**date (2)**
41:7,9
**dates (1)**
48:6
**Dave (1)**
8:21
**day (1)**
65:4
**Days (4)**
18:15,17;19:1,4
**dealing (1)**
28:16
**decades (5)**
15:18;16:13;48:12,16,18
**decision (2)**
25:11;47:5
**defendants (1)**
8:24
**defined (3)**
23:19;24:9;26:8
**definitely (1)**
48:23
**deny (1)**
33:7
**department (1)**
63:12
**dependent (1)**
39:2
**depending (1)**
23:13
**depends (1)**
31:23
**deponent (2)**
10:11;12:5
**deposed (1)**
41:25
**deposition (22)**
8:1,6;9:22;10:4,8;11:4,9;12:11,14;13:10;23:6;37:5;39:13,20;44:10;53:22;56:16,24;60:3;61:18;65:20,24
**depositions (2)**
14:5;38:10
**describe (1)**
55:3
**designated (5)**
9:25;10:11;12:5;36:3;65:3
**designee (9)**
9:24;12:6;13:25;14:14,17;15:1,2;60:3;62:24
**destroyed (1)**
38:20
**details (2)**
38:15,17
**determine (2)**
62:2,24
**determining (1)**
25:1
**development (2)**
63:12,15
**difference (3)**
20:14;51:14;61:7
**different (10)**
11:9;14:4,5,9;17:18;20:4,5;23:4;30:9;31:13
**differently (1)**
20:15
**directly (1)**
21:13
**director (5)**
41:13,15;45:23,24;46:1
**Directors (3)**
24:13,18;65:4
**disagree (1)**
34:5
**disagreement (1)**
33:19
**discovery (5)**
19:16,18;29:1;36:2;59:21
**discretion (1)**
24:18
**discussed (4)**
36:13,14;39:6;61:24
**discussing (2)**
54:1;58:18
**discussions (1)**
18:25
**distinct (2)**
32:23;58:4
**distinguishing (1)**
20:11
**distributed (1)**
26:9
**diverse (1)**
32:25
**diversity (3)**
30:5;32:22;38:20
**divided (1)**
26:25
**division (1)**
26:1
**document (20)**
20:11;21:15;40:6,9,23;41:14;43:18,23;44:3,6;45:25;46:5;54:17,20;56:22;59:1,6;60:20;62:20;64:12
**documentation (2)**
20:6,9
**documented (1)**
20:5
**documents (11)**
21:11;30:25;42:20;43:5,7,8;45:14,20;53:6;60:18,22
**dollars (1)**
31:7
**done (2)**
24:15;36:23
**Donner (1)**
9:3
**down (7)**
41:7;53:5;54:7,8,23,23;61:3
**drawn (1)**
62:23
**Drive (1)**
44:19
**drop (1)**
53:5
**drug (1)**
13:20
**dumb (1)**
23:9

**E**

**earlier (6)**
21:16;27:1;28:13;51:23;52:3;59:4
**educated (1)**
12:8
**education (3)**
12:9;13:13;14:24
**EHRENREICH (59)**
8:23;9:2,3;10:12;14:1,8,18;16:23;17:5;19:6,15;25:5,18;26:14;27:13,23;28:9,21;30:8;31:10;32:6,

15;33:9,18;35:20;
36:1,9;37:1,10,13;
38:3,16;39:10;40:1,
14;41:24;42:3,9,13;
43:6;46:24;47:17;
49:16;50:2,8;52:12,
18,21;53:1;54:7,9;
55:17;59:15;62:6,14;
63:25;64:7;65:17,22
**eight (1)**
48:23
**either (4)**
12:9;13:13;14:22;
37:2
**elements (1)**
12:10
**Elliott (2)**
9:7,7
**else (3)**
12:2;18:20;65:18
**emails (1)**
21:6
**employee (2)**
37:25;38:14
**employees (7)**
20:23,23,25;21:4,5;
27:2;29:4
**end (1)**
24:3
**ending (1)**
42:25
**engaged (2)**
20:17;25:24
**enough (1)**
28:7
**entirely (1)**
35:13
**entities (13)**
23:22;46:4,12;48:3,
15;49:1;50:19;55:2,6,
24;56:5;59:13;60:11
**entitled (3)**
29:21;38:15,16
**entity (10)**
16:12;17:16,17;
46:6,8,22;48:11;
50:17;55:15;60:9
**essentially (1)**
27:2
**evaluating (1)**
29:25
**even (2)**
17:1;19:11
**everybody (2)**
43:5,9
**everyone (2)**
49:22,23
**exact (2)**
18:12,13
**EXAMINATION (3)**
9:18;42:15;64:8
**example (5)**
29:19;34:14;47:1,8;
48:10
**except (1)**
33:1
**excerpt (1)**
44:1
**excerpted (1)**
44:7
**excuse (2)**
20:24;52:6
**executive (1)**
65:3
**Exhibit (11)**
12:20,21;13:4,10;
21:23,24;22:13;
40:19,20;49:15;50:4
**exhibits (2)**
12:25;49:11
**exists (1)**
46:17
**expedite (1)**
39:19
**expense (1)**
25:2
**expenses (1)**
24:23
**experience (4)**
10:23;12:9;13:14;
14:24
**explain (3)**
46:21;55:3;57:6
**explained (1)**
32:8
**explaining (1)**
33:24
**explanation (1)**
11:11
**extracted (1)**
44:6
**eyewitness (1)**
39:3

## F

**fact (1)**
63:13
**facts (1)**
31:2
**fair (2)**
22:25;31:17
**fairness (1)**
60:1
**fall (1)**
54:3
**familiar (3)**
45:1,5;50:13
**far (5)**
23:3;26:15;27:24;
49:3;62:16
**feel (1)**
10:16
**felt (1)**
19:5
**Fenton (1)**
44:21
**few (1)**
39:21
**field (1)**
61:1
**fields (1)**
61:4
**figure (1)**
10:22
**Final (1)**
24:3
**find (2)**
14:15;57:21
**fine (1)**
22:11
**finer (1)**
33:4
**first (1)**
55:11
**fit (1)**
19:11
**flexibility (1)**
24:12
**flip (1)**
42:24
**Florida (11)**
15:6,25;16:1;46:6,
8,12;48:3,15;50:19;
54:2;56:25
**flow (3)**
29:10;33:13;54:23
**focus (1)**
53:25
**follow (1)**
28:2
**following (1)**
38:25
**follows (1)**
9:17
**follow-up (1)**
35:24
**follow-ups (2)**
39:21;64:1
**form (5)**
31:10,13;40:1;53:1;
55:17
**formed (2)**
51:16,20
**forms (1)**
61:7
**forth (4)**
43:14;61:25;62:23;
63:18
**forward (1)**
42:24
**Foss (1)**
8:13
**found (1)**
19:12
**free (1)**
10:16
**front (5)**
12:16;13:5;17:1;
22:8;64:15
**Frontline (1)**
60:13
**full (1)**
16:25
**further (1)**
32:3

## G

**Garr (1)**
18:20
**gave (1)**
10:7
**Geldens (1)**
9:4
**general (8)**
11:22;27:19;28:1,7;
34:10;35:2;45:19;
48:19
**generalities (1)**
27:15
**generally (1)**
28:23
**generated (6)**
31:7;43:21;45:16;
47:21;54:16,17
**Georgia (6)**
15:6,22;23:3;41:16;
46:6;56:25
**Gilson (2)**
9:9,9
**given (3)**
10:4;11:17;29:9
**gives (1)**
24:12
**goes (9)**
27:7,8;31:8,8,9;
32:4,5;33:16;59:7
**good (3)**
11:5;14:20;58:23
**Google (1)**
17:8
**gosh (1)**
65:13
**go-to (1)**
63:17
**governed (1)**
58:10
**government (3)**
55:6,8;56:2
**Graff (2)**
8:8,8
**gray (1)**
12:4
**grayscale (1)**
57:19
**Great (2)**
15:5;40:15
**ground (1)**
10:22
**group (3)**
54:24;60:23;63:11
**Groups (3)**
56:18;57:25;60:25
**Group's (1)**
59:1
**guess (3)**
20:13;29:18;44:4
**Guys (2)**
42:7;64:1

## H

**H&S (1)**
15:23
**half (1)**
18:1
**hand (1)**
34:7
**happened (1)**
26:12
**happy (1)**
49:19
**heading (1)**
22:2
**help (1)**
32:13
**Herself (1)**
63:19
**Hey (1)**
63:25
**himself (1)**
14:16
**Hines (1)**
8:18
**historically (1)**
26:4
**Hodge (1)**
8:13
**hold (5)**
14:1;46:13;47:15;
60:8,15
**holds (1)**
23:14
**hopefully (1)**
43:2
**huh-uh (1)**
11:6
**hundred (2)**
34:19,21
**hundreds (1)**
34:23

## I

**idea (2)**
57:19;61:6
**identification (3)**
12:22;21:25;40:21
**identify (1)**
50:5
**implicates (1)**
11:20
**important (1)**
33:7

**Inc (2)** 9:10;37:8
**incident (1)** 36:16
**included (1)** 56:10
**independent (5)** 20:17,22;25:23;36:21;37:3
**individual (4)** 37:14;38:5;44:25;62:9
**individually (2)** 37:11,25
**influence (1)** 13:19
**information (9)** 14:15,17;15:2;17:2;44:2,5;48:3;49:2;63:17
**initial (1)** 49:14
**initially (1)** 61:24
**instance (1)** 60:12
**instead (1)** 27:18
**instructing (3)** 19:14;25:16;31:14
**instructs (1)** 31:14
**Insurance (1)** 9:12
**interaction (5)** 13:14;29:16;33:5,24;45:7
**interacts (1)** 29:22
**Interstate (3)** 16:4;32:2;35:4
**intervene (1)** 46:25
**into (7)** 19:11;29:11;35:8;51:20;52:14,19;58:9
**involved (1)** 37:7
**involving (1)** 21:13
**issue (3)** 29:2;34:7;35:18
**issues (3)** 33:22;36:5;39:6

## J

**January (1)** 41:9
**Jeff (1)** 9:3
**Jim (2)** 9:7,9
**job (2)** 11:5;19:21
**Joe (15)** 8:19;9:5;21:7,9;23:21,22;24:1,5;25:2,11;26:3,11;36:23;37:8;52:3
**John (2)** 64:4,10
**joined (1)** 49:4
**Joseph (1)** 8:15
**July (4)** 18:8;35:18;36:25;41:9
**jurisdictional (13)** 19:10,10,16,17;23:6;26:16;29:1,15;37:5;39:6;52:13;59:17,20

## K

**Kara (1)** 8:20
**Kathy (6)** 45:1,3,6,16;63:2;65:8
**Katie (2)** 8:8;12:24
**keep (3)** 30:14;54:10;62:10
**kept (3)** 43:24;54:18,20
**kind (8)** 10:12;11:1;13:20;20:15;22:25;31:2;57:18;63:16
**knew (2)** 59:4;62:21
**KNIGHT (2)** 9:11,11
**knowledge (9)** 14:3,6,11;25:8,10;35:16,22;39:1;51:12
**knowledgeable (5)** 12:8;13:16,24;14:16,25
**knows (1)** 49:23
**Kyle (2)** 8:13,15

## L

**la (1)** 31:21
**laid (2)** 34:2,13
**Langley (57)** 8:12,12;9:19,20;10:20;12:19,23;14:7,13,20,21;17:3,7,11;19:13,19,20;21:21;22:1,12,14;25:9,15,19;26:18,21;27:22;28:5,10;29:2;30:20,23;31:11;32:13,16;33:14;34:8,12;35:23;36:6,20;37:6,12,17,23;38:12;39:8,16;40:3,16,18,22;41:3,6,22;42:2;64:3
**last (5)** 10:7;11:4;42:1;45:25;60:24
**later (1)** 12:25
**latitude (3)** 30:16,19;52:14
**least (2)** 32:21;44:2
**legacy (2)** 51:15,17
**legal (5)** 8:9;11:1,24;24:25;25:12
**less (1)** 23:17
**likely (2)** 18:17;63:2
**limit (1)** 13:18
**limitation (1)** 13:23
**limited (1)** 56:24
**Lindsay (1)** 15:24
**Lines (8)** 59:7,14,18,24;60:16,17,22;61:3
**list (1)** 48:13
**listed (4)** 50:18;55:2,24;63:12
**listen (1)** 59:21
**lists (2)** 46:5;63:11
**little (8)** 14:4;18:1;23:4;34:10;46:21;54:4;64:21,22
**LLC (12)** 21:8;22:24;23:11,11;30:2,3,4,13;32:18,19;55:12,16
**located (1)** 44:18
**location (2)** 57:16;63:6
**locations (2)** 17:20;57:15
**Locke (1)** 9:7
**logistics (2)** 20:18;25:25
**long (7)** 15:15;17:22;18:14;48:20,20;51:11;65:12
**longer (1)** 63:20
**look (7)** 40:11;42:6;53:19,21;62:2,5;63:1
**looked (2)** 55:11;62:21
**looking (6)** 11:24;17:7;20:13;48:13;58:5;59:1
**looks (2)** 17:18;24:11
**lot (1)** 34:23
**loud (1)** 11:6

## M

**machine (1)** 17:8
**Madam (2)** 22:12;40:19
**magic (1)** 17:8
**main (2)** 44:22;57:15
**maintenance (1)** 45:20
**Makayla (1)** 8:18
**makes (1)** 31:12
**making (1)** 50:3
**management (1)** 65:3
**Mark (7)** 10:14;12:19;13:9;21:23;22:13;40:18;49:13
**marked (5)** 12:21;21:24;40:20;49:11,11
**Matt (2)** 8:13;9:5
**Matt's (1)** 13:7
**may (4)** 17:10;39:21;41:25;59:5
**maybe (5)** 26:19;29:19;34:11;45:3;47:10
**Mayflower (42)** 11:22;19:23,24;20:12,19,21,23;21:2,8;25:3;26:3,11;28:19;29:23;31:5,8;34:15;37:8,20;39:25;40:24;55:1,2,5,12,16,19,24;56:6,18;57:3,5,8,10;58:8,9,12,21,25;59:9;60:25;61:10
**McCabe (18)** 8:6;9:16,20;14:9;33:23;36:15;38:8;42:6,17;43:12;47:4;48:2;50:10;55:25;56:16;60:7;61:20;65:21
**McCabe's (1)** 38:8
**mean (1)** 19:22
**meaning (4)** 32:19;37:10,11;54:16
**means (3)** 12:7;26:24;57:6
**meet (3)** 9:21;28:7;36:14
**meeting (1)** 20:7
**mem- (1)** 34:15
**member (39)** 15:16;16:7,12,14;20:1,12;23:13,23;24:2,8;27:8;29:12;30:12;33:10,12;34:16,20,21;40:5;43:13;50:24,25;51:3,5,15,15;52:4;53:2;54:12;58:4,11,18,24;59:12;61:24;62:3,4,25;63:4
**Member/Agent (1)** 64:12
**members (38)** 15:7,20;20:16,19;23:11;25:21,22;26:3,7;28:17,20;30:2,3,17;31:20;32:20,21;33:6,25;35:5,11;38:22;45:20;48:5,16;49:6;51:17,18,19,19,25;52:1;53:25;54:2;55:10;56:11;57:7;63:18
**member's (2)** 47:14;65:4
**membership (5)** 26:13;49:1;50:23;58:9;62:17
**mentioned (1)** 11:19
**might (1)** 20:10

**military (4)** 31:4;55:8;56:3,6
**minute (1)** 53:18
**Missouri (5)** 22:15,22,23;44:15,21
**Moholland (21)** 9:6;18:20;21:7,9;23:21,22;24:1,5;25:2,11;26:3,11;36:17,23;37:8;52:4,8,24;55:14;56:4,9
**moment (3)** 42:23;61:13,16
**money (6)** 27:4,5,6;29:10;34:17;36:23
**months (1)** 18:16
**more (10)** 23:15;27:16;29:20;30:16;34:10;41:4;46:22;52:16;58:14;63:2
**most (12)** 12:8,8;13:15,24;14:2,6,16,25;15:2;18:17;32:19;39:1
**motor (2)** 21:8;31:6
**move (7)** 31:4,7;36:23;37:9;54:23;57:25;60:24
**Movers (3)** 46:8,21;50:18
**moves (3)** 26:11;35:15;56:7
**Moving (14)** 15:23;16:1,2,3,3,4,5,5,17;20:18;23:21;25:24;31:1;35:12
**much (5)** 21:19;31:8,8,9;32:7
**multiple (2)** 17:20;57:14

**N**

**name (6)** 16:6;41:18;45:2;61:1;63:9;64:10
**names (3)** 15:6;27:10;56:10
**naming (1)** 38:20
**nature (2)** 23:7;49:21
**need (10)** 11:7,15,20;19:5;20:10;22:6,8;31:15;63:17;64:17
**needed (1)** 10:22
**needs (1)** 24:21
**new (3)** 51:15,19,19
**newer (1)** 48:23
**next (1)** 53:5
**nice (1)** 9:21
**Nicholas (1)** 9:1
**Nilson (26)** 15:13,15;16:8,10,11,17,20;17:15;29:19,22;30:10,15,20,24;31:1,5,9;33:9,11,17;34:16;35:12,13;38:18;48:10;57:1
**N-I-L-S-O-N (1)** 16:8
**Nilson's (2)** 20:9,11
**none (2)** 51:13;64:3
**nonvoting (2)** 23:18;51:2
**nor (1)** 47:4
**NORDEN (28)** 8:17;42:7,12,14,16;43:4,10,11;47:10,24;48:1;49:9;50:1,5,9;52:16,19,22;53:4;54:14;55:22;59:25;60:6;61:12,19;62:12,19;63:21
**normal (3)** 28:11;54:21;56:2
**North (1)** 23:3
**Norton (1)** 8:17
**noted (1)** 46:9
**notes (1)** 61:13
**notice (6)** 12:11,14;13:9,15;36:18;42:8
**notification (2)** 53:11,14
**number (13)** 9:22;11:9;12:21;15:5;21:24;23:13;40:20;43:13;46:4,14;64:11,25;65:1
**numbers (2)** 33:20;34:4

**O**

**Object (4)** 31:10;40:1;53:1;55:17
**Objecting (1)** 55:18
**objection (3)** 31:12,13;50:3
**objections (1)** 35:1
**Obviously (2)** 46:3;51:23
**October (1)** 8:3
**off (4)** 39:8,11,13;61:18
**offer (1)** 32:1
**office (3)** 13:8;44:17;61:11
**officer (8)** 10:18;17:21,24;18:19;19:22;48:14;60:9;62:13
**offices (1)** 17:19
**once (1)** 58:18
**one (43)** 11:19,21;21:23;23:20;24:15,20,24;26:2,3;29:24;30:6;32:24;33:1;34:19;35:10,14;38:21;39:22;40:25;41:4;42:14;46:6,7;47:3,8,8,19,20,20;48:22;50:17;51:22;52:16;53:7;54:1;56:4;57:15,24;58:14;59:9,9;61:12,16
**one-page (1)** 46:4
**ones (1)** 48:23
**only (11)** 25:7;30:6;46:5,7,19;47:13;49:5;50:17;56:9;59:13;63:8
**oOo- (1)** 65:25
**operated (1)** 27:11
**operates (2)** 26:5;28:12
**operating (6)** 17:24;18:18;19:21;27:3;28:15;37:19
**operation (1)** 30:1
**opportunity (1)** 53:21
**opposed (1)** 11:6
**opposite (1)** 27:20
**order (1)** 26:6
**ordered (1)** 19:9
**ordinary (3)** 43:24;54:18;56:5
**org (4)** 53:20;54:3,15,23
**Organization (4)** 22:4;24:22,22;25:2
**organizational (2)** 21:21;60:12
**others (3)** 14:10;23:12;28:19
**out (11)** 10:22;11:6,15;19:12;24:14,16;34:2,13;44:15;63:5;65:2
**outlines (1)** 40:23
**outset (1)** 50:19
**outside (1)** 10:16
**over (13)** 9:21;10:23;11:4;18:1;19:22;24:9,14,16;36:12;44:14;51:8;55:1;65:13
**own (2)** 14:22,23
**owner (10)** 52:8,24;56:18;57:14,15,24;58:25;60:23,25;63:10
**owners (1)** 57:12
**owns (1)** 25:20

**P**

**PADGETT (2)** 8:15,15
**page (7)** 42:25;53:10;56:15;57:24;60:23,24;63:9
**pages (3)** 43:2,2;49:14
**paid (2)** 26:24;36:22
**paper (1)** 22:10
**parent (8)** 19:25;20:21,25;28:18;29:16;34:15,21;35:8
**part (11)** 11:20;20:20;23:5;35:20,21,25;36:3,18;40:4;45:7;51:18
**partial (2)** 52:8,24
**participate (2)** 30:2;37:24
**particular (3)** 15:9;29:17;63:3
**parties (4)** 27:10,12;34:14,19
**pass (1)** 42:5
**patience (1)** 39:17
**payment (2)** 35:14,17
**Payne (1)** 9:9
**Peluso (15)** 16:5;46:8,21;50:18;53:14,25;54:2,12;57:21,23;58:5,11,23,24;59:10
**percent (3)** 26:24;34:20,21
**percentage (15)** 26:6,22;27:5,7,8;28:17,23;31:18;32:1,4,5,8;34:18,18;35:2
**percentages (4)** 28:25;32:10,11;33:20
**performed (1)** 31:5
**performing (1)** 35:11
**person (10)** 12:8,9;13:15,25;14:2,6,15,25;39:1;63:17
**Petno (1)** 8:22
**physically (4)** 44:18;47:18,20,22
**place (4)** 30:6;32:25;33:2;51:13
**Plaintiff (1)** 8:20
**plaintiffs (3)** 8:14,16,22
**Plaintiff's (3)** 12:21;21:24;40:20
**plan (1)** 51:10
**please (12)** 8:10;9:14;13:2,3,5;15:12;41:22;46:23;56:22;57:6;61:16;64:19
**plus (1)** 48:21
**pm (6)** 8:1,3;39:12,15;65:21,24

**point (5)** 11:15;23:20,21;33:4;49:21
**pointing (1)** 55:21
**policies (1)** 24:21
**policy (1)** 24:19
**Pope (5)** 64:4,5,9,10;65:15
**portion (4)** 31:18;33:16;34:24;35:4
**position (5)** 17:22,23,25;60:15;65:9
**positions (1)** 60:8
**possess (3)** 47:19,20,22
**possible (1)** 31:3
**predepositions (1)** 36:11
**premier (1)** 44:19
**preparation (5)** 12:3;21:12;36:22;42:21;45:11
**prepared (7)** 13:12;15:1;36:19;44:9;62:22,22;63:10
**Present (2)** 8:7;14:11
**presentation (1)** 38:1
**presented (3)** 10:14;36:12;39:5
**President (2)** 60:14,14
**pretty (1)** 21:19
**prevent (1)** 49:25
**principal (3)** 30:6;32:24;33:2
**prior (1)** 26:12
**privilege (2)** 12:1;25:17
**Probably (5)** 10:9;18:17;48:19,22;64:18
**problem (4)** 43:10;50:7;52:18;58:6
**proceed (1)** 42:18
**proceeds (4)** 26:8;33:16;35:7,12
**produced (7)** 30:25;39:24;43:9;60:2,5;61:8;63:11
**production (4)** 46:5;49:13,14;56:15
**profits (2)** 26:2,8
**pronounced (1)** 16:10
**provide (15)** 13:24;14:17;16:24;17:9;20:25;26:6;31:19;34:6;35:4;47:1,5,7;57:3,9;58:8
**provided (4)** 12:10;45:15;46:20;47:3
**providing (1)** 20:8
**public (1)** 49:24
**pull (3)** 22:6,8;40:11
**pulled (1)** 13:6
**purchasing (1)** 31:25
**purpose (2)** 29:25;60:2
**purposes (1)** 30:4
**put (1)** 56:23
**putting (1)** 56:10

## Q

**qualifications (1)** 50:22
**qualifies (1)** 23:16
**qualify (1)** 13:15
**quick (1)** 64:6
**quite (2)** 18:5;48:9

## R

**read (2)** 13:11;51:4
**readily (2)** 15:17;16:21
**reading (2)** 8:4;53:13
**ready (2)** 42:17;61:20
**really (4)** 20:13;29:3;44:4;58:16
**reason (4)** 24:15;25:10;33:3;63:8
**reasonable (1)** 35:24
**reasons (3)** 10:13;24:17,24
**recall (3)** 18:12,13;19:2
**receive (3)** 35:6,14,17
**receives (3)** 31:17;32:1;35:3
**record (10)** 8:3,11;9:23;20:10;39:8,12,13,15;50:4;61:18
**recording (1)** 11:8
**redeem (1)** 25:11
**redeemed (1)** 24:9
**redemption (3)** 24:12,18,20
**refer (2)** 55:23;57:13
**reference (4)** 11:21;13:4;49:18;64:11
**referenced (2)** 41:14;50:11
**referencing (1)** 39:23
**referred (2)** 55:4;57:12
**referring (2)** 56:19;60:23
**regard (2)** 21:7;37:20
**regardless (1)** 34:17
**region (1)** 41:17
**Registered (3)** 22:19,21,23
**related (2)** 23:22;51:24
**relates (5)** 45:20;50:16;53:15,24;58:2
**relationship (5)** 24:23;25:3;27:11;34:1;51:10
**relevant (1)** 33:15
**Relocations (2)** 9:8;60:13
**remaining (1)** 39:21
**remains (1)** 24:5
**remember (4)** 18:14;50:17;52:12;62:6
**rep (1)** 14:4
**rephrase (1)** 26:19
**reporter (4)** 8:7;9:14;22:12;40:19
**reports (1)** 45:22
**representative (2)** 10:1;62:8
**represented (1)** 23:16
**request (2)** 47:14;56:23
**require (1)** 11:16
**reserved (1)** 65:23
**residence (1)** 30:6
**response (1)** 11:12
**responsibilities (1)** 40:24
**responsibility (3)** 14:14;45:8,19
**responsible (2)** 21:9;31:6
**rest (1)** 39:19
**restate (1)** 26:20
**retired (1)** 63:20
**revenue (3)** 26:6;28:17;31:18
**review (2)** 60:18,20
**reviewed (4)** 21:12,13,17;42:21
**right (57)** 9:20;10:10,21;13:3;14:13,20;15:22;17:4,13,21;18:9;19:19;21:11,20;22:6,11,16;23:18,24;24:6,11,20;27:3,20;28:12;33:9,18;35:15;37:21;39:17;41:3,22;42:2,10,17;43:10,12;44:4,25;49:8;50:1,16;51:7,13;52:1;53:24;55:9,23;56:14,21;57:1,17;59:11;61:20;62:3,20;64:2
**rights (2)** 23:12;24:8
**Rob (1)** 18:19
**ROBERT (1)** 9:16
**role (5)** 9:23;18:18;38:8;45:7,19
**roles (1)** 18:23
**rolls (1)** 35:8
**roughly (1)** 65:12
**rules (2)** 10:22;11:16
**Ryan (11)** 8:12;9:20;13:3;17:6;27:14;41:25;42:23;44:12;49:11;51:23;63:25

## S

**safety (2)** 21:9;31:6
**same (12)** 17:16,17;20:1;30:18;42:20;43:2,4,6,8;48:22;59:6;63:5
**saw (1)** 46:19
**saying (2)** 11:6;32:17
**screen (7)** 13:7;22:7;43:13;50:11;56:16;61:23;64:20
**scroll (3)** 54:4,7,8
**scrolled (1)** 58:1
**second (3)** 39:9;42:14;53:7
**Section (3)** 40:8,9;53:11
**seeing (2)** 23:5;64:16
**seek (1)** 11:17
**seeking (1)** 11:24
**seem (1)** 23:9
**Self-Terminates (1)** 64:13
**self-termination (1)** 40:5
**send (3)** 12:24;36:2;65:2
**sense (1)** 34:11
**sent (1)** 12:11
**separate (1)** 58:3
**services (15)** 21:1;26:7;31:19,20,21,24,25;35:5,11;

41:13;54:24;55:8;57:3,10;58:8
**SESSIONS (2)** 9:5,5
**set (1)** 53:5
**seven (1)** 48:23
**several (1)** 15:8
**shared (2)** 20:23;25:12
**shareholder (7)** 23:17;24:6,7;52:5,6,7;54:13
**shareholders (1)** 56:11
**shares (12)** 23:13,21;24:9,25;25:12;30:24;43:13;46:14,22;47:16;51:1;61:25
**show (4)** 20:6,9;58:25;64:17
**signature (1)** 65:23
**similar (1)** 41:11
**simple (1)** 30:12
**sit (1)** 48:4
**Sloan (2)** 8:13,16
**slowly (1)** 57:25
**small (2)** 64:21,22
**SNIPES (3)** 8:21,21;64:4
**Solutions (1)** 60:13
**somebody (6)** 39:2,4;45:6;47:15,19;58:18
**someone (1)** 31:2
**sometimes (1)** 57:11
**Sorensen (2)** 16:2;48:22
**sorry (13)** 16:19;22:20;41:5,24;42:3,10,13;44:2;45:24;47:9;54:8,8;58:5
**sort (3)** 10:22;12:4;14:23
**sound (1)** 17:13
**South (14)** 15:6,11,13,19;16:6;17:12;23:2;30:11;33:11;38:19,22;46:6;48:11;56:25
**speak (4)** 13:13;27:15;45:10;59:23
**specific (7)** 15:9;24:17;27:17,19;34:4;46:20;48:6
**specifically (2)** 44:10;64:25
**specifics (4)** 32:7;33:19;36:16,17
**spell (1)** 16:6
**split (5)** 26:10;28:17,24;29:11;35:12
**spread (2)** 24:14,16
**stamp (1)** 40:7
**stamped (1)** 43:8
**standard (1)** 31:19
**standing (1)** 58:23
**start (3)** 15:5,11;28:1
**Starts (1)** 22:2
**state (8)** 8:10;22:21,23;29:17;32:20;33:1;57:4;61:1
**statement (1)** 50:3
**states (5)** 15:9;32:21,23;33:1;65:1
**static (1)** 62:20
**status (15)** 20:11;23:17,18;48:25;49:3;50:23;51:7;58:4,13,15;59:4;62:2,16,25;63:3
**stay (1)** 19:8
**STEFFEN (2)** 8:19,19
**Steis (7)** 45:1,3,4;63:3,10,13;65:8
**S-T-E-I-S (1)** 45:4
**still (6)** 49:5;52:4,5,6;53:8;58:5
**stock (10)** 46:9,13,17,20,23;47:1,7,12,13;50:20
**Storage (17)** 15:14,15,24;16:2,2,3,3,4,4,5,5,9,18;17:15;20:18;25:25;48:11
**structure (4)** 21:16;22:3;23:10;53:19
**subject (1)** 36:24
**subsequent (1)** 13:14
**subsidiaries (13)** 21:1;22:3;26:2;27:3,6;28:12,16;29:6;33:6;52:25;55:5,18,21
**subsidiary (17)** 19:24;20:12;27:7;28:18;29:12,17,23;33:10;34:16,20;35:6,13;53:20;55:11,16,19,20
**success (3)** 41:15;45:23;46:1
**sufficient (1)** 13:15
**suite (3)** 31:19,25;35:5
**supposed (1)** 51:6
**Sure (12)** 15:11;23:6;32:15;38:24;40:13;43:7;47:10;48:10;54:5;56:24;61:10,17
**swear (1)** 9:14
**sworn/affirmed (1)** 9:17
**Systems (1)** 15:23

**T**

**talk (3)** 14:10;53:6;63:2
**talked (3)** 20:6;21:15;57:24
**talking (4)** 14:23,25;51:23;55:10
**Taylor (1)** 37:9
**team (1)** 39:18
**telling (2)** 38:4;47:23
**tenure (1)** 18:6
**term (2)** 48:19;55:19
**terminated (5)** 24:2,8,25;58:13,15
**terminates (1)** 24:8
**termination (7)** 24:3;26:12;37:8,21;38:14;40:25;65:5
**terms (1)** 45:19
**testified (1)** 9:17
**testifying (1)** 44:14
**testimony (5)** 13:24;42:22;45:12;52:3;60:19
**Thanks (1)** 39:17
**therefore (2)** 30:3;33:12
**though (1)** 63:20
**thought (1)** 32:16
**thousand (1)** 31:7
**three (3)** 10:9;11:3;34:14
**threshold (1)** 51:2
**throughout (1)** 25:23
**times (2)** 16:14;50:12
**timing (1)** 24:13
**Tipton (1)** 8:22
**title (1)** 64:13
**today (17)** 9:21;11:9;12:12;13:19,21,25;21:12;24:6;36:24;42:22;44:15;45:12;48:4;53:22;54:17;59:24;60:19
**Todd (9)** 9:2;11:19,21;25:15;32:17;47:10;52:17;59:25;64:3
**together (1)** 56:23
**told (3)** 19:3;28:13;37:18
**Tony (1)** 8:8
**top (2)** 54:9,10
**topics (5)** 12:10;13:13,16;15:3;19:11
**totals (1)** 49:13
**training (1)** 11:1
**transaction (7)** 29:10;31:1;32:2;34:13;35:4,7,10
**transcript (1)** 49:15
**Transfer (4)** 15:23,24;16:2;48:22
**Transit (9)** 21:8;55:1,3,12,16;56:18;57:9;58:25;60:25
**Transport (2)** 23:23;35:18
**transportation (1)** 54:24
**treated (2)** 20:15;30:4
**true (3)** 52:9;55:12,13
**truth (1)** 13:21
**try (3)** 10:22;28:5;30:21
**trying (12)** 26:23;29:3,7;33:3;34:25;35:2;47:15;49:25;50:17;58:16;59:25;60:4
**two (3)** 10:9;18:1;61:7
**type (3)** 20:10;58:20;61:11
**types (1)** 35:14

**U**

**um-hum (3)** 11:6;43:15;54:25
**unaware (1)** 46:18
**under (5)** 13:19;28:11;55:2,11;59:7
**understood (1)** 52:2
**UniGroup (95)** 8:6;9:4,24;10:1,19;11:22,23;13:16,25;14:12;15:1,7,16,20;17:22,25;18:2,7,24;19:22,25;20:2,10,16,20,21,22,24,24;21:2,4,5,18;22:3,15;24:13,22;25:3,20,22;27:2,5;28:11,15,18;29:5,24;30:25;31:8,17;32:1,4;33:5,25;34:15;35:3,9,13,17;36:22;37:4,11,15,16,18,25;38:6,13,

14,21;39:23;40:6,10;42:25;43:24;44:13,22;45:15;47:4;51:25;52:8,24;53:3,19;54:6,12,19;56:11,15;57:8;59:12;60:2,8;62:1;65:3
**United (10)** 59:7,9,13,18,23;60:16,17,22;61:3,10
**Unless (1)** 31:14
**up (18)** 13:6;20:16;22:6,8;25:22;26:25;28:2;35:8;40:11;50:10;51:6,22;54:4,9;56:11;58:25;60:24;61:23
**upon (1)** 50:21
**use (2)** 29:19;31:2
**used (3)** 23:5;56:1,5
**using (1)** 27:9

## V

**Van (13)** 15:13,15;16:8;17:15;48:11;59:7,13,18,23;60:16,17,22;61:3
**Vanliner (2)** 9:12;29:23
**various (1)** 23:22
**verbal (1)** 11:12
**versus (1)** 27:7
**via (1)** 8:6
**video (2)** 8:5;9:21
**VIDEOGRAPHER (6)** 8:2,9;9:13;39:11,14;65:19
**videotape (1)** 65:20
**violation (1)** 11:25
**Virginia (1)** 41:16
**Volansky (1)** 10:15
**Voluntary (1)** 64:13
**voting (2)** 23:12,16

## W

**waived (1)** 8:4
**wants (1)** 47:19
**waste (1)** 64:24
**way (4)** 19:23;28:4;29:22;30:21
**ways (1)** 11:9
**weeks (1)** 18:15
**West (1)** 8:20
**What's (7)** 16:17;17:22;20:14;36:12;44:18;51:14;54:9
**whatsoever (1)** 33:22
**whereby (1)** 58:20
**whichever (1)** 29:24
**white (1)** 57:18
**whole (1)** 49:21
**who's (3)** 26:24;29:12;39:4
**within (7)** 19:8;34:25;46:5;53:8;54:3;56:11;63:14
**without (1)** 47:16
**witness (8)** 9:15;37:3,22;39:5;40:17;61:17;62:16;63:24
**work (4)** 29:13;34:25;56:3;63:5
**workers (2)** 21:2,3
**working (1)** 20:8
**works (6)** 26:1;27:16;29:7;32:9;34:2;63:14
**wreck (2)** 25:4;41:10
**written (2)** 36:2;53:14
**Wynn (5)** 41:18,19;45:22;63:19,19

## Y

**year (2)** 16:14;42:1
**years (10)** 10:9;11:3;18:1,2,3,5;44:14;48:21,24;65:13
**Yep (1)** 57:2
**yesterday (2)** 20:7;39:7

## 1

**1 (5)** 12:20,21;13:10;15:5;44:19
**10 (2)** 48:21;65:13
**11/15/23 (2)** 40:10;41:7
**1st (4)** 18:8;35:18;36:25;41:9

## 2

**2 (3)** 21:23,24;22:13
**2:04 (2)** 8:1,3
**2:40 (1)** 39:12
**2:59 (1)** 39:15
**2022 (6)** 18:8;24:4;35:19;36:25;41:9,9
**2023 (1)** 16:15
**2024 (1)** 8:3
**20-share (1)** 50:24
**22 (1)** 53:10
**24 (1)** 40:8
**25 (6)** 23:15,17,17;30:24;40:8;51:2
**25-share (1)** 51:7
**29th (1)** 8:3

## 3

**3 (2)** 40:19,20
**3:34 (2)** 65:21,24
**30 (1)** 18:3
**30b6 (17)** 8:5;9:23;10:1,11;12:5,11;13:25;14:3,10;35:21;36:3,18;37:4;38:9;39:5;62:7;65:20
**31 (4)** 18:2,4,5;44:14
**32 (4)** 40:6,10;64:12;65:1

## 4

**4 (1)** 49:15
**40 (2)** 42:25;56:15

## 5

**56 (1)** 49:14

## 9

**9 (1)** 64:25