IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| KYLE SLOAN,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS BURIST, and MAYFLOWER TRANSIT LLC,<br><br>Defendants. | CIVIL ACTION NO.: 2:22-cv-76 |

**ORDER**

Defendant Mayflower Transit LLC ("Mayflower") filed a Motion to Strike Plaintiff's Expert Testimony from Brooks Rugemer. Doc. 458. Plaintiff responded in opposition. Doc. 467. I held a hearing on this Motion on November 5, 2026, at which counsel for the parties appeared and presented oral argument.

For the reasons discussed at the hearing and stated below, I **GRANT in part** and **DENY in part** Mayflower's Motion. Rugemer may not testify about his opinions that an agency relationship between Mayflower and Moholland existed or that Mayflower was the responsible motor carrier for safety at the time of the accident. Further, Plaintiff may not introduce the portion of Rugemer's testimony as to an alleged cover-up by Mayflower unless Mayflower first argues that the absence of an adverse result from the

post-accident government investigation shows that Mayflower was not responsible for the accident.

## DISCUSSION

Mayflower moves to exclude the testimony of Plaintiff's expert, Brooks Rugemer. Mayflower's Motion is couched in broad terms, asking the Court to exclude Rugemer's entire testimony. First, Mayflower argues that Plaintiff failed to timely provide Rugemer's testimonial history, his statement of compensation, or his curriculum vitae or publication list when Plaintiff disclosed Rugemer's expert report. Doc. 458 at 3. Mayflower asserts that this failure "prejudiced the Defendants in their ability [to] competently scrutinize or evaluate Rugemer's report, qualifications, or potential financial bias." Id. Mayflower asks the Court to exclude Rugemer's testimony as a sanction under Federal Rule of Civil Procedure 37(c). Second, Mayflower asserts that Rugemer "opined on the law" and reaches conclusions without expert methodology. Id. at 4–10. Third, Mayflower asserts that, under Federal Rule of Evidence 702, Rugemer's testimony lacks support from a proper expert methodology. Fourth, Mayflower asserts that the Court should exclude Rugemer's testimony under Rule 602 because Rugemer testifies about topics without personal knowledge. Id. at 12–13. Finally, Mayflower asserts that the Court should exclude Rugemer's testimony under Rule 403 because it serves as a "conduit for inadmissible speculation and prejudice"

about Mayflower illegally "cover[ing] up its involvement in the incident[.]" Id. at 12–14.

Plaintiff argues that the Court should not exclude any of Rugemer's testimony. Doc. 467. Plaintiff argues that Mayflower has not shown that any shortcoming in the Rule 26 disclosure caused prejudice and that Mayflower has waived any objection by waiting two years and until after two depositions to raise it. Id. at 8–15. Plaintiff also argues that Mayflower's Rule 702 challenge is untimely because it comes after the Daubert motion deadline, that the Motion fails on its merits, and that Rules 602 and 403 do not support excluding Rugemer's testimony.[1] I address the parties' disagreements in turn.

**I. Disclosure**

Mayflower first argues that Rugemer's testimony should be excluded as a sanction under Federal Rule of Civil Procedure 37(c) because Plaintiff disregarded his disclosure obligations under Federal Rule of Civil Procedure 26. Doc. 458 at 2–4. Mayflower explains that Plaintiff failed to timely disclose Rugemer's testimonial history, his statement of compensation, or his curriculum vitae or publication list. Id. at 3.

[1] In his Response, Plaintiff also asks the Court to rule on objections to trial deposition testimony before trial. Doc. 467 at 22. I will issue a separate order addressing these objections.

Plaintiff argues that the Court should not exclude Rugemer's testimony because he eventually disclosed the missing information on the record and any failure to disclose was harmless. Doc. 467 at 8–15.

Based on the information that the parties provided during the hearing, and for the reasons stated at the hearing, I find this argument unconvincing. Mayflower has not shown any prejudice whatsoever due to the timing of the disclosure. Notably, Mayflower expressly disclaimed any challenge to Rugemer's qualifications during his deposition before complaining about the failure to provide Rugemer's testimonial history, his statement of compensation, or his curriculum vitae or publication list. Mayflower has not demonstrated that Rugemer's testimony should be excluded for this reason.

**II. Timeliness**

Plaintiff argues that Mayflower's challenge should be denied because it is untimely. Plaintiff points to the Court's January 11, 2025 deadline for Daubert motions. Plaintiff asserts that Mayflower's Rule 702 argument is "directed at" opinions first disclosed in Rugemer's expert witness report from October 2024. Id. at 16.

Plaintiff is correct. Plaintiff disclosed Rugemer to Mayflower on October 11, 2024. Doc. 458-2. The Court set the deadline for Daubert motions as January 11, 2025. Doc. 202 at 2. The challenged portions of Rugemer's deposition testimony reiterate opinions that he first disclosed in 2024. Compare Doc. 458-2 at 2 with Doc. 467-5 at 10–

12. At the hearing, Mayflower's counsel could not answer why Mayflower failed to make the arguments now presented in this Motion before the Court-ordered deadline and could not explain why the instant Motion is not a very untimely Daubert motion.

Mayflower's procedural failure is significant and egregious. Mayflower, apparently without any articulable reason, neglected to pursue a challenge to conclusions presented in Rugemer's 2024 report or seek an extension for almost two years. Instead, Mayflower waited until just before the start of trial to depose Rugemer, and then, in the eleventh hour, filed an untimely challenge to Rugemer's testimony. Mayflower's lack of diligence is inexplicable. Mayflower's conduct falls short of the Court's expectations, and Mayflower's counsel must do better.

Mayflower's failure to timely file this Motion is sufficient grounds to deny relief. That said, while Mayflower's Motion is untimely and would normally invite summary denial, I nonetheless consider the merits of the Motion, given the potential risk of the admission of improper testimony from Rugemer at trial.

## III. Merits of Mayflower's Rule 702 Challenges

### A. Legal Standard

The United States Supreme Court's holding in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and the text of Rule 702 require trial judges to serve as gatekeepers in determining the admissibility of expert testimony. Fed. R. Evid. 702. "District [c]ourts are charged with this gatekeeping function 'to ensure that speculative,

unreliable expert testimony does not reach the jury' under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rick v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005) (quoting McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002)). Rule 702 "place[s] appropriate limits on the admissibility of purportedly scientific evidence by assigning to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 579–80.

In this Circuit, courts routinely look to three elements to determine if expert testimony is admissible under Daubert and Rule 702. As the Eleventh Circuit Court of Appeals has stated, the elements for consideration are whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citations omitted). "[A]lthough there is some overlap among the inquiries into an expert's qualifications, the reliability of his proffered opinion and the helpfulness of that opinion, these are distinct concepts that courts and litigants must take care not to conflate." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003). The trial court has broad latitude in evaluating each of these three factors.

As to reliability, courts look to: (1) whether the expert's theory can be and has been tested; (2) whether the theory has undergone peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Daubert, 509 U.S. at 593–94. However, these factors are not exhaustive, and "a federal court should consider any additional factors that may advance its Rule 702 analysis." Quiet Tech., 326 F.3d at 1341. At all times in this flexible inquiry, the court's focus must be "solely on principles and methodology, not on the conclusions that they generate." Seamon v. Remington Arms Co., LLC, 813 F.3d 983, 988 (11th Cir. 2016) (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 595 (1993)). "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

Finally, as to the third element, expert testimony is likely to assist the trier of fact if it "concern[s] matters beyond the understanding of the average lay person and logically advance[s] a material aspect of the proponent's case." Kennedy v. Elec. Ins. Co., Case No. 4:18-cv-148, 2019 WL 2090776, at *4 (S.D. Ga. May 13, 2019); Frazier, 387 F.3d at 1262. "[E]xpert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier 387 F.3d at 1262. Such testimony "is properly excluded when it is not needed to

clarify facts and issues of common understanding which jurors are able to comprehend for themselves." Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys., 50 F.3d 908, 917 (11th Cir. 1995).

"The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

**B. Impermissible Legal Conclusions**

Mayflower contends that Rugemer's opinions constitute improper legal conclusions. Mayflower focuses on the portions of Rugemer's deposition testimony and reports where Rugemer opines that an agency relationship existed at the time of the accident (and earlier) and that Mayflower was the "responsible motor carrier for safety" on the date of the incident. Doc. 458 at 4–7; see also Doc. 458-3 at 5; Doc. 467-5 at 9, 11, 16.

In response, Plaintiff asserts that Rugemer merely explained the technical regulatory and industry framework. Doc. 467 at 16. As to the statement that Mayflower was the "responsible motor carrier for safety," Plaintiff points out that the phrase was printed on the cab card for the tractor at issue and contends that Rugemer merely reviewed this cab card and read its contents aloud. Id. at 17 (citing Doc. 467-4 at 11). As to the existence of an agency agreement, Plaintiff asserts that Rugemer merely

read two provisions aloud and that reading a document into the record is not an expert opinion. Id. at 18 (citing Doc. 467-4 at 12).

An expert "may not testify to the legal implications of conduct or tell the jury what result to reach." Commodores Entm't Corp. v. McClary, 879 F.3d 1114, 1128 (11th Cir. 2018) (citation and marks omitted). And to help a jury, the expert report must offer more "than what lawyers for the parties can argue in closing arguments." Cook v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1111 (11th Cir. 2005). Moreover, an "imprecise opinion easily could serve to confuse the jury[] and might [mislead] it." Id. (quoting United States v. Frazier, 387 F.3d 1244, 1266 (11th Cir. 2004)). A contract's meaning "is a legal conclusion that experts may not opine on." Great Lakes Ins. Se. v. Williams, Case No. 1:23-CV-23556, 2025 WL 2144467, at *5 (S.D. Fla. Mar. 31, 2025).

Rugemer's expert reports set forth his opinions about the existence of an agency relationship between Mayflower and Moholland. In his 2024 report, Rugemer states that it is his professional opinion that "[i]nformation gleaned from UniGroup/Mayflower's own records shows that an ongoing business relationship and agency relationship with Moholland/Burist existed at the time of the subject crash." Doc. 458-2 at 11. In his 2026 report, Rugemer states that it is his professional opinion that "additional depositions and documents strengthen the opinion in [his] Original Report that an ongoing business relationship and agency relationship with

Mayflower/Moholland existed at the time of the collision on July 1, 2022." Doc. 458-3 at 5.

Rugemer also offered opinions on whether an agency relationship existed during his deposition. Rugemer states that it is his opinion that that "the agency agreement between Moholland and Mayflower was never terminated as Mayflower alleges." Doc. 462-3 at 35. Rugemer also opined that "there was an express agency agreement in place between Mayflower Transit and Joe Moholland on July 1st, 2022." Id. at 41. Rugemer further opined "that Mayflower knowingly allowed Joe Moholland to continue the use of its license plates and assumed the risk to its company[.]" Id. at 70–71. Rugemer stated that his opinion is "that on July 1st, 2022, the tractor operated by Nicholas Burist that caused the death of Kyle Sloan's wife and daughter and serious injuries to Kyle himself was under the exclusive possession and control of Mayflower Transit, LLC." Id. at 93. Rugemer explained that he believes there was "an ongoing relationship" between Moholland and Mayflower at the time of the accident. Id. at 103, 109. Rugemer also states that Mayflower was "the responsible motor carrier for safety" on the date of the accident. Id. at 64.

Rugemer's opinions about the existence of the agency relationship constitute legal conclusions. Consequently, Rugemer's statements about the existence and termination of an agency relationship will not assist the jury. Similarly, the determination of whether Mayflower qualifies as the "responsible motor carrier for

safety" under regulations constitutes testimony that applies a legal standard to facts, and it is not permissible for an expert to offer such testimony. See, e.g., Cordoves v. Miami-Dade County, 104 F. Supp. 3d 1350 (S.D. Fla. 2015) (reasoning that applying regulations to factual circumstances "tell[s] the jury what result to reach").

Plaintiff's arguments to the contrary avoid the central issue. While the portions of Rugemer's deposition where he reads from emails and forms and quote regulations are not improper legal conclusions, Mayflower's challenge focuses instead on Rugemer's expert opinions on an agency relationship and whether Mayflower was the responsible motor carrier. Doc. 467 at 18. Plaintiff's arguments focus on select portions of Rugemer's deposition testimony and ignore the portions where Rugemer plainly states legal conclusions.

Ultimately, some portions of Rugemer's testimony constitute improper legal conclusions. However, Mayflower's requested relief—excluding the whole of Rugemer's testimony—is too broad. Therefore, I **GRANT in part** Mayflower's Motion. Rugemer may not offer any opinion that an agency relationship existed at the time of the accident, that an agency relationship existed at any time, or that Mayflower was the responsible motor carrier for safety.[2] But I do not exclude Rugemer's testimony in its entirety.

---

[2] Mayflower also argues in passing that the Court should exclude Rugemer's testimony because he opined that an email exchange meant that the agency agreement between

### C. Rule 602 Challenge

Mayflower argues that Rugemer's testimony fails to satisfy the requirements of Federal Rule of Evidence 602. Doc. 458 at 13. Specifically, Mayflower asserts that Rugemer lacked personal knowledge to testify about two topics. First, Mayflower asserts that Rugemer lacked personal knowledge to testify about whether Rob Garr had an improper incentive to offer testimony favorable to Mayflower. Id. at 13. Second, Mayflower asserts that Rugemer lacked personal knowledge to testify about whether Mayflower concealed its involvement in the accident. Id. Mayflower also generally asserts that Rugemer "claimed he knew the motive behind emails [relating to the alleged cover-up] despite no personal knowledge (or even interaction with) the authors of those emails." Id. at 1.

In response, Plaintiff states that Rugemer did not need personal knowledge because he is testifying as an expert witness under Rule 703. Doc. 467 at 21.

Plaintiff is correct. "Expert testimony is an exception to Rule 602's general command that '[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter.' . . . Rule

---

Mayflower and Moholland had been extended. Mayflower asserts that Rugemer's conclusion based on his reviews of these emails lacks an expert methodology. Doc. 458 at 12 (citing Corwin v. Walt Disney Co., 475 F.3d 1239, 1250 (11th Cir. 2007)). Because I conclude that Rugemer may not offer any testimony or opinions that an agency agreement existed at any time, I need not to address whether the methodology he used to reach that conclusion was improper.

703 allows an expert witness to express opinions based on facts of which he does not have personal knowledge." Smith v. Ortho Pharm. Corp., 770 F. Supp. 1561, 1566 n.16 (N.D. Ga. 1991) (quoting Fed. R. Evid. 602). Thus, Mayflower's personal-knowledge argument is misplaced, and I **DENY** that portion of the Motion.[3]

### D. Rule 403 Challenge

Mayflower argues that the Court should exclude some of Rugemer's testimony under Federal Rule of Evidence 403. Doc. 458 at 12–13. Mayflower points to a portion of Rugemer's deposition testimony in which Plaintiff's counsel asked Rugemer about an email that Steve Bojan (Mayflower's director of risk management) sent on July 12, 2022. In that email exchange, Bojan asks Rob Garr (Joe Moholland, Inc.'s president) to send pictures of equipment without UniGroup details or plates. Id. Mayflower asserts that Plaintiff's counsel asked Rugemer to speculate about Bojan's mindset and tried to elicit testimony from Rugemer that Mayflower illegally "covered up its involvement in the incident." Mayflower asserts that Rugemer "claimed he knew the motive" behind these emails. Id. at 1. Mayflower asserts that Rugemer's "testimony would prejudice beyond

[3] In a separate Order, I address Mayflower's objections to portions of Rugemer's testimony. Among other objections, Mayflower contends that Rugemer cannot properly opine on another individual's motive, mental intent, or credibility. The ruling in this Order does not displace, nor is it inconsistent with, those other rulings. Here, Mayflower only contends that Rugermer's testimony should be excluded because he lacks personal knowledge. That argument fails.

any probative value" because Rugemer "cannot opine that Mayflower broke the law." Id. at 12–13.

Plaintiff disagrees and contends that the deposition transcript shows that Rugemer did not answer Plaintiff's question about the motive behind Mr. Bojan's July 12, 2022 email. Doc. 467 at 21.

Rule 403 provides, "The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Plaintiff's counsel first asked Rugemer about the "purpose that Steve Bojan . . . is seeking here pictures without Unigroup decals or plates"; Rugemer did not answer this question. Doc. 467-5 at 20. After an objection to form, Plaintiff's counsel then asked, "Is it industry custom to try to cover up your involvement in a collision after the wreck?," to which Rugemer responded, "No, it is not[.]" Id. Plaintiff's counsel followed up by asking whether it is "proper under the Federal Motor Carrier Safety regulations or industry—or any industry custom or standard to send selective pictures showing some trucks not bearing a motor carrier's name when there are other trucks that do bear a motor carrier's name at the same time," to which Rugemer stated, "There's no reasoning for it. As I said earlier on, this whole process is something that they have protocols. Mayflower has protocols to do this with agents that they wish to separate

from. This can be done in a manner of days." Id. at 21. Then, Plaintiff's counsel asked, "Is that an indication that the agency agreement remained in place as of July 13, 2022, the fact that it wasn't done during the time period when Mayflower alleges the agreement was terminated?," to which Rugemer responded in the affirmative. Id.

Based on the record now before the Court, Rugemer's testimony about Bojan's email should be excluded under Rule 403. Rugemer's testimony suggests that Bojan's email was part of an unlawful cover-up, creating a substantial risk of leading a jury into surmising that Mayflower attempted to hide its role in the accident. The danger of unfair prejudice substantially outweighs the general probative value of this specific exchange as to the agency relationship.

However, there is some indication that Mayflower will contend at trial that it was never held responsible by a post-accident government investigation and that fact suggests that it was not responsible for the accident. Doc. 429 at 2. In other words, Mayflower may argue that it should not be held liable because it was never found to be a responsible party in any governmental investigation. If Mayflower does make this argument (or tries to present evidence in support of the argument), then the probative value of Rugemer's testimony would increase. In response to such an argument by Mayflower, Plaintiff may attempt to explain why Mayflower was not held responsible in any governmental investigation. Rugemer's testimony would be relevant to Plaintiff's position. Therefore, if Mayflower presents information, evidence, or

argument at trial that suggests that the absence of adverse findings in a government investigation is probative of its lack of responsibility, then Plaintiff may respond by introducing Rugemer's testimony that there was a cover-up. Otherwise, this portion of Rugemer's testimony should be excluded. Accordingly, I conditionally **GRANT** Mayflower's Motion as to this testimony.

## CONCLUSION

For the reasons discussed at the hearing and stated above, I **GRANT in part** and **DENY in part** Mayflower's Motion. Rugemer may not offer any testimony or opinions that an agency relationship existed at any time or that Mayflower was the responsible motor carrier for safety. Further, Plaintiff may not introduce the portion of Rugemer's testimony as to an alleged cover-up by Mayflower unless Mayflower first argues that the absence of an adverse result from the post-accident government investigation shows that Mayflower was not responsible for the accident.

**SO ORDERED**, this 15th day of November, 2026.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA