**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | | |
|---|---|---|
| KYLE SLOAN, Individually, and as Personal Representative of the Estates of Rylie Sloan and Jamie Sloan, KYLE SLOAN as Surviving Spouse of Jamie Sloan, and KYLE SLOAN as Surviving Parent of Rylie Sloan,<br><br>Plaintiffs,<br><br>v.<br><br>MAYFLOWER TRANSIT LLC; and NICHOLAS BURIST<br><br>Defendants. | ) | Civil Action No.<br>2:22-cv-00076-LGW-BWC |

**PLAINTIFFS' OBJECTIONS TO AND MOTION FOR REVIEW OF THE MAGISTRATE JUDGE'S ORDERS REGARDING BROOKS RUGEMER (DOCS. 488, 489), OR, IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION, AND REQUEST FOR EXPEDITED RULING FROM JUDGE WOOD**

Under Federal Rule of Civil Procedure 72(a), Plaintiff objects to some parts of the Magistrate Judge's November 15, 2026 Orders on the trial deposition of Brooks Rugemer, CDS. Docs. 488, 489. The specific portions are identified below.

A ruling must be modified where it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). Plaintiff asks that the Court (1) rule that Mr. Rugemer may testify to the "Motor Carrier Responsible for Safety" designation printed on the public record Missouri cab card, which the Court admitted as a trial exhibit; and (2) correct exclusions that go beyond the ruling that Mr. Rugemer cannot testify as to the ultimate issue of the existence of an agency relationship. Because trial begins November 17, 2026, and Mr. Rugemer's testimony will be presented by video, Plaintiff requests an expedited ruling.

**I. Mayflower waived any objections it chose not to make at the trial deposition.**

The Magistrate Judge's November 15, 2026 Order (Doc. 489) on the trial deposition of Brooks Rugemer, CDS makes rulings on objections that were never made. The agreement between the parties was that any objections to Mr. Rugemer's testimony would be made contemporaneously during the deposition. Any such objections not made were waived.

The parties agreed on the record that objections at the trial deposition would be "stated on the record," with "the basis for the objection," "as if we're in trial." Trial Dep. 9:18–10:1. Plaintiff's counsel and defense counsel agreed unequivocally: "if there are objections to any of that, then it would be your responsibility to state those on the record at that time." Mayflower's counsel stated: "Yes, sir." *Id.* 28:14–22. Mayflower certainly had no problem asserting objections and did so at least a dozen times. *E.g.*, *id.* 57:12–18, 64:21–24, 71:2–5, 78:18–21, 79:3–8, 80:8–24, 83:9–13, 93:18–21, 116:22–117:1, 118:4–9, 119:16–19.

An objection to "the form of a question or answer" or to "other matters that might have been corrected at that time" is waived if "not timely made during the deposition." Fed. R. Civ. P. 32(d)(3)(B). The Magistrate Judge's ruling contrary to this authority by allowing late or after-asserted objections is "clearly erroneous or contrary to law". *See* FRCP 72(a),

The specific excerpts improperly excluded on this basis by the Magistrate's order are:

a) 35:5-18
b) 40:9-12[1]
c) 41:16–41:20
d) 42:4–42:11[2]

[1] The remaining portion of this deposition citation contains a non-specific objection that should also be excluded, as not properly preserved. 40:13–40:17

[2] The cited, 42:4–42:7 is being read/cited directly from Mayflower's own Agency Agreement.

e) 47:13–48:2
f) 51:7–51:17
g) 63:19–63:24
h) 66:18–66:24
i) 86:14-86:18[3]
j) 88:19–88:20[4]
k) 89:5–90:7
l) 91:023–92:15
m) 93:00 – 93:1-11
n) 118:15–118:25

The same is true of the exhibits that were excluded in the Magistrate's Order. Mayflower did not object when Exhibit 7 (agency statements) and Exhibit 14 (operating lease) were offered, and it stated "No objection" to Exhibit 13 (lease certification). Trial Dep. 51:18–23, 88:19–89:1, 90:25–91:5. A foundation objection could have been cured at the time if it had been made. Certainly, an express "no objection" cannot be withdrawn now that the witness is unavailable for further testimony.

## II. "Motor Carrier Responsible for Safety" is language directly from the admitted cab card public record

The Missouri Department of Transportation's apportioned cab card for this tractor — unit 251-333, plate 59AP8M — states: "Motor Carrier Responsible for Safety USDOT Number: 0125563 MAYFLOWER TRANSIT LLC." Trial Dep. Ex. 5 (MAYFLOWER 006104). The Magistrate Judge admitted that cab card as a public record, Doc. 489 at 8–9, overruled the objection to Mr. Rugemer's testimony describing its contents, *id.* at 13. (44:1–45:3), and held that testimony reading "forms" is not an improper legal conclusion, Doc. 488 at 11. Yet, perplexingly excluded testimony about it. Mr. Rugemer did not conjure the phrase or testify in a way applying a

[3] 86:14-86:18 is referenced at Doc. 489 pp. 21

[4] Counsel for Mayflower confirms "no objection" to this document; however, the Court has excluded this. 88:9-89:4

regulation to the facts. Rather, Mr. Rugemer testified about what the State of Missouri printed on the credential, explained what that designation is, and why the card must be carried in the cab. Trial Dep. 31:21–32:4, 43:4–44:12. The Missouri DOT is the source of the language, not the witness.

The Orders at Doc. 488-9 nonetheless purport to bar any testimony "that Mayflower was the responsible motor carrier for safety," *id.* at 16, and excludes the testimony at 64:16–24 on that basis. To the extent the Orders bar Mr. Rugemer, Plaintiff's counsel, or the jury from using the words on an admitted government record, they are contrary to Rule 803(8) and to the Orders' distinction between reading forms and offering legal opinions. The decision on which Doc. 488 relies, *Cordoves v. Miami-Dade County*, 104 F. Supp. 3d 1350 (S.D. Fla. 2015), concerned an expert applying regulations to facts, not a witness reading language from an uncontested public record trial exhibit printed on that record. Plaintiff asks the Court to hold that the testimony at deposition page: 64:16–24, regarding whether Mayflower's authorization of the use of its credentials made it the motor carrier responsible for safety — is proper because that is simply the designation the State of Missouri had already assigned on the cab card.

## III. The Orders exclude industry-practice testimony

The testimony excluded here by the Magistrate's order concerns the cab card and IFTA license that were admitted as public records. Doc. 489 at 8–10. Yet Attachment A to Doc. 489 excludes, as "improper legal conclusion[s]," passages that contain no opinion on agency or on the responsible motor carrier, but instead describe, aid, and provide a factual context important for the fact-finder to understand industry documentation. For example:

> **35:5–35:18.** Asked for the "crux" of his opinions, Mr. Rugemer listed the factual support: "the back and forth emails regarding the tags and the IFTA sticker" and "payments made for several months after the subject crash." Only 35:8–10 states the opinion that the agency agreement "was never terminated." The Order admits the

supporting facts that immediately follow (35:19–36:5, 36:12–37:13) because they "consist of facts that support Rugemer's opinions." Doc. 489 at 3 n.1. Mayflower made no objection when this testimony was given. At most, 35:8–10 should be excised.

**40:9–40:12.** This restates a portion of ¶ 5.K(g) of the agency agreement, which Mr. Rugemer had just read into the record at counsel's request (40:1–7, not excluded): a shipment commenced before termination remains governed by the agreement. Reading a document is not a legal conclusion. Doc. 488 at 11. Mayflower's only objection, "I'm objecting to that" (40:14–15), came after the answer and stated no ground, contrary to the parties' agreement that grounds would be stated (9:18–24). Fed. R. Evid. 103(a)(1)(B). Furthermore, "commenced" is an industry term that provides context to the meaning and understanding of the agreement.

**42:4–42:11.** At 42:4–7, Mr. Rugemer reads ¶ 6 of the Temporary Agency Agreement aloud at counsel's request (41:21–42:3, not excluded): "This agreement creates no rights or obligations not already existing, does not modify or alter the party's rights or obligations under the terms of the agency agreement." That is Mayflower's own contract, read word for word. Doc. 488 at 11. Mayflower made no objection to 42:4–11. The three agreements are also produced together, and part of Mayflower's own trial exhibit.

**47:13–48:3.** Mayflower supplied the license plate, registration card, and IFTA credentials for the tractor; "[w]ithout any of that, the truck is not legal to operate on any public roadways" and is "grounded"; and he saw no communication to the Missouri DOT terminating them. That is what the admitted cab card and IFTA license show, and how the industry uses them. There is no testimony or documentation in the record that Joe Moholland Moving or Locke relocations ever had a valid license plate, registration card, or IFTA credentials for this tractor at any time on or before July 1, 2022.

**51:7–51:17.** At 51:12–17, Mr. Rugemer explains what the agency-statement entry "Due HQ" means: a payment by Mayflower that Moholland must reimburse. That is the same kind of explanation as the "AGTP" agent-payment code at 49:22–50:2, which the Order did not exclude. Mayflower made no objection to any of 51:7–17, and Exhibit 7 was then offered without objection (51:18–23). Mr. Rugemer is reading from the document in order to give context to his testimony and aid the jury's understanding of the statement.

**63:19–63:24.** The question and first lines of an answer about how long plate recovery should take. The remainder of the same answer (63:25–64:9) was not excluded, so the ruling leaves an answer with no question. The subject — separation timelines — is the subject footnote 4 of Doc. 489 expressly admits.

**66:18–66:24.** Counsel asked whether Mr. Petry's July 1, 2022 email (Exhibit 9) shows Mayflower continuing to allow use of the plates through the week ending July 1. The email is admitted, Doc. 489 at 11–12, and says on its face that "All Moholland Plates should be in the mail first thing next week." The question asks what the admitted writing says, not about an unexpressed motive. Mayflower made no objection, and Exhibit 9 was then offered without objection (66:25–67:5).

**88:19–88:20.** Plaintiff's offer of Exhibit 13. Mayflower's counsel answered, "No objection." (88:25–89:1). Having stated no objection when the exhibit was offered at a trial deposition, Mayflower cannot obtain its exclusion after the witness has become unavailable. Exhibit 13 is also Mayflower's own lease certification, which is not hearsay when offered against Mayflower. *See* Section III.

**89:5–90:7.** Mr. Rugemer identifies the parties, the signatory, and the motor carrier on the Carrier-Agent Operating Lease (Exhibit 14, MAYFLOWER 004389–90). Mayflower objected neither to this testimony nor to Exhibit 14 when it was offered (90:25–91:5), and Doc. 489 does not rule on Exhibit 14. The Order excluded the testimony as reciting an inadmissible lease (Doc. 489 at 15–16), apparently treating it as the Exhibit 13 lease certification. A contract is a verbal act, not hearsay, and it is Mayflower's own statement. Mayflower has also offered these same exhibits as Trial Exhibits.

**91:23–92:15.** Mr. Rugemer explains that 49 C.F.R. § 390.13 prohibits aiding a carrier's violation of the FMCSRs, and how Mayflower's credentials were used. Mayflower conceded his qualification in "compliance with the Federal Motor Carrier Safety Regulations" (22:12–22, 29:2–11). It examined him on this opinion in the discovery deposition (Disc. Dep. 62:20–63:21) and made no objection at the trial deposition.[5]

**93:1–93:11.** "[D]o they all support your opinion that . . . the tractor . . . was under the exclusive possession and control of Mayflower Transit, LLC?" "Yes." "Exclusive possession, control, and use" is the lease requirement of 49 C.F.R. § 376.12(c)(1). Mayflower did not object until after this question and the next one had both been answered (93:18–21). Furthermore, this is the language of the statute and Mr. Rugemer is reciting the statute and the applicable facts. Mayflower conceded his qualification in "compliance with the Federal Motor Carrier Safety Regulations" (22:12–22, 29:2–11).

**118:22–118:25.** "[I]f Mayflower had not permitted the use of its license and registration on July 1st, would this truck have ever been legally on the road?" "No." This is the same grounding testimony as 47:13–48:3, not an application of a legal standard. This is a common well know rule of the road.

**119:9–120:12.** The witness's explanation, by analogy to selling a car with one's own plates and registration, of why a carrier that has ended a relationship retrieves its plates and cab card, and that a truck without them is "grounded." His testimony is industry practice as it relates to the trucking industry.

---

[5] Rugemer Trial Dep. 29:3-11

Q: … [Y]ou don't disagree that Mr. Rugemer is qualified as an expert in motor carrier operations, commercial motor carrier operations, motor carrier safety management and compliance with the Federal Motor Carrier Safety regulations.· Is that what your statement was earlier?

ATTORNEY MCDONALD:

A: So I'm not --- I'm not disputing his qualifications in those circumstances

> **120:13–120:20.** "And if this truck had been grounded appropriately under the Federal Motor Carrier Safety regulations, we're never here . . . ?" "That's my opinion, yes." This is a causation opinion, not an opinion on agency or on the responsible motor carrier. Mayflower did not object to it at the deposition and did not challenge it in its Motion. *See* Doc. 458; Trial Dep. 120:13–24. It was excluded only because it falls within the range 119:9–120:20. Doc. 489, Attach. A. Mayflower's form objections are waived, Fed. R. Civ. P. 32(d)(3)(B), and the Court should not exclude testimony on a ground no party raised. Furthermore, this is common knowledge.

Excluding these passages is contrary to the Orders' own standard and leaves the jury without the explanation that makes the admitted cab card, emails, and IFTA license intelligible. Plaintiff asks that the testimony improperly excluded by the Magistrate's Order be allowed in the record.

## III. Deposition Exhibits 7 and 13 are Mayflower's own records and are not hearsay when offered against Mayflower.

The Magistrate Judge excluded Deposition Exhibit 7 (Mayflower's agency statements for agent M00333, MAYFLOWER 000072–000089) and Deposition Exhibit 13 (Mayflower's Equipment Description Addendum and Statement of Lease Certification for tractor 251-333, MAYFLOWER 000006) because Mr. Rugemer is not a records custodian who can lay a Rule 803(6) foundation. Doc. 489 at 10, 12. But Rule 803(6) is not needed. A statement "offered against an opposing party" that "was made by the party in an individual or representative capacity," or "by the party's agent or employee on a matter within the scope of that relationship," is not hearsay. Fed. R. Evid. 801(d)(2)(A), (D). Exhibit 7 is Mayflower's own "Agency Statement – Mayflower Transit." Exhibit 13 is Mayflower's lease certification under 49 C.F.R. § 376.11(c)(2), executed for Mayflower by Nicole Crum, Manager, Fleet Registration. Both were produced by Mayflower in discovery, and Mayflower has not disputed their authenticity. The Magistrate Judge applied exactly this analysis to Mayflower's documents throughout the companion orders. Doc. 487 at 2

n.1 (treating UniGroup employees as Mayflower employees for Rule 801(d)(2)(D)); Doc. 489 at 8, 11 (Deposition Exhibits 4, 8, and 9).

Excluding Mayflower's own ledger and lease certification under a business-records analysis, without considering Rule 801(d)(2), is contrary to law and moreover the objections were not properly raised as required *during* the trial deposition.

Plaintiff asks that Exhibits 7 and 13 be admitted and, as Doc. 489 at 16 n.6 contemplates, that the related testimony be reinstated: 51:18–19, 88:19–20, and 89:5–90:7.

## IV. Preservation.

The Magistrate Judge found Mayflower's motion untimely, its delay "inexplicable," and its failure "significant and egregious." Doc. 488 at 4–5. Plaintiff respectfully preserves his objection that granting relief on an untimely *Daubert* motion without a finding of good cause was contrary to law.

## CONCLUSION

Plaintiff requests that the Court address this matter on an expedited basis before the start of trial and allow the testimony improperly excluded as identified above.

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

Respectfully submitted this 15th day of November 2026.

HODGE LAW FIRM
P.O. Box 2765
Spartanburg, SC 29306
Tel: (864) 585-3873
Fax: (864) 585-6485

/s/ Charles J. Hodge
Charles J. Hodge
Admitted Pro Hac Vice
J. Camden Hodge
Admitted Pro Hac Vice
Camden@hodgelawfirm.com
Attorneys for Plaintiffs

HAMILTON & PADGETT, LLC
13 St. Andrews Ct.
Brunswick, Georgia 31520
P: (912) 200-2727

/s/ Joseph R. Padgett
Joseph R. Padgett
Georgia Bar No. 872672
joseph@hamiltonpadgettlaw.com
Attorney for Plaintiffs

LANGLEY STILL & FOSS LAW FIRM
229 Magnolia Street
Spartanburg, SC 29306
Tel: (864) 774-4662

/s/ T. Ryan Langley
T. Ryan Langley
Georgia State Bar No.: 692386
Matthew T. Foss
Admitted Pro Hac Vice
Ryan@LSFlawfirm.com
Matt@LSFlawfirm.com
Attorneys for Plaintiffs