**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | |
|---|---|
| KYLE SLOAN, Individually, and as Personal Representative of the Estates of Rylie Sloan and Jamie Sloan, KYLE SLOAN as Surviving Spouse of Jamie Sloan, and KYLE SLOAN as Surviving Parent of Rylie Sloan; and SUSAN WEST, Individually; and as the next friend and natural guardian of K.W., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>NICHOLAS BURIST; LOCKE RELOCATIONS LLC; UNIGROUP, C.A.; MAYFLOWER TRANSIT LLC; VANLINER INSURANCE COMPANY AND XYZ COMPANIES 1-3,<br><br>Defendants. | CASE NO: 2:22-cv-0076-LGW-BWC |

**DEFENDANT MAYFLOWER TRANSIT LLC'S RULE 26 EXPERT DISCLOSURE – PHILLIP SMITH**

According to F.R.C.P. Rule 26(a)(2), Defendant Mayflower Transit LLC (hereinafter "Mayflower" designates the following expert witness who may present evidence at trial under Rule 702, 703, and 705 of the Federal Rules of Evidence:

**Phillip J. Smith**
**Analysis, Inc.**
**P.O. Box 1116**
**Grand Junction, CO 81502**
**Phone: (970) 243-8585**
**Email: info@analysisinc.com**

Pursuant to F.R.C.P. Rule 26(a)(2), Mayflower produces Mr. Smith's written and signed report containing a complete statement of his opinions, the basis and reasons for those opinions, the facts and data considered in forming his opinions, his curriculum vitae, his publication list, and

his prior expert testimony at trial or by deposition and a statement of his compensation (attached hereto as Exhibit 1).

Mayflower reserves the right to supplement the attached report (Exhibit 1), have Mr. Smith testify to or otherwise present additional opinions, and provide a rebuttal report to Plaintiffs' expert opinions (if any). Additionally, Mayflower reserves the right to present testimony concerning any matter set forth herein within Mr. Smith's report, and in any supplemental report produced in this matter.

Respectfully submitted this 9th day of December, 2024.

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

*/s/ Brighten Donner*______________________
Brantley C. Rowlen
Georgia Bar No. 153031
Brighten B. Donner
Georgia Bar No. 831804
Todd R. Ehrenreich
*Admitted Pro Hac Vice*
Jeffrey Geldens
*Admitted Pro Hac Vice*
24 Drayton St., Suite 300
Savannah, GA 31401
Tel. (912) 525-4960
Brantley.Rowlen@lewisbrisbois.com
Brighten.Donner@lewisbrisbois.com
Todd.Ehrenreich@lewisbrisbois.com
Jeffrey.Geldens@lewisbrisbois.com

*Counsel for Mayflower Transit, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | |
|---|---|
| KYLE SLOAN, Individually, and as Personal Representative of the Estates of Rylie Sloan and Jamie Sloan, KYLE SLOAN as Surviving Spouse of Jamie Sloan, and KYLE SLOAN as Surviving Parent of Rylie Sloan; and SUSAN WEST, Individually; and as the next friend and natural guardian of K.W., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>NICHOLAS BURIST; LOCKE RELOCATIONS LLC; UNIGROUP, C.A.; MAYFLOWER TRANSIT LLC; VANLINER INSURANCE COMPANY AND XYZ COMPANIES 1-3,<br><br>Defendants. | CASE NO: 2:22-cv-0076-LGW-BWC |

**CERTIFICATE OF SERVICE**

I CERTIFY that on December 9, 2024, I e-filed a true and correct copy of the foregoing via the Court's CM/ECF system which will send notification of such filing to all counsel of record.

This 9th day of December, 2024.

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

*/s/ Brighten Donner*______________________
Brantley C. Rowlen
Georgia Bar No. 153031
Brighten B. Donner
Georgia Bar No. 831804
Todd R. Ehrenreich
*Admitted Pro Hac Vice*
Jeffrey Geldens
*Admitted Pro Hac Vice*
24 Drayton St., Suite 300
Savannah, GA 31401
Tel. (912) 525-4960

Brantley.Rowlen@lewisbrisbois.com
Brighten.Donner@lewisbrisbois.com
Todd.Ehrenreich@lewisbrisbois.com
Jeffrey.Geldens@lewisbrisbois.com

*Counsel for Mayflower Transit, LLC*

# Analysis, Inc.

Colorado Florida

## Sloan V. Mayflower

## PRELIMINARY REPORT

Analysis, Inc. Case 24024

Report of December 9, 2024

Prepared for:

Todd Ehrenreich, Esq.
Lewis Brisbois
2 Alhambra Plaza, Suite 1110
Coral Gables, FL 33134

Prepared by:

Phil Smith
Analysis, Inc.
P.O. 1116
Grand Junction, CO 81502
970-243-8585

Phone (970) 243-8585
8225 Boca Ciega Dr. St. Pete Beach FL 33706
web: www.analysis-inc.com email: info@analysis-inc.com

# BACKGROUND AND QUALIFICATIONS

I, Philip Smith, am a safety consultant with Analysis, Inc. and have been involved in the trucking industry both as a CDL licensed truck driver and as a diesel mechanic since 1975. I have completed several thousand Commercial vehicle inspections, brake overhauls on air brake and electric brake systems, as well as preventative maintenance on commercial and non-commercial motor vehicles.

I am experienced and trained in the Code of Federal Regulations Title 49, parts 40, 325, 350 & 355-399, commercial motor vehicle safety, motor carrier safety, motor carrier/ vehicle regulatory compliance, commercial motor vehicle operations, inspection & maintenance, cargo loading & securement, and hazardous materials shipping/ transportation just to name some of the areas of my qualifications.

I have personally performed dozens of audits of commercial motor carriers/shippers.

I am an experienced commercial motor vehicle operator and continue to be a holder of a valid Florida commercial driver license (CDL). I have operated a number of different types of commercial motor vehicle equipment and I have worked in different segments of the trucking industry, including but not limited to: flatbed operation 48 foot to 53 feet, spread / split axle and standard tandem axle, manufacturers include Dorsey Trailer, Fontaine Trailer, Utility Trailer, Landoll Trailer, and Trail King Trailer, van operation from 48 foot to 53 foot, spread / split axle and standard tandem axle, extendable deck, manufactures include: Utility Trailer, Great Dane Trailer, Wabash Trailer, and Fruehauf Trailer; drop deck operation, spread / split axle, standard tandem axle and triple axle, manufacturers include: Fontaine Trailer, Landoll Trailer, Dorsey Trailer, Utility Trailer, Talbert Trailer, Trail King Industries Trailer, which include: Hydraulic Sliding Axle, Hydraulic Detachable Gooseneck and Hydraulic Sliding Trail Trailers; low boy / heavy haul operation, spread / split axle, standard tandem axle and multiple axle trailers, manufacturers include: Fontaine Trailer 55 ton capacity, 80 ton capacity, Talbert Trailer 35 ton capacity, 65 ton capacity, axle steer dolly, and spread tandem axle with a drop down third axle up too eight axles.

Commercial truck classification is determined based on the vehicle's gross vehicle weight rating (GVWR). I have extensive training and experience in the operating of Class' 1-3 Light Duty Trucks (GVWR 0 - 14,000 pounds), Class' 4 - 6 Medium Duty Trucks (GVWR 14,001 - 26,000 pounds), and Class' 7 - 9 Heavy and Super-heavy / Special Duty Trucks (GVWR 26,001 - 33,001 + pounds). I have also operated different types of non-commercial motor vehicles, such as three-quarter ton to one-ton pickup trucks pulling bumper hitch and/or goose neck type trailers equipped with electric brakes.

I have operated commercial motor vehicles as an Intrastate and Interstate commercial driver. I have transported several different types of cargo, such as, construction materials, general freight, forklifts, livestock, bulldozers, backhoes, trackhoes, rock, gravel, sand and water.

I have a considerable amount of experience in the loading/unloading of flatbed trailers, as well as in the securement of cargo using both chains, straps and different types of dunnage. I have personally loaded/unloaded, secured and transported heavy equipment by drop-deck, flatbed, lowboy and rollback commercial motor vehicles. I have experience in the flatbed hauling of many different types and lengths of pipe, different types of steel products, heavy equipment, oversize loads, as well as different types of dry freight in van trailers.

I also have experience in the loading and unloading of trailers using various types of material handling equipment, such as 3,000 pound to 30,000 pound forklifts.

I successfully completed 40 hours of training in 2010 by the Transportation Safety Institute (TSI) (transportation.gov), U.S. Department of Transportation on U.S. DOT Motor Carrier Safety Compliance, which included Parts: 350 - Commercial Motor Carrier Safety Assistance Program; 355 - Waivers, Exceptions, and Pilot Program; 380 - Special Training Requirements; 382 - Part 40 Controlled Substances and Alcohol Use and Testing; 383 - Commercial Driver's License Standards; Requirements and Penalties; 384 - State Compliance with Commercial Driver's License Program; 385 - Safety Fitness Procedures; 386 - rules of Practice for Motor Carrier, Broker, Freight Forwarder and Hazardous Materials Proceedings; 387 - Minimum Levels of Financial Responsibility for Motor Carriers; 388 - Cooperative Agreements with State, 390 - Federal Motor Carrier Safety Regulations; General; 391 - Qualifications of Drivers and Longer Combination Vehicle (LCV) Driver Instructors; 392 - Driving of Commercial Motor Vehicles; 393 - Parts and Accessories Necessary for Safe Operations; 395 - Hours of Service of Drivers; 396 - Inspection, Repair, and Maintenance; 397 - Transportation of Hazardous Materials Driving and Parking Rules; 398 - Transportation of Migrant Workers; and 399 - Employee Safety and Health Standards.

I was trained by the American Trucking Association, Trucking Issue Updates Minimum Training Requirements for Entry-Level Commercial Motor Vehicle Operators (Entry Level Driving Training - ELDT); Federal Motor Carrier Safety Administration Introduction to the Electronic Logging Device Rule and Implementation Plan; National Safety Council and TXDOT - Our Driving Concern: Train the Trainer TMTA Safety Supervision of Motor Fleets.

I successfully completed 20 hours of training and testing by the North American Transportation Management Institute (NATMI), which included training / testing as a Motor Fleet Safety Supervisor. The course included: Safety: A Management Function, Selection: Hiring the Proper Employee; Driver Selection; In-Vehicle Testing; Training of Employees; Implementing Training; Training of Drivers; Communication; Supervision; Driver Supervision; Accident and Injury Control; Investigation of Vehicle Accidents; On-Scene Investigation; Investigation of Employee Injuries; Preventability of Accidents; Vehicle Accident and Employee Injury Prevention; Security; Claims; Maintenance; Insurance; Regulatory Compliance; Hazardous Materials Transportation and Managing the Safety Function.

I successfully completed 20 hours of training and testing by the North American Transportation Management Institute (NATMI), which included training / testing as a Motor Fleet Safety Director. The course included: Safety is Good Business, The Quality Approach to Safety Programs; Employee Injury/Illness Management Programs, Managing Driver Performance; Accident Analysis; and Litigation and Implementing Safety. The objectives of this training / course are as follows: establish safety policies and procedures; develop measurement standards and control systems for each technical program area; analyze company records to quantify safety programs; evaluate critical data in each technical program area; make recommendations to establish or improve safety programs and act as an advocate for safety.

I attended Parks College of St. Louis University, Lincoln Land Community College, Springfield, Illinois and Parkland Community College, Champaign, Illinois. I have an Associate Degree in Diesel Technology from the Denver Automotive and Diesel College, Denver, Colorado. I am also an ASE Certified Master Automobile, School Bus, Light, Medium and Heavy Truck Technician. I also completed the U.S. Department of Transportation – Transportation Safety Institute. Train the Trainer, Meritor Training Program featuring Meritor's entire product line, including. WABCO Air Brakes, WABCO Antilock Braking Systems, Meritor Foundation Brakes, Bendix Air Brake Systems and Bendix Antilock Brake Systems, Midland-Grau Antilock Brake Systems, OEM and Retrofit Systems. Additionally, I have completed the AE Seminar, Braking Performance of Heavy Commercial Vehicles.

I have completed comprehensive air-brake system training with Bendix®, which included: air-brake operation and maintenance of heavy duty vehicle air-brake systems and components. I hold a certification with Bendix® on air-brakes and Bendix® Commercial Vehicle Systems, and I am member of the Knorr-Bremse Group, which develops and supplies leading-edge active safety technologies, air brake charging, and control systems and components under the Bendix® brand name for medium- and heavy-duty trucks, tractors, trailers, buses, and other commercial vehicles throughout North America.

I have been trained and have experience in Bendix® Wingman® Fusion®, which is a system that gathers input from radar, video and the brake system to create a highly detailed and accurate data picture.

I have been trained to download airbag control module data from various software manufacturers and hold certification as a crash data retrieval specialist from the Collision Safety Institute (CSI). The Collision Safety Institute (CSI) is an independent traffic collision research, training and crash consulting organization.

I have been trained in, and have extensive experience obtaining data from Engine Control Module (ECM's) for vehicles and equipment manufactured by: Caterpillar, Cummins, Detroit Diesel, Mercedes, Navistar International and PACCAR.

I frequently provide consulting and compliance services to motor carriers throughout the United States, which includes but is not limited to the following services: audits/

compliance assessments; simulated DOT compliance reviews; executive level consulting on how to build effective compliance systems and controls; creating company policies and procedures, CDL and Non-CDL driver training: and conducting vehicle inspections. I create and assist in the creation of company policies and procedures, as well as, writing/forming driver manuals.

I regularly attend professional and motor carrier industry seminars as well as review professional publications to keep my education and experience current.

I have been accepted to testify as an expert in both Federal and State courts.

You may refer to my professional resume for more detailed information concerning my experience, training and background.

# SUPPORTING ACTIVITIES

I reviewed the items listed in the materials reviewed section. I have reviewed the Federal Motor Carrier Safety Regulations Handbook.

# INCIDENT

## COLLISION SYNOPSIS

From the Police report:

Vehicle #1 was traveling south on I 95 in the center southbound lane. Vehicle #2 was traveling south on I-95 in the right southbound lane. Vehicle #2 was towing a utility trailer. Vehicle #3 was traveling south on I-95 in the left southbound lane. Vehicle #4 was traveling north on I-95 in the center northbound lane. Vehicle #5 was traveling north on I-95 in the left northbound lane. Vehicle #6 was traveling north on I-95 in the center northbound lane behind vehicle #4.

While traveling south, vehicle #1 partially entered the right southbound lane behind vehicle #2. While entering the right lane, the right side of vehicle #1 struck the left side of vehicle #2. The first area of impact occurred in the right southbound lane of I-95 south.

The initial impact caused vehicle #2 to rotate (jackknife) in a counterclockwise direction. In an attempt to re-enter the center lane, the driver of vehicle #1 over corrected the steering to the left. This caused vehicle #1 to rotate (jackknife) in a counterclockwise direction. As vehicles #1 and #2 rotated across southbound lanes, the right side of

vehicle #1 struck the left side of vehicle #2. The second area of impact occurred in the center southbound lane of I-95 South.

As vehicle #1 traveled across the left southbound lane, its left side struck the right side of vehicle #3. The third area of impact occurred in the left southbound land of I=95 south.

Following the third impact, vehicle #1 began to travel through the center guardrails. As it traveled through the guardrails, it began to overturn on to its right side. At the same time, vehicle #2 struck the guardrails with its left side. As it struck the guardrail, its trailer was separated. Vehicle #2 struck the guardrail numerous times before coming to rest along with the center median of I-95 south. As vehicle #1 continued through the guardrails, it pushed vehicle #3 into the guardrails. The fourth area of impact occurred where vehicles #1, 2, and 3. struck the guardrails.

After traveling through the guardrails, vehicle #1 slid along it's right side across the northbound lanes. Vehicle #3 traveled through the guardrails and overturned onto it’s top. Vehicle #3 slid along its top to final rest in the left northbound lane of I-95 north. As vehicle #1 slid across the northbound lanes, the driver of vehicle #4 began braking causing vehicle #4 to skid. Vehicle #4 skidded north along the center lane before striking the top of the trailer being towed by vehicle #1with its front. The fifth area of impact occurred in the center northbound lane of I-95 North. Following the fifth impact, vehicle #4 traveled into the trailer and came to a rest inside the trailer.

In an attempt to to avoid vehicle #1, the driver of vehicle #5 steered to the right. Vehicle #5 left the left northbound lane, crossing the center northbound lane, and entered the right northbound lane. Upon entering the right northbound lane, vehicle #5 struck the top of the sleeper portion of the cab and enter vehicle #1. The sixth are of impact occurred in the right northbound lane of I-95 North.

In an attempt to avoid vehicle #1, the driver of vehicle #6 braked and began to skid out of the center northbound lane and into the left northbound lane. Upon entering the left northbound lane, vehicle #6 struck the rear of the trailer being towed by vehicle #1. The seventh area of impact occurred in the left, northbound lane of I-95, North.

**UNIT DESCRIPTIONS**

Unit No. 1-was a 2014 White, International Prostar, VIN 3HSDJAPR7EN491357, owned by Joe Moholland, Inc. operated by Nicholas Dewayne Burist, holding drivers license number T61931071 VA, with passenger Charles Davenport and Charles Hines, Towing a Utility Trailer.

Unit No. 2-was a 2015 Nissan Armada, VIN 5N1BA0NF3FN621968, owned and operated by Howard Ansel Tulloch, drivers license number 058700432 GA with passenger Valery Tulloch.

Unit No. 3-was a 2019 Silver Chevrolet Silverado, VIN 1GCUYDED0KZ135846, owned and operated by Gary Dixon Snyder, drivers license number C277224 WV with passenger Brenda Snyder.

Unit No. 4-was a 2007 Yellow Nissan Xterra, VIN 5N1AN08W47C548103, owned and operated by Raymond Eugene Tipton, drivers license number T135725674620 with passenger Thelma Pento.

Unit No. 5-was a 2021 White Honda Pilot, VIN 5NYF5H26MB047898, owned and operated by Kyle Sloan, drivers license number 7864239 SC with passenger Jamie Sloan, Rylie Sloan and Kara West.

Unit No. 6-was a 2019 Black Peterbilt 579, VIN 1XPBD49X5KD231524, owned by Annette Holdings, Inc. operated by David Karl Stephens drivers license number 105417797 SC.

# ANALYSIS

Commercial motor carriers, (Mayflower and Moholland), in this instance, are authorized and regulated by the Federal Motor Carrier Safety Administration (FMCSA), United States Department of Transportation (DOT), pursuant to the Federal Motor Carrier Safety Regulations (FMCSR), found in the Code of Federal Regulations (CFR), Title 49 Parts 40, 375-385, 390-393, 395-397, and 399. Mayflower and Moholland are FMCSA registered and authorized (DOT #28406 and 486221), for hire, household Goods, property transporting, Motor Carrier's (M/C), operating in interstate commerce. As such, Mayflower and Moholland must be knowledgeable in and comply with all of the FMCSRs, that pertains to its particular operation.

**DISCUSSION #1.** Due to the fact that the majority of Interstate commercial motor carriers lack sufficient equipment to meet the national need for interstate commerce, the DOT has provided a mechanism found in FMCSR part 376 that permits registered and authorized Motor Carriers to lease Commercial Motor Vehicles (CMV) from, or to each other provided they meet the minimum provisions required in FMCSR part 376 and part 390.21T titled marking of self-propelled CMVs and intermodal equipment.

**DISCUSSION #2.** The regulatory procedures necessary to ensure compliance with part 376 include but are not limited to, a written lease granting the use of the equipment,

receipts specifically identifying the equipment to be leased and a starting date and time the possession is transferred clearly specifying which party is responsible for removing identification devices from the equipment upon termination of the lease. FMCSR part 390.21T in part, requires that the name of the Motor Carrier and it's US DOT number, identifying who's authority and responsibility for compliance with the FMCSR's the commercial equipment is being utilized for transportation in Interstate commerce, appear on each door of the commercial tractor. Prior to January 1, 2022, all of the required provisions of part 376 and part 390.21T had been met by both involved Motor Carriers.

**DISCUSSION #3.** Upon the termination of the lease and as provided in the lease/ contract agreement between the parties and pursuant to FMCSR part 376.12 Lease requirements, (e) Items specified in lease, the lessor, Moholland in this instance, would be responsible for the removal of all signage attached to the commercial tractor depicting Mayflower and it's DOT number as the responsible authority operating the commercial equipment. Although the lease was terminated in writing by Mayflower in late December 2021, prohibiting further use of interstate transportation of property under Mayflowers Authority, a provision in the contract between the parties permitted Moholland until April 28, 2022 to physically remove all signage of Mayflower from the sides of the identified and leased commercial tractor and trailer. Therefore, any further usage of the involved commercial tractor trailer there after would require that the signage depicting Moholland and its USDOT number appear on each door of the commercial tractor pursuant to FMCSR part 390.21T and interpretation question number one. With a few exceptions, any operation of the involved equipment after January 1, 2022 in Interstate Commerce by Moholland would be accomplished only by the utilization of Moholland's own USDOT registered Authority making it solely responsible for compliance with all of the FMCSR's. This would be true whether or not Mulholland had removed all of Mayflowers signage and replaced it with its own signage as required by part 390.21T.

## MATERIALS REVIEWED

1. Analysis Case File
2. Police Report
    a. Sloan Police Report
    b. GEORGIA SUBPOENA RETURN 0001-0073_143441473_1 hines production
    c. HINES AUTOPSY 000001 - HINES AUTOPSY000025_143441484_1- Hine production - GRAPHIC

    d. Division of Forensic Sciences Autopsy report - HINES000216 - HINES000224_143441769_1 Hines production
3. Photographs Provided
    a. Truck photos - Hines - Doc 72 - Amended Complaint_143439730_1
    b. Truck Photos - HINES000374 - HINES000375_143441744_1
    c. KELLEY'S TOWING 00001 - 0058_143441730_1
    d. JMI00552 video (M1034375xDADC0)_143441731_1
4. Court Papers
    a. Davenport
        i. Answers
            1. Davenport - 010 - Def Mayflower's Answer_143438851_1
            2. Davenport - 011 - Def Nicholas Burist's Answer_143438853_1
        ii. Complaint(s)
            1. Davenport - Complaint 4 1 2024_143438790_1
        iii. Defendants Discovery Responses & Production
            1. Davenport - Def Mayflower's Initial Disclosures 06-13-24_143439245_1
        iv. Plaintiff's Discovery Responses & Production
            1. Davenport - Pltf's Initial Disclosures 06-13-24_143439259_1
    b. Hines
        i. Answers
            1. Hines - Doc 34 - Burist's Answer to Plaintiff's Complaint_143440192_1
            2. Hines - Doc 43 - Def Locke's Answer to Complaint_ 143440187_1
            3. Hines - Doc 78 - Def Locke Relocations's Answer to Am Complaint_143440185_1
            4. Hines - Doc 79 - Def Mayflower's Answer to Am Complaint_ 143440177_1
            5. Hines - Doc 80 - Def Payne's Answer to Am Complaint_ 143440179_1
            6. Hines - Doc 81 - Def Burist's Answer to Am Complaint_ 143440183_1
            7. Hines - Doc. 35 - Def Mayflower's Answer & Affirmative Defenses to Pltf's Complaint_143440189_1
        ii. Complaint(s)
            1. Hines - Doc 72 - Amended Complaint_143439730_1
            2. Summons and Complaint_143439731_1
        iii. Defendants Discovery Responses & Production

1. Locke Relocations
    a. 2. Locke's Response to 1st RPOD 2.28.2024_ 143442783_1
    b. Locke's Response to 1st RPOD_143442605_1
    c. Production
        i. AFFAVIDTS - Angela Locke executed 02.14.23 _143442815_1
        ii. AFFAVIDTS - Kelvin Locke executed 02.14.23_ 143442818_1
        iii. BOL_143442814_1
        iv. Burist application, 1099s, etc_143442801_1
        v. Certified Policy - Locke Relocations Inc__143442806_1
        vi. Crash report_143442805_1
        vii. Ex. 2 - Aff of Lockes_143442799_1
        viii. Ex. 3 - Bills of Lading_143442796_1
        ix. Ex. 4 - Locke Employment Application for Burist_ 143442788_1
        x. Ex. 5 - Mohalland & Locke IC Agreement_ 143442794_1
        xi. Ex. 6 - Equipment Lease Moholland & Mayflower_143442792_1
        xii. Ex. 7 - Police Report_143442798_1
        xiii. Ex. 8 - Booking Confirmation - JMI Produced _143442790_1
        xiv. Insured vehicle proof of loss - power of attorney -title copy_143442808_1
        xv. IV appraisal and photos_143442812_1
        xvi. Locke + Moholland contract_143442784_1
        xvii. Payne Moholland  May 2022 Trailer Lease Agreement_143442809_1
        xviii. Signed Locke LLR_143442803_1
        xix. Signed Locke LLR_143442803_1
        xx. trailer photos and registration_143442813_1
    d. Rule 5.2 Certificate_143442786_1
2. Mayflower
    a. Hines - Def Mayflower's Resp to Pltf's First RPDs 03-19-24_143442447_1
    b. Hines - Def Mayflower's Resp to Pltf's First RPDs 03-19-24_143442923_1

c. Hines - Def Mayflower's Resp to Pltf's First RPDs 03-19-24_143487088_1
d. Hines - Mayflower's Privilege Log 03-19-24_ 143442449_1
e. Hines - Mayflower's Response to Plaintiff's First Request for Production to 03-19-24_143442451_1

3.

iv. Plaintiff's Discovery Responses & Production

1. 1. PL Response to MAYFLOWER 1st RFP 3.14.2024_ 143441494_1
2. 2. Certificate of Service - PL Responses to MAYFLOWER Discovery_143441496_1
3. 2. PL Response to PAYNE 1st Continuing RFP_143441638_1
4. 3. PL Privilege Log - MAYFLOWER (138772579.1)_143441490_1
5. CAN NOT OPEN Exchange-2_143441727_1.
6. GEORGIA SUBPOENA RETURN 0001-0073_143441473_1
7. PL Supplemental Response to MAYFLOWER RFP No. 1_143441815_1
8. Plaintiff's  Privilege Log - MAYFLOWER 3.15.2023_ 143440849_1
9. PLaintiff's Answers to MAYFLOWER Wrongful Death Interrogatories 3.15.2024 _143440522_1
10. Plaintiff's Answers to Payne Consulting's Interrogatories 5.2.2024_143440520_1
11. Plaintiff's Resp to PAYNE'S Request for Admissions 5.2.2024_143440668_1
12. Plaintiff's Response to MAYFLOWER 1st RFP 3.15.2023_ 143440840_1
13. Plaintiff's Response to PAYNE 1st Continuing RFP 5.2.2024_143440846_1
14. Plaintiff's Supplemental Response to MAYFLOWER RFP No. 1 4.3.2024_143440844_1

v.

c. Mayflower Productions

i. Previous accidents and load info CONFIDENTIAL MAYFLOWER003336-003755 - COMBINED Document Production_143487158_1.

5. Depositions

a. Burist, Nichols
    i. Transcript 12-12-23 Recv 9-4-24
    ii. EX 1 Certificates of Course Completion
    iii. EX 2 Van Operator Separation Notification
    iv. EX  Van Operator Separation Notification
    v. EX 4 List of Mayflower Employees
    vi. Ex 5 Agency Statement - Mayflower Transit
    vii. EX 6 DOT Inspections
    viii. EX 7 Inspection Report Correction
    ix. Ex 8 Photographs
    x. Ex 9 Trans Advantage Invoices
    xi. EX 10 Corporate Structure
    xii. Ex 11 Cell Phone Records
    xiii. Ex 12 Hours of Service Report
    xiv. Ex 13 Load Information
    xv. Ex 14 Georgia Subpoena Response
    xvi. Ex 15 Defendant Burist's Supplemental Responses 197 to Plaintiff's First Request for Production of Documents
    xvii. Ex 16 Photographs
    xviii. EX 17 Photograph
b. Donovan, Jack
    i. Transcript 11-9-23 Recv 9-4-24
    ii. EXHIBITS NOT REVC as of 9-4-24
    iii. EX 1 notice of deposition
    iv. EX 2 organizational chart
    v. EX 3 Georgia Secretary of State search
    vi. Ex 4 invoices
    vii. Ex 5 agency statement
c. Garr, Rob
    i. Transcript 4-27-23 recv 12-2-24
    ii. No all exhibits have been provided as of 12-2-24
    iii. Ex 1 Notice of Deposition
    iv. Ex 2 Police Report
    v. Ex 3 Tractor Pictures
    vi. Ex 4 Agency Agreements
    vii. Ex 5 Bates 271
    viii. Ex 6 Bill of Lading
    ix. Ex 7 Mayflower Organizational Chart
    x. Ex 8 Email from Mayflower
    xi. Ex 10 Hours of Service

xii. Ex 11 Truck Inspection

d. Haney, Chris
   i. Transcript 5-10-23 Recv 9-4-24
   ii. Exhibit 1 Notice of Deposition
   iii. Exhibit 2 Payne Master Trailer Rental Agreement
   iv. Exhibit 3 Payne/Moholland Invoices
   v. Exhibit 4 Annual Vehicle Inspection Report
   vi. Exhibit 5 PM Inspection Form
   vii. Exhibit 6 Work Order #W00086551
   viii. Exhibit 7 /3/22 Rental Inspection Report
   ix. Exhibit 8 7/4/22 Driver/Vehicle Examination Report

e. Jones, Jason
   i. Transcript 5-10-23 Recv 9-4-24
   ii. EX 1 PLAINTIFFS NOTICE OF 11 30(B)(6) DEPOSITION TO DEFENDANT MAYFLOWER TRANSIT
   iii. EX 2: CORPORATE STRUCTURE 14 UNIGROUP AND SUBSIDIARIES ORGANIZATION CHART
   iv. EX 3: LETTER FROM MARK VOLANSKY 44 TO ROB GARR DATED 7/11/22
   v. EX 4: AGENCY AGREEMENTS
   vi. EX 5: BILLS OF LADING
   vii. EX 6: GEORGIA MOTOR VEHICLE 87 CRASH REPORT
   viii. EX 7: AGENCY STATEMENT - 89 MAYFLOWER TRANSIT
   ix. EX 8: DRIVER QUALIFICATION FILES 114
   x. EX 9: RECORDS ABOUT VEHICLE 126 SAFETY INSPECTIONS AND VARIOUS DOCUMENTS
   xi. EX 10: INDEPENDENT CONTRACTOR 137 OPERATING AGREEMENT
   xii. EX 11: BOOKING CONFIRMATION FOR 151 SCAC NWMO/ BOOKED DATE: 2022-04-06
   xiii. EX 12: DECLARATION OF JASON JONES 155 IN SUPPORT OF MAYFLOWER TRANSIT, LLC'S, MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

f. Locke, Angela
   i. Transcript 5-12-23 Recv 9-4-24
   ii. EX 1 Plaintiffs' Notice of 30(b)(6) Deposition and Requests for Production to Defendant Locke Relocations LLC
   iii. EX 3 Booking Confirmation for SCAC NWMO
   iv. EX 4 Application for Employment of Nicholas Burist

   v. EX 5 Joe Moholland, Inc. and Locke RelocationIndependent Contractor Operating Agreement
   vi. EX 6 Equipment Description Addendum and Statement of Lease Certification

g. Petno, Thelma
   i. Transcript 5-2-24 Recv 9-4-24
   ii. No Exhibits marked

h. Sloan, Kyle
   i. Transcript 5-6-24 Recv 9-4-24
   ii. No Exhibits Marked

i. West, Kara
   i. Transcript 4-25-24 Recv 9-4-24
   ii. No Exhibits marked

j. West, Susan
   i. Transcript 4-25-24 Recv 9-4-24
   ii. No Exhibits marked

k. Wynn, Christopher
   i. Transcript 5-9-23 Recv 9-4-24
   ii. EX 1: CORPORATE STRUCTURE 45 UNIGROUP SUBSIDIARIE ORGANIZATION CHART
   iii. EX 2: AGENCY AGREEMENT
   iv. EX 3: SIGNALHIRE LIST OF 135 MAYFLOWER EMPLOYEES
   v. EX 4: EMAILED AND ATTACHMENTS 139 BATE STAMPEDE STAMPED JMI00553 THROUGH MAYFLOWER 000020
   vi. EX 5: BILLS OF LADING
   vii. EX 6: PHOTOGRAPHS
   viii. EX 7: PHOTOGRAPHS

6. Manuals
   a. Unigroup Agent Policies rev 5-2-22 - MAYFLOWER001579-003224 - Def Mayflower Suppl Docs Produced 05-05-23_143487148_1

7. Driver Qualification File
   a. Application - Burist application, 1099s, etc_143442801_1
   b. Drivers License and Social Security Card - Burist application, 1099s, etc_Acknowledgements - Burist application, 1099s, etc_143442801_1
   c. 143442801_1
   d. 1099's - Burist application, 1099s, etc_143442801_1
   e. Pre Employment drug screening HINES000025 - HINES000026_ 143441570_1- Hines production

f. Drug Test 12-1-2020 and 2-26-15 CONFIDENTIAL - MAYFLOWER003225-003335 - Combined Document Production_143487003_1
g. Learning Hub 6-4-19 - CONFIDENTIAL MAYFLOWER003756-003758_143487021_1

8. Driver Qualification file - Hines
    a. Drivers license and SS card - HINES000225 - HINES000318_143441765_1
    b. Application for employment - HINES000225 - HINES000318_143441765_1
    c. Notice of employee reprimands - HINES000225 - HINES000318_143441765_1
    d. Separation form - HINES000225 - HINES000318_143441765_1
    e. Receipt of employee handbook - HINES000225 - HINES000318_143441765_1
    f. Payroll action form - HINES000225 - HINES000318_143441765_1
9. Driver's Logs and delivery documents
    a. BOL_143442814_1 Hines production
    b. Logs - CONFIDENTIAL MAYFLOWER003759-004029 - COMBINED Document Production_143487155_1.PDF
10. Mayflower documents
    a. Mayflower website screen shots - Hines - Doc 72 - Amended Complaint_143439730_1 - Recv 9-4-24
    b. Sec of state screen shot Hines - Doc 72 - Amended Complaint_143439730_1 - Recv 9-4-24
    c. Agency agreement - CONSER 0001-0089_143441499_1
    d. Carrier-Agent Operation lease agreement - CONSER 0001-0089_143441499_1
    e. Mayflower brand guidelines - CONSER 0001-0089_143441499_1
    f. FMCSA000001 - FMCSA000169_143441487_1
    g. FMCSA file - USDOT000001 - USDOT008227_143441510_1
    h. FMCSA Company Safety Profile - USDOT008228 - USDOT009187_143441505_1
    i. Training - CONFIDENTIAL - MAYFLOWER003225-003335 - Combined Document Production_143487003_1
    j. 1-Previous accidents and load info CONFIDENTIAL MAYFLOWER003336-003755 - COMBINED Document Production_143487158_1
    k. Agreement - CONFIDENTIAL MAYFLOWER003759-004029 - COMBINED Document Production_143487155_1.PDF

l. Penske rental communication - CONFIDENTIAL MAYFLOWER004030-004031_143487154_1.PDF
m. Penske email communication - CONFIDENTIAL MAYFLOWER004032-004037_143487153_
n. Copy of M0333.ORDER.HISTORY (Jan 2022 - Jly 2022) Produced in Native Format 05-05-23_143487151_1

11. Locke Documents
    a. Certified Policy - Locke Relocations Inc__143442806_1 - Hines production
    b. Ex. 5 - Mohalland & Locke IC Agreement_143442794_1 0 Hines production
    c. Ex. 6 - Equipment Lease Moholland & Mayflower_143442792_1. - Hines production
    d. Ex. 8 - Booking Confirmation - JMI Produced_143442790_1 Hine Production
    e. Insured vehicle proof of loss - power of attorney -title copy_143442808_1 Hine production
    f. IV appraisal and photos_143442812_1 Hine Production.
    g. Payne Moholland May 2022 Trailer Lease Agreement_143442809_1 Hines production
    h. Signed Locke LLR_143442803_1 Hines Production
12. Total Military Management - TMM
    a. Compensation schedule - CONSER 0001-0089_143441499_1
    b. Hauling Agreement - CONSER 0001-0089_143441499_1
    c. Schedule of service and compensation - CONSER 0001-0089_143441499_1
13. Unigroup
    a. License - CONSER 0001-0089_143441499_1
    b. Stock ownership - CONSER 0001-0089_143441499_1
    c. Stock repurchase agreement - CONSER 0001-0089_143441499_1
    d. Board meetings - REDACTED - CONFIDENTIAL - MAYFLOWER003225-003335 - Combined Document Production_143487003_1
    e. Passenger ride authorization - CONFIDENTIAL MAYFLOWER003336-003755 - COMBINED Document Production_143487010_1
14. Hines Documents
    a. Photos HINES000319 - HINES000321_143441756_1
    b. Letters of administration - HINES000322-HINES000323_143441754_1
    c. Birth cert, and family photo - HINES000324 - HINES000327_143441752_1
    d. w-2 HINES000328 - HINES000331_143441750_1

   e. Funeral Home receipt - HINES000332_143441544_1
   f. Soc Sec Life expectancy HINES000333_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_1
   g. Death certificate - HINES000380_143441535_1
   h. Makayla Jania Hines DL - HINES000381_143441532_1
   i. Claims for collection on Hines Estate - HINESPROBATE000001 - HINESPROBATE000003_143441733_1
   j. Probate claims - HINESPROBATE000004 - HINESPROBATE000022 _143441732_1
15. Payne documents
   a. Gemini Ins Co Excess Liability - PAYNE0015 - PAYNE0038_143441728_1
   b. Arch Insurance - PAYNE0039 - PAYNE0177_143441523_1
   c. Trailer Registration - PAYNE0178_143441519_1
   d. Payne trailer documents - PAYNE0179 - PAYNE0216_143441517_1
16. Samsara documents -
   a. Samsara documents - CONFIDENTIAL MAYFLOWER003759-004029 - COMBINED Document Production_143487155_1.PDF
   b. Communication and serial numbers - CONFIDENTIAL MAYFLOWER003759-004029 - COMBINED Document Production_143487155_1.PDF
17. News articles
   a. News articles - HINES000237 - HINES000318_143441760_1
18. Case correspondence
   a. a-8-21-23 Letter CONFIDENTIAL - MAYFLOWER003225-003335 - Combined Document Production_143487003_1
19. Expert Report
   a. Reyes, Christino - Vocational Economics
      i. 3-11-23 Report - HINES000236_143441763_1 - Recv 9-4-24
      ii. 3-11-23 Report with assessment HINES000334 - HINES000374_ 143441746_1
   b. Brooks Rugemer - Sloan Report - Oct 11 2024 (Produced 10.11.24) -Recv 11-25-24

Petno

    Answers
    complaints
    Defendants Discovery Responses & Production
    Plaintiff's Discovery Responses & Production

Sloan

    Answers
    complaints
    Defendants Discovery Responses & Production

Plaintiff's Discovery Responses & Production

Tipton

Answers

complaints

Defendants Discovery Responses & Production

Plaintiff's Discovery Responses & Production

20. Additional lease documents and email received December 6th and 9th.
    a. October 24th, 2005 Lease agreement between Mayflower and Moholland.
    b. March 19th, 2009 Lease agreement between Mayflower and Moholland.
    c. Email dated December 9th, 2024 from Mike Kratzer, Director of Safety and DOT compliance for UniGroup and Mayflower.

# OPINIONS AND CONCLUSIONS

Unless otherwise qualified, the following opinions and conclusions are stated within a reasonable degree of probability. The basis for the following opinions and conclusions include, but are not limited to, Materials Reviewed referred to above, as well as Title 49 of the Code of Federal Regulations and industry standards. Opinions formed and conclusions reached include, but are not limited to, the following:

1. **OPINION:** It is my opinion that Mayflower had by April 28, 2022 met all of provisions and requirements demanded by FMCSR part 376 and part 390.21T.

2. **OPINION:** The March 19th, 2009 Carrier-Agent Operating Lease Agreement created pursuant to 49 C.F.R. Part 376, number 17., states "Upon the termination or cancellation of the Agency Agreement shall automatically terminate, effective on the date of termination of the Agency Agreement." It is my opinion that the canceled Agency Agreement did terminate the Carrier-Agent Operating Lease Agreement and therefore the subject semi-tractor was not under the exclusive possession, control, and use of the Mayflower operating authority at the time of the accident.

3. **OPINION:** It is my opinion that Mayflower made multiple good faith attempts in writing, advising and requiring Moholland to remove all Mayflower signage from the involved equipment. This fact was acknowledged by the president of Moholland, Mr. Garr, in his sworn deposition testimony found on pages 35, 38, 59, 110, 199.

4. **OPINION:** It is my opinion that Mayflower had no involvement or responsibility for the interstate movement of the load being transported by the involved commercial equipment. In point of fact, the load was being transported in Interstate Commerce by and under the USDOT issued Authority of Mulholland and Moholland maintained full and sole responsibility for compliance with the FMCSR's. This truth is testified to in sworn deposition by Mr. Garr, the President of Mulholland and found on pages 66, 110, 127, 201.

# COMPENSATION

I am compensated at the rate of $750 per hour of case work and $750 per hour for deposition or trial testimony. Attached to this report is a copy of my CV.

# SUPPLEMENTAL REPORT(S)

I am aware that there may be other materials which may be available in the future (such as reports, documents, transcripts of depositions, etc.) which I have not had the opportunity to review and/or analyze completely. For that reason, I reserve the right to formulate, enhance, or change my discussion points. Thus, I reserve the right to supplement this report if any new materials change or enhance my discussion points and opinions.



Philip Smith
Analysis, Inc.

Analysis, Inc.

Colorado Florida

# Philip J. Smith
## Curriculum Vitae

### EMPLOYMENT

| | |
|---|---|
| *2000-Present* | *President, Analysis, Inc., St Pete Beach, FL*<br>Testifying ASE Certified Master Technician and truck driving expert. Extensive experience in the inspection examination and investigation of mechanical systems. Consultant on driver's actions, responsibilities, qualifications, training, compliance and safety. CDL examiner. Accepted in both State and Federal Courts. |
| *2000-2014* | *President, Applied Vehicle Data, Inc., Grand Junction, CO, Tempe, AZ, St Pete Beach, FL*<br>Encompasses the manufacturing of an applied patented electronic data acquisition device for the testing of tractor-trailer air brakes. |
| *2003-2012* | *Safety Manager, State Line Trucking Fruita, CO* |
| *2005-2009* | *Manager, Analysis, LLC*<br>Truck Leasing |
| *2001-2009* | *Driver, Stafford Construction, Grand Junction, CO*<br>Intermittent driver for heavy haul equipment. |
| *1996-2000* | *Vehicle Specialist, Ruhl and Associates - Forensic, Inc., Grand Junction, CO*<br>ASE Certified Master Technician who inspects, examines and investigates mechanical systems on automobiles, light, medium and heavy trucks and trailers. |
| *1996-1997* | *General Manager, Prairie International Trucks, Inc., Champaign, IL*<br>Responsible for truck and trailer sales (new and used), service and parts sales. Set up and managed a semi-trailer sales and repair facility. Set up and implemented remote on-site contract maintenance department in Rantoul, Illinois for a private trucking company. |
| *1993-1996* | *General Manager, Prairie International Trucks, Inc., Springfield, IL*<br>Overall manager of fleet department that maintained State of Illinois vehicles, salvage department and collision repair facility. |
| *1991-1993* | *Service Director, Heintzelman's Truck Center, Inc., Orlando, FL*<br>Management of large full line service department. |
| *1989-1990* | *General Manager, Prairie International Trucks, Inc., Champaign, IL*<br>Managed day to day operations of entire dealership and carried out assigned projects relating to all aspects of the dealership. |
| *1989-1989* | *Consultant, Self-employed, Springfield, IL*<br>Set up and implemented a system of completing and submitting warranty claims for vendors of all locations of Prairie International Trucks, Inc. Coordinated the billing and reconciling of |

payments from associated vendors including Navistar, Caterpillar, Cummins, Detroit Diesel, and Allison Transmissions.

*1987-1989* *Technician, Central Illinois Trucks, Inc., Rochester, IL*
Worked part-time as a technician for a newly established branch of an existing Freightliner Truck Dealership, while completing a college degree.

*1981-1987* *Assistant Service Manager, Crossroads Ford Truck Sales, Inc., Springfield, IL*
Began employment as a line technician, then became an ASE Certified Master Technician, promoted to Assistant Service Manager.

*1980-1981* *Technician, Smith Distributors, Inc., Raymond, IL*
Line mechanic in charge of fleet maintenance for approximately 20 tractors and 40 trailers.

*1977-1986* *Truck Driver, Smith Distributors, Inc., Raymond, IL*
Short haul driver. Hauled various products that included livestock, gravel, bagged and bulk products.

**EDUCATION**

Parks College of St. Louis University, Lincoln Land Community College, Springfield, Illinois, Parkland Community College, Champaign, Illinois.

Associate Degree in Diesel Technology, Denver Automotive and Diesel College, Denver, Colorado.

**LICENSING**

Currently holding CDL-A with Tanker and Hazmat endorsements.
Texas Department of Public Safety – Texas Private Security Bureau

**SPECIAL TRAINING**

TXTA Crash Preventability
Trucking Issue Updates (American Trucking Association)
Minimum Training Requirements for Entry-Level Commercial Motor Vehicle Operators (Entry Level Driving Training - ELDT) (Federal Motor Carrier Safety Administration)
Introduction to the Electronic Logging Device Rule and Implementation Plan (EDL) (Federal Motor Carrier Safety Administration)
Meritor Wabco Collision Mitigation System Simulator training (Meritor Wabco)
Meritor Wabco OnGuardActive Collision Mitigation System Simulator Training (Meritor Wabco)
Meritor Wabco OnLane Lane Departure System Simulator Training (Meritor Wabco)
National Safety Council and TXDot - Our Driving concern: Train the Trainer
TMTA Safety Supervision of Motor Fleets
North American Transportation Management Institute – Certified Director of Safety
North American Transportation Management Institute – Certified Safety Supervisor
North American Transportation Management Institute – Managing Motor Fleet Safety Programs

U.S. DOT Motor Carrier Safety Compliance
Post Collision Commercial Motor Vehicle Inspection In Reconstruction Analysis
Vetronix Crash Data Retrieval System Technician
Vetronix Crash Data Retrieval System Data Analyst
Technology and Maintenance Council
Graduate, Traffic Accident Investigation II, Northwestern University, Evanston, Illinoi
Graduate, Traffic Accident Reconstruction I, Northwestern University, Evanston, Illinois
Commercial Vehicle Accident Investigator
Department of Transportation Vehicle Inspections
Fleet Maintenance Analysis
Federal Motor Carrier Safety Regulation Compliance Analysis
Cummins Diesel Engine Training
Detroit Diesel Engine Training
Caterpillar Diesel Engine Training
Bendix Comprehensive Air Brake System Training – Operation and maintenance of heavy vehicle air brake system and components.
Allison Automatic Transmission Training
Ford Motor Company Systems Training
Detroit Diesel Data Extraction Training
Cummins Insite 6 Qualification Training

**SPECIAL TRAINING Cont'd**
Transportation Megaconference VI
International Association of Accident Reconstruction Specialists, 23rd Annual Conference

**CERTIFICATIONS**

ASE Certified Master Automobile, School Bus, Light, Medium and Heavy Truck Technician
U.S. Department of Transportation – Transportation Safety Institute
*Train the Trainer*, Meritor Training Program featuring Meritor's entire product line including WABCO Air Brakes, WABCO Antilock Braking Systems and Meritor Foundation Brakes
Bendix Air Brake Systems and Bendix Antilock Brake Systems
Midland-Grau Antilock Brake Systems, OEM and Retrofit Systems
SAE Seminar, Braking Performance of Heavy Commercial Vehicles
Detroit Diesel Data Extraction
Cummins Insite 6 Qualification
Vetronix Crash Data Retrieval Specialist

**PROFESSIONAL ASSOCIATIONS**

North American Transportation Management Institute (NATMI)
National Association of Professional Accident Reconstruction (NAPARS)
National Safety Council (Firm Membership)
Society of Automotive Engineers (SAE)
Texas Association of Accident Reconstruction Specialists (TAARS)
Commercial Vehicle Safety Alliance (CVSA)
SAE J2728 HBEDR Sub-Committee
Technology & Maintenance Council (TMC)
Texas Motor Transportation Association (TMTA)

**PUBLICATIONS**

Smith, Philip J., Reust, Timothy J., Morgan, James M., “Method to Determine Vehicle Speed During ABS Brake Events Using Heavy Vehicle Event Data Recorder Speed” SAE Paper 2010-01-0999.

Smith, Philip J., Robertson, Craig V., and Ruhl, Roland L., “A Prototype Computer Based Test System to Test Commercial Vehicle Air Brake Systems: Application and Test Results,” SAE Paper 1999-01-3782, 1999 SAE International Truck and Bus Meeting and Exposition, Detroit, MI, November 15-17, 1999.

Smith, Philip J., Co-author, “Truck and Trucking Handbook, A Primer,” May 2000.

**PRESENTATIONS**

Swift Transportation presentation, August 2020
Swift Transportation ECM and pre-trip presentation, December 2017
Arizona Motor Carrier CLE ECM Presentation, December 2011
Southwestern Association of Technical Accident Investigator March, 2010
Texas Bar ECM Presentation, October 31, 2008
Ontario Provincial Police (OPP) October 20-24, 2008
People Net Users Conference, 2006
People Net ECM presentation, 2005
Texas Motor Transportation Association, ECM 2004
Texas Bar Trucking presentation, 2004
A Prototype Computer Based Test System to Test Commercial Vehicle Air Brake Systems: Application and Test Results, SAE 1999-01-3782, 1999 SAE International Truck and Bus Meeting and Exposition, Detroit, MI, November 15-17, 1999
ATA Litigation, Conference on Highway Accident Litigation, 1997

12-2022

Analysis, Inc.

Florida Colorado

Phone: 970.243.8585
Direct: 970.260.8461

Philip J. Smith
Deposition and Trial Testimony

Based upon best information available
2021-current

Disclaimer: The material below is provided from the best information available.
It may or may not be complete as it is based on memory and available documentation.

| Case Name | Attorney | Deposition (D) or Trial (T) |
|---|---|---|
| Adrianna Morales as next of friend of minor D.J.M. Lavon Beth Meyer and Lee Allen Meter v OK Trans Inc. DBA Ok Transport and Satnam Singh Lehal In The United States District Court For The Southern District Of Texas Corpus Christi Division. Civil Co 2:19-CV-00094 | | T-10/24 |
| Guerrero v C.R. Englund and Ryan Crowley<br>United State Court Southern District Of Texas Mc Allen Division C.A. No. 7;23-CV-00053 | Blake Brunkenhoefer | D-5/24 |
| Paul Saunders v Ace Cromer and Texas Transeastern, inc.<br>In The District Court 146th Judicial District ell County, Texas Cause No. 21DCV327338 | Gordon Stafford | D-4/24 |
| Arizona Municipal Risk Retention v Taka Trans<br>In The Superior Court Of The State Of Arizona In And For The County Of Cochise Case No S0200CV202100535 | Shawn Petri | D-4/24 |
| Alvarado v Aggregate Haulers<br>In The District Court 131st Judicial District Bexar County, Texas Cause 2022-CI-03096 | Paul Huckabay | D-1/24 |
| Hord v Tim Icenhower Oil<br>In The District Court 369th Judicial District Cherokee County, Texas use No. 2020080271 | Eric Penn | D-1/24 |
| Marino v American Electric Power- AEP<br>In The Circuit Court Of Kanawha County, West Virgina Civil Case No. 21-C-899 | Becky Pomeroy | D-1/24 |
| Grummer v Budget Truck Rentals LLC and Covey Rentals, LLC<br>United States District Court Western District Of Arkansas Fayetteville Division Civil Action No. 4:22-cv-05177-TLB-CDC | John Alexander | D-1/24 |
| Larson v Morning Star, Get Logistics<br>In The General Court Of Justice Superior Court Division 22 CVS 789 | Eric Penn | D-10/23 |
| Wally v Polly Trucking<br>In The Superior Court Of The State Of Arizona In And For The County Of Maricopa Case N0 CF2021–091716 | Fletcher Carpenter | D-6/23 |
| Bishop v Containerport Group<br>In The United States District Court Northern District Of Georgia Atlanta Division Civil Action File No. 1:22-cv-1186-SDG | Eric Penn | D-5/23 |
| Meyer v OK Trans Inc, DBA OK Trasport and Satnam Lehal.<br>In The United States District Court For The Southern District Of Texas Corpus Christi Division C.A 2:19-CV-00094 | Eric Penn | D-5/23 |
| Green V Big Brother Trucking<br>United States District Court Arizona District Case No. CV-21-08057-PCT-JJT | Clarice Spicker | D-1/23 |
| Tiffinie Mumphrey v Cardinal Transport | Jill Penn | D-12/22 |

In The 2nd Judicial District Court Of Cherokee County, Texas Cause No. 2020-020038

Balderas v Sanderson Farms | Eric Penn | D-6/22
In The District Court 170th Judicial District, Mclennan County, Texas Cause No. 2017-758-4

Graham v Bucheit | Kent Emison | D-4/22
In The Forty-Third Circuit Court Of Clinton County State Of Missouri Cause No 20CL-CC00018-01

Carrizales v Rush Transport and Martinez | M Paul Skrabanek | T-3/22
In The District Court of Harris County, Texas 269th Judicial District Cause no 2018-68100

Miller v Colgate | Robert Waltman | D-3/22
In The District Court Of Reeves County, Texas 143rd Judicial District Cause No 20-04-23492-CVR

Remigio V Manuel Campos D/B/A C&C Transportation | Eric Penn | D-2/22
In The District Court Of Harris County, Texas 281St Judicial District

Daniel Binder V Thomas Spala | Danny Owens | D-8/21
in The Circuit Court Of The Fifth Judicial Circuit in And For Sumter County, Florida Case No: 2019-CA-000153

State of Arizona V Did Wayne Heidrich | Mario Zapata-Rossa | H-6/21
State of Arizona Peoria Municipal Court No. M-0750-CT-2020002476

Balderas v Sanderson Farms | Eric Penn | D-5/21
In The District Court 170th Judicial District, Mclennan County, Texas Cause No. 2017-758-4

Carrizales v Rush Transport and Martinez | M Paul Skrabanek | D-5/21
In The District Court of Harris County, Texas 269th Judicial District Cause no 2018-68100

JPMKL v Western Express | Scott Ortiz | D-4/21
In The United State District Court For the District of Wyoming Civil No 18-CV-125-ABJ

Adrovic v Cleveland | Erick Spurlock | T-1/21
Superior Court Of The State Of Arizona County Of Maricopa No CV2019-009167

D=Deposition T=Trial H=Hearing

MAYFLOWER TRANSIT

# CARRIER-AGENT OPERATING LEASE AGREEMENT

**THIS AGREEMENT** is executed as of the date set forth at the end hereof between Mayflower Transit, LLC, a Missouri Limited Liability Company, **("Carrier")** and the party identified in the signature space at the end hereof **("Agent")**, pursuant to the requirements of 49 C.F.R. Part 377.

In consideration of the mutual covenants hereinafter contained, **Agent** and **Carrier** hereby agree to the following:

1. **Agent** will furnish **Carrier** the use of one or more items of motor vehicle and van equipment (hereinafter called "Equipment") as described in one or more Equipment Description Addendum and Lease Certifications or other records maintained by **Carrier**, by reference made a part of this Agreement. Such records may be maintained by Carrier in hard copy or by electronic means.

2. As to the Equipment leased under this Agreement, **Agent** agrees to:

A. fully maintain and furnish all lubricants, fuel, tires, and other necessary equipment incident to the operation of the Equipment, including furniture pads, straps, dollies, etc;

B. pay all toll fees of any nature whatsoever including bridge, ferry and toll road fees;

C. pay all fines assessed as a result of the operation of the Equipment or against personnel operating the Equipment arising or resulting from any violation of any law or regulation;

D. pay any and all road use and motor fuel taxes assessed as a result of the operation of the Equipment;

E. provide **Carrier** copies of D.O.T. safety inspections obtained in accordance with Carrier policy;

F. pay any and all license, taxes, or other fees required to be paid as a condition precedent to or for or as a result of the continued operation of the Equipment;

G. pay any and all charges due and owing to personnel or companies providing goods or services to **Agent** directly or indirectly related to the operation of the Equipment or the provision of services provided under this Agreement.

H. paint the exterior surface of the equipment to the exact corporate design specifications required by **Carrier** at **Agent's** cost;

I. maintain the Equipment in a safe and roadworthy condition.

3. **Agent** agrees to furnish accessorial services which may be required from time to time as described in **Carrier's** published Tariffs. Further, **Agent** agrees to furnish all necessary and competent personnel to perform these services. Personnel performing accessorial services shall be subject to the same provisions as outlined in items 2 and 4.

4. **Agent** agrees to furnish personnel as required to perform transportation services using the Equipment. **Agent** shall insure that such personnel are properly qualified in accordance with D.O.T. Regulations and Carrier Policies prior to the performance of services hereunder. **Agent** further agrees that **Agent** shall be solely responsible for the arrangement and payment of compensation for furnished personnel, including any financing or operating lease arrangement it may enter into with independent contractors with respect to furnishing Equipment. Should personnel furnished by the **Agent,** in the sole opinion of **Carrier** be found in non-compliance with the rules and regulations of **Carrier** or of any regulatory entity having jurisdiction over **Carrier**, then **Carrier** shall have the right to require **Agent** to furnish other personnel who comply with these rules and regulations.

5. **Agent** and **Carrier** mutually agree it is in the interest of all parties that personnel furnished by **Agent** to perform the services herein have a neat and clean personal appearance in their dealings with the public. In furtherance of this understanding, and also as a result of contractual commitments with **Carrier's** customers, it shall be the responsibility of **Agent** to guarantee that its personnel providing services under this Agreement wear clean uniforms in accordance with Carrier Policy, bearing the identity of **Carrier**, at all times when dealing with **Carrier** customers or on **Carrier** business.

6. **Agent** and **Carrier** mutually agree that personnel furnished by the **Agent** for services under this Agreement are not employees of **Carrier**. Should, however, a court of competent jurisdiction or any governmental agency determine that such personnel are employees of **Carrier** for any purpose whatsoever, including, but not limited to, liability for withholding taxes, social security, unemployment compensation or other similar taxes, worker's compensation coverage or liability, **Agent** hereby undertakes and agrees to hold and save **Carrier** harmless of and from any and all liability, obligation or expense incurred by **Carrier** including, but not limited to, the amount of any assessment, award, judgment or other order which may be entered against **Carrier** on account of such determination, as well as any other cost or expense, such as attorneys fees, incurred by **Carrier** in connection with such matter.

7. **Agent** agrees to maintain insurance as required by Carrier Policy which requirements are incorporated herein by reference. Failure on the part of the **Agent** to maintain and continue in full force and effect insurance coverages as required by Carrier Policy may result in automatic cancellation of this Agreement. In lieu of furnishing the coverages as required, **Agent** may request **Carrier** procure the same at the sole cost of the **Agent**. Nothing herein shall obligate **Carrier** to procure insurance if requested by the **Agent.**

8. **Agent** agrees, within thirty (30) days of termination of this Agreement, to return all licenses, cards, permits or other operating documentation of any nature whatsoever issued in the name of **Carrier**. **Agent** further agrees to pay **Carrier**, as liquidated damages, the sum of fifty dollars ($50.00) per day for each and every day beyond such thirty (30) day period, during which **Agent** failed, neglected or refused to return such plates and cards. It is expressly agreed between the parties that the exact amount of damage which would be sustained by **Carrier** in the event of failure of **Agent** to discontinue use of **Carrier** issued licenses, cards, permits or other operating documentation will be difficult, if not impossible, to determine and that the sum of fifty dollars ($50.00) per day is agreed to between **Carrier** and **Agent** for the purpose of liquidating the amount of **Agent's** liability to **Carrier**, and not as a penalty.

9. **Carrier** shall be responsible for the reporting of all motor fuel and other operating taxes assessed against **Carrier**. **Agent** shall reimburse **Carrier** for all such taxes assessed and paid by **Carrier.**

10. **Carrier** shall compensate and remit compensation to **Agent** in accordance with Carrier Policies as in effect from time to time.

11. Pursuant to 49 C.F.R. 377.12c or as may be required by any successor thereto, **Carrier** shall have exclusive possession, control and use of the Equipment and assume complete authority for operation of the Equipment only during the time the Equipment is operated under **Carrier's** DOT registration.

12. Neither **Agent**, nor any of its employees, servants, agents or independent contractor owner operators under contract with **Agent**, shall assume, make or incur any obligation on behalf of or in the name of **Carrier** without prior written authorization from **Carrier** specifying the nature and amount of the obligation.

13. **Agent** shall save, defend, indemnify and hold harmless **Carrier** from and against any and all liability of any nature whatsoever occasioned by any act or failure to act arising or resulting from **Agent's** performance of services under this Agreement, including the operation of the Equipment.

14. Nothing contained herein shall be construed to relieve **Carrier** of any obligations imposed upon **Carrier** by law, including the obligation of **Carrier** to maintain and file with regulatory authorities proof of liability and cargo insurance for the benefit of the shipping public. It is the intent of this agreement to allocate between the parties hereto the responsibility for any such liabilities.

15. **Agent** acknowledges and agrees that, in accordance with Carrier Policies then in effect, **Carrier** shall have the right to charge **Agent** for all or any portion of loss, damages or delay payments made by **Carrier** as a result of damage to or delays to shipments involving **Agent** or the Equipment, or to assess sanctions or other assessments against **Agent**. **Carrier** shall itemize any such assessments or charges on the **Agent's** statement maintained by **Carrier.**

16. In the event **Carrier** shall employ the services of an attorney for any collection of monies due **Carrier** from **Agent** under or pursuant to the provisions of this Agreement or from any breach of this Agreement by **Agent**, then **Agent** shall be liable to **Carrier** for **Carrier's** reasonable attorneys fees, together with all reasonable costs and expenses incurred by **Carrier** incident to the proceedings.

17. Upon the termination or cancellation of the Agency Agreement between **Carrier** and **Agent**, this Agreement shall automatically terminate, effective on the date of termination of the Agency Agreement.

18. As used in this Agreement, Carrier Policies shall mean such rules, regulations, procedures and directives issued by the **Carrier** or directives and decisions of the **Carrier's** Board of Directors, whether now existing or as may be issued or amended from time to time during the term of this Agreement, all of which are or shall be adopted and incorporated herein by reference.

19. The Agreement shall be interpreted in accordance with the laws of the State of Missouri. The **Carrier** and **Agent** agree that the United States District Court for the Eastern District of Missouri shall be the exclusive forum for the resolution of any dispute arising from or under this Agreement.

This Agreement has been executed in multiple copies, with at least one copy for each party, and all said executed copies shall be deemed originals.

**IN WITNESS WHEREOF**, the parties have executed this Agreement this 19th day of March, 2009.

**AGENT:**

**M444 MOHOLLAND TRANSFER CO., INC.**
**d/b/a MOHOLLAND TRANSER**

By: [signature]
Signature

Title: President

**CARRIER:**

**MAYFLOWER TRANSIT, LLC**

By: [signature]
Signature

Title: [signature]

MAYFLOWER® TRANSIT m-333

Mayflower Transit, Inc.
One Mayflower Drive
Fenton, MO 63026-1350
636-305-4000 • Fax: 636-349-6933

# CARRIER-AGENT Operating Lease Agreement

THIS AGREEMENT is executed as of the date set forth at the end hereof between Mayflower Transit, LLC, a Missouri Limited Liability Company, (**"Carrier"**) and the party identified in the signature space at the end hereof (**"Agent"**), pursuant to the requirements of 49 C.F.R. Part 377.

In consideration of the mutual covenants hereinafter contained, **Agent** and **Carrier** hereby agree to the following:

1. **Agent** will furnish **Carrier** the use of one or more items of motor vehicle and van equipment (hereinafter called "Equipment") as described in one or more Equipment Description Addendum and Lease Certifications or other records maintained by **Carrier**, by reference made a part of this Agreement. Such records may be maintained by Carrier in hard copy or by electronic means.

2. As to the Equipment leased under this Agreement, **Agent** agrees to:

   (a) fully maintain and furnish all lubricants, fuel, tires, and other necessary equipment incident to the operation of the Equipment, including furniture pads, straps, dollies, etc.;

   (b) pay all toll fees of any nature whatsoever including bridge, ferry, and toll road fees;

   (c) pay all fines assessed as a result of the operation of the Equipment or against personnel operating the Equipment arising or resulting from any violation of any law or regulation;

   (d) pay any and all road use and motor fuel taxes assessed as a result of the operation of the Equipment;

   (e) provide **Carrier** copies of D.O.T. Safety inspections obtained in accordance with Carrier policy;

19. This Agreement shall be interpreted in accordance with the laws of the State of Missouri. The **Carrier** and **Agent** agree that the United States District Court for the Eastern District of Missouri shall be the exclusive forum for the resolution of any dispute arising from or under this Agreement.

This Agreement has been executed in multiple copies, with at least one copy for each party, and all said executed copies shall be deemed originals.

IN WITNESS WHEREOF, the parties have executed this Agreement this *24th* day of *October*, 200*5*.

Carrier

MAYFLOWER TRANSIT, LLC

By: [signature]

Title: [illegible]

Agent *M-333*

*Joe Moholland Moving*

Agent's Legal Name

By: [signature]

Title: OPERATIONS MANAGER

**From:** Kratzer, Mike <Mike_Kratzer@unigroup.com>
**Sent:** Monday, December 9, 2024 2:58 PM
**To:** Ehrenreich, Todd <Todd.Ehrenreich@lewisbrisbois.com>
**Subject:** Moholland Agency Agreement Cancellation

EXTERNAL

Todd,
My name is Mike Kratzer. I am the Director of Safety and DOT Compliance for UniGroup and Mayflower Transit. The Carrier-Agent Operating Agreement for Moholland states the agreement was made according to 49 CFR Part 377. However, this was a typo to the Moholland lease document. The agreement should have stated it was made according to 49 CFR 376. To validate that the typo occurred, I have reviewed other Carrier-Agent Operating Agreements and each of them refer to the 49 CFR 376.

Let me know if you have any questions.

Mike Kratzer
Director of Safety and DOT Compliance
UniGroup C.A.

######################################################################
The information contained in this message, and any attachments thereto, is intended solely for the use of the addressee(s) and may contain confidential and/or privileged material. Any review, retransmission, dissemination, copying, or other use of the transmitted information is

prohibited. If you received this in error, please contact the sender
and delete the material from any computer. UNIGROUP.COM
########################################################################