**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | | |
|---|---|---|
| KYLE SLOAN, et. al.<br><br>Plaintiff,<br>v.<br><br>NICHOLAS BURIST, et al.,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Action No.<br>2:22-cv-0076-LGW-BWC |

**DEFENDANT MAYFLOWER TRANSIT, LLC'S SUPPLEMENT TO ITS MOTION FOR JUDGMENT AS A MATTER OF LAW.**

Mayflower provides this supplement to the argument at the hearing on its motion for judgment as a matter of law, to further explain how Plaintiffs have not shown it is more likely than not that Mayflower was responsible for this load, or for any of the conduct that proximately caused Plaintiffs' damages in this case.[1] The evidence is not sufficient, the inferences are unreasonable, and the evidence to allow stacking is absent. Accordingly, Mayflower is entitled to judgment as a matter of law.

In the Eleventh Circuit:

> Although we look at the evidence in the light most favorable to the non-moving party, the non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts. *See id.* (citing *Walker v. NationsBank of Florida, N.A.*, 53 F.3d 1548, 1555 (11th Cir.1995)). A substantial conflict in the evidence is required before a matter will be sent to the jury.

Abel v. Dubberly, 210 F.3d 1334, 1337 (11th Cir. 2000). Accordingly:

[1] Late Sunday night, November 22, 2026, Plaintiff filed papers in which they claim to address these issues. In the hours since, Mayflower has not had a chance to fully review and respond via memorandum brief to them before this morning's filing. However, the arguments here rely upon trial evidence and Georgia law that demonstrate the applicable legal principles require judgment as a matter of law.

> What is required in order for the motion to be denied is substantial evidence of "such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." *Id.* As this court has stated before, however, "a jury question does not exist because of a 'mere scintilla of evidence'; rather, '[t]here must be a conflict in substantial evidence to create a jury question.' "

Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1549 (11th Cir. 1996).

Plaintiffs' causes of action all require showing that Mayflower was the tortfeasor. The issue for all the alleged torts is whether, on this day, the load was Mayflower's. Moholland did not have authority to deliver this load for or on behalf of Mayflower.

The evidence regarding his load shows that it was not under Mayflower's supervision, control, or direction. Moholland was responsible for this load. Plaintiffs have alleged agency, in various, forms, but as to each the facts do not match the elements with competent substantial evidence.

Further, as to Moholland's role, Mayflower has met any applicable burden to show that Moholland was the responsible motor carrier here.

## I. THERE IS NO EVIDENCE OF DIRECT NEGLIGENCE, BECAUSE MAYFLOWER DID NOT OWN THE TRUCK (LOCKE DID) AND THE MOHOLLAND WAS THE RESPONSIBLE MOTOR CARRIER

Plaintiffs allege negligence arising from allowing Burst to drive on July 1, 2022. Mayflower was not involved in that load and therefore cannot, as a matter of law, have been negligent as to Burist's crashing Locke's truck into Sloan's vehicle.

"It is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation and damages" and "in order to recover for any injuries resulting from the breach of a duty, there must be evidence that the injuries

were proximately caused by the breach of the duty." Goldstein, Garber & Salama, LLC v. J.B., 300 Ga. 840, 841, 797 S.E.2d 87, 89 (2017)

**A. No duty breached.**

Under Georgia law, "without some affirmative proof of negligence, we must presume performance of duty and freedom from negligence." Ireland v. Williams, 830 S.E.2d 538, 542 (Ga. Ct. App. 2019).

Plaintiffs failed in that burden. Here, there can be no breach of a duty, for two reasons. First, as to any hiring of Burist for this load or maintenance of the truck, Mayflower was not his employer and had no role in his selection to drive that day. Locke recruited Mr. Burist to drive on that day, as Ms. Locke testified. Locke owned the truck, and paid him for his work. Locke had a contract with Moholland, not Mayflower. Locke maintained the truck and provided it to Burist on that day. There is no evidence that Mayflower hired, retained, selected, controlled, or otherwise had Burist drive on that day. Locke had him drive for Moholland's load, with Locke's truck. And, in the defense case, the Court heard evidence that Burist liked this truck, was familiar with it, and took charge of driving it when he was assigned it. He also testified that Locke paid him. Mayflower had nothing to do with the duties breached by these parties, which cause the Plaintiff's damages.

Second, as to any duty arising from transporting this load, Moholland, not Mayflower, was the responsible motor carrier. "[I]n the absence of affirmative proof of negligence, we must presume performance of duty and freedom from negligence." Coca-Cola Bottling Co. United, Inc. v. Lewis, 932 S.E.2d 801, 805 (Ga. Ct. App. 2026). Here, Plaintiff has not shown any evidence as to Mayflower's negligence; instead, the evidence showed that Moholland undertook the role as carrier, took responsibility, and that such responsibility was documented via the bill of lading, the police reports, and the payment (along with addressing any losses to the goods) for the load.

Moholland dealt with Locke to use Locke's truck. Locke did not have a DOT number, and the claim Locke used Mayflower's DOT number is inconsistent with the evidence, because Ms .Locke testified that the necessary DOT and regulatory elements were handled by Moholland. Moholland might have previously used Mayflower, but at this stage there was no relationship.

Accordingly, as to negligence Mayflower did not breach any legal duty.

**B. No proximate cause.**

"[T]he fact that an accident occurred and a plaintiff suffered injury "establishes no basis for recovery *unless the plaintiff comes forward with evidence showing that the accident was caused by the defendant's negligence*." Ireland , 830 S.E.2d at 542.

Even if there is a duty regarding regulations that was somehow breached, there is no proximate cause. It was: Burist who drove the vehicle, Moholland whose authority was used for the move under the bill of lading and any relevant requirements; and Locke who hired Burist and gave him the truck to drive that day. Here, Moholland's conduct and Locke's conduct were the proximate cause. Plaintiffs' claim that Moholland's improper acts (leaving the markings and credentials in the truck) was the cause must fail. See Clark v. Ashley, 923 S.E.2d 207, 212 (Ga. Ct. App. 2025)("Appellants first argue that the Defendants' failure to place Eric into the concussion protocol caused his spinal cord injury because the concussion protocol would have prohibited him from playing in the game only two days after the practice injury" but "While it is of course factually correct that Eric could not have gotten hurt in a game he did not play in, our case law makes clear that liability does not attach on the basis that one's negligence furnishes only the condition or occasion for another to cause injury."); Pontoo v. Pinson, 914 S.E.2d 448, 452 (Ga. Ct. App. 2025)("The record contains no evidence that Thames's lack of a valid license

proximately caused the wreck or Pinson's injuries. In fact, the record is devoid of any causal connection between Thames's conduct and the circumstances leading to the collisions.”).

Plaintiffs have not met the elements of negligence.

## II. AS TO EITHER DIRECT OR VICARIOUS LIABILITY, MOHOLLAND IS RESPONSIBLE AS THE MOTOR CARRIER

The evidence at trial led to a single conclusion, as it relates to the responsible motor carrier: Moholland.

At trial, Moholland admitted that it was the responsible motor carrier for this load. That admission was coupled with the bill of lading, showing Moholland as the carrier (for both shipments covered in this load).

In addition, the investigating authorities listed Moholland as the carrier for the load. The Missouri plates on the truck—that Moholland admitted should not have been on the truck—did not change this responsibility. And, as to those plates, Moholland admitted they should have been in the mail; there was no authorization to use them by Mayflower.

Further, the transaction was entirely Moholland’s. Mayflower did not receive any compensation for this load. Moholland paid the claims from the military personnel whose goods were on the truck, to compensate them for the goods lost due to the crash. Moholland was not able to add new loads to Mayflower’s system, so this one was not in the Mayflower system (the “JMI” bates number on the bill of lading shows it was in their records, not Mayflower’s). Moholland had its own DOT number and worked with Locke. Locke had no contract with Mayflower and worked with Moholland to provide Burist and the subject truck.

## III. UNDER ANY PROPER VIEW OF THE EVIDENCE, THERE IS NO EVIDENCE UPON WHICH TO ATTRIBUTE BURIST’S ACTS ON THAT DAY TO MAYFLOWER—MAYFLOWER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.

**A. There is no actual agency.**

Under Georgia law, "it is the actions of the principal that create an agency relationship." Satisfaction & Serv. Hous., Inc. v. SouthTrust Bank, Inc., 642 S.E.2d 364, 365 (Ga. Ct. App. 2007)(rejecting actual agency where there was insufficient evidence of necessary control by the principal). Thus, only Mayflower's acts can support an agency relationship, and so the fact that the logos and DOT number were still on the truck, or that there was a cab card in the truck, is insufficient, because those are acts of Moholland in not returning them. Plaintiff must have evidence that Mayflower allowed use of the DOT number and the plates for this load. The evidence at trial failed this test.

Actual agency requires, in Georgia, the following:

> "The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." "Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." **In order to show actual agency, the purported principal must assume the right to control the time, manner, and method of the purported agent's work.**

Barrs v. Acree, 691 S.E.2d 575, 578–79 (Ga. Ct. App. 2010)(emphasis added)(rejecting agency). Accordingly, actual agency requires: a) authorization to act; b) control over the time, manner, and method of the work; and c) manifestation of consent. None are present here, but if any are missing the elements fail regardless.

First, the prima facie, presumptive evidence that refutes authorization to act, for which Plaintiff has no proper rebuttal, requires judgment for Mayflower. The agreement between Mayflower and Moholland was terminated before July 1. This load was not in Mayflower's system. Mayflower was not on the bill of lading. Both documents from the State of Georgia about this crash list Moholland, not Mayflower, even though the investigators had physical access to the

truck and the cab cards upon which Plaintiff relies. There is no evidence that Mayflower ever conferred the authority to act on its behalf for this load.

Second, the trial evidence revealed that there was no assumption of control, so no reasonably jury could find for plaintiffs on this element. Locke owned the truck. Locke ran its loads via Moholland dispatch. Locke received assignments from Moholland, and the loads began at Moholland's lot. It doesn't matter that Locke didn't know of the severance of the relationship, because Locke never had a contract with Mayflower. Further, Locke employed Burist to drive and used Moholland's lot for its office and business location for this load.

Plaintiffs' claim of continuing agency relies upon the past, which is insufficient under Georgia law. Agency requires the principal to actively make them an agent. You cannot infer actual agency, and the "agent's" actions cannot create the agency. Here, the principal never allowed Moholland to act on its behalf for this load. The bill of lading list Moholland. The police report lists Moholland. Mayflower had no knowledge or control of this load; Locke testified the dash camera and monitoring software were Moholland's. As the Georgia Court of Appeals has explained, there is "no authority, and our research reveals none, holding that an implied agency relationship can be established by proof of a past employment relationship between the parties." Barrs v. Acree, 691 S.E.2d 575, 579 (Ga. Ct. App. 2010). The burden is to show agency at the time, and here, all the evidence shows that as to this load there was no authorization or agency permitted. Moholland acted on its own, to employ Locke, who then used Burist as its driver. Mayflower is absent.

Third, the claim of ratification or implicit consent fails. Plaintiffs rely substantially on the "registration" and cab documents. However, the critical question is not whether Moholland keeping these, despite communicating it would not, until July 1, creates an agency or ratification.

This was not sufficient to make Mayflower legally responsible for a shipment undertaken exclusively for Moholland.

Without evidence this load was under Mayflower's authority—i.e., whose load it was and what actually occurred, rather than speculation—Plaintiffs cannot make Plaintiff liable for Moholland's acts. Neither can Plaintiff make Locke, with whom Mayflower had no contract, or Burist, who was hired by Locke, an agent of Mayflower.

As to documents as evidence of agency liability, Georgia has answered this question in the negative, explaining that documents are not sufficient to support an agency relationship without evidence that the alleged principal excercised the necessary control:

> In order to show actual agency, Dix must demonstrate that the DeKalb P.C. assumed the right to control the time, manner, and method of Dr. Shadeed's work. . . . Dix argues that the DeKalb P.C. was still in existence. But this is not sufficient to show actual agency. As the trial court correctly noted, the uncontradicted evidence demonstrated that the DeKalb P.C. was not operating *as a medical practice* at the time Miller began treatment with Dr. Shadeed, and the doctor therefore did not provide medical services to Miller as an actual agent of the inactive DeKalb P.C.
> . . ..
> Dix also points to the fact that the DeKalb P.C. was never formally dissolved, that a form Miller received included the old DeKalb County address as well as the Cobb County address, that a "Baheeg L. Shadeed, M.D., ****749** P.C." was also covered as an additional insured on the medical malpractice policy issued to Dr. Shadeed personally, and that the DeKalb County address as a scheduled location was not deleted from the policy until March 2000. Finally, in 1999 a bank instituted a legal action against B. Shadeed, M.D., P.C. for failure to repay a loan.
>
> The trial court correctly noted, however, that this evidence points only to the continued legal existence of the DeKalb P.C., not its operation as a medical practice or its control of the time, manner, or method of Dr. Shadeed's work. At most, the facts pointed to by Dix merely suggest the possibility of an agency relationship.

Dix v. Shadeed, 581 S.E.2d 747, 748–49 (Ga. Ct. App. 2003).

Here, the evidence Plaintiff proffered—agency statements—were not evidence of agency for this load. None of the payments referenced this load or this bill of lading, only Moholland

itself. As the evidence showed, such accounting entries are not evidence of agency or payment for running this load. Plaintiff invited speculation, with continuous questions regarding "weekly" payments to Moholland. Absent from Plaintiff's evidence was proof that such payments were for this load. The only documents presented manifested that by July 1 there was no agency relationship.

Plaintiffs also claim that there was ratification, which they call knowledge. The ratification, however, is absent. None of the evidence shows that Mayflower knew of this load until after it happened. All the evidence is that Mayflower was uninvolved and that Mayflower did not ratify the use of either its DOT or the documentation on its behalf for this load.

Consent must be explicit, with full knowledge and acceptance of benefits, to be ratification. Lynn v. Lowndes Cnty. Health Services, LLC, 840 S.E.2d 623, 631 (Ga. Ct. App. 2020)('Here, there is no evidence **that Thomas had any knowledge at any time of the arbitration agreement or that Lynn had signed the agreement on his behalf.** Hence, in the absence of any evidence to show that Thomas was aware that Lynn signed the arbitration agreement, he could not ratify the arbitration agreement.) In Lynn, the Court noted that "Lowndes County points to the fact that Lynn testified during her deposition that she was responsible for making all decisions concerning Thomas and that Thomas had relied on her for "everything." Lynn v. Lowndes Cnty. Health Services, LLC, 840 S.E.2d 623, 630 (Ga. Ct. App. 2020). That was insufficient because there was no evidence the act at issue—agreeing to arbitrate—was ratified by the patient, despite the commitment of "everything" to her.

Lastly, the claimed "extension" is both lacking in evidentiary support and legal sufficiency. The subject emails reveal, in context, a promise to mail the plates for return by June 30. The alleged extension is also an illusory novation of the terminated contract. There is no consideration

for the alleged extension, as Mayflower received no compensation and there is no other basis for finding consideration.

There is no evidence to show an agency relationship here, under the elements established by Georgia law.

**B. There is no apparent agency.**

Apparent agency is absent, too. "An implied agency relationship cannot arise in the absence of action by the principal." J'Carpc, LLC v. Wilkins, 545 F. Supp. 2d 1330, 1338 (N.D. Ga. 2008).

In Georgia:

> Agency may result where one party has apparent authority to affect the legal relations of another party by transactions with a third party, but it must be emphasized that apparent authority to do an act is created as to a third person when the statements or conduct of *the alleged principal* reasonably cause the third person to believe that the principal consents to have the act done on his behalf by the purported agent.
> Hinely v. Barrow, 169 Ga. App. 529, 530, 313 S.E.2d 739 (1984) (emphasis in original) (citations omitted). Further, "where the only evidence that a person is an agent of another party is the mere assumption that such agency existed, or an inference drawn from the actions of that person that he was an agent of another party, such evidence has no probative value and is insufficient to authorize a finding that such an agency exists." Shivers v. Barton & Ludwig, 164 Ga. App. 490, 491, 296 S.E.2d 749 (1982).
> Having considered the parties' arguments and the applicable law, the Court has decided that it will hear oral

Dodson v. Belk, Inc., 362 F. Supp. 3d 1283, 1292 (N.D. Ga. 2018).

Apparent agency thus requires: a) statements of principal; b) causing third persons to *reasonably believe*; c) that the principal consents to *have the act done* on its behalf.

Here, the evidence does not support apparent agency. There are no statements from Mayflower regarding this load to Plaintiffs. There is no evidence that statements from Mayflower caused Plaintiffs to reasonably believe Moholland was Mayflower's agent as to this tort

(Moholland left the markings on, despite repeated demands); and there is no evidence of consent to this act (driving the load on that date, post termination, with Burist as driver).

Also, no one relied on the DOT number for anything relevant to this tort. Plaintiffs did not rely upon it, and neither did the government or investigators. Locke did not rely upon it; they relied on Moholland for anything direct and had Moholland handle the regulatory issues. Locke's testimony that it was "through mayflower" is immaterial; that element is either beyond the direct relationship or irrelevant to Mayflower and the public at large. Mayflower did not hold itself out, or create the impression, that Moholland was its agent as to this load. Moholland did all the work for this load, it happened without Mayflower.

In a tort case such as this, apparent agency is not a viable basis for liability, because the interaction is not a basis for reliance. See Stallings v. Sylvania Ford-Mercury, Inc., 533 S.E.2d 731, 734 (Ga. Ct. App. 2000)("Since Stallings was involved in an unexpected encounter with a driver and car previously unknown to her and has shown no prior knowledge on her part that Sylvania owned the car, she cannot demonstrate any act *of Sylvania* that caused her to believe that Kennedy was its agent" and "She has also failed to show that her reliance upon any representation by Sylvania led to her injury.").

**C. The facts show Moholland, not Mayflower, is the responsible motor carrier.**

Plaintiff's claim relies upon the presence of the cab card, sticker, and DOT number on the truck. These are all within Moholland's, not Mayflower's control. Mayflower revoked the agency relationship and instructed that steps be taken to effect severance—including specifically removing these marks. The agreement directed that upon termination all property and insignia were to be returned. The evidence shows that Mayflower objected to Moholland's continued possession, and also, no communication authorizes use of the plates or DOT number. The communications cited

relate to accommodating removal of the labels and identifications – it is not instantaneous. Plaintiffs have no authority that such process must be within a few days.

Plaintiffs' theory that Moholland could not run without Mayflower's DOT is wrong. Moholland had its own DOT number, and the witnesses discussed this. Moholland also could have (and was attempting to) acquire its own Virginia plates. There is thus no basis for imposing responsible motor carrier status upon Mayflower based on Moholland (who was a DOT carrier) failing to complete its obligations as promised. Mayflower received nothing for the delay, and had no role in the load at issue; Moholland did it all without Mayflower.

Plaintiffs seek to impose an enhanced burden unsupported by the evidence. In the best case, Moholland was lying regarding its efforts. That is not a basis for responsible motor carrier, especially where the load itself (and the documentation for the load) were not arranged, controlled, or otherwise connected to Mayflower, and Burist and Locke were working for a Mayflower competitor (Tailored Move/Moholland).

For example, in Lohr the Southern District of Alabama applied this doctrine to explain the limitations on vicarious liability:

> this court would accord Wilmac the same protection against liability as an employer would receive; it would not be liable for actions by Briggs outside the scope of his employment.
> Having held that liability will attach to Wilmac only if Briggs was acting within the scope of his employment with the company, the court will turn to the facts of the case. There is no dispute that, in this case, Briggs was acting outside the scope of his employment with Wilmac. In fact, **he was acting for the benefit of another motorcarrier company, Kevin G. Transportation.** There is no evidence that Wilmac condoned or encouraged such side jobs. Therefore, Wilmac cannot be held vicariously liable for Briggs's actions.

Lohr v. Zehner, No. 2:12CV533-MHT, 2014 WL 2504574, at *4 (M.D. Ala. June 3, 2014). And, in Georiga, applying the direct action statute as to a motor accident, noting that only if the insured

(i.e, the carrier) is liable, can there be liability under the direct action statute, is applies only if " he motor carrier is liable under the doctrine of respondeat superior."Spicer v. Am. Home Assur. Co., 292 F. Supp. 27, 32 (N.D. Ga. 1967); see also Saunds v. Washington, No. 4:23-CV-280, 2024 WL 5701454, at *4 (S.D. Ga. June 24, 2024)("Plaintiff has alleged an "actionable injury or loss as a result of the negligence of the common carrier or its agents.")(emphasis added).

**D. The statutory employer theory does not apply here.**

Statutory employment is "a theory of vicarious liability created by the FMCSRs." Stubbs Oil Co., Inc. v. Price, 848 S.E.2d 739, 744 (Ga. Ct. App. 2020). In assessing this theory, "the ownership or leasing of a commercial vehicle is critical to our analysis." Stubbs Oil Co., Inc. v. Price, 848 S.E.2d 739, 744–45 (Ga. Ct. App. 2020).

Here, This doctrine is a way of filling gaps. There are no gaps here. The statutory employee rule doesn't apply here. Burist was Locke's employee, and Moholland was the carrier. Locke had an agreement with them, and they had their own business and DOT number. The documents from the investigators all manifest that this was inapplicable. Neither Locke nor Burist engaged with Mayflower as to DOT authority for this load; they relied entirely upon Moholland. Moholland was not driving this load for Mayflower, since it was already purchased by Mayflower and any operative lease was nullified as a matter of law (because it relied upon the agency documents).

This contrast with Stubbs, where the DOT number's presence was *additional support* for the remaining facts showing the statutory employer:

> it is undisputed that **Stubbs Oil did not own** the tanker truck driven by Hinson and involved in the accident, and thus it was not operating as a motor carrier at that time. Additionally, **there is no evidence of a written lease between Stubbs Oil and Southern Oil or Hinson regarding that vehicle**. Furthermore, despite the plaintiffs' arguments, there is similarly no evidence of an oral lease between Southern Oil and Stubbs Oil. Rather, the evidence shows that (1) **Southern Oil and**

> **Stubbs Oil denied the existence of an oral lease; (2) Hinson was directly employed by Southern Oil; (3) only Southern Oil contacted Hinson and directed his actions regarding deliveries; and (4) Stubbs Oil exercised no control over Hinson or Southern Oil beyond prescribing the basic parameters for the delivery**. *Additionally*, the tanker truck involved in the accident bore the logo and DOT number of Southern Oil, not Stubbs Oil.

Stubbs Oil Co., Inc. v. Price, 848 S.E.2d 739, 745 (Ga. Ct. App. 2020). Here, there was no operative lease, Locke employed Burist, Mayflower had no control or supervision over Burist or his route, the bill of lading had Moholland on it, and Moholland had its own DOT number.

The trial evidence here showed as a matter of law that no lease existed regarding the tractor, which defeats this basis for liability. See Golden Peanut Co., LLC v. Miller, 870 S.E.2d 511, 516 (Ga. Ct. App. 2022), vacated and remanded, 317 Ga. 22, 891 S.E.2d 776 (2023), and vacated in part, 893 S.E.2d 533 (Ga. Ct. App. 2023) (vacated elements do not include this holding); see also Clarendon Nat. Ins. Co. v. Johnson, 666 S.E.2d 567, 571 (Ga. Ct. App. 2008)("Based on the record before us, we cannot find any evidence to support the conclusion that Wesley Carnley leased himself or his truck to an ATF defendant for the trip involved in the accident" because "All of the Carnleys, as well as ATF representatives, denied that ATF leased Wesley Carnley's truck or his services as a driver. ATF had no knowledge about C & C's use of Wesley Carnley to transport goods to C & C's warehouse for consolidation"); accord Nat'l Specialty Ins. Co. v. Martin-Vegue, 644 Fed. Appx. 900, 905 (11th Cir. 2016)("all the evidence concerning the identity of the transporter of the pebbles points to Transport." and "Bojkovski confirmed that Freight never employed him. In fact, the tractor Plys drove displayed Transport's name and DOT number", "There is no dispute that Transport had authority to haul as a motor carrier and carried sufficient insurance." and "Plys even signed the bill of lading for the goods.").

**E. There is no evidence or legal basis for respondeat superior.**

"Two elements must be present to render a master liable under respondeat superior: first, the servant must be in furtherance of the master's business; and, second, he must be acting within the scope of his master's business." Piedmont Hosp., Inc. v. Palladino, 276 Ga. 612, 613, 580 S.E.2d 215, 217 (2003).

The trial evidence showed Burist was not a Mayflower employee. He worked for Locke, who: a) controlled his assignments; b) gave him the equipment (the Locke owned truck); c) dictated schedule (via the folders and dispatch); and paid him. Thus, Burist was not an employee or agent of Mayflower.

In addition, these acts were beyond any contemplated employment. The evidence shows the homicides by vehicle were committed by Burist, there was THC in his blood (via the GBI lab report the police obtained), and he had open containers of alcohol in the cab. This removes respondeat superior liability. See, e.g., Slaton v. B & B Gulf Serv. Ctr., 344 S.E.2d 512, 513–14 (Ga. Ct. App. 1986)("While Wallace may have been advancing his master's interest in taking Slaton to view the map, clearly he abandoned his master's interest and pursued only his own when he grabbed Slaton and asked her to "party." The trial court correctly granted summary judgment to appellees on the issue of respondeat superior.").

A "but for" claim regarding the truck is not viable for respondeat superior. See Piedmont Hosp., Inc. v. Palladino, 276 Ga. 612, 615, 580 S.E.2d 215, 218 (2003)("Piedmont Hospital cannot be held vicariously liable merely because Patterson's employment allowed him access into Palladino's room and provided him with an opportunity to commit tortious acts against Palladino.");Lucas v. Beckman Coulter, Inc., 823 S.E.2d 826, 830 (Ga. Ct. App. 2019)("despite the fact that he traveled to AAPH to perform maintenance work on behalf of BCI, Wilson's specific acts of transporting his *personal* handgun in a company vehicle, retrieving the weapon from the

vehicle based on his fear that it might be stolen, and then taking it into his client's facility were not connected to or in furtherance of his duties and responsibilities at BCI and, therefore, he abandoned BCI's business when he engaged in such conduct.”).

There is no evidence of any participation, control, or benefit by Mayflower, and Burist was not acting for Mayflower or its business when he committed those crimes and damages Plaintiffs; respondeat superior liability fails here as a matter of law.

**CONCLUSION**

Plaintiffs have not met their burden at trial. Mayflower is entitled to judgment as a matter of law. The Plaintiff’s damages arose from a crash during Moholland’s load, using Locke’s truck, caused by Burist’s criminal driving.

*(Signature on Next Page)*

Respectfully submitted this 23d day of November 2026,

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

*/s/ Stephen Kyle McDonald*
BRANTLEY ROWLEN
Georgia Bar No. 153031
STEPHEN KYLE MCDONALD
Georgia Bar No. 661387
Todd R. Ehrenreich
*Admitted Pro Hac Vice*
Jeffrey Geldens
*Admitted Pro Hac Vice*
*Counsel for Mayflower Transit, LLC*

600 Peachtree Street N.E.
Suite 4700
Atlanta, Georgia 30308
404-348-8585 Telephone
404-467-8845 Facsimile
Brantley.Rowlen@lewisbrisbois.com
Stephen.McDonald@lewisbrisbois.com

Todd.Ehrenreich@lewisbrisbois.com
Jeffrey.Geldens@lewisbrisbois.com

## **Certificate of Service**

I CERTIFY that on November 23, 2026, I e-filed a true and correct copy of the foregoing via the Court's CM/ECF system which will send notification of such filing to all counsel of record.

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

*/s/ Stephen Kyle McDonald*
BRANTLEY ROWLEN
Georgia Bar No. 153031
STEPHEN KYLE MCDONALD
Georgia Bar No. 661387
Todd R. Ehrenreich
*Admitted Pro Hac Vice*
Jeffrey Geldens
*Admitted Pro Hac Vice*

*Counsel for Mayflower Transit, LLC*

600 Peachtree Street N.E.
Suite 4700
Atlanta, Georgia 30308
404-348-8585 Telephone
404-467-8845 Facsimile
Brantley.Rowlen@lewisbrisbois.com
Stephen.McDonald@lewisbrisbois.com

24 Drayton St., Suite 300
Savannah, GA 31401
Tel. (912) 525-4960

Todd.Ehrenreich@lewisbrisbois.com
Jeffrey.Geldens@lewisbrisbois.com