Rule 7.1(a) Amendment Proposal

**Rule 7.1. Disclosure Statement**

**(a) Who Must File; Contents.**

(1) ***Nongovernmental ~~Corporations~~ Business Organizations***. A nongovernmental ~~corporate~~ **business organization that is a** party or ~~a nongovernmental corporation~~ that seeks to intervene must file a statement that:

**(A)** identifies any parent ~~corporation~~ **business organization** and any publicly held ~~corporation~~ **business organization** ~~owning~~ **that directly or indirectly owns** 10% or more of ~~its stock~~ **it**; or

**(B)** states that there is no such ~~corporation~~ **business organization**.

* * * * *

COMMITTEE NOTE

Rule 7.1(a)(1) is amended in two ways intended to better assist judges in complying with their statutory and ethical duty to recuse in cases in which they or relevant family members have "a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4); Code of Conduct for United States Judges Canon 3C(1)(c).

First, the amended rule substitutes "business organization" in place of references to "corporation" to cover entities not organized as "corporations," defined narrowly. "Business organizations" is a more capacious term intended to flexibly adapt to the ever-changing variety of commercial entities, and the term is generally accepted and well understood. *See*, *e.g.*, Uniform Business Organizations Code (2015).

Second, the rule is amended to require disclosure of business organizations that "directly or indirectly own 10% or more of" a party, whether or not that ownership interest is formally denominated as stock. Such a direct or indirect owner is presumed to hold a sufficient interest in a party to raise a rebuttable presumption that a judge's financial interest in the owner extends to the party, warranting recusal. *See* U.S. Judicial Conference, Guide to Judiciary Policy § 220, Committee on Codes of Conduct, Advisory Opinion No. 57: Disqualification Based on a Parent-Subsidiary Relationship (Feb. 2024). Under the amended rule, a party must disclose not only a parent business organization but also any publicly held business organization that is a grandparent, great-grandparent, or other corporate relative that owns 10% or more of a party, whether directly or through another business organization. The requirement to disclose "indirect" owners of 10%

or more of a party is a pragmatic effort to better inform judges of circumstances when their financial interests may be affected by a litigation or when further inquiry into the ownership interests in a party is appropriate.

As before, this rule does not capture every scenario that might require a judge to recuse. As reflected in the Committee on Codes of Conduct Advisory Opinion No. 57, a judge may need to seek additional information about a party's business affiliations when deciding whether to recuse. And, as before, districts may promulgate local rules requiring additional disclosures.

* * * * *

## ADVISORY COMMITTEE REASONS FOR PROPOSED RULE CHANGES

Currently, Rule 7.1(a) requires that a nongovernmental corporate party disclose "any parent corporation and any publicly held corporation owning 10% or more of its stock." The Rule 7.1 Subcommittee, created in spring 2023 and chaired by Justice Jane Bland (Supreme Court of Texas), was formed to consider rule changes to better inform judges of any financial interest "in the subject matter in controversy or in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding." 28 U.S.C. § 455(b)(4).

More specifically, this project was sparked by concerns that judges are not sufficiently informed in situations in which they might hold an interest in a business organization that is a "grandparent" or "great-grandparent" of a party. For instance, a judge might hold an interest in a "grandparent" corporation that wholly owns a subsidiary that, in turn, owns a party. Under such circumstances, that judge likely has a financial interest requiring her to recuse. But because the rule requires disclosure of only a "parent corporation and any publicly held corporation owning 10% of more of [a corporate party's] stock," the judge will remain in the dark.

Although there do not appear to be serious concerns that judges have acted in a biased manner due to this lack of information, it is also the case that whenever a judge presides over a case in which she has an arguable financial interest in the outcome there is a threat to perceptions of the court's legitimacy and impartiality. As a result, over the last two years, the Subcommittee has considered several possible revisions to the rule that would make it more likely that "grandparents" and other entities up the corporate chain of ownership of a party, in which a judge is reasonably likely to hold an interest, will be disclosed without imposing unnecessarily onerous requirements on litigants.

Notably, the committee note to Fed. R. App. P. 26.1, whose relevant language is identical to Rule 7.1, has since 1998 provided that:

> Disclosure of a party's parent corporation is necessary because a judgment against a subsidiary can negatively impact the parent. A judge who owns stock in the parent corporation, therefore, has an interest in litigation involving the subsidiary. **The**

> **rule requires disclosure of all of a party's parent corporations meaning grandparent and great grandparent corporations as well.** For example, if a party is a closely held corporation, the majority shareholder of which is a corporation formed by a publicly traded corporation for the purpose of acquiring and holding the shares of the party, the publicly traded grandparent corporation should be disclosed. (Emphasis added.)[2]

This requirement does not appear to have spawned litigation, confusion, or controversy. Despite using the same language, though, Rule 7.1 has by and large been interpreted to require disclosure of only "parents," and not grandparents or other corporate relatives.

In the early days of this project, the Rules Law Clerk and Reporters canvassed a wide swath of disclosure requirements, including districts' local rules and various state rules, to develop an array of options. Among state and local rules, the two dominant approaches were to either use a broad catch-all term (such as to require disclosure of all "affiliates" of a party) or a lengthy "laundry list" of various specific business relationships. Subcommittee deliberation and outreach revealed that both approaches had problems. Broad catch-all provisions requiring disclosure of "affiliates" (or some such term) sweep in a wave of entities that the judge is unlikely to hold and often lead to vast disclosures in which any pertinent information might be buried. On the other hand, the "laundry list" approach seemed to encounter the ever-present danger of lists, that they are overinclusive and underinclusive and require constant maintenance to account for the constantly evolving variety of business relationships. Recognizing that no rule can uncover all instances when recusal might be required by the statute's demand that a judge disqualify on the basis of any interest "however small," 28 U.S.C. § 455(d)(4), our effort has been focused on threading the needle between a rule that is too capacious and one that is too specific. So, after much study, the Subcommittee returned to where it began: an effort to ensure disclosure of corporate "grandparents" and such, as Fed. R. App. P. 26.1 does now, albeit in the note.

In the midst of the Subcommittee's work, in February 2024, the Codes of Conduct Committee issued new guidance to judges: Committee on Codes of Conduct Advisory Opinion No. 57: Disqualification Based on a Parent-Subsidiary Relationship. This guidance directs a judge to focus on whether a parent corporation that does not wholly own a party "has control of a party." The guidance does not define "control" but instead "advises that the 10% disclosure requirement in the Federal Rules (e.g., Fed. R. App. P. 26.1, Fed. R. Civ. P. 7.1, Fed. R. Bankr. P. 7007.1, and Fed. R. Bankr. P. 8012) creates a threshold rebuttable presumption of control for recusal purposes." Should a party disclose an owner of 10% of more of a party, the guidance advises that "a judge

---

[2] This language was added to the note in response to a public comment that disclosure of only a "parent" was too narrow. Review of the minutes and agenda books of the Appellate Rules Committee and the Standing Committee reveal no opposition, or even discussion, of this addition to the note. The amended rule was subsequently approved by the various bodies up the chain of command and went into effect in December 1998.

may exercise his or her discretion to seek information from the parties or their attorneys; a judge may also review publicly available sources, such as Securities and Exchange Commission filings."

In light of this guidance, the Subcommittee also considered amending Rule 7.1 to require corporate parties to disclose any entity that has control over it. This move would, however, beg the question (as does the Codes of Conduct Committee guidance) as to what constitutes "control." The guidance does not attempt such a definition; instead, it refers to 10% ownership figure in the various Federal Rules as a proxy for control.

Based on the Codes of Conduct Committee guidance, the Subcommittee concluded that a rule that continues to mandate disclosure of *ownership* of a party is the most promising avenue toward disclosure of grandparents, et al. The goal is to better equip judges to comply with the Codes of Conduct guidance, and therefore their statutory and ethical obligations. This is, and always has been, a tricky exercise. Although the appellate rule has not caused controversy, a rule cannot be amended by amending only the committee note, so the challenge has been to draft rule language that will best meet our goals without being over or underinclusive.

As a result, the Advisory Committee has settled on two proposed changes to the rule, as reflected in the above proposal:

(1) Replace references to "a corporate party" with the broader term "business organizations."

(2) Require disclosure of "a parent business organization" and "any publicly held business organization that directly or indirectly owns 10% or more of" a party.

The Subcommittee's rationale for each of these changes follows.

<u>Business Organizations</u>

The Advisory Committee was concerned that references to "corporations" in the rule is too narrow since there are many business organizations other than corporations whose disclosure would assist judges in complying with their recusal obligations. For instance, "LLCs" or "Master Partnerships" are not necessarily defined as corporations under some state laws. Having concluded that the term corporation now feels too narrow, the next question becomes what to replace it with. The Subcommittee considered several possibilities, but "business organizations" quickly emerged as the most common and generally understood term. For instance, the National Conference of Commissioners on Uniform State Laws and the American Bar Association have long authored the "Uniform Business Organizations Code." Texas also has a "Business Organizations Code." Additionally, while some schools have stuck with the traditional name "Corporations," most leading law schools' introductory corporate law courses are now called "Business Organizations" or "Business Associations."

Direct or Indirect Ownership

As explained above, and as the draft Committee Note reflects, the primary goal was to better inform judges of the possibility that the value of interests they hold in "grandparents" and others up the chain of ownership from parties might be affected by the outcome of cases before them. Although this requirement does not seem controversial, as evidenced by the lack of controversy that has emerged from 27 years of experience with the appellate rule's committee note, drafting rule language to capture this goal has proven challenging. But once the Subcommittee settled on a lodestar of consistency with the Codes of Conduct Committee's guidance, its focus turned to ensuring disclosure of owners of 10% or more of a party.[3] Candidly, absolute precision has proven elusive, so the Subcommittee eventually converged on rule language that reflects the intent of the amendment and will hopefully prompt parties to reveal owners and part owners in which judges are likely to hold investments and whose value may be affected by the outcome of the litigation.

First, the Advisory Committee decided to retain the requirement that a "parent business organization" be disclosed. "Parent" is to some degree an elusive term that might be defined in numerous ways. Nevertheless, it has been part of the various federal disclosure rules since their inception, and it does not seem to have caused significant problems. The Advisory Committee considered eliminating the requirement of disclosing a parent altogether (that is, requiring only disclosure of publicly held direct or indirect owners of 10% or more) but concluded that there was no good reason to eliminate it, and that there may very well be occasions when a judge holds an interest in a privately held entity that is a parent of a party, but the judge is unaware.

Second, the Advisory Committee opted for language requiring disclosure of direct or indirect owners of 10% or more of a party. As the Committee Note explains, this is a pragmatic concept intended to prompt disclosure of grandparents or others who may own a significant share of a party via ownership of another intermediate entity. Such disclosure would trigger the suggestion in the Codes of Conduct Committee advisory opinion that a judge investigate further whether recusal is necessary. As was the case when the words "parent corporation" were discussed in the 1990s, there is a certain inherent imprecision to the language, but parties have long been trusted to meet their disclosure obligations faithfully and practically based on the purpose of those obligations. The Subcommittee labored over whether to prescribe a mathematical formula for indirect ownership or to lay out a series of examples of indirect ownership (or lack thereof) in the note, but ultimately opted against either option, in favor of a more general standard informed by a purpose defined in the committee note.

Of course, rulemakers should always be wary of imposing vague requirements on litigants. At the same time, however, this is not a rule that governs how parties conduct litigation or interact with one another. Nor is it a rule that is related to the law, facts, and merits of a case. Rather, it is

[3] As reflected in the draft amendment, the proposed rule abandons the term "stock" to define ownership, since ownership interests may have many different labels.

a rule that attempts to help judges comply with a mandate that itself is rather vague. To borrow from mathematics, the Rule's relationship to the recusal standard is something like an asymptote -- a line that a curve approaches but never touches. After several years of deliberation and study, the Advisory Committee is eager to hear the reactions of those potentially affected by the rule in the public-comment period. If in fact, what is proposed is too vague or onerous compared to the potential benefits, we will surely learn that then.

## II. Information items

The Advisory Committee also has many ongoing projects, often under the guidance of one of its subcommittees. This summary description can be augmented by reference to the agenda book for the Advisory Committee's April meeting via the link provided earlier in this report.

### (a) Filing under seal

In addition to the Rule 45(b)(1) amendment dealing with service of subpoenas, the Discovery Subcommittee has also been evaluating proposals to amend the rules to implement procedural guardrails around sealing decisions. Some of these proposals are rather elaborate. Other submissions demonstrate that different districts have an array of local practices affecting decisions whether to permit filing under seal.

*Specifying the standard for filing under seal in the rules*

One thing has remained a relative constant during these deliberations, that the standard for granting a protective order under Rule 26(c) is not as demanding as the standard for sealing materials filed in the court's record. *See, e.g.*, *June Medical Services, L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022) ("Different legal standards govern protective orders and sealing orders.").

Nevertheless, that difference is not specified in the current rules. Some time ago, the Discovery Subcommittee drafted a rule amendment designed to bring home that point:

**Rule 26. Duty to Disclose; General Provisions Governing Discovery**

* * * * *

**(c) Protective Orders.**

* * * * *

<u>**(4)**</u> <u>***Filing Under Seal.*** Filings may be made under seal only under Rule 5(d)(5).</u>

The Committee Note could recognize that protective orders -- whether entered on stipulation or after full litigation on a motion for a protective order -- ought not also authorize

filing of "confidential" materials under seal. Instead, the decision whether to authorize such filing under seal should be handled by a motion under new Rule 5(d)(5).

**Rule 5. Serving and Filing Pleadings and Other Papers**

* * * * *

**(d) Filing.**

* * * * *

(5) ***Filing Under Seal.*** Unless filing under seal is directed [or permitted] {authorized} by a federal statute or by these rules, no paper [or other material] may be filed under seal unless [the court determines that] filing under seal is justified and consistent with the common law and First Amendment rights of public access to court filings.[4]

This provision could be accompanied by a Committee Note explaining that the rule does not take a position on what exact locution must be used to justify filing under seal, or whether it applies to all pretrial motions. For example, some courts regard "non-merits" or "discovery" motions as not implicating rights of public access comparable to those involved with "merits" motions. Trying to draw such a line in a rule would likely prove difficult, and might alter the rules in some circuits.

One starting point is that since 2000 Rule 5(d)(1)(A) has directed that discovery materials not be filed until "used in the proceeding or the court orders filing." Exchanges through discovery subject to a protective order therefore do not directly implicate filing under seal.

Another starting point here is that there are federal statutes and rules that call for sealing. The False Claims Act is a prominent example of such a statute. Within the rules, there are also provisions that call for submission of materials to the court without guaranteeing public access. Rule 26(b)(5)(B) obligates a party that has received materials through discovery and then been notified that the producing party inadvertently produced privileged materials to return or sequester the materials, but also says the receiving party may "promptly present the information to court under seal for a determination of the [privilege] claim." Rule 5.2(d) also authorizes court orders for filing under seal to protect privacy. Rule 5.2(h) provides that if a person entitled to protection regarding personal information under Rule 5.2(a) does not file under seal, the protection is waived. Other rule provisions mentioning filing under seal include:

---

[4] The bracketed addition "or permitted" was suggested during the Advisory Committee's October 2023 meeting, to reflect the possibility that federal law might permit such filing without directing that it occur. It might be better to say "authorized," so that possibility is also included in the above sketch.